**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
*mreese@reesellp.com*

**COLE & VAN NOTE**
Laura Van Note
555 12th Street, Suite 2100
Oakland, California 94607
Tel: (510) 891-9800
Fax: (510) 891-7030
*lvn@colevannote.com*

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson
22525 Pacific Coast Highway
Malibu, California 90265
Phone: (213) 789-4050
*rclarkson@clarksonlawfirm.com*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 3:24-md-3098-EMC<br><br>**NOTICE OF MOTION AND MOTION TO APPOINTMENT MICHAEL R. REESE, LAURA VAN NOTE AND RYAN CLARKSON AS SETTLEMENT COUNSEL AND INTERIM CO-LEAD CLASS COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(G)**<br><br>**DATE: TO BE SET BY THE COURT**<br>**TIME: TO BE SET BY THE COURT** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on a date and at a time to be set by the Court, plaintiffs Max Alperstein, Michael Blackwell, Tyrell Brown, Dhaman Gill, Kerry Lamons, Katianne Navarro, Arya Shoaee and David Tulchinsky, (collectively "Plaintiffs"), will and hereby do move pursuant to Federal Rule of Civil Procedure 23(g) for an order either: a) appointing Michael R. Reese, Laura Van Note, and Ryan J. Clarkson as interim settlement counsel, and provide a 45 day stay so they may continue to negotiate a settlement with defendant, or b) appoint Michael R. Reese, Laura Van Note and Ryan J. Clarkson as co-lead class counsel.

Plaintiffs base this motion on the following documents: this Notice of Motion and Motion, the Memordanum of Law, the Declaration of Michael R. Reese and Exhibits attached thereto, the pleadings, record, orders, and other filings in this case, and on such other written and oral points, authorities, and evidence as the parties may present to the Court on or before the time of the hearing on the motion.

Date: April, 19, 2024                                Respectfully submitted,

**REESE LLP**
*/s/ Michael R. Reese*
Michael R. Reese (California SBN 206773)
100 West 93rd Street, 16th Floor
New York, New York 10025

**COLE & VAN NOTE**
Laura Van Note
555 12th Street, Suite 2100
Oakland, California 94607

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson
22525 Pacific Coast Highway
Malibu, California 90265

*Attorneys for Plaintiffs and the Proposed Class*

NOTICE OF MOTION AND MOTION
IN RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION NO. 3:24-MD-3098-EMC
1

**REESE LLP**
Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, NY 10025
Tel: (212) 643-0500

**COLE & VAN NOTE**
Laura Van Note (SBN 310160)
*lvn@colevannote.com*
555 12th Street, Suite 2100
Oakland, CA 94607
Tel: (510) 891-9800
Fax: (510) 891-7030

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 3:24-md-3098-EMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO APPOINT MICHAEL R. REESE, LAURA VAN NOTE, AND RYAN CLARKSON AS INTERIM CO-LEAD CLASS COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(G)** |

## **INTRODUCTION**

Although a number of firms are applying for leadership, none has invested as much time and resources as Michael R. Reese of Reese LLP, Laura Van Note of Cole & Van Note, and Ryan J. Clarkson of Clarkson Law Firm, P.C. (collectively, the "RVC Group"). The RVC Group served as organizing counsel in two mediations, navigating a web of complexities in an expedited manner given the defendant's dire financial condition. The RVC Group has demonstrated a commitment to the clients and proposed classes they represent through strong leadership, collaboration, and a deep understanding of the issues. The RVC Group respectfully requests the Court: (a) appoint them as interim settlement counsel, and provide a 45 day stay so they may continue to shepherd a potential early resolution, or alternatively, (b) appoint them as co-lead class counsel.

Mr. Reese, in conjunction with Ms. Van Note and Mr. Clarkson, has been leading negotiations with Defendant on a potential resolution of this matter. Such efforts have shown the RVC Group has a strong grasp of the substantive legal issues, the ability to coordinate with multiple groups of plaintiffs' counsel, as well as the ability to work productively with Defendant.

The RVC Group has extensive experience litigating consumer protection class actions, including data breach and privacy-related class actions, throughout the United States. The RVC Group has sufficient resources to lead this litigation and is committed to prosecuting this action for the benefit of the proposed class members wherever it leads, be it extensive discovery, a jury trial, and/or the negotiation and execution of class-wide settlement. It is important to note, especially here, in which aggrieved individuals have been publicly grouped by ethnic origin and other identity groups, that the RVC Group also brings diversity and representativeness, including by geography, ethnicity, gender, and experience. The firms' resumes are attached as Exhibits A through C to the accompanying Declaration of Michael R. Reese ("Reese Declaration"). A proposed case management plan is attached as Exhibit D to the Reese Declaration. The RVC Group's proposed plan for how work should be allocated to avoid duplication of efforts and to achieve efficiencies is included in the attached proposed order.

# FACTUAL AND PROCEDURAL BACKGROUND

## I. The Suits Against 23andMe

Beginning the first week of October 2023, hackers began selling samples of 23andMe genetic user data on the dark web. The files contained the genetic data of one million 23andMe users of Jewish Ashkenazi descent, and another 100,000 of Chinese descent. On October 6, 2023, 23andMe confirmed it was the source of the stolen genetic data. On October 9, 2023, Plaintiffs filed the first of dozens of complaints against 23andMe, asserting claims for a raft of common law torts and various state statutory claims—including several that provide statutory damages for the disclosure of genetic information (collectively, the "Litigation").

## II. 23andMe's Dire Financial Condition

Even before the data breach and the wave of lawsuits now centralized in this Court, 23andMe was in a challenging financial position. Revenue and earnings were in steep decline, and by September 2023 (a month before the breach) the stock of the public company started trading below $1. 23andMe's financial troubles were exacerbated by revelation of the breach, and by November 14, 2023, the Nasdaq sent 23andMe a notice that 23andMe was not in compliance with exchange regulations and the stock would be delisted if the price could not be maintained above $1. At the time, 23andMe had recently reported a $179.9 million loss in the first half of its fiscal year on revenue of $110.9 million, compared to a first-half loss of $155.6 million on revenue of $140.2 million in the previous fiscal year.

Revelation about the data breach compounded 23andMe's financial struggles. Now dealing with dozens of lawsuits, 23andMe slid further down a financial hole. On January 31, 2024, the *Wall Street Journal* published an article documenting the company's distress and predicting further trouble ahead. The following week, on February 7, 2024, 23andMe released its quarterly results, showing further reduced revenue, increased losses, and reduced guidance. And just this week, 23andMe's stock hit an all-time low of $0.35 a share, resulting in market capitalization of about $175 million and a negative enterprise value.

III. **The Settlement Process to Date has been Handled Primarily by the RVC Group**

Starting in December of 2023, the RVC Group and Defendant began discussing the possibility of mediation. The RVC Group negotiated with defense counsel to select a mediator agreeable to both parties, as well as an available date for all to attend. The RVC Group engaged the mediator and paid Plaintiffs' portion of the expenses of the mediation, including the mediator's fee and costs associated with conference rooms to conduct the session. The RVC Group expended hundreds of hours, collectively, preparing for the January 31, 2024 mediation. These efforts included conversations with Defendant's counsel to obtain necessary pre-mediation discovery, review and analysis of mediation privileged disclosures, consultation with experts regarding the value of the privacy rights implicated in the breach and other key issues, review of publicly available information regarding the financial condition of Defendant, preparation of a detailed mediation brief analyzing the legal, factual, and practical issues, interviews of numerous class members regarding damages suffered as a result of the breach, independent dark web research to authenticate the information purportedly available thereon, and consultation with various advocacy groups regarding the sensitive nature of the type of information breached and implications for historically targeted groups.

Prior to the mediation, the RVC Group informed the other plaintiffs' attorneys about the upcoming mediation and invited others to participate. The RVC Group ensured that all those who wished to participate in the mediation had executed a confidentiality agreement. The RVC Group also had several pre-mediation phone calls with the mediator regarding the legal and practical issues related to the upcoming mediation. The RVC Group made arrangements for and facilitated the availability of participants to attend the session via Zoom and moderated the Zoom conference to admit only those participants who had executed the confidentiality agreement. On January 31, 2024, over 25 plaintiffs' attorneys representing nearly every case against 23andMe participated in person or by Zoom in a mediation overseen by Randall Wulff. The RVC Group led the negotiations and facilitated effective and orderly contribution by the numerous plaintiffs' lawyers participating in the session. The initial mediation session did not result in a settlement of the case. However, the RVC Group continued negotiations with Defendant and agreed to set a second, in person mediation session

with Mr. Wulff. The RVC Group, again, signed the contract, paid the fees, and made the arrangements for the session. To facilitate effective negotiations, a more limited number of plaintiffs' attorneys were invited to participate. Yet, the RVC Group worked with numerous other plaintiffs' attorneys to identify who among them could participate in the mediation and represent the perspectives and contributions of the vast majority of the various plaintiffs' firms (the Mediation "Coalition"[1]). Once the Coalition was formed, the Coalition worked together to prepare for the second session, including by conducting numerous video conferences, hiring additional experts to provide further analysis of the financial condition of Defendant and its ability to fund a settlement, and identifying further information and documents to be produced by Defendant at the second session. Formal negotiations and conversations with Defendant's counsel continued to be handled by the RVC Group, who then reported to the Coalition (who, in turn, reported to the various plaintiffs' firms aligned with each member of the Coalition). Prior to the mediation, the Coalition engaged an independent forensic accounting firm to advise it with respect to 23andMe's financial condition, and continued to work with other experts on business practice changes designed to protect the class's sensitive data. On March 20, 2024, the parties engaged in a second day-long mediation session with Randall Wulff. The process was productive but did not result in settlement. Since then, the parties have engaged in ongoing communications that have been constructive but have not resulted yet in a settlement.

Continued settlement discussions are expected to prove to be productive, so the Court should appoint Settlement Counsel specifically designated to this task on behalf of the class. Given the efforts of the RVC Group that drove the mediation sessions and resulted in substantial progress over many months toward a potential resolution, the RVC Group is uniquely positioned to continue settlement negotiations. If the case does not settle in the next 45 days (or an alternative period imposed by the Court), the RVC Group respectfully requests to continue to serve the class as Interim Co-Lead Class Counsel.

---

[1] The Coalition includes the RVC Group and Anderson Berry, Gayle Blatt, and Norm Siegel.

# ARGUMENT

## I. Legal Standard

A court may appoint interim co-lead class counsel before deciding whether the action may be certified as a class. Fed. R. Civ. P. 23(g)(3). In addition to the provisions of Rule 23(g), courts often consider the standards set forth in the Manual for Complex Litigation, Fourth (2004) ("MCL"), in assessing a motion to appoint interim class counsel. The Manual explains that the type of organizational structure most appropriate may vary depending on the specific facts of the case. MCL § 10.221. For example, lead counsel "act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court," and in all other substantive, procedural, and strategic matters. *Id.* In any type of structure, courts evaluate "the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court." MCL § 10.224.

In determining which counsel is best suited to act as interim class counsel, courts "have frequently appointed more than one firm" when it is in the best interests of the proposed class members. *Walker v. Discover Fin. Servs.*, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011). Finally, courts often emphasize the importance of having a local firm involved as co-lead counsel. *Id.* at *5.

## II. The Court Should Appoint the RVC Group as Co-Lead Interim Class Counsel

### A. *The RVC Group's Extensive and Steady Leadership in this Litigation To-Date*

As detailed above, from the commencement of this litigation, the RVC Group has been working tirelessly to advance this matter towards resolution, thereby preserving judicial resources and bringing quick and comprehensive relief to the class members.

### B. *Mr. Reese Is Exceptionally Experienced in this Area and Satisfies Rule 23(g)*

Michael R. Reese is a former prosecutor from the Manhattan District Attorney's Office. He has been litigating consumer class actions for two decades. Mr. Reese is also the founder of Reese LLP, a class action law firm that has litigated class actions on behalf of plaintiffs since 2008. With offices in New York, Minnesota, and California, Reese LLP is comprised of a diverse team of skilled attorneys who have achieved significant results on behalf of consumers for over a decade.

1       Mr. Reese is a respected leader in class action litigation, having extensive experience litigating consumer class actions throughout the United States. Mr. Reese has been court appointed co-lead class counsel in a number of class actions in which there have been several plaintiffs' attorneys competing for leadership, including, but not limited to: *In re LastPass Data Security Incident Litig.*, No. 1:22-cv-12047-PBS (D. Mass); *In re Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litig.*, Master Case No. 1:21-cv-04447 (N.D. Ill.); *In re Fairlife Milk Products Marketing and Sales Practices Litig.*, Master Case No. 1:19-cv-03924 (N.D. Ill.); and, *In re Hills Pet Nutrition Sales and Marketing and Products Liability Litig.*, No. 2:19-md-02887-JAR-TJJ (D. Kan.). Furthermore, Mr. Reese also has been appointed as class counsel in numerous other class actions, including, but not limited to: *Mitchell, et al. v. Intero Real Estate Services*, No. 5:18-cv-05623-BLF (N.D. Cal.). These, and other cases, litigated by Mr. Reese have resulted in hundreds of millions of dollars of recovery for plaintiffs, as well as significant injunctive relief.

      Mr. Reese also is an accomplished appellate lawyer, having argued successfully before the Second, Seventh, and Ninth Circuit Courts of Appeal. *See e.g. Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018); *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350 (7th Cir. 2017); and *Murphy v. Best Buy Stores L.P.*, 690 F. App'x 553 (9th Cir. 2017).

      Finally, as noted above, Mr. Reese led the only group of attorneys to have engaged in settlement discussions on behalf of consumers with Defendant, which have included the provision of a draft term sheet that includes both monetary and injunctive relief components. The fact that Reese LLP undertook this effort underscores its dedication to this matter and illustrates its initiative. It also demonstrates the ability of Mr. Reese and his firm to work cooperatively with opposing counsel. *See* MCL § 10.224 (explaining courts will consider "the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court").

*C. Ms. Van Note Is Exceptionally Experienced in this Area and Satisfies Rule 23(g)*

Ms. Van Note is a partner and principal of Cole & Van Note, based in Oakland, California. She is qualified to serve as interim co-lead counsel in this litigation due to her history of successfully prosecuting complex class action cases (including data breach litigation), and because of her significant involvement in the prosecution of the instant case. Ms. Van Note practices exclusively class action litigation and has achieved extraordinary results in the numerous cases she has handled since she began practicing. She is licensed in federal and state courts in California, Missouri, and Kansas, and has been admitted *pro hac vice* in over a dozen other states.

Based in California, but handling cases nationwide, Cole & Van Note has decades of experience prosecuting privacy and other consumer complex cases. Cole & Van Note was recently appointed Interim Lead Counsel in the consolidated action arising from a similar security incident involving Rackspace Technology, Inc. (*Garrett Stephenson, et al., v. Rackspace Technology, Inc.*, Western District of Texas Case # SA-22-cv-01296-XR). Ms. Van Note's (and her firm's) knowledge of class action procedures runs deep across various industries and substantive issues, including data breach, privacy, consumer, environmental and employment cases. Having litigated hundreds of class actions in state and federal courts—including many before Multidistrict Litigation Panels—Cole & Van Note possesses a tremendous depth of skill and experience in complex litigation such as this.

Drawing on this wealth of skill and experience, Cole & Van Note has successfully achieved class certification in varied factual scenarios. Including handling dozens of data breach class actions, Cole & Van Note draws from other areas and has achieved successes in unique legal scenarios including: *Kurihara v. Best Buy Co., Inc.*, 2007 U.S. Dist. LEXIS 64224 (N.D. Cal.) (obtaining certification and substantial resolution for a class of over 52,000 current and former store employees bringing bag check claims); *Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal.) (oft-cited order certifying a class of approximately 1,100 California retail store managers alleging overtime misclassification). In *Augustus/Davis v. ABM Security Services, Inc.* (aka American Comm. Security Service, Inc.) (San Francisco County Superior Court Case No.

CGC-05-444421 (consolidated with Los Angeles County Superior Court Case No. BC336416)), Cole & Van Note filed a claim against American Commercial Security Services, Inc./ABM for violations of California law for denial of meal and rest periods toward security guards. The action achieved class certification status in 2009. Following summary judgment proceedings, a judgment of over $89 million was entered against the defendants. The judgment hinged on the issue of whether "on-duty" rest breaks were legally sufficient. After the Court of Appeal ruled against Plaintiffs on the issue, the case went to the California Supreme Court where Plaintiffs prevailed and, in so doing, created a new legal standard clarifying that "on-duty" rest breaks are invalid. After 12 years of litigation and appellate work, this matter settled for $110 million.

In addition to achieving many impressive results, Cole & Van Note has served as Lead Counsel or on steering committees of countless cases across a diverse range of areas and industries. *Hinds v. Community Medical Centers* (Superior Court of the State of California for the county of San Joaquin, Case No. STK-CV-UNPI-2021-10404) arose from Community Medical Centers' massive data breach in 2021 which affected countless patients, consumers and/or employees. After reviewing competing requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a Co-Lead Counsel position. Cole & Van Note served on the Steering Committee in *In re Apple Inc. Device Performance Litigation* (United States District Court, Northern District of California, Case No. 5:18-md-02827-EJD), which followed Apple's December 2017 admission that it throttled back performance of its iPhones (versions 6, 6 Plus, 6s, 6s Plus, SE, 7, and 7 Plus) to mask the problem of defective batteries and unexpected iPhone shut-downs. That case settled for $500 million. Cole & Van Note served as the (sole) Lead and (shared) Liaison Counsel over a Plaintiffs' Steering/Management Committee in *In re Westley Tire Fire Litigation* (Santa Clara County Superior Court Case No. CV 801282), following a lightning strike which ignited a fire in a pile of approximately 7 million illegally stored waste tires in Westley, California, a town about 70 miles east of San Francisco. These results are a small fraction of the complex cases which Cole & Van Note has led.

D. *Mr. Clarkson Is Exceptionally Experienced in this Area and Satisfies Rule 23(g)*

Mr. Clarkson is the founder and managing partner of Clarkson, a 25-lawyer public interest law firm headquartered in Malibu, California. Shaped by humble beginnings growing up in a suburban Detroit factory town and motivated by his desire to obtain justice for the underprivileged and underserved, Mr. Clarkson currently focuses his practice on consumer class and collective actions involving data privacy, among other areas. Mr. Clarkson's work against Big Tech has received broad coverage in the news media.

Barred in California, New York, and Michigan, Mr. Clarkson has achieved notable settlements in high stakes complex litigation where courts appointed him lead class counsel, *e.g., Hezi et al. v. Celsius Holdings, Inc*., (S.D.N.Y. Nov. 23, 2022) (lead class counsel in largest preservative-free settlement in U.S. history); *Prescott v. Bayer Healthcare, LLC,* Case No. 20-cv-00102-NC (N.D. Cal. Dec 15, 2021) (lead class counsel in nationwide settlement of "mineral-based" false advertising action).

Clarkson sits at the forefront of privacy litigation nationwide, prosecuting numerous cases involving the misuse of consumer data. *See, e.g.*, *AT&T Inc. Customer Data Breach Security Breach Litigation*, MDL No. 3114 (2023) (data breach involving sensitive customers' information); *Hasson v. Comcast Cable Communications, LLC*, No. 2:23-cv-05039-JMY (E.D. Pa. 2023) (MDL data breach); *C.M., et al. v. MarinHealth Medical Group, Inc.*, No 3:23-cv-04179-WHO (N.D. Cal Aug. 16, 2023) (litigating against different medical entities in a privacy misuse); *M.M., et al. v. Los Angeles Unified School District*, No. 22STCV37822 (Super. Ct. L.A. County Feb. 28, 2023) (co-lead counsel in a data breach involving minors' medical and other sensitive records); *Heather Heath, et al. v. Keenan & Associates*, No. 24STCV03018 (Super. Ct. L.A. County, Feb. 2, 2024) (data breach involving sensitive financial and medical information); *Baton et al. v. Ledger SAS et al*., No. 21-17036, 2022 U.S. App. LEXIS 33183 (9th Cir. 2022) (co-lead counsel in data breach action against cryptocurrency hardware manufacturer). Clarkson also serves on the executive leadership committee in a multidistrict data breach litigation impacting millions of individuals, *In re Samsung Customer Data Security Breach Litigation* (D.N.J., No. 1:23-MD-

03055-CPO-EAP). Clarkson was appointed by the court upon endorsement by co-counsel for "set[ting] a collaborative and cooperative tone among counsel throughout the MDL process." Ltr. from James E. Cecchi to the Hon. Christine P. O'Hearn, U.S.D.J., Submitting Proposed Leadership Structure at 15, *In re Samsung Customer Data Security Breach Litigation* (D.N.J. Mar. 3, 2023, No. 1:23-MD-03055-CPO-EAP), ECF No. 13 ("Mr. Clarkson and his firm took a lead role in cooperating with all other counsel. . . Mr. Clarkson has received broad support from other counsel involved in this matter to advocate for and advance the interests of the class.").

Clarkson has taken a leadership role in this litigation and has been heavily involved in early settlement efforts. Prior to filing, Mr. Clarkson conducted a thorough investigation of the facts, including a detailed review of 23andMe's corporate structure, privacy policies, prior lawsuits, security issues, financial condition, public statements, business and revenue models, business origin, as well as all aspects of this breach, including impact on 23andMe's customers, their relatives, and the public at large. Mr. Clarkson led the drafting of a detailed complaint and collaborated with other counsel to promote and argue for centralization before the Honorable Judge Chen pursuant to Section 1407. Mr. Clarkson served as organizing counsel for, prepared, briefed, and participated in the mediations, which required the exchange of essential documents and other mediation privileged discovery, an analysis of damages, and a full evaluation of the strengths and weaknesses of the case. Mr. Clarkson has exhibited skill in balancing early resolution in light of 23andMe's financial situation against the complexities and severity of the data breach, aiding the parties in overcoming obstacles to resolution.

## **CONCLUSION**

Given the extensive work and leadership the RVC Group has already shown in potentially bringing this matter to resolution, they respectfully request the Court either: a) appoint them as interim settlement counsel, and provide a 45 day stay so they may continue to shepherd a potential early resolution, or b) appoint Michael R. Reese, Laura Van Note, and Ryan Clarkson as co-lead interim class counsel.

| | | |
|---|---|---|
| 1 | Date: April 19, 2024 | Respectfully submitted, |
| 2 | | |
| 3 | | **REESE LLP**<br>*/s/ Michael R. Reese* |
| 4 | | Michael R. Reese (California SBN 206773)<br>100 West 93rd Street, 16th Floor |
| 5 | | New York, NY 10025 |
| 6 | | **COLE & VAN NOTE** |
| 7 | | Laura Van Note (California SBN 310160)<br>555 12th Street, Suite 2100 |
| 8 | | Oakland, CA 94607 |
| 9 | | **CLARKSON LAW FIRM, P.C.**<br>Ryan J. Clarkson (California SBN 257074) |
| 10 | | 22525 Pacific Coast Highway<br>Malibu, CA 90265 |
| 11 | | |
| 12 | | *Attorneys for Plaintiffs and the Proposed Class* |

MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL
IN RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION NO. 3:24-MD-3098-EMC
11