| | |
|---|---|
| **LIEFF CABRASER HEIMANN & BERNSTEIN LLP**<br>Elizabeth J. Cabraser (SBN 83151)<br>ecabraser@lchb.com<br>Michael W. Sobol (SBN 194857)<br>msobol@lchb.com<br>Melissa A. Gardner (SBN 289096)<br>mgardner@lchb.com<br>Jallé Dafa (SBN 290637)<br>jdafa@lchb.com<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111<br>Telephone: 415.956.1000<br><br>*Attorneys for Richard Roe, John Q. Public, and the Proposed Class (Case No. 24-2319)* | **ROBBINS GELLER RUDMAN & DOWD LLP**<br>Dorothy P. Antullis (*pro hac vice*)<br>dantullis@rgrdlaw.com<br>Stuart A. Davidson (*pro hac vice*)<br>sdavidson@rgrdlaw.com<br>Lindsey H. Taylor (*pro hac vice*)<br>ltaylor@rgrdlaw.com<br>Alexander C. Cohen (*pro hac vice*)<br>acohen@rdrglaw.com<br>225 NE Mizner Boulevard, Suite 720<br>Boca Raton, FL  33432<br>Telephone:  561.750.3000<br><br>*Attorney for Plaintiffs John Doe, Richard Roe, John Q. Public, and the Class (Case Nos. 23-05717 and 24-2319)* |

[Additional Counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: In RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates to: ALL ACTIONS | MDL No. 3098<br><br>**RESPONSE IN SUPPORT OF MOTION TO APPOINT DOROTHY P. ANTULLIS OF ROBBINS GELLER AND MELISSA A. GARDNER OF LIEFF CABRASER AS PLAINTIFFS' CO-LEAD COUNSEL AND INTERIM CLASS COUNSEL UNDER FED. R. CIV. P. 23(g)**<br><br>Judge:  Hon. Edward M. Chen<br>Courtroom: 5, 17th Floor<br>Date: May 30, 2024 1:30 P.M. via Zoom |

Table of Contents

Page

I. INTRODUCTION ................................................................................................................ 1
II. ARGUMENT ...................................................................................................................... 1
    A. The Advance to Justice for the Class Should Proceed Immediately On All Fronts. ...................................................................................................................... 2
    B. Our Proposed Leadership Suits the Needs and Circumstances of this Case.......... 5
III. CONCLUSION................................................................................................................... 6

I.    **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23(g) and Pretrial Order No. 1, we, Dorothy Antullis of Robbins Geller, and Melissa Gardner of Lieff Cabraser, submit this response in further support of our joint application to serve as Co-Lead and Interim Class Counsel in this MDL.

The Court received twelve Rule 23(g) applications. We have worked with a number of the counsel and firms before the Court and can confirm firsthand that the Court has been presented an abundance of competent options, both for structuring leadership for the Class in this action,[1] and for potential appointments. Respectfully, we think our proposal and our leadership are best suited for this particular case and Class.

We are a diverse and dynamic team spearheaded by two women who, despite being among the younger within the group of applicants, have proven ourselves in some of the most innovative and complex cases ever litigated – with rock solid support from some of the most respected lawyers and firms in the industry, and in this District. Not only does our team offer significant experience successfully litigating and leading the largest MDLs and privacy cases, it undeniably has a demonstrated track record of negotiating the highest quality and most valuable settlements of all time. Unique cases often require unique solutions. We and our firms have the experience to create thoughtful, delicate, and creative solutions to overcome the distinctive challenges the Class faces due to their immutable information falling into the hands of criminals.

II.    **ARGUMENT**

The purpose of the Court's analysis under Rule 23(g) is to protect the Class. The Federal Rules vest *the Court* with the responsibility to choose who will lead the litigation in service to the

---

[1] Ten applicants propose a structure of two or more law firms to jointly hold leadership positions as Interim Class Counsel. *See* MDL ECF Nos. 3; 5; 12; 14; 17-20; 22; *Santana* ECF No. 85. Of those ten, four propose that the Court also designate members of committees (MDL ECF Nos. 17; 18; 20; *Santana* ECF No. 85 (as one alternative)), and two request that the Court designate Settlement Counsel in advance of, or in addition to, counsel for the litigation. *See* MDL ECF Nos. 5; 22. In the other two submissions, one applicant requests that a single law firm be appointed for all purposes (MDL ECF No. 9), and one takes no position on plaintiffs' leadership in the MDL, except to request appointment of liaison counsel to coordinate with related state court litigation. *See* MDL ECF No. 15. All applicants affirm their willingness to work with other firms within whatever leadership structure the Court determines. And, of course, all twelve applications discuss their firms' experiences with data privacy litigation and MDLs.

1 Class. Rule 23(g)(1)(A) enumerates four factors that the court "must" consider, while Rule
2 23(g)(1)(B) permits consideration of other pertinent matters, such as those specified in the Court's
3 February 26, 2024 Order. Of course, the Court should give no weight to whether Defendant's
4 counsel preferred to communicate with particular lawyers before the appointment of lead counsel;
5 to the extent Defendant's counsel may have shown such a preference, it does not do so as a function
6 of acting in the best interests of the Class, but rather, quite naturally, acts on behalf of Defendant's
7 interests. Nor should the Court engage on questions about a future attorneys' fee award as part of
8 its analysis. Rule 23 itself, this District's robust class action jurisprudence, and its detailed Class
9 Action Settlement Guidance provide the principles and the tools to ensure the best representation
10 at the fairest price, implemented by a court fully aware of the issues and circumstances of the
11 particular case as they develop, with specific notice to the class of their right to make their views
12 known before any settlement is approved or attorneys' fees awarded.

13       The Rule 23(g)(1)(A) factors weigh strongly in favor of our appointment. Our application
14 describes our commitment to providing effective, thoughtful leadership in this action, and details
15 our work so far on behalf of the Class; our relevant knowledge and experience; and our readiness
16 to devote our personal resources and those of our law firms to achieving meaningful relief for the
17 Class. *See* ECF No. 14; Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). We also describe our firms' long track
18 record of working synergistically – obtaining exemplary results – and how we would ensure that
19 resources are allocated responsibly and effectively to benefit the Class. *See* ECF No. 14.

20       In consideration of issues raised within several other worthy submissions before the Court,
21 we emphasize only a few aspects of our application here:

22       **A.**    **The Advance to Justice for the Class Should Proceed Immediately On All Fronts.**
23

24       In our application, we propose that litigation advance simultaneously with any further
25 settlement discussions, and that the Court appoint lead counsel for all purposes now. ECF No. 14
26 at 12. This is critical. Proceedings have already been suspended for six months – on top of the
27 many months that 23andMe delayed before notifying Class members of the breach. Justice delayed
28 can be justice denied. This is particularly so here, where millions of Class members impacted by

the data breach are at an imminent risk of harm and where data pertaining to members of two ethnic groups has already been advertised for sale on the dark web.

We are acutely aware of the challenged circumstances of the Defendant company, and, given the potentially limited resources available, do not propose to consume them in litigation for its own sake. Our litigation efforts will be laser-focused, and our resolution efforts will be intensive. We know, from our experience in *In re Nat'l Prescription Opiate*, MDL No. 2804 (N.D. Ohio) ("*Opioids*"), in *Skochin v. Genworth Life. Ins. Co.*, No. 19-cv-00049 (E.D. Va.) ("*Skochin*"), in *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, MDL No. 2672 (Breyer, J.) ("*Volkswagen*"), and in *Fiat Chrysler Dodge Jeep EcoDiesel Litig.*, MDL No. 2777 (Chen, J.) ("*EcoDiesel*"), that resolution and relief should not wait.

Indeed, these and other examples of our past successes demonstrate that we can shape an innovative and valuable resolution for the Class, even where the path forward is neither obvious nor easy. In *Opioids*, in addition to negotiating over $50 billion worth of settlements (and a bellwether trial victory before Judge Breyer), our firms helped to secure unprecedented injunctive relief requiring opioids distributors to account not only for their own shipments, but also those of others and secured lifesaving naloxone for San Francisco (and nationally) in a time of extreme need. In *Skochin* and related cases, Robbins Geller (led by Stuart Davidson) and its co-counsel negotiated a complex settlement providing, in essence, a "do-over" option for Genworth's long-term care insureds, which the court recognized accounted for "the wide range of circumstances class members might be facing." *Skochin v. Genworth Fin., Inc.*, 2020 WL 6532833, at *18 (E.D. Va. Nov. 5, 2020). In *Volkswagen*, Lieff Cabraser (led by Elizabeth Cabraser), solved both consumer fraud and environmental concerns arising from the use of vehicles that failed emissions standards, within one year, through a unique program that required the defendant to buy back the cars, which compensated aggrieved consumers and took polluting vehicles off the roads. Lieff Cabraser followed *Volkswagen* with another diesel-emissions solution in *EcoDiesel*, before this Court, achieving significant compensation, emissions repairs, and extended warranties on U.S.-made diesel trucks for the consumer class in litigation that, like *Volkswagen*, proceeded on a brisk and focused pace.

1 In the privacy and cybersecurity context, our significant achievements also include tailored, innovative resolutions, not just for money – which is rarely Class members' main concern where dignitary violations are at issue – but also injunctive relief that demands respect for Class members' privacy going forward, remedies past invasions where that is possible, and prevents similar violations in the future. For example, in *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, MDL No. 2752 (N.D. Cal.) (Koh, J.), Ms. Antullis, who is a member of Robbins Geller's team specializing in class and complex settlements, along with co-counsel, secured an injunction requiring data access restrictions and significant investment in cybersecurity in addition to a large settlement fund for the Class. Ms. Gardner and her team, in *Diaz v. Google LLC*, No. 21-3080 (N.D. Cal.) (Cousins, J.), a case involving wrongful access to medical and other personal information via Covid-19 "contact tracing" app software, secured an injunction halting the practice and requiring protective changes to the software design soon after filing the case, helping to restore trust in important technology during a global pandemic. *See also*, *e.g.*, *In re Plaid, Inc. Privacy Litig.* (aka *Cottle v. Plaid*), No. 20-3056 (N.D. Cal.) (Ryu, J.) (involving financial account privacy, secured data deletion and controls, and cessation of the challenged practices in addition to large settlement fund); *In re Google Location History Litig.*, No. 18-5062 (N.D. Cal.) (Davila, J.) (involving location privacy, secured data deletion, controls, and prohibition on de-anonymizing data in addition to large *cy pres* settlement fund).

Our skills in reaching resolutions that are creative and impactful will be important here because the harm Class members suffered cannot be reversed or adequately addressed by financial compensation alone. Although a substantial fund needs to be established promptly, to compensate victims for the past and inevitable harms to come, appropriate relief must also account for the indefinite vigilance that is now needed to monitor the disclosure and misuse of personal and genetic information of the millions of Class members whose data was exfiltrated. And it will have to provide additional equitable remedies for the Ashkenazi and Chinese Class members whose information has already been posted, sold, and downloaded. We take the potential for an early resolution seriously.

That said, litigation goes hand in hand with well-reasoned and non-collusive settlement

1  negotiations, and we are prepared to push for the Class. Even if negotiations are possible, litigation
2  is a foundational source of pressure necessary to achieve the right result. Indeed, Lieff Cabraser
3  and Robbins Geller are known for their willingness and ability to take cases to trial, when
4  necessary, to maximize the class's recovery. Moreover, in the event that settlement discussions
5  fail, steering clear of avoidable delays now will impact the timing of later proceedings, including
6  trial, which could be Class members' last hope for a fair result. Our case management plan
7  proposes an early consolidated complaint, a fast answer, and simultaneous tracks that permit
8  settlement negotiations to continue – should 23andMe wish to meaningfully engage – which is the
9  right move and one that we have successfully implemented in other cases.

10  **B.    Our Proposed Leadership Suits the Needs and Circumstances of this Case.**

11  We propose that the Court appoint us as Co-Lead Interim Class Counsel because we
12  believe that our team will best serve the interests of this Class. As detailed in our application, our
13  firms have collaborated to great success in numerous cases in and outside this District,
14  demonstrating our ability to provide capable representation while minimizing inefficiencies and
15  unnecessary costs. We have the time available; both of us have recently resolved significant
16  litigations, and can make this case a top personal priority. Supported by the resources and expertise
17  of two of the nation's largest and most sophisticated plaintiffs'-side class action law firms, with
18  local offices, we can execute our proposed over-arching case management approach in a way that
19  is proactive and moves the case forward quickly on an aggressive schedule. We will not balk at a
20  vigorous defense; we will resolve this case through settlement if and when 23andMe agrees to
21  provide relief commensurate to the Class members' harm; and we will litigate this case through
22  trial if that best serves the Class. In the event it is useful to engage more resources and personnel,
23  our firms are also experienced at managing and coordinating larger teams while avoiding
24  duplication. For example, in the *Volkswagen "Clean Diesel"* MDL (No. 2672), Lieff Cabraser, as
25  sole lead, called upon 100 other firms to assist in common benefit work. *Volkswagen*, 914 F.3d
26  623, 637 (9th Cir. 2019); *see also In re EpiPen Mktg., Sales Prac. & Antitrust Litig.*, No. 17-md-
27  2785 (D. Kan. Sept. 12, 2017) ECF No. 40 (Robbins Geller appointed co-lead counsel to manage
28  large leadership team in complex antirust MDL that resulted in $609 million in total settlements).

1 	The Court should grant our application based on the factors that the Federal Rules Committee and Rule 23 jurisprudence have shown, over decades, best ensure vigorous and adequate representation. That our application did not discuss an eventual fee award, in contrast to some others, was no oversight, but reflects the fact that Federal Rule 23(h) and decades of thoughtful jurisprudence already ensure that the Court will oversee that the Class receives a fair price, at the appropriate time, with input from Class members and a full record from which to judge the effectiveness of our representation. In all events, we regularly seek lower percentage awards in appropriate circumstances. *See, e.g.*, *Ecodiesel*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (approving Lieff Cabraser fee request valued between 9.6% and 13% of settlement value); *In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617, 631 (N.D. Cal. 2021) (approving Robbins Geller and Edelson PC's fee request of 16.9% of settlement value).

	We respectfully seek the opportunity to serve as Co-Lead Interim Class Counsel for all of the reasons above, and because our appointment would recognize, and perhaps encourage, diversity within the modern Plaintiff's bar. We are an all-women leadership team comprising none of the usual suspects. As attorneys who graduated law school in 2003 and 2011, respectively, our application represents an opportunity for members of a younger generation to lead a significant litigation, which is particularly appropriate here in a case concerning important issues of genetic privacy and data security that will have ramifications well into the future. We possess the right skills and experience for this case, and we are committed to this work. Our teams at Robbins Geller and Lieff Cabraser consist of lawyers from a wide variety of backgrounds, at every stage of their legal careers. Their diverse perspectives, along with open lines of communication to Class members, will help us ensure that decisions reached on behalf of the Class are informed and sensitive to the needs of those we represent. Moreover, as with all of our past successes discussed above and in our application, the course that we chart for this case will benefit from the wisdom and insights of our firms' established leadership, including Paul Geller and Elizabeth Cabraser.

**III.	CONCLUSION**

	For the reasons stated herein and in our opening brief, we respectfully request that the Court appoint Ms. Antullis and Ms. Gardner as Interim Co-Lead Counsel.

Dated: April 25, 2024 　　　　　　　　Respectfully submitted,

| | |
|---|---|
| */s/ Melissa A. Gardner* <br> Melissa A. Gardner (SBN 289096) <br> mgardner@lchb.com <br> Elizabeth J. Cabraser (SBN 83151) <br> ecabraser@lchb.com <br> Michael W. Sobol (SBN 194857) <br> msobol@lchb.com <br> Jallé Dafa (SBN 290637) <br> LIEFF CABRASER HEIMANN & BERNSTEIN LLP <br> 275 Battery Street, 29th Floor <br> San Francisco, CA 94111 <br> Telephone: 415.956.1000 <br><br> Sean A. Petterson (*pro hac vice* forthcoming) <br> spetterson@lchb.com <br> LIEFF CABRASER HEIMANN & BERNSTEIN LLP <br> 250 Hudson Street, 8th Floor <br> New York, NY 10013 <br> Telephone: 212.355.9500 <br><br> *Attorneys for Richard Roe, John Q. Public, and the Proposed Class (Case No. 24-2319)* | */s/ Dorothy P. Antullis* <br> ROBBINS GELLER RUDMAN & DOWD LLP <br> Dorothy P. Antullis (*pro hac vice*) <br> dantullis@rgrdlaw.com <br> Stuart A. Davidson (*pro hac vice*) <br> sdavidson@rgrdlaw.com <br> Lindsey H. Taylor (*pro hac vice*) <br> ltaylor@rgrdlaw.com <br> Alexander C. Cohen (*pro hac vice*) <br> acohen@rdrglaw.com <br> 225 NE Mizner Boulevard, Suite 720 <br> Boca Raton, FL  33432 <br> Telephone:  561.750.3000 <br><br> Aelish M. Baig (SBN 201279) <br> aelishb@rgrdlaw.com <br> Taeva Shefler (SBN 291637) <br> tshefler@rgrdlaw.com <br> One Montgomery Street, Suite 1800 <br> San Francisco, CA 94104 <br> Telephone:  415.288.4545 <br><br> *Attorney for Plaintiffs John Doe, Richard Roe, John Q. Public, and the Class (Case Nos. 23-05717 and 24-2319)* |

**ATTESTATION**

I, Melissa Gardner, am the ECF user whose identification and password are being used to file this application. I hereby attest that Dorothy P. Antullis has concurred in this filing.

　　　　　　　　　　　　　　　　　　*/s/ Melissa Gardner*
　　　　　　　　　　　　　　　　　　Melissa Gardner, Esq.