Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiffs David Melvin, J.L., and Putative Class*

Jay Edelson (admitted *pro hac vice*)
jedelson@edelson.com
Ari Scharg (admitted *pro hac vice*)
ascharg@edelson.com
J. Eli Wade-Scott (admitted *pro hac vice*)
ewadescott@edelson.com
Michael Ovca (admitted *pro hac vice*)
movca@edelson.com
Emily Penkowski Perez (admitted *pro hac vice*)
epenkowski@edelson.com
Hannah Hilligoss (admitted *pro hac vice*)
hhilligoss@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE 23ANDME, INC., CUSTOMER DATA SECURITY BREACH LITIG.<br><br>This Document Relates to:<br>*Melvin et al. v. 23andMe, Inc.*, Case No. 24-cv-00487-EMC | Case No. 24-md-03098-EMC<br><br>**DECLARATION OF RAFEY S. BALABANIAN IN SUPPORT OF PLAINTIFFS' MOTION TO APPOINT INTERIM LEADERSHIP OF CLASS ACTION**<br><br>Judge: Hon. Edward M. Chen |

Pursuant to 18 U.S.C. § 1746, I, Rafey S. Balabanian, hereby declare and state as follows:

1. I am an attorney admitted to practice law before this Court. I am over the age of 18 and fully competent to make this Declaration. I have personal knowledge of the facts set forth herein and if called upon to testify as a witness, I could and would competently testify hereto.

2. I am the Managing Partner and Director of Nationwide Litigation of Edelson PC. My firm represents Plaintiffs David Melvin and J.L. in the above-captioned case. I submit this Declaration in Support of Plaintiffs' Motion to Appoint Interim Leadership of Class Action.

*Edelson's Unparalleled Experience Litigating and Settling Complex Privacy Cases*

3. Edelson PC is a nationally recognized leader in high-stakes plaintiffs' work, ranging from class and mass actions to public client investigations and prosecutions. The firm has repeatedly been recognized by Law360 as Cybersecurity & Privacy Group of the Year (2017, 2018, 2019, 2020, 2022, 2023), Consumer Protection Group of the Year (2016, 2017, 2019, 2020), and a "Privacy Litigation Heavyweight" and "Cybersecurity Trailblazer" by the National Law Journal (2016). The National Law Journal also recognized us as "Elite Trial Lawyers" in Consumer Protection (2020, 2021), Class Action (2021), Privacy/Data Breach (2020), Mass Torts (2020), and Sports, Entertainment and Media Law (2020). Just considering cases where Edelson PC has served as lead counsel, Edelson's verdicts and settlements exceed $5 billion.

4. The firm's track record in privacy cases, particularly, is unparalleled. Edelson filed the first-ever case under the Illinois Biometric Information Privacy Act ("BIPA"), which resulted in the largest single-state privacy settlement ever at $650 million, which was reached on the eve of trial. *See In re Facebook Biometric Information Privacy Litig.*, 522 F. Supp. 3d 617 (N.D. Cal. 2021).[1] In approving the settlement, Judge Donato of the Northern District of California noted the "landmark result" achieved for the Class, observing that Edelson and its co-counsel had produced a "major win for consumers in the hotly contested area of digital privacy." 522 F. Supp. 3d at 620-621.

5. We are also pioneers in litigation under the state genetic information privacy statutes

---

[1] The Robbins Geller firm was Edelson's co-counsel in that case and have also filed a case here.

specifically at issue in this case and obtained the first-ever adversarially-certified class under any such statute. *Melvin v. Sequencing LLC*, 344 F.R.D. 231 (N.D. Ill. 2023) (Illinois Genetic Information Privacy Act); *see also Cole v. Gene by Gene Ltd.*, No. 14-cv-00004-SLG (D. Alaska) (Alaska Genetic Information Privacy Act).

6. We also hold the record for the largest TCPA privacy settlement at $76 million. *Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12-cv-04069 (N.D. Ill.).

7. The firm was lead counsel in *Spokeo v. Robins*, in which the Supreme Court held that "intangible harm" could satisfy Article III standing requirements. *See* 136 S. Ct. 1540 (2016). Commentators called the case "the most important privacy class action and consumer case of the decade."[2] Litigating on behalf of the American Civil Liberties Union, we obtained a consent decree in 2022 that permanently enjoins Clearview from selling access to its massive database of facial vectors to any private person or company, as well as additional restrictions—a settlement that has been called a "milestone for civil rights."[3] In short, Edelson PC is the nation's leading class action firm on privacy issues, with the firm's cases "read[ing] like a time capsule of the last decade, charting how computers have been steadfastly logging data about our searches, our friends, our bodies."[4]

8. In 2023, Judge Lasnik of the Western District of Washington, in assessing the final fairness of the firm's $415 million settlement with an operator of an alleged illegal online casino, described how the Edelson firm worked "in the Executive branch, the legislative branch, and the Judicial branch" to secure an extraordinary result for its clients in a "unique" case—describing the firm as "all in with high quality and very admirable lawyering[.]" *Benson v. DoubleDown*

---

[2] *See* John K. Higgins, *Supreme Court to Hear 'Non-Injury' Privacy Class Action*, E-COMMERCE TIMES (May 6, 2015), https://www.ecommercetimes.com/story/supreme-court-to-hear-non-injury-privacy-class-action-82015.html.

[3] *See S.T.O.P. Welcomes Clearview AI, ACLU Settlement, Calls For National Ban*, SURVEILLANCE TECHNOLOGY OVERSIGHT PROJECT (May 9, 2022), https://www.stopspying.org/latest-news/2022/5/9/stop-welcomes-clearview-ai-aclu-settlement-calls-for-national-ban.

[4] Conor Dougherty, *Jay Edelson, the Class-Action Lawyer Who May Be Tech's Least Friended Man*, N.Y. TIMES (Apr. 4, 2015), https://www.nytimes.com/2015/04/05/technology/unpopular-in-silicon-valley.html.

*Interactive LLC*, No. 18-cv-00525, dkt. 550 (W.D. Wash. June 22, 2023). This settlement was reached after the watershed Ninth Circuit victory for consumers against such companies in *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018). Since then, we have successfully litigated consumer claims against numerous gambling companies for allegedly profiting from illegal internet casinos—where we've already secured $651 million in cash relief.

9. An Illinois appellate court recently cited a lower court's findings that Edelson PC is "highly experienced and more than competent," that they had performed "an extraordinary job to secure the amount of money for the class," and that the settlement Edelson achieved was "truly an extraordinary resolution to the great benefit of the class." *McCormick v. Adtalem Global Educ., Inc. et al.*, 2022 IL App (1st) 201197-U, ¶ 30. In *Barnes v. Aryzta*, the court endorsed an expert opinion finding that we "should 'be counted among the elite of the profession generally and [in privacy litigation] specifically' because of [our] expertise in the area." No. 17-cv-7358, 2019 WL 277716, at *3 (N.D. Ill. Jan. 22, 2019); *see also In re Facebook Priv. Litig.*, No. 10-cv-02389, dkt. 69 (N.D. Cal. Dec. 10, 2010) (former Chief Judge Ware of the Northern District of California, calling the firm "pioneers" and noting that Edelson has been at the forefront of "some of the largest consumer class actions in the country" on those issues).

10. When it comes to trial, the Edelson firm is a leader in actually trying class cases, including privacy cases specifically. The firm holds the record for the largest-ever jury verdict in a privacy case at $925 million. *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-1857-SI (D. Or. June 24, 2019).[5] And just last year, the firm delivered a historic verdict, establishing liability and punitive damages on behalf of a class of thousands of Oregon wildfire victims.[6] Since then, the damages trials co-led by Edelson have resulted in $220 million in verdicts to 36 clients, paving the way to

---

[5] The verdict was later vacated, with the Ninth Circuit holding that the lower court had to consider whether the damages awarded by the jury potentially violated due process. *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022).

[6] Jonathan Stempel, *Jury says Berkshire's PacifiCorp owes punitive damages for 2020 Oregon wildfires*, REUTERS (June 14, 2013), https://www.reuters.com/sustainability/jury-says-berkshires-pacificorp-owes-punitive-damages-2020-oregon-wildfires-2023-06-14.

tens of billions in class-wide damages.[7]

***Edelson's Long Track Record Leading Consolidated Litigation***

11.     The firm has significant experience leading aggregated litigation in challenging cases presenting complex, novel issues of law.[8] The firm (and I specifically) were among those who served the Tort Claimants' Committee in one of the largest and most complex bankruptcies in the history of the country involving the giant West Coast utility PG&E, which resulted in a $13.5 billion settlement for the firm's clients—fire victims. As discussed above, we successfully certified a class for victims of the Labor Day 2020 wildfires in Portland to litigate the issue of liability and punitive damages class-wide—prevailing on each of those issues at trial after years of litigation. *See James v. PacifiCorp*, No. 20CV33885 (Multnomah Cnty. Ct., Or.).

12.     We frequently represent states in multistate investigations and litigation, including the District of Columbia against JUUL for deceptive trade practices, and New Hampshire, Utah, and the District of Columbia against social media companies for harming a generation of their citizens with social media addiction. The firm (and I specifically) have been appointed interim lead counsel in multidistrict litigation against platforms over their hosting of alleged illegal casinos. *See In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, No. 21-md-02985-EJD (N.D. Cal.); *In re Google Play Store Simulated Casino-Style Games Litig.*, No. 21-md-03001-EJD (N.D. Cal.); *In re Facebook Simulated Casino-Style Games Litig.*, No. 21-cv-02777-EJD (N.D. Cal.). Each of these cases involved myriad issues of first impression, in which the firm successfully worked within coalitions (and are still doing so) to deliver extraordinary results to our clients.

---

[7]     Amanda Bronstad, *Another Oregon Wildfire Verdict Brings PacifiCorp's Total Damages to Over $220M*, Law.com (March 05, 2024), https://www.law.com/2024/03/05/another-oregon-wildfire-verdict-brings-pacificorps-total-damages-to-220m/.

[8]     As discussed in our earlier brief, the Edelson firm (and I in particular) are experienced in working with other firms to lead consolidated litigation. But should the Court wish to appoint more firms, we encourage the Court to keep efficiency at the forefront of that decision-making. All too often, a large slate of firms will make promises that they can efficiently litigate a case, but what results is actually the plaintiffs' equivalent of "churning the file" in order to justify a fee award (both generally and to the particular firm). We have criticized this practice openly. *See In re Tiktok, Inc. Consumer Privacy Litig.*, No. 20-cv-4699, dkt. 212 at 13 (N.D. Ill. Apr. 14, 2022). This case can, and should, be efficiently litigated by a single or co-lead.

1  *Edelson's Team Is Uniquely Equipped to Handle This Litigation*

2        13.      As noted above, I am Edelson PC's Managing Partner and Director of Nationwide Litigation. I have the subject matter and complex, aggregate litigation experience to provide effective leadership here. I have been appointed as lead class counsel in dozens of class actions in state and federal courts across the country and have resolved numerous cases to the benefit of the clients and classes I have represented. While much of my prior work will inform and support my efforts here—detailed in Edelson PC's firm resume, a true and correct copy of which is attached hereto as Exhibit A—some are worth highlighting. First, I was one of the principal attorneys representing Plaintiffs in the *In re Facebook Biometric Information Privacy Litigation* matter, in which I was central to securing adversarial class certification and reaching a record-breaking settlement on the eve of trial—demonstrating my expertise in privacy actions and ability to secure excellent results for the class. Second, I have significant experience leading complex cases: I was one of the attorneys who served on the Tort Claimant Committee in the PG&E bankruptcy and had a significant role in helping reach a $13.5 billion settlement on behalf of fire victims, and I was appointed interim lead counsel in the consolidated litigation seeking to hold technology platforms liable for their hosting of illegal online casinos. My familiarity with pressing difficult issues of law alongside other counsel will serve this class well.

      14.      The team working on this matter at Edelson PC includes Jay Edelson, J. Eli Wade-Scott, Michael Ovca, Emily Penkowski Perez, and Hannah Hilligoss. Each of these individuals' experience is set forth in full in the firm's resume, but a few particulars are again worth highlighting here:

- **Jay Edelson.** Jay Edelson—the firm's Founder and CEO—has been one of the central figures in the development of modern consumer privacy law. An adjunct privacy professor at UC Berkeley School of Law, he's been described by the New York Times as "Tech's Least-Friended Man,"[9] and called "probably the best known, and most innovative,

---

[9] Dougherty, *supra* n.4.

consumer privacy lawyer on the planet."[10] Mr. Edelson has been named three times as a "Titan of the Plaintiff's Bar" by Law360 (2014, 2021, and 2023), has been consistently recognized both inside and outside the legal profession for his groundbreaking privacy work, and was profiled as one of Fast Company's "Most Creative People in Business"—the first plaintiffs' attorney to ever receive the award.[11] Equally important, Mr. Edelson has been the leading voice of the reform wing of the plaintiffs' bar.[12] Mr. Edelson has, and will, leverage his unique skillset in this litigation to focus on the development of applicable claims to these unprecedented facts, as well as litigation and negotiation strategy.

- ***J. Eli Wade-Scott (Harvard Law School '14, magna cum laude).*** Mr. Wade-Scott is the firm's director of class action litigation and has been appointed class counsel in dozens of privacy actions. He has delivered hundreds of millions of dollars to consumers in privacy cases—always with strong settlement structures that drive unprecedented class engagement in claiming their money at the time of settlement. Indeed, Mr. Wade-Scott is a pioneer when it comes to the use of direct checks in privacy cases, setting a standard followed by numerous subsequent settlements. Mr. Wade-Scott also represents governments in cases pressing first-impression privacy issues, including on behalf of the District of Columbia against Facebook in its litigation arising from Cambridge Analytica and on behalf of New Mexico against Google for violations of the Children's Online Privacy Protection Act. Mr. Wade-Scott has been recognized as a Rising Star of the Plaintiffs' Bar for three consecutive years by the National Law Journal, and was profiled by Bloomberg Law as one of "Five

---

[10] Eric Troutman, *Deserve to Win Podcast* (July 18, 2022), https://www.natlawreview.com/article/deserve-to-win-ep-3-jay-edelson-now-available-we-talk-dobbs-javier-and-privacy.

[11] *Meet the lawyer who stood between Big Tech and your facial recognition data*, FAST COMPANY (Aug. 9, 2022), https://www.fastcompany.com/90764561/jay-edelson-most-creative-people-2022.

[12] Christine Schiffner, *Jay Edelson in a 'Battle for the Soul of the Plaintiffs Bar'*, LAW.COM (Sept. 19, 2022), https://www.law.com/nationallawjournal/2022/09/19/jay-edelson-in-a-battle-for-the-soul-of-the-plaintiffs-bar/.

Fresh Faces to Know in Privacy and Cybersecurity."[13] Mr. Wade-Scott will assist Mr. Balabanian in leading the litigation and managing the nuts-and-bolts work of day to day class action practice, from crafting discovery strategies to settlement structure.

- ***Michael Ovca (Northwestern Law School '17, cum laude).*** Mr. Ovca has been one of the firm's lead associates on technology and privacy matters since he began at Edelson in 2017 and has worked on or led more than two dozen privacy and technology actions at the firm. Most notably, Mr. Ovca was recently the lead associate in securing the first-ever adversarially-certified class under *any* state's genetic privacy law in *Melvin v. Sequencing, Inc.*, 344 F.R.D. 231 (N.D. Ill. 2023) and was appointed class counsel there.

- ***Emily Penkowski Perez (Northwestern Law School '20, cum laude).*** Ms. Penkowski Perez not only brings substantial experience from her work on more than ten technology/privacy actions at the firm, including her work representing the District of Columbia in its groundbreaking action against Facebook, but also the singular perspective of someone who has worked as an intelligence analyst for the National Security Agency, in the Office of Counterintelligence & Cyber (previously the NSA/CSS Threat Operations Center) and the Office of Counterterrorism. Ms. Penkowski is routinely pulled into matters in which the firm can leverage her unique expertise.

- ***Hannah Hilligoss (Harvard Law School '22, cum laude).*** Ms. Hilligoss's practice focuses on privacy and technology actions at the firm, where she has worked on numerous technology and privacy actions since beginning at the firm. Prior to joining Edelson, Ms. Hilligoss worked at Harvard's Berkman Klein Center for Internet and Society, where she authored several papers on ethics and governance in new technologies, particularly artificial intelligence, and led a working group of Harvard faculty focused on ethical technology development. Ms. Hilligoss's proven ability to parse technological and privacy issues without precedent and determine how law and policy should address them will yield

---

[13] Andrea Vittorio, *They've Got Next: Privacy and Cybersecurity Fresh Face Eli Wade-Scott*, BLOOMBERG LAW (Oct. 29, 2021), https://news.bloomberglaw.com/business-and-practice/theyve-got-next-privacy-and-cybersecurity-fresh-face-eli-wade-scott.

1    significant dividends for the Class.

2    15.     To be clear, Edelson is not asking for this entire team of attorneys to be appointed lead counsel—that is appropriately settled on the shoulders of one final decision-maker or organized with a co-lead—but to highlight the depth and variety of experience that the firm brings to the case. And the firm has resources to address every phase of the case: in addition to the dedicated investigations and in-house forensic investigations team, as well as the deep bench of litigators assigned to the case, the firm also has a dedicated appellate team, a dedicated trial team, and a dedicated government affairs team (which is often pulled in if the case involves legislative skirmishes or if the firm needs to coordinate with governmental actors).

16.     Particularly relevant is that Edelson boasts a unique-in-the-industry forensic investigations team headed by Shawn Davis. Mr. Davis holds numerous certifications relevant to this data breach case, including ISC2 CISSP, GIAC Forensic Examiner, and GIAC Incident Handle (among many others). Mr. Davis serves as an in-house technical expert for the firm, including by testifying at trial in federal court, and routinely being asked to testify before legislative bodies on critical areas of emerging artificial intelligence, cybersecurity, and privacy. In 2020, Mr. Davis was appointed by the Executive Office of the President to the Federal Government Advisory Committee on Data for Evidence Building with the U.S. Department of Commerce for a two-year term. This resource, along with the firm's substantial subject-matter expertise, allows the firm to routinely undertake in-house (1) complex reviews of novel and proprietary technology, (2) security assessments, and (3) the investigation and analysis of highly confidential and complex source code—all technical issues that have already and will continue to present themselves in this case.

17.     Nor, simply put, does the firm lack the material resources to contend with a well-financed adversary. We've recovered billions of dollars for the firm's clients, but equally important, have demonstrated that the firm has been run soundly from a financial point of view: A good marker is to look at how firms weathered the COVID-19 pandemic; while many plaintiffs' firms

1  (either properly or not)[14] competed against their clients to take large Paycheck Protection Program
2  loans, our firm did not—and in fact, continued with its commitment to grow and increased salaries
3  and benefits for our employees. Our finances allow us to compete on price, too: we will cap any fee
4  request at 20% of what is *actually* received by the Class.

5        18.    A corollary factor relevant to the Class is a firm's ability to attract the best talent.
6  (*See* Mot. to Appoint Interim Leadership, Ex. 2 ("Data Sheet") at 20 (44% of the Class ranking this
7  "Very Important").) Acknowledging that the concept of the most talented attorneys is somewhat
8  subjective, our firm is able to recruit top students from top law schools the old-fashioned way: by
9  paying associate salaries that out-pace BigLaw. It certainly doesn't hurt that we do interesting work
10 that matters to our attorneys, but that's a subject not immediately relevant to this Motion.

11 ***The Survey and Explanatory Page***

12       19.    Our firm took the unique step of retaining Professors Alissa del Riego, J.D., and
13 Joseph Avery, Ph.D. and J.D., to conduct a survey of class member preferences for the lead of this
14 litigation: specifically, what strategies they'd like their counsel to adopt and what characteristics the
15 lead firm should have. This survey follows the professors' existing work arguing that class counsel
16 should make efforts to communicate with the class and objectively ascertain their preferences. *See*
17 Alissa del Riego & Joseph Avery, *The Class Action Megaphone: Empowering Class Members with*
18 *an Empirical Voice*, 76 Stan. L. Rev. Online 1 (2023); Alissa del Riego & Joseph Avery,
19 *Inadequate Adequacy?: Empirical Studies on Class Member Preferences of Class Counsel*, 2024
20 Utah L. Rev. 499 (2024).

21       20.    As argued in the brief, we believe we uniquely fit what the Class is looking for.

---

[14]    A list of PPP loan recipients is publicly available at: *PPP Borrower Search*, PANDEMIC OVERSIGHT, https://www.pandemicoversight.gov/ppp-simple-search-landing (last visited Apr. 17, 2024). Under the PPP program, a firm had to attest that the loan was necessary in light of the firm's finances and access to other capital. *See* Small Bus. Admin., Paycheck Protection Program Loans Frequently Asked Questions, at No. 31 (July 29, 2021), https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf. Many firms took PPP money while at the same time telling courts that they were financially sound—both can't be true.

Other firms are, of course, welcome to meet these preferences too. That said, and while we don't know exactly who will move for lead, many of the firms who have filed cases here simply do not have deep experience in privacy actions, almost none can say they have experience in genetic privacy cases, and they do not have a comparable track record of putting together strong settlements.

21. In addition to the survey, we've taken case-specific steps to communicate with the Class. Edelson raised the alarm about 23andMe's newly-announced strategy to broadly sell users' data to third parties to help stem its apparent current cash crunch. (*Melvin v. 23andMe, Inc.*, No. 24-cv-00487-EMC, dkt. 27-1 (N.D. Cal.).) 23andMe had not said who the third parties were, what measures would be in place to protect users, nor provided assurances as to how this plan didn't break the law—and still hasn't. (*Id.*) The Court at the time viewed that issue as beyond the ambit of the currently-pleaded complaint, which Edelson intends to amend to include. (*See Melvin*, dkt. 38, Tr. at 32:4–12.) But Plaintiffs' counsel still wanted to arm class members with the information they needed to protect themselves, so we set up an explanatory webpage and launched an advertising campaign to alert 23andMe customers that they may be enrolled in 23andMe's data-sharing without knowing it, and provided instructions on how they could opt-out.[15] We got this information into the hands of more than three million people, and our short explainer video was organically shared more than 3,000 times on Facebook. We also attempted to work with 23andMe's counsel to make the process of opting out less onerous, but that effort was rebuffed.

***Our Commitment to Class-Benefitting Settlement Structures and Increasing Claims Rates***

22. When it comes to litigation outcomes, the Edelson firm has been a prominent voice for cash relief (versus credit monitoring or illusory reversionary funds) in settlements, and the numbers speak for themselves: a total of $13.5 billion in PG&E for tort claimants, $650 million in *Facebook*, $651 million and counting in internet-casino litigation, $76 million in *Birchmeier*, and others. When it comes to smaller settlements, we take the same view: indeed, we were the first to use direct checks to send out cash relief in privacy cases—there, BIPA cases filed against

---

[15] 23andMe Data Opt-Out, EDELSON PC, https://edelson.com/23andMe-data-opt-out (last visited Apr. 17, 2024).

employers—establishing a higher water mark in those cases that every subsequent settlement had to follow.

23. We've also shined a spotlight on an issue that so often gets swept under the rug, which is settlement claims rates. This matters to the Class: the Class ranked claims rates *just* behind the monetary relief itself in importance. (*See* Mot. to Appoint Interim Leadership, Ex. 2, Data Sheet, at 7.) Our firm routinely posts claims rates of 20% or more by designing notice and claims processes to get real engagement from the Class, as set forth below:

| CASE | CLAIMS RATE |
|---|---|
| *Villagomez v. iSolved HCM, Inc.*, No. 19-CH-12932 (Cir. Ct. Cook Cnty. May 11, 2023) | 45.2% |
| *LaBarre v. Ceridian HCM, Inc.*, No. 19-CH-0648 (Cir. Ct. Cook Cnty. Nov. 30, 2022) | 34.47% |
| *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922 (N.D. Cal.) | 27.3% |
| *Figueroa v. Kronos Incorporated*, No. 19-cv-01306 (N.D. Ill. Dec. 20, 2022) | 26.78% |
| *Lukis v. Whitepages, Inc.*, No. 19-cv-04871 (N.D. Ill. Sept. 28, 2022) | Two classes: 25% & 17%, respectively |
| *Neals v. ParTech, Inc.*, No. 19-cv-05660 (N.D. Ill. July 20, 2022) | 23.86% |
| *In re Facebook Biometric Info. Priv. Litig.*, No. 15-cv-3747 (N.D. Cal. Feb. 26, 2021) | 22% |
| *Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402 (N.D. Ill. Feb. 16, 2022) | 22% |
| *Sosa v. Onfido, Inc.*, No. 20-cv-04247 (N.D. Ill. Dec. 4, 2023) | Two classes: 18.3% & 20.1%, respectively |
| *Fischer v. Instant Checkmate LLC* No. 19-cv-04892 (N.D. Ill. Jan. 24, 2024) | More than 15% across seven settlement classes, with the second-largest class achieving 20% |
| *Kusinski v. ADP LLC*, No. 17-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) | 12.7% |
| *Krause v. RocketReach, LLC*, No. 21-cv-1938 (N.D. Ill. Sept. 12, 2023) | 12.11% |

24. We proactively address this issue in our settlements. In a recent settlement, *Fischer*, the claims rate prior to final approval was stalling at 2.59%. Despite the likelihood that such a rate would be approved, and with no objectors in the wings, the firm decided to ask for more time—

delaying our fees, naturally—to try to drive a better claims rate. *See Fischer v. Instant Checkmate LLC*, No. 19-cv-04892, dkt. 274 (N.D. Ill. Nov. 17, 2023); *see also* Allison Grande, *Class Counsel Gets Time to Grow Participation in Privacy Deal*, LAW360 (Nov. 22, 2023), https://www.law360.com/articles/1769616/class-counsel-gets-time-to-grow-participation-in-privacy-deal. Edelson ultimately reported an aggregate claims rate of more than 15% across seven settlement classes, with the second-largest class reaching a 20% claims rate. *Fischer*, No. 19-cv-04892, dkt. 283-3, ¶ 16 (N.D. Ill. Jan. 24, 2024).

25. Because we believe this is such an important issue, we will commit to seek the lesser of 20% of the actual benefits to the class or the *percent* of valid claims. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of April 2024, at San Francisco, California.

/s/ Rafey S. Balabanian
Rafey S. Balabanian