# Exhibit A

# CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
## EXECUTION COPY

This Class Action Settlement Agreement and Release, dated as of September 5, 2024, is made and entered into by and among the following Settling Parties: the Settlement Class Representatives, individually and on behalf of the Settlement Classes, by and through their counsel of record, Norman E. Siegel, Gayle M. Blatt, and Cari C. Laufenberg (together "Class Counsel") on one hand; and 23andMe, Inc. ("23andMe," or "Defendant"), by and through its counsel of record, Ian C. Ballon and Rebekah S. Guyon of Greenberg Traurig LLP ("23andMe's Counsel") on the other hand (collectively, the "Parties" or "Settling Parties"). The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the consolidated action *In Re: 23andMe, Inc., Customer Data Security Breach Litigation*, MDL 3098, Case No. 24-md-03098-EMC (the "Litigation") subject to the terms and conditions herein.

## RECITALS

1.      In early October 2023, 23andMe announced it had become aware that certain customer profile information was accessed from certain individual 23andMe.com user accounts without authorization (the "Security Incident").

2.      After the announcement of the Security Incident, numerous putative class action lawsuits were filed against 23andMe alleging that 23andMe had failed to properly protect Personal Information in accordance with its responsibilities, had inadequate data security protocols, was unjustly enriched by the use of Personal Information of the impacted individuals, violated various state genetic information privacy statutes and other state consumer statutes, failed to provide adequate notice pursuant to various breach notification statutes or common law duty, invasion of privacy and other claims related to the Security Incident.

3.     23andMe's investigation determined the threat actor downloaded information without authorization relating to approximately 6.4 million natural persons in the United States.

4.     On April 11, 2024, the Judicial Panel on Multidistrict Litigation centralized the litigation before the Honorable Edward M. Chen of the Northern District of California for coordinated or consolidating pretrial proceedings, where nearly 40 putative class action lawsuits were pending.

5.     On June 5, 2024, the Court appointed Norman E. Siegel, Cari C. Laufenberg and Gayle M. Blatt to serve as interim co-lead Class Counsel, authorizing them to pursue the Litigation on behalf of the Plaintiffs, and to engage in appropriate settlement negotiations on behalf of the Plaintiffs and the putative class members, which now comprise the Settlement Class. ECF 62.

6.     Experts were engaged by Class Counsel to evaluate and support Class Counsel in their efforts in the Litigation.

7.     Two in person mediations were held in this case with Randall Wulff in January and March 2024.  On June 5, 2024, Class Counsel and Defendant were directed by the Court to coordinate with Mr. Wulff for further attempts at resolution. ECF 62.

8.     The Parties had exchanged certain information in preparation for the mediation sessions before Randall Wulff and continued discussions through June 26, 2024, when an additional mediation session was held.  The arm's length mediation sessions resulted in a mediator's proposal for resolution of Plaintiffs' and the putative classes' claims against Defendant.

9.     On June 26, 2024, Plaintiffs filed their Consolidated Class Action Complaint ("Complaint") against 23andMe, asserting numerous common law and statutory claims. ECF 78.

10.     23andMe denies the claims and allegations set forth in the Complaint, denies that it failed to properly protect the Personal Information of its consumers and users, and further denies the viability of Settlement Class Representatives' claims for statutory damages under the California Consumer Privacy Act (CCPA) (Cal. Civ. Code §§ 1798.150, et seq.); the California Medical Information Act (CMIA) (Cal. Civ. Code §§ 56, et seq.); Alaska Stat. § 18.13.010, et seq.; the Illinois Genetic Information Privacy Act (GIPA) (410 ILCS 513, et seq.); and the Oregon Genetic Privacy Law (OGPL) (Or. Rev. Stat. §§ 192.531, et seq.).

11.     On July 12, 2024, all Parties accepted the mediator's proposal, reaching an agreement in principle to resolve this Litigation as outlined herein.

12.     The acceptance of the mediator's proposal resulted in the July 29, 2024, execution of a term sheet containing the material terms of the Settlement.

13.     23andMe denies any wrongdoing whatsoever, and this Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of 23andMe with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, any infirmity in the defenses that 23andMe has asserted or would assert, or to the requirements of Federal Rule of Civil Procedure 23. Nonetheless, 23andMe has concluded that further conduct of the Litigation would be protracted, burdensome and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

14.     Based upon their substantial investigation and informal discovery, including analysis as to the type of Personal Information accessed, length and risk of further proceedings, the financial condition of 23andMe, evaluation of the strengths and weaknesses of each of the Parties' claims and defenses, the uncertainty and delay of trial and appeals, Class Counsel and the Settlement Class Representatives have concluded that the terms and conditions of this Agreement are fair, reasonable and

adequate and are in their best interests and the interests of the Settlement Class, and have agreed to settle the claims that were asserted in the Litigation pursuant to the terms and provisions of this Agreement, subject to Court approval.

15.    Pursuant to these terms, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, as set forth in ¶ 37, against 23andMe and the Released Persons arising out of the Security Incident, by and on behalf of the Settlement Class Representatives and Settlement Class Members and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States against 23andMe relating to the Security Incident.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Settlement Class Representatives, individually and on behalf of the Settlement Class, Class Counsel, and 23andMe that, subject to the approval of the Court, when the Judgment becomes final, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties, the Settlement Class, and the Settlement Class Members, except those Settlement Class Members who lawfully opt out of the Settlement Agreement, and subject to the terms and conditions of this Settlement Agreement.

## I.    DEFINITIONS

As used in the Settlement Agreement, the following terms have the meanings specified below:

16.    "Agreement" or "Settlement Agreement" means this agreement.

17.    "Approved Claims" means Settlement Claims found to be timely and valid, in an amount approved by the Notice and Claims Administrator.

18.     "Business Practice Commitments" means the undertakings set forth in Section IV.

19.     "Claims Administration" means the processing and payment of claims received from Settlement Class Members and the distribution of settlement benefits by the Notice and Claims Administrator.

20.     "Effective Date" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement receives final approval by the Court; (ii) the Court has entered a Judgment; and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or service award made in this case shall not affect whether the Judgment is final or any other aspect of the Judgment.

21.     "Final Approval Hearing" means the hearing the Court will conduct to determine whether the Settlement is fair, reasonable and adequate in accordance with Federal Rule of Civil Procedure 23 and whether to enter a Final Approval Order and Judgment. The Final Approval Order and Judgment shall be entered not earlier than ninety (90) days after the mailing of the CAFA notices to ensure compliance with 28 U.S.C. § 1715.

22.     "Final Approval Order and Judgment" means an Order and Judgment that the Court enters after the Final Approval Hearing, which among other things, finally approves the Settlement and Agreement, finally certifies the Settlement Classes for settlement purposes, dismisses the claims in the Litigation with prejudice, releases the Released Parties from the Released Claims as set forth herein, enjoins and bars the Releasing Parties from asserting any of the Released Claims, including during the pendency of any appeal from the Final Approval Order and Judgment, includes as an

5

exhibit a list of individuals who timely and validly opted out of the Settlement, and satisfies all aspects of the settlement-related provisions of Federal Rule of Civil Procedure 23.

23.    "Judgment" means a judgment rendered by the Court.

24.    "Notice and Claims Administrator" or "Claims Administrator" or "Administrator" means an independent settlement administrator and notice provider for the settlement with recognized expertise in class action notice and claims generally and data security litigation specifically, as may be jointly agreed upon by the Settling Parties and approved by the Court.

25.    "Notice and Claims Administration Costs" means the costs associated with or arising from Notice and Claims Administration.

26.    "Notice Deadline" means 60 days after issuance of the Court's Order Granting Preliminary Approval of Class Action Settlement.

27.    "Notice Payment" means the amount to be determined by the Notice and Claims Administrator to effectuate the Notice Plan.

28.    "Notice Plan" or "Notice Program" or "Notice" means the herein-described notice of the class action settlement and its benefits, the opportunity to opt out or object, which shall be emailed to the class list provided by 23andMe and mailed where no email address is available, and is also provided to the Class through 23andMe's website, and mobile application upon Class Member log in.

29.    "Objection Deadline" means the date identified in the Preliminary Approval Order by which a Settlement Class Member must serve a written objection to the Settlement in accordance with ¶¶ 89-93 and the other related terms of this Settlement Agreement. The Objection Deadline shall be 35 days after the Notice Deadline, such date being subject to approval or modification of the Court.

30.     "Opt-Out Deadline" means the date identified in the Preliminary Approval Order by which a Settlement Class Member must mail or otherwise transmit their requests with the Notice and Claims Administrator in accordance with ¶¶ 80-85 and other related terms of the Settlement Agreement in order to be excluded from the Settlement Class. The Opt-Out Deadline shall be 35 days after the Notice Deadline, such date being subject to approval or modification of the Court.

31.     "Party" or "Parties" means the Settlement Class Representatives, on behalf of themselves and the Settlement Classes and 23andMe.

32.     "Parties' Counsel" means Class Counsel and 23andMe's Counsel.

33.     "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

34.     "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class, materially in the form of the proposed Preliminary Approval Order attached as Exhibit 1.

35.     "Personal Information" means information that is or could reasonably be associated with, whether on its own or in combination with other information, a natural person, or that is or could reasonably be used, whether on its own or in combination with other information, to identify, locate, or contact a natural person, including, but not limited to, name, sex, date of birth, genetic information, predicted relationships with genetic matches, ancestry reports, ancestors' birth locations and family names, family tree information, and geographic location.

36.    "Qualified Settlement Fund" means the interest-bearing escrow account at a bank, or another financial institution approved by Class Counsel and 23andMe's Counsel, which shall be maintained pursuant to Treasury Regulation § 1.468B-1, *et seq.* into which 23andMe will deposit $30,000,000, with the Notice Payment deposited as provided below and the remainder of which shall be deposited no later than ten (10) days after the issuance of a Final Approval Order, from which all monetary and other compensation to the Settlement Class and certain other expenses shall be paid in accordance with this Agreement.

37.    "Released Claims" shall collectively mean any and all claims and causes of action, both known and unknown, including, without limitation, any causes of action under California Civil Code §§ 56, et seq., 1710, et seq, 1750, et seq., 1798.80 et seq., 1798.150, et seq.; Cal. Bus. & Prof. Code §§ 17200, et seq.; Cal. Pen. Code §§ 502; 410 ILCS 513, et seq.; 815 ILCS 505; Alaska Stat. §§ 18.13.010, et seq.; Or. Rev. Stat. §§ 192.531, et seq.; Mo. Rev. Stat. §§ 407.010, et seq.; Wash. Rev. Code §§ 19.255.010, et seq.; Wis. Stat. §§ 100.18, 146.81, et seq.; Mass. Gen. Laws Ch. 70G, 93A, et seq.; 6 Del. Code §§ 2513 et seq.; Fla. Stat. §§ 501.201 et seq.; GA. Code. Ann. §§ 10-1-370 et seq.; §§ 10-1-399 et seq.; Maryland Commercial Law Code §§ 13-1010 et seq.; N.J. Stat. Ann. §§ 56.8-1 et seq.; N.Y. Gen. Bus. Law §§ 349 et seq., N.C. Gen. Stat. §§ 75-1.1 et seq.; 73 PA. Cons. Stat. §§ 201-2 & 201-3; Tenn. Code Ann. §§ 27-18-2107; Tex. Bus. & Com. Code Ann. §§ 17.41 et seq.; VA. Code §§ 59.1-198 to 59.1.207; Wash. Rev. Code. §§ 19.86.020 et seq.; and all similar statutes in effect in any states in the United States as defined herein; negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; conversion; bailment; threat assessment and monitoring; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement,

8

declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, claims under California, Oregon, Alaska, Illinois, and any other state or federal law (Cal. Civ. Code §§ 56, et seq., 1798.150 et seq.; Alaska Stat. §§ 18.13.010, et seq.; 410 ILCS 513, et seq.; Or. Rev. Stat. §§ 192.531, et seq) for statutory damages arising from a data breach or the disclosure of personal, confidential medical, or genetic information, and any other form of relief that either has been asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, or arising out of the same factual predicate as the allegations in the Litigation. The definition of "Released Claims" shall be construed as broadly as possible under Ninth Circuit law to effect complete finality over this Litigation. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of Settlement Class Members who have timely opted out of the Settlement Class.

38.     "Related Entities" means 23andMe's past or present parents, subsidiaries, affiliates, divisions, and related or affiliated entities of any nature whatsoever, whether direct or indirect, as well as each of 23andMe's and these entities' respective predecessors, successors, directors, managers, officers, employees, principals, agents, attorneys, insurers, and reinsurers and includes, without limitation, any Person related to any such entity who is or was named as a defendant in any of the actions in the Litigation.

39.     "Released Persons" means 23andMe and its Related Entities, including, as stated in ¶ 38, and each of their past or present parents, subsidiaries, divisions, and related or affiliated entities of any nature whatsoever, and each of their respective

predecessors, successors, directors, managers, officers, employees, principals, agents, attorneys, insurers, and reinsurers.

40.    "Releasing Parties" means the Settlement Class Representatives and all Settlement Class Members who do not timely and validly opt out of the Settlement.

41.    "Service Awards" means any payments made, subject to Court approval, to Settlement Class Representatives, as set forth in ¶ 98.

42.    "Settlement" means the settlement of the Litigation by and between the Parties, as set forth pursuant to the terms and conditions in this Agreement, including all attached Exhibits.

43.    "Settlement Benefits Plan" means the method of distribution of Settlement benefits, as submitted by Class Counsel in conjunction with their motion for a Preliminary Approval Order. The Settlement Benefits Plan may be modified prior to the entry of a Preliminary Approval Order, but in no event may require payments in excess of the Settlement Fund.

44.    "Settlement Class" means: all natural persons who were residents of the United States on August 11, 2023 and whose Personal Information was compromised in the Security Incident. The Settlement Class specifically excludes: (i) 23andMe and its officers and directors; (ii) all Settlement Class Members who timely and validly request to opt out from the Settlement Class under the opt out procedures provided in ¶¶ 80-85; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) potential class members who have provided 23andMe with an express release of claims arising out of or related to the Security Incident prior to the Effective Date of this Settlement. The definition of the Settlement Class is for settlement purposes only.

45.    "Settlement Classes" mean the Settlement Class and the California, Illinois, Oregon and Alaska Statutory Subclasses as defined in ¶ 51.

**SETTLEMENT AGREEMENT**
**Case No. 3:24-md-3098 EMC**

46.     "Settlement Class Member" means any person within the definition of the Settlement Class defined in ¶ 44.

47.     "Settlement Class Representatives" means the individuals identified in Exhibit 2.

48.     "Settlement Fund" means the non-reversionary cash settlement common fund for the benefit of the Settlement Class in the amount of thirty million United States Dollars ($30,000,000) that 23andMe shall pay pursuant to this Agreement.

49.     "Settlement Website" means the Internet website used by the Notice and Claims Administrator to facilitate notice and administration of this Settlement.

50.     "Settling Parties" means, collectively, 23andMe and the Settlement Class Representatives, individually and on behalf of the Settlement Class

51.     "Statutory Subclass Members" means Settlement Class Members who were residents of Alaska, Oregon, California or Illinois as of August 11, 2023.

52.     "Taxes and Tax-Related Expenses" means: (i) any and all applicable taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Qualified Settlement Fund, including, without limitation, any taxes that may be imposed upon 23andMe or their counsel with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Qualified Settlement Fund account; (ii) any other taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) relating to the Qualified Settlement Fund that the Notice and Claims Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities and costs incurred in connection with the taxation of the Qualified Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

**SETTLEMENT AGREEMENT**
**Case No. 3:24-md-3098 EMC**

53.     "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any of the Settlement Class Representatives, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, including Unknown Claims, the Settling Parties stipulate and agree that upon the Effective Date, the Settlement Class Representatives expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

54.     Settlement Class Members may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, including Unknown Claims, but the Settlement Class Representatives expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims,

12

including Unknown Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

## II.   THE QUALIFIED SETTLEMENT FUND

55.   The Notice and Claims Administrator will establish an interest-bearing escrow account to serve as the Qualified Settlement Fund, at a bank or another financial institution approved by Class Counsel, which shall be maintained pursuant to Treasury Regulation § 1.468B-1, et seq.

56.   By no later than ten (10) days of an order granting Preliminary Approval, 23andMe will deposit the Notice Payment into the Qualified Settlement Fund for purposes of facilitating the Notice Plan. The Notice Payment shall be credited against the total Settlement Fund required to be paid into the Qualified Settlement Fund.

57.   No amounts may be withdrawn from the Qualified Settlement Fund prior to the Effective Date unless: (i) expressly authorized by this Agreement; or (ii) approved by the Court, except that the Notice Payment may be used to provide notice to Settlement Class Members under the Notice Plan as approved by the Court. The Notice and Claims Administrator shall be judicious and prudent in incurring notice and administrative expenses.

58.   Not later than ten (10) days following the issuance of a Final Approval Order, the Defendant shall deposit the remainder of the Settlement Fund into the Qualified Settlement Fund for a total deposit of $30,000,000.

59.   As further described in this Agreement, the Qualified Settlement Fund shall be the sole source of monetary funds for all relief in the Settlement—excluding any amounts needed to affect the Business Practice Commitments described in Section IV, which sums and value will be in addition to the monetary relief being provided from

13

the Qualified Settlement Fund—and shall be used by the Notice and Claims Administrator to pay for:

    **a)** Taxes and Tax-Related Expenses as described in ¶ 63;

    **b)** Payments required under the Settlement Benefits Plan;

    **c)** Preparing and sending CAFA Notice;

    **d)** Notice and Claims Administration Costs;

    **e)** Service Awards, as described in ¶ 98;

    **f)** Class Counsel's Attorneys' Fees, Costs, and Expenses; and

    **g)** Any other remuneration called for by this Agreement, other than 23andMe's expenses and attorneys' fees related to this Litigation and the Business Practice Commitments described in Section IV.

60.    The Notice and Claims Administrator, subject to such supervision and direction of the Court and Class Counsel as may be necessary or as circumstances may require, shall administer and oversee distribution of the Qualified Settlement Fund to Settlement Class Members pursuant to this Agreement.

61.    The Notice and Claims Administrator and Class Counsel are responsible for communicating with Settlement Class Members regarding the distribution of the Qualified Settlement Fund and amounts paid under the Settlement.

62.    All funds held in the Qualified Settlement Fund shall be deemed to be in the custody of the Court upon the deposit of those funds until such time as the funds shall be distributed to Settlement Class Members or used as otherwise disbursed pursuant to this Agreement or further order of the Court.

63.    The Settling Parties agree that the Qualified Settlement Fund is intended to be maintained within the meaning of Treasury Regulation § 1.468B-1, and that the Notice and Claims Administrator, within the meaning of Treasury Regulation § 1.468B-

2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Qualified Settlement Fund and paying from the Qualified Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. The Settling Parties agree that the Qualified Settlement Fund shall be treated as an escrow account from the earliest date possible and agree to any relation-back election required to treat the Qualified Settlement Fund as an escrow account from the earliest date possible.

64.     All Taxes and Tax-Related Expenses shall be paid out of the Qualified Settlement Fund and shall be timely paid by the Notice and Claims Administrator without prior order of the Court.

65.     The Settling Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Settlement Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Qualified Settlement Fund.

66.     Each Settlement Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds from the Qualified Settlement Fund pursuant to this Agreement.

67.     23andMe and its counsel shall not have any responsibility for or liability whatsoever with respect to: (i) any act, omission, or determination of Class Counsel, the Notice and Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Qualified Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Qualified Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related

Expenses incurred in connection with the taxation of the Qualified Settlement Fund or the filing of any returns. 23andMe also shall have no obligation to communicate with Settlement Class Members and others regarding amounts paid under the Settlement.

68.     The Settlement Class Representatives and Class Counsel shall not have any liability whatsoever with respect to any acts taken pursuant to the terms of this Agreement, including, but not limited to: (i) any act, omission or determination of the Notice Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Qualified Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Qualified Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

## III.   SETTLEMENT BENEFITS

69.     All Settlement Class Members who do not timely opt out of the Settlement in accordance with the requirements of ¶¶ 80-85 will be entitled to benefits set forth in the Settlement Benefits Plan in addition to the Business Practice Commitments set forth in Section IV, to be exclusively paid for from the Qualified Settlement Fund.

## IV.   BUSINESS PRACTICE COMMITMENTS

70.     23andMe, at its sole and separate expense, shall certify that it has adopted, paid for, and implemented and intends to maintain the following Business Practice Commitments related to information security to safeguard current users' and Settlement

Class Members' Personal Information. The cost of the measures in this Section will not be paid from the Qualified Settlement Fund.

a) **Enhanced Password Protection.** Automatic check of customer passwords against breach lists of known passwords, rejecting the use of passwords that are subject to past known breaches and requiring customers to use a password that is not included on breach lists of known passwords. 23andMe will also automatically check customer passwords against the five most recently used passwords by the same customer and require a customer to use a password that is not one of the five passwords the customer most recently used for his/her/their account on 23andMe.

b) **Mandated Multi-Factor Authentication.** Mandate 2-factor or 2-step verification for all customers.

c) **Annual Security Awareness Training.** 23andMe will provide annual security awareness training for its employees.

d) **Annual Computer Scans and Cybersecurity Audits.** At a minimum, 23andMe will conduct annual computer scans and cybersecurity audits to ensure compliance with ISO standards 27001, 27018 and 27701, the first of which will be completed within one year following the entry of a Final Judgment, and the second of such audits within one year thereafter, and so on for a total of three years. 23andMe will provide a certification to Class Counsel following completion of each of the audits.

e) **Information Security Program.** 23andMe will maintain a reasonable written Information Security Program that is updated from time to time and distributed to all employees as part of the Annual

17

Security Awareness Training in ¶ 70(c). This Information Security Program will address, among other things, implementing and maintaining reasonable safeguards to protect the security of company, employee and customer information and address data privacy risks and/or threats posed to that information. 23andMe will also identify internal and external risks to the security of its customers' personally identifiable information that could result in unauthorized access to the company's system, and periodically review the sufficiency of any safeguards in place to control these risks. 23andMe will develop security metrics that measure its security program and will ensure that such metrics are periodically reviewed and approved by senior leadership. All 23andMe employees, including new hires, must review, and agree to maintain and uphold, the policies, practices and procedures that encompass the Information Security Program.

**f) Maintenance of Data Breach Incidence Response Plan and Threat Management.** 23andMe will maintain, regularly review, and revise as necessary, a process to conduct risk-based monitoring of security events on 23andMe's network and require that tools used to perform network monitoring be appropriately monitored and tested to assess proper configuration and maintenance. The process shall include an assessment of the security events and appropriate remediation timelines based on severity.

**g) Retention of Personal Information.** 23andMe will implement a policy regarding retention of Personal Information of customers who are inactive or have deactivated their accounts that is designed to avoid

maintaining Personal Information beyond an appropriate retention period.

71.     The Class Notice will direct Settlement Class Members to a link where a Settlement Class Member can delete all their information from 23andMe, and whereby 23andMe shall permanently delete such information in accordance with all applicable laws.

72.     At least 14 days in advance of the Final Approval Hearing, 23andMe shall file a report with the Court, with a copy to Class Counsel, detailing the status of its compliance with the Business Practice Commitments set forth in this section. The report shall be certified by the most senior 23andMe employee with responsibility for overseeing the Business Practice Commitments set forth herein.

## V.    PRESENTATION OF THE SETTLEMENT TO THE COURT

73.     As soon as practicable after the execution of the Settlement Agreement, Class Counsel shall file Plaintiffs' Motion for Preliminary Approval of the Settlement with the Court, requesting entry of a Preliminary Approval Order in the form attached hereto as Exhibit 1 or an order substantially similar to such form, requesting, among other things:

a)   certification of the Settlement Class for settlement purposes only;

b)   preliminary approval of the Settlement Agreement as set forth herein;

c)   appointment of Class Counsel for the Settlement Class;

d)   appointment of the Settlement Class Representatives;

e)   approval of a customary form of short notice to be emailed or mailed to Settlement Class Members (the "Short Notice"), a customary long form of notice to be available on the Settlement Website ("Long Notice"), and notice provided through 23andMe's website and mobile

19

application, which shall include a fair summary or a link to the Settling Parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt out of the settlement, the process and instructions for making claims to the extent contemplated herein and the date, time and place of the Final Approval Hearing;

f) approval of the Settlement Benefits Plan; and

g) appointment of the Notice and Claims Administrator;

h) preliminary injunction of all Settlement Class Members and their representatives from filing, commencing, prosecuting, maintaining, intervening in, conducting, continuing, or participating in any other lawsuit or administrative, regulatory, arbitration or other proceeding based on the Released Claims, unless and until they personally submit a timely request for individual exclusion pursuant to the Settlement Agreement after receiving Notice.

## VI.   NOTICE PROGRAM

74.    Except for costs incurred by 23andMe fulfilling its obligations as set forth in this section, the cost of notice to the Settlement Class in accordance with the Preliminary Approval Order, together with the Notice and Claims Administration Costs, shall be paid from the Qualified Settlement Fund.

75.    Notice shall be provided to Settlement Class Members (i) via email using the same email list 23andMe used to notify its affected customers of the Security Incident, which 23andMe will update to include any additional Settlement Class Members or revised contact information as available and necessary, and provide to the Notice and Claims Administrator within 20 days of an order granting Preliminary Approval; (ii) to the extent email notice is undeliverable or an email address is

unavailable, via direct mail notice to the mailing address 23andMe will provide to the Notice and Claims Administrator as set forth in this paragraph; (iii) by notice provided through 23andMe's website and mobile application to the Settlement Class members upon logging into their accounts on the website or mobile application; and (iv) a media plan, consisting of an agreed-upon press release and search ads to drive traffic to the Settlement Website, to be implemented by the Notice and Claims Administrator.

76.    The Notice and Claims Administrator, at the direction of 23andMe, will serve or cause to be served the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, not later than ten (10) days after this Agreement is filed with the Court, and confirm compliance with this provision in writing to Class Counsel, the cost of which will be paid from the Qualified Settlement Fund.

77.    The Notice Plan shall be subject to approval by the Court as meeting constitutional due process requirements.

78.    The Notice and Claims Administrator shall establish a dedicated Settlement Website and shall maintain and update the website throughout the claim period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement, and other important case documents, including Plaintiffs' Consolidated Complaint, Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Order Granting Preliminary Approval, and when filed, Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses and Service Awards, Plaintiffs Motion for Final Approval of Class Action Settlement and any Orders thereon. Settlement Class Counsel shall propose the format and content of the Settlement Website for prior approval by 23andMe's Counsel, which shall not be unreasonably withheld. The Settling Parties shall mutually select the URL for the Settlement Website. A toll-free help line shall be made available providing recorded responses to FAQs with the option to leave a voice mail message. The Notice and Claims Administrator shall address Settlement Class Members' inquiries within a

21

reasonable time. The cost of such help line shall be paid from the Qualified Settlement Fund. The Notice and Claims Administrator also will provide copies of the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement, upon request.

79.     Prior to the Final Approval Hearing, Class Counsel and 23andMe shall cause to be filed with the Court appropriate affidavits or declarations with respect to complying with the provisions of the Notice Plan. 23andMe will provide an affidavit or declaration to be filed with Plaintiffs' Motion for Final Approval, confirming compliance with its obligations to post the Notice through its application and on its website. The Short Notice, Long Notice, and Claim Form approved by the Court may be adjusted by the Notice and Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and necessary and not inconsistent with such approval. The Notice Program shall be completed within 60 days of the Preliminary Approval Order.

## VII.   OPT-OUT PROCEDURES

80.     Each Person wishing to exclude themselves from the Settlement must submit a written request for exclusion to the Notice and Claims Administrator, which shall be postmarked no later than the Opt-Out Deadline or submitted online through the claims portal and verified no later than the Opt-Out Deadline.

81.     The written Opt-Out request must:

(i.)     Include the case name of the Litigation: *In Re: 23andMe, Inc., Customer Data Security Breach Litigation*, Case No. 24-md-03098-EMC;

(ii.)    Identify the name and current email and mailing addresses of the Person seeking exclusion from the Settlement;

(iii.)   Identify the 23andMe username or email associated with the 23andMe account for the Person seeking exclusion from the Settlement;

(iv.)  Be individually signed by the Person seeking exclusion using wet-ink signature, DocuSign, or other similar process for transmitting authenticated digital signatures;

(v.)  Include an attestation clearly indicating the Person's intent (to be determined by the Notice and Claims Administrator) to be excluded from the Settlement;

(vi.)  Attest that the Person seeking exclusion had a 23andMe user account as of August 11, 2023.

82.  To be effective and valid, Opt-Out requests submitted online through the claims portal must be submitted by the Opt-Out Deadline and must verify the Opt-Out request no later than three (3) business days following the Opt-Out Deadline using the link sent to the email address of the Settlement Class Member.

83.  Opt-Out requests seeking exclusion on behalf of more than one individual shall be deemed invalid by the Notice and Claims Administrator.

84.  All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶¶ 80-85 above, referred to herein as "Opt-Outs," shall not: (i) be bound by the terms of this Settlement Agreement, any orders or judgement entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Settlement Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to object to any aspect of the Settlement.

85.  All Persons falling within the definition of the Settlement Class who do not substantially comply with the requirements of this Settlement Agreement governing Opt-Out requests in the manner set forth in ¶¶ 80-85 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

86.  Commencing one week from the Notice Date, the Notice and Claims Administrator will notify 23andMe's Counsel and Class Counsel regarding the number

of potential settlement class members that have elected to Opt-Out of the settlement class and will continue to provide weekly updates. No later than 10 days after the Opt-Out Deadline, the Notice and Claims Administrator shall provide a final report to Class Counsel and 23andMe's Counsel that summarizes the number of written notifications of Opt-Outs received to date, and other pertinent information as requested by Class Counsel and 23andMe's Counsel.

87.    At the request of Class Counsel or 23andMe's Counsel, the Notice and Claims Administrator shall conduct an additional audit of Opt-Out requests to confirm compliance with the procedures set forth in ¶¶ 80-85.

88.    23andMe may, in its sole discretion, terminate this Settlement Agreement if more than a specified number of individuals submit valid and timely requests to exclude themselves from the Settlement, as agreed to by the Parties and submitted to the Court for in-camera review. If 23andMe elects to terminate this Agreement, it shall provide written notice within fifteen (15) calendar days after the Opt-Out Deadline. If 23andMe rescinds the Settlement pursuant to this section of the Settlement Agreement, it shall have no further obligations to pay the Settlement Fund and shall be responsible for only the fees and expenses actually incurred by the Notice and Claims Administrator, for which the Settlement Class Representatives and Class Counsel are not liable.

## VIII.    OBJECTION PROCEDURES

89.    Any Settlement Class Member desiring to object to the Settlement must submit a written objection to the Court on or before the Objection Deadline, as specified in the Preliminary Approval Order.

90.    The written objection must include:

(i.)    The case name and number of the Litigation;

(ii.) The full name, address, telephone number, and email address of the objecting Settlement Class Member;

(iii.) Information which verifies the objector is a Settlement Class Member, (e.g., a copy of the Class Notice or of the original notice of the security incident addressed to the objecting Settlement Class Member);

(iv.) A written statement of all grounds for the objection, accompanied by any legal support for the objection;

(v.) A statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

(vi.) A statement confirming whether the objector intends to personally appear or testify at the Final Approval Hearing;

(vii.) The identity of all counsel representing the objector and whether they will appear at the Final Approval Hearing;

(viii.) A statement of whether the objector has sold or otherwise transferred the right of their recovery to this Litigation to another person or entity, and, if so, the identity of the person or entity; and

(ix.) The objector's signature or other duly authorized representative.

91. To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court or postmarked to the Class Action Clerk for the Northern District of California no later than the Objection Deadline.

92. Any Settlement Class Member who fails to comply with the requirements for objecting in ¶¶ 89-91 shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the litigation. the exclusive means for any challenge to the settlement shall be through the provisions of ¶¶ 89-91.

**SETTLEMENT AGREEMENT**
**Case No. 3:24-md-3098 EMC**

93.     Submitting an objection notice under this section shall constitute the objecting settlement class member's consent to jurisdiction of the Court and to accept service of process, including subpoenas for testimony, at the email or street address provided in the objection notice.

## IX.   MUTUAL RELEASE

94.     Upon the Effective Date, each Settlement Class Member, including Settlement Class Representatives, shall be deemed to have, and by operation of the judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against all Released Persons. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Settlement Class Representatives, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any action or recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

95.     Defendant will release and discharge Settlement Class Members, Settlement Class Representatives, and Settlement Class Counsel from any claims that arise out of or relate in any way to the institution, prosecution, or Settlement of this Litigation against Defendant, except for claims relating to the enforcement of the Settlement.

## X.   ATTORNEYS' FEES, COSTS AND EXPENSES AND SERVICE AWARDS

96.     The Settling Parties did not negotiate the payment of attorneys' fees, costs, expenses and/or service awards to Settlement Class Representatives, as provided for in ¶¶ 97-98, until after the substantive material terms of the Settlement had been agreed

upon, other than that Class Counsel's reasonable attorneys' fees, costs, and expenses, and service awards to representative plaintiffs, would be paid from the Qualified Settlement Fund as ordered by the Court.

97.     Class Counsel will request the court to approve up to 25% from the Qualified Settlement Fund for their attorneys' fees, plus reimbursement of reasonable costs and expenses of the Litigation. Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees, costs, and expenses awarded by the Court. The amount of attorneys' fees and expenses to be awarded shall be a matter of complete discretion of the Court upon consideration of the complete factual record before the Court at the Final Approval Hearing.

98.     Settlement Class Representatives will move the Court for Service Awards of up to $1,000 per Settlement Class Representative from the Qualified Settlement Fund. Defendants agree not to oppose the request for Service Awards to the extent it does not exceed this amount. The amount of Service Awards to be awarded shall be a matter of complete discretion of the Court upon consideration of the complete factual record before the Court at the Final Approval Hearing.

99.     The amount(s) of any award of attorneys' fees, costs, and expenses, and the Service Awards to Settlement Class Representatives, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, or Service Awards ordered by the Court to Class Counsel or Settlement Class Representatives, shall affect whether the Judgment is final or constitute grounds for cancellation or termination of this Settlement Agreement.

## XI.    DUTIES OF NOTICE AND CLAIMS ADMINISTRATOR

100.    The Notice and Claims Administrator shall perform the functions specified in this agreement and its exhibits, including, but not limited to:

a)    Obtaining from 23andMe, pursuant to ¶ 75, the names and last known email addresses and mailing addresses, to the extent reasonably available, of Settlement Class Members for the purpose of sending Notice to Settlement Class Members;

b)    Obtaining from 23andMe, pursuant to ¶ 75, information, to the extent reasonably necessary, to establish a reasonably practical procedure to verify Settlement Class Members;

c)    Acting at 23andMe's direction, serving a letter and accompanying materials on the Attorney General of the United States and each state Attorney General or others, all as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b);

d)    Effecting the Notice Plan as approved by the Court;

e)    Effecting implementation of the Settlement Benefits Plan;

f)    Establishing and maintaining a Post Office Box or other mailing address for mailed written notifications of Opt-Outs, mailed Claim Forms, and communications from the Settlement Class;

g)    Establishing and maintaining the Settlement Website that, among other things, allows Settlement Class Members to file claims electronically, contains important case documents, FAQs, the Long Notice, important deadlines and the time and place of the Final Approval Hearing;

**SETTLEMENT AGREEMENT**
**Case No. 3:24-md-3098 EMC**

h) Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries which will provide recorded FAQs. The toll-free telephone line will also provide the option for Settlement Class Members to leave a recorded message and receive a return call or other response when requested; within a reasonable time.

i) Responding to any mailed or emailed Settlement Class Member inquiries;

j) Mailing paper copies of the Notice and Claim Forms to Settlement Class Members who request them;

i) Verifying that each Person who submits a Claim Form is a Settlement Class Member. Ambiguities or deficiencies on the face of the Claim Form shall be resolved by the Notice and Claims Administrator.

j) Processing all written notifications of Opt-Outs from Settlement Class Members;

k) Providing reports on Opt-Out requests received pursuant to ¶¶ 80-87;

l) In advance of the Final Approval Hearing, preparing affidavits or declarations to submit to the Court that: (i) attest to implementation of the Notice Plan in accordance with the Preliminary Approval Order; and (ii) identify each Settlement Class Member who timely and properly provided written notification of Opt-Out;

m) Providing weekly reports and a final report to Class Counsel and 23andMe's Counsel that summarize the number and amount of claims and Opt-Outs since the prior reporting period, the total number and amount of claims and Opt-Outs received to date, and as available, the number and amount of any claims approved and denied since the prior

reporting period, the total number and amount of claims approved and denied to date, and other pertinent information as requested by Class Counsel and 23andMe's Counsel;

n)  Paying all Taxes and Tax-Related Expenses from the Qualified Settlement Fund;

o)   Performing any function related to administration of the Settlement at the agreed upon instruction of both Class Counsel and 23andMe's Counsel in a prudent manner, including, but not limited to, verifying that cash payments have been distributed;

p)   Determining the validity of, and processing all claims submitted by Settlement Class Members;

q)  Overseeing administration of the Qualified Settlement Fund; and

r)  Complying with all requirements imposed by the Court.

101.    The Notice and Claims Administrator shall indemnify and hold harmless the Parties, Class Counsel and 23andMe's Counsel for (i) any act or omission or determination of the Administrator, or any of the Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (iv) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (v) the payment or withholding of any Taxes.

## XII. CONDITIONS OF SETTLEMENT, CANCELLATION OR TERMINATION

102.    In the event any of the following events, this Settlement Agreement shall be canceled and terminated subject to ¶¶ 103-107 unless Class Counsel and 23andMe's

Counsel mutually agree in writing to proceed with the Settlement Agreement: (a) the Court declines to enter an Order of Preliminary Approval as required by ¶ 73; (b) a Party has exercised any option to terminate the Settlement Agreement provided by this Agreement; or (c) the Court declines to grant the Final Approval Order and Judgment to the Settlement as set forth herein.

103.   In the event that (i) the Settlement Agreement is not approved by the Court and the Parties are unable in good faith to revise the terms of the Settlement Agreement to address the Court's concerns and seek approval of a revised agreement, or (ii) the Settlement set forth in the Settlement Agreement is terminated in accordance with its terms, including ¶¶ 103-106, then (a) the Settling Parties shall be restored to their respective positions in the Litigation as if the Agreement had never been entered into, any remaining funds in the Qualified Settlement Fund shall be returned to 23andMe within seven business days, and the Settling Parties shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any of the Parties or their counsel; (b) the terms and provisions of the Settlement Agreement and statements made in connection with seeking approval of the Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and (c) any Judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, nunc pro tunc.

104.   Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, or Service Awards shall constitute grounds for cancellation or termination of the Settlement Agreement.

105.   Notwithstanding any statement in this Settlement Agreement to the contrary, the provision relating to the preliminary injunction in Paragraph 73(h) shall be severable from the rest of the Settlement Agreement and no order of the Court or

modification or reversal on appeal of any order related to any preliminary injunction shall constitute grounds for cancellation or termination of the Settlement Agreement.

106.   The Settling Parties agree, for purposes of this Settlement only, to the certification of the Settlement Class. If the Settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue.

107.   The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved. The Settling Parties agree that this Agreement, or the existence of a Settlement Class, may not be cited in support of any subsequent motion for class certification.

## XIII.   MISCELLANEOUS PROVISIONS

108.   The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation and the Released Claims. The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the Settlement was negotiated in good faith by the Settling Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

109.   Any of the Released Persons may file the Settlement Agreement or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

110.   Neither the Settlement Agreement, nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the Settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (iii) may be cited or relied upon to support any private cause of action or claim in any court, administrative agency or other tribunal.

111.   The Settlement Agreement may be modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest, and only before the Court preliminarily approves it.

112.   The Settlement Agreement, together with the Exhibits attached hereto, constitute the entire agreement among the Settling Parties, and no representations, warranties or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties and covenants contained and memorialized in such document. Except as otherwise provided herein, each Party shall bear its own costs. This agreement supersedes all previous agreements made by the Settling Parties.

113.   Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

**SETTLEMENT AGREEMENT**
**Case No. 3:24-md-3098 EMC**

114.    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

115.    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

116.    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

117.    The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the Settling Parties shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to choice of law principles.

118.    The Exhibits to this Agreement are a material part of the Settlement and are incorporated and made a part of the Agreement.

119.    All dollar amounts are in United States dollars (USD).

120.    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

121.    No government agency or official can claim any rights under this Agreement or Settlement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

*COUNSEL FOR DEFENDANT 23ANDME, INC.*

Date: _September 5, 2024_

By: _____

Ian C. Ballon
Rebekah S. Guyon
**Greenberg Traurig, LLP**

*COUNSEL FOR THE SETTLEMENT CLASS REPRESENTATIVES AND THE SETTLEMENT CLASSES*

Date: _September 5, 2024_

By: _____

Gayle M. Blatt
**Casey Gerry Schenk Francavilla Blatt & Penfield, LLP**

Date: _Sept. 5, 2024_

By: _____

Cari C. Laufenberg
**Keller Rohrback L.L.P.**

Date: _September 5, 2024_

By: _____

Norman E. Siegel
**Stueve Siegel Hanson LLP**

**SETTLEMENT AGREEMENT
Case No. 3:24-md-3098 EMC**

EXHIBIT 1

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates to: ALL ACTIONS | No. 3:24-md-03098-EMC<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:       Hon. Edward M. Chen<br>Courtroom:  5, 17th Floor<br>Hearing Date:  October 17, 2024<br>Hearing Time:  1:30 p.m. |

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement which seeks approval of the proposed class action settlement, the plan of allocation, the form and manner of notice, certification of the proposed Class for settlement and scheduling of a final approval hearing ("Motion") at which the Court will consider final approval of the Settlement, and Class Counsels' motion for attorneys' fees, costs and service awards in this action.

WHEREAS, Court-appointed Co-Lead Counsel on behalf of Plaintiffs and a defined proposed Settlement Class, and Defendant 23andMe, Inc. ("23andMe" or "Defendant") have entered into a Settlement Agreement and Release, dated September 5, 2024 ("Settlement Agreement"), that, subject to the Court's approval and final hearing on the matter, will resolve this lawsuit;

WHEREAS, the Court, for purposes of this Order, unless otherwise defined herein, adopts all terms capitalized herein as defined in the Settlement Agreement;

WHEREAS, this matter has come before the Court pursuant to Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement, and all corresponding and supporting documents attached thereto (the "Motion"), the record in this matter, and the briefs and arguments of counsel;

WHEREAS, the Court finds that it has jurisdiction over the Litigation and each of the Parties;

WHEREAS, the Court held a Preliminary Approval Hearing on October 17, 2024,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.     The Court retains continuing and exclusive jurisdiction over this Litigation, including the Settlement Class Representatives, Defendant, Settlement Class Members, and all matters arising out of or connected with the settlement, including the administration and enforcement of the Settlement Agreement.

## Preliminary Approval

2.     The Court has carefully reviewed all of the terms of the proposed Settlement Agreement, all corresponding and supporting documents attached thereto, Plaintiffs' Motion and corresponding papers filed therewith, including the Declaration of counsel and the Notice and Claims Administrator. Based on its review of these documents, and having heard the Parties, the Court finds that the terms of

the Settlement Agreement fall within the range of possible approval, and it is likely it will be able to approve the proposed Settlement as fair, reasonable, and adequate, and the result of vigilant, informed, non-collusive arms-length negotiations.

3.      The Court hereby GRANTS preliminary approval of the Settlement, and all of the terms and conditions contained therein.

### Preliminary Certification of Settlement Class

4.      The Court preliminarily certifies, for settlement purposes only pursuant to Federal Rule of Civil Procedure 23(b)(3), the Settlement Class and subclass defined in the Settlement Agreement as follows:

**Settlement Class:**

All natural persons who were residents of the United States on August 11, 2023 and whose Personal Information was compromised in the Security Incident.

**Statutory Subclass:**

Settlement Class Members who were residents of Alaska, Oregon, California or Illinois on August 11, 2023.

5.      Excluded from the Settlement Class are (i) 23andMe and its officers and directors; (ii) all Settlement Class Members who timely and validly request to opt-out from the Settlement Class under the opt-out procedures provided in ¶¶ 79-87; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) potential class members who have provided 23andMe with an express release of claims arising out of or relating to the Security Incident prior to the Effective Date of this Settlement.

6.      The Court preliminarily finds that the Settlement Class and Statutory Subclass each satisfy the requirements of Federal Rule of Civil Procedure 23(a) for settlement purposes: (1) the Settlement Class and Statutory Subclass are each sufficiently numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the Settlement Class and Statutory Subclass, (3) the Settlement Class and Statutory Subclass Representatives' claims are typical of those of the Settlement Class and Statutory Subclass Members, and (4) the Settlement Class and Statutory Subclass Representatives fairly and adequately protect the interests of the Settlement Class and

Statutory Subclass. The Court further finds that the Settlement Class and Statutory Subclass satisfy the requirements of Federal Rule of Civil Procedure 23(b)(3) for settlement purposes: common questions of law and fact predominate over questions affecting individual members, and a class action is a superior method for fairly and efficiently adjudicating the Litigation.

7. The Court hereby appoints the Plaintiffs listed in Exhibit 2 to the Settlement Agreement as Settlement Class Representatives.

8. The Court hereby appoints Gayle M. Blatt of the firm Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, Norman E. Siegel of Stueve Siegel Hanson LLP and Cari Campen Laufenberg of Keller Rohrback L.L.P. as Class Counsel. The Court authorizes Class Counsel to enter into the Settlement on behalf of the Settlement Class Representatives and the Settlement Classes, and to bind them all to the duties and obligations contained therein, subject to final approval by the Court of the Settlement.

## Notice and Administration

9. Verita is appointed as the Notice and Claims Administrator and shall perform all duties necessary for notice and administration as set forth in the Settlement Agreement and Notice Plan. Pursuant to the Settlement Agreement, Verita will make important documents, such as the Settlement Agreement and Claim Form (which Settlement Class members have the option to submit online), available on the Settlement Website.

10. The Court finds that the Notice Plan as set forth in the Settlement Agreement satisfies the requirements of due process and provides the best notice practicable under the circumstances pursuant to Federal Rule of Civil Procedure 23(e)(1). The form, content and method of providing Class Notice and the Notice Plan are reasonably calculated under the circumstances to inform the Settlement Class Members of the pendency and nature of the litigation, the terms and conditions of the Settlement Agreement, the right of Settlement Class Members to object to the Settlement Agreement or exclude themselves from the Settlement Class, including instructions about the process for doing so, and the Final Approval Hearing details such that the Notice and Notice Plan fully comply with the requirements of Rule 23(c) and (e). The Court approves the Notice and Notice Plan, including the Claim Form, and

directs the Notice and Claims Administrator and the Parties to proceed with providing Notice to the Settlement Class as set forth in the Settlement Agreement, Notice Plan and this Order.

### Settlement Class Member Exclusions and Objections

11.     Settlement Class Members who request to opt-out and exclude themselves from the Settlement Class must do so by notifying the Notice and Claims Administrator in writing. To be valid, each Person wishing to opt-out of the Settlement Class shall: (i) include the case name of the Litigation: *In Re: 23andMe, Inc., Customer Data Security Breach Litigation*, Case No. 24-md-03098-EMC; (ii) identify the name and current address of the Person seeking exclusion from the Settlement; (iii) be individually signed by the Person seeking exclusion using wet-ink signature, DocuSign, or other similar process for transmitting authenticated digital signatures; (iv) include an attestation clearly indicating the Person's intent (to be determined by the Settlement Administrator) to be excluded from the Settlement; and (v) attest that the Person seeking exclusion had a 23andMe user account as of August 11, 2023. To be effective, written Opt-Out requests must be postmarked by the Opt-Out Deadline. Online Opt-Out requests must be submitted through the claims portal by the Opt-Out Deadline and must verify the Opt-Out request within three (3) business days following the Opt-Out Deadline using the link sent to the email address of the Settlement Class Member.

12.     Settlement Class Members who submit a valid and timely Opt-Out Request will not be bound by the terms of the Settlement Agreement. Any Settlement Class Member who does not submit a timely Opt-Out Request in accordance with the Settlement Agreement will forfeit the opportunity to be excluded from the Settlement and will be bound by the Settlement Agreement upon entry of the Final Approval Order and Judgment.

13.     Settlement Class Members who wish to object to the Settlement Agreement must do so by filing a timely written objection with the Court in accordance with the procedures outlined in the Class Notice, filed or postmarked no later than the Objection Deadline. The objection must include:

    a.   The case name and number of the Litigation;

    b.   The full name, address, telephone number, and email address of the objecting Settlement Class Member;

c. Information which verifies the objector is a Settlement Class Member, (e.g., a copy of the Class Notice or of the original notice of the Security Incident addressed to the objecting Settlement Class Member);

d. A written statement of all grounds for the objection, accompanied by any legal support for the objection;

e. A statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

f. A statement confirming whether the objector intends to personally appear or testify at the Final Approval Hearing;

g. The identity of all counsel representing the objector and whether they will appear at the Final Approval Hearing;

h. A statement of whether the objector has sold or otherwise transferred the right of their recovery to this Litigation to another person or entity, and, if so, the identity of the person or entity; and

i. The objector's signature or other duly authorized representative.

14. To be timely, written notice of an objection in the appropriate form must be filed with the Court, either electronically or in person, or mailed and postmarked to the Class Action Clerk for the Northern District of California 450 Golden Gate Ave., San Francisco, CA 91402, no later than the Objection Deadline.

15. Any Settlement Class Member who does not timely submit a written objection pursuant to the procedures outlined above and as detailed in the Notice and Settlement Agreement waives the right to object or be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement Agreement.

**Final Approval Hearing**

16. The Court will hold a Final Approval Hearing on _____, 2025, in the Courtroom 5, 17th Floor of the United States District Court, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102.

17. At the Final Approval Hearing, the Court will review, and rule on, the following issues:

a. Whether this matter should be finally certified as a class action for settlement

5

purposes under Fed. R. Civ. P. 23(a) and (b)(3)

b.   Whether the settlement should be approved as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)

c.   Whether a Final Approval Order and Judgment should be entered;

d.   Whether the Settlement Class Members should be bound by the releases set forth in the Settlement Agreement;

e.   Whether the application of Class Counsel for an award of attorneys' fees, costs, and expenses should be approved under Fed. R. Civ. P. 23(h) and the amount, if any, of any Service Awards to the Settlement Class Representatives; and

f.   Any other issues the Court deems appropriate.

18.   Settlement Class Members do not need to attend the Final Approval hearing, nor take any other action to indicate their approval of the proposed Settlement Agreement. Settlement Class Members who wish to be heard must appear at the Final Approval Hearing. The Final Approval Hearing may be postponed, adjourned, transferred, or continued without further notice to the Settlement Class Members.

**Reasonable Procedures**

19.   Class Counsel and Defense Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Amended Settlement Agreement, including making, without further approval of the Court, minor changes to the form or content of the notices and other exhibits that they jointly agree are reasonable or necessary to further the purpose of effectuating the Settlement Agreement.

**Extension of Deadlines**

20.   Upon application of the Parties and good cause shown, the deadlines set forth in this Order may be extended by order of the Court, without further notice to the Settlement Class. Settlement Class Members must check the Settlement Website regularly for updates and further details regarding

extensions of these deadlines. The Court reserves the right to adjourn or continue the Final Approval Hearing, and to extend the deadlines set forth in this Order, without further notice of any kind to the Settlement Class.

### **Settlement Administration Timeline, Injunction, and Termination**

21.    To facilitate the timely administration of this case, the Court hereby sets the following schedule:

| Event | Deadline |
|---|---|
| Defendant to provide Settlement Class Member data to Settlement Administrator | 20 days after entry of this Order |
| Last day for Settlement Administrator to email or mail, where email address is not available, Settlement Notice to Settlement Class Members | 60 days after entry of this Order |
| Last day for Settlement Class Members to submit Claim Forms | 90 days from the Notice Deadline |
| Deadline to Submit Motion for Attorneys' Fees, Costs and Service Awards | At least 35 days before the Objection Deadline |
| Deadline to Object and Comment on Settlement | 35 days from the Notice Deadline |
| Deadline to Submit Request for Exclusion | 35 days from the Notice Deadline |
| Final Approval Hearing | _____ |

22.    All proceedings and deadlines in this matter, except those required to implement this Order and the Settlement Agreement, are hereby stayed and suspended until further order from the Court.

23.    Preliminary Injunction. Pending final determination of whether the Settlement Agreement should be finally approved, all Settlement Class Members and their representatives are barred and enjoined, unless and until they have received Notice and have submitted a valid request to exclude themselves from the Settlement Class under the process set out in the Settlement Agreement, from filing, commencing, prosecuting, conducting, continuing or enforcing any action or proceeding against the Released Parties insofar as such action asserts Released Claims, directly or indirectly, in any judicial, administrative, arbitral, or other forum. The Court finds that issuance of this bar and preliminary injunction is necessary and appropriate to protect the Settlement, implement the terms of

this Preliminary Approval Order, aid and preserve this Court's authority to effectuate the Settlement, and is ordered in aid of this Court's jurisdiction.

24.     In the event that the Settlement Agreement is terminated pursuant to the terms of the Settlement Agreement, (1) the Settlement Agreement and this Order shall become null and void and shall be without prejudice to the rights of the parties, shall have no further force or effect, and shall not be used in this litigation or any other proceedings for any purpose other than as necessary to enforce the terms of the Settlement Agreement that survived termination, (2) this litigation will revert to the status that existed before the Settlement Agreement was executed, and (3) no term(s) or draft(s) of the Settlement Agreement or any part of the settlement discussions, negotiations, or documentation of any kind, related to the Settlement Agreement whatsoever shall (a) be admissible into evidence for any purpose in this litigation or in any other action or proceeding other than as may be necessary to enforce the terms of the Settlement Agreement that survived termination, (b) be deemed an admission or concession by any settling party regarding the validity of any of the Released Claims or the propriety of certifying any class against Defendant, or (c) be deemed an admission or concession by any of the parties regarding the truth or falsity of any facts alleged in the litigation or the availability or lack of availability of any defense to the Released Claims.

**IT IS SO ORDERED.**


Dated: _____          _____
                                                        Hon. Edward M. Chen
                                                        United States District Court Judge

EXHIBIT 2

**Exhibit 2 – Settlement Class Representatives**

Adriane Farmer
Alexandra Hoffman
A.B.
Anna DaVeiga
Benjamin Woessner
Bonnie Eden
Britany DeLoach
Camie Picha
Claire Paddy
Cody Vogel
Daniel Anderson
David Tso
Eileen Mullen
Emily Beale
Harold Velez
Jaime Kelly
J.S.
Kathleen Loftus
Lenora Claire
L.G.
M.L.
Melissa Ryan
Michele Bacus
Neil Haven
Pamela Zager-Maya
R.T.
Rachel DeCarlo
Samantha Van Vleet
Thomas Vickery
Tracie Payne Mitchell
Tracy Scott