**GREENBERG TRAURIG, LLP**
Ian C. Ballon (SBN 141819)
*Ballon@gtlaw.com*
1900 University Avenue, 5th Floor
East Palo Alto, California 94303
Telephone: 650-328-8500

Stephen L. Saxl (*admitted pro hac vice*)
saxls@gtlaw.com
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-8184

Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700

Kristin O'Carroll (SBN 312902)
*ocarrollk@gtlaw.com*
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415-655-1300

*Attorneys for Defendant 23andMe, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: 23ANDME, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | CASE NO. 24-md-03098-EMC<br><br>Hon. Edward M. Chen<br><br>**DEFENDANT 23ANDME, INC.'S MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Edward M. Chen<br>Courtroom: 5, 17th Floor<br>Hearing Date: October 17, 2024<br>Hearing Time: 1:30 pm |

## I. **INTRODUCTION**

Defendant 23andMe, Inc. ("23andMe") submits this memorandum in support of preliminary approval of the Settlement Agreement to further demonstrate the need for the preliminary injunctive relief provision in the proposed Preliminary Approval Order (ECF No. 103-2, at ¶ 22).

As set forth in Plaintiffs' Motion for Preliminary Approval, 23andMe believes that the Settlement is fair, adequate, and reasonable. Further, a preliminary injunction of other litigation or arbitration claims, pending the Court's determination of final approval, unless and until individual Settlement Class Members have received Notice and have submitted a valid request to opt out, is in line with ample authority from this Court, this District, and the Ninth Circuit, even without the additional factors that are the subject of this separate memorandum. Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and the "necessary in aid of" exception to the Anti-Injunction Act, 28 U.S.C. § 2283, the Court is empowered to enter the injunction enjoining Settlement Class Members and their representatives, pending the Court's determination of whether the Settlement Agreement should be given final approval, from filing, commencing, prosecuting, conducting, continuing or enforcing any action or proceeding against the Released Parties insofar as such action asserts Released Claims, directly or indirectly, in any judicial, administrative, arbitral, or other forum. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *see also, e.g.*, *Roberts v. AT&T Mobility LLC*, No. 3:15-cv-03148-EMC (N.D. Cal. Mar. 21, 2021) (Dkt. 205).

This MDL involves class actions brought on behalf of more than six million individuals. The Settlement Agreement is the product of three mediations and extensive arms-length negotiation, promoted by the efforts of this Court and the mediator. In addition to being a standard term necessary to protect these efforts and aid the Court's jurisdiction over this Settlement pending final approval, the specific facts here especially warrant a temporary preliminary injunction. In addition to this MDL, 23andMe faces parallel litigation in state court and private arbitration forums on behalf of tens of thousands of Settlement Class Members asserting the same claims that are released pursuant to the Settlement Agreement. Moreover, 23andMe's financial condition is well documented in the public record. *See, e.g.,* ECF No. 103-1 pp. 11-12, 34-36. Individual claimants who knowingly choose to opt-out of the proposed Settlement may attempt to proceed in state court or arbitration should they decline the benefits of the Settlement Agreement

23ANDME, INC.'S MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

following Notice. However, such proceedings should not move forward until that time. In particular, it is plain that counsel driving the mass arbitration filings against 23andMe—which includes at least one firm that is also counsel of record for a named plaintiff in this MDL—does not intend to initiate arbitration to benefit the Settlement Class. Indeed, these mass arbitrations were filed directly in response to learning that the MDL was on the verge of being, or had been, settled. These arbitrations are intended to and would undermine the Settlement Agreement by threatening 23andMe with filing fees that will nearly eclipse the Qualified Settlement Fund. In light of 23andMe's financial condition, it is in the interests of the Settlement Class and 23andMe to enjoin those proceedings unless and until Settlement Class Members have received notice of the Settlement and individually decided whether to exercise their right to opt out.

## II.   RELEVANT BACKGROUND

### A.   The Security Incident

In early October 2023, an unauthorized third party was able to gain access to certain 23andMe customer accounts through a credential stuffing attack because the username and password used on 23andMe.com were the same as those that were used on other websites that were previously compromised or otherwise available ("Stuffed Accounts"). The information accessed in the Stuffed Accounts by the unauthorized third party varied by user account, and may have included health information. *See Addressing Data Security Concerns*, (Oct. 6, 2023), 23ANDME.COM, https://blog.23andme.com/articles/addressing-data-security-concerns. Using this access, an unauthorized third party was able to access the DNA Relatives or Family Tree profile information of certain 23andMe customers that were connected through 23andMe's optional DNA Relatives feature as genetic relatives of one or more of Stuffed Account customers, and the unauthorized actor posted a subset of this information (but not health information) to the dark web. *Id*.

23andMe customers may participate in the DNA Relatives features if they elect to do so. *See DNA Relatives Privacy & Display Settings*, 23ANDME.COM, https://customercare.23andme.com/hc/en-us/articles/212170838-DNA-Relatives-Privacy-Display-Settings. The DNA Relatives feature allows users to share certain information about themselves with other genetic relatives, and see their genetic relatives, but only if their genetic relatives have also chosen to participate in the DNA Relatives feature. *Id*. In other words, once a customer elects to participate in the DNA Relatives feature, they have agreed to identify

themselves as a genetic relative of any other unidentified and unknown customer of 23andMe who has also elected to participate in the feature—it is neither private nor confidential, and it is information that was voluntarily disclosed to thousands of other unknown 23andMe customers prior to the Security Incident. None of the information available to users of the features can be used to cause financial or pecuniary harm, or even impersonate a person based on "genetics"—it is only information indicating a potential relationship between users of the feature.

Upon learning of the unauthorized access, 23andMe promptly notified customers and law enforcement of the Incident. 23andMe notified the public of the Incident via a blog post on October 6, 2023, and directly notified all customers via email on or around October 10, 2023.

Shortly after 23andMe disclosed the Security Incident, almost 40 lawsuits were filed in federal courts around the country, primarily in the Northern District of California.[1] The lawsuits allege that 23andMe had failed to properly protect customer information in accordance with its responsibilities, had inadequate data security protocols, was unjustly enriched by the use of information of the impacted individuals, violated various state genetic information privacy statutes and other state consumer statutes, failed to provide adequate notice pursuant to various breach notification statutes or common law duty, invasion of privacy and other claims related to the Security Incident.

A thorough summary of the federal court litigation to date in this MDL is provided in Plaintiffs' Motion for Preliminary Approval. ECF No. 103-1 pp. 3-4.

**B. The State Court Actions**

In addition to this MDL, parallel litigation against 23andMe has been initiated in California state court and private arbitration forums. Currently four separate state court actions filed in two different Superior Courts in California assert claims arising from the Security Incident. *See* Declaration of Rebekah S. Guyon ("Guyon Decl."), ¶¶ 2-5 (Sept. 12, 2024).

- *Vasquez v. 23andMe, Inc.*, Case No. 23CV424996, was filed in the Santa Clara Superior Court on October 31, 2023. *Vasquez* asserts claims arising from the Security Incident on behalf of a putative class of California residents for (1) negligence; (2) breach of implied

---

[1] A total list of all lawsuits filed is attached hereto as Exhibit 1.

contract; (3) breach of implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (6) violation of the California Consumer Privacy Act, Cal. Civil Code §§ 1798.100, *et seq.* and §1798.150(a); and (7) violation of the California Customer Records Act, Cal. Civil Code §§ 1798.80, *et seq.*—the same claims that are asserted in the Consolidated Class Action Complaint in the MDL, and the same claim on behalf of the same Settlement Class Members that are released in the Settlement Agreement. Guyon Decl., Ex. A.

- *Morgenstern v. 23andMe, Inc.*, Case No. 23-610816, was filed in San Francisco Superior Court on December 4, 2023. *Morgenstern* asserts claim arising from the Security Incident on behalf of a putative class of California residents for (1) negligence; (2) negligence *per se*; (3) breach of implied contract; (4) invasion of privacy; (5) conversion; and (6) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 Based on "Unfair" and/or "Unlawful" Acts and Practices—the same claims that are asserted in the Consolidated Class Action Complaint in the MDL, and the same claim on behalf of the same Settlement Class Members that are released in the Settlement Agreement. Guyon Decl., Ex. B. Plaintiffs' counsel in *Morgenstern* (Scott+Scott Attorneys and Lexington Law Group) are also plaintiffs' counsel in federal case *Scott v. 23andMe Holding Co., 23andMe, Inc*. (Case No. 23-cv-5980) pending in the MDL.

- *Wilkus v. 23andMe, Inc.,* Case. No. 24CV429673, was filed on January 23, 2024 in Santa Clara Superior Court. *Wilkus* is not a class action, but a consolidated individual case in which 13 residents of Illinois assert claims arising from the Security Incident for (1) violation of the Illinois Genetic Information Privacy Act, 410 Ill. Comp. Stat. Ann. 513, *et seq.*; (2) negligence; (3) breach of actual and implied contract; (4) invasion of privacy – intrusion upon seclusion; and (5) unjust enrichment—the same claims that are asserted in the Consolidated Class Action Complaint in the MDL, and the same claim on behalf of the same Settlement Class Members that are released in the Settlement Agreement. Guyon

23ANDME, INC.'S MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Decl., Ex. C.

- *Shaw v. 23andMe, Inc.*, Case No. TC24-2263, was filed on July 10, 2024 in Santa Clara Superior Court. Like *Wilkus*, *Shaw* is not a class action, but a consolidated individual case in which residents of California assert claims arising from the Security Incident for (1) violation of the Illinois Genetic Information Privacy Act, 410 Ill. Comp. Stat. Ann. 513, *et seq.*; (2) negligence; (3) breach of actual and implied contract; (4) invasion of privacy – intrusion upon seclusion; and (5) unjust enrichment—the same claims that are asserted in the Consolidated Class Action Complaint in the MDL, and the same claim on behalf of the same Settlement Class Members that are released in the Settlement Agreement. Guyon Decl., Ex. D.

On January 24, 2024, Morgenstern filed a Petition for Coordination with the Judicial Council ("Petition for Coordination") that seeks to coordinate the *Morgenstern* and *Vasquez* cases. Guyon Decl., Exs. E, F. 23andMe thereafter filed a Notice of Potential Add-On Case to coordinate *Wilkus* and *Shaw* with *Morgenstern* and *Vasquez* in Judicial Council Coordination Proceeding No. 5315. Guyon Decl., Ex. G. *Morgenstern*, *Vasquez*, and *Wilkus* have been stayed pending a case management conference before Judge Charles Adams in Santa Clara Superior Court on October 31, 2024. Guyon Decl., Ex. H, I. 23andMe has not been served with the complaint in *Shaw*. Guyon Decl. ¶ 5.

**C. The Arbitrations**

To date, as detailed in the concurrently filed under seal in the Declaration of Rebekah S. Guyon, numerous arbitrations have been filed against 23andMe in which claimants assert claims arising from the Security Incident. Guyon Decl. ¶ 11.

On February 14, 2024, individual arbitrations were filed against 23andMe with JAMS in which claimants, residents of California and Illinois, assert claims against 23andMe arising from the Incident. Guyon Decl. ¶ 12. These include claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and invasion of privacy, which are duplicative of the claims asserted on behalf of the nationwide class in the MDL. ECF No. 78, ¶¶ 525-638; Guyon Decl. ¶ 12. California claimants further assert alleged violations of California's Unfair Competition Law, California Consumer Privacy Act, and

California Customer Records Act—the same claims that are asserted on behalf of the nationwide class and California subclass in the MDL, and which are Released Claims in the Settlement Agreement. ECF No. 78, ¶¶ 639-654, 688-709.

On July 10, 2024, one day after the Parties publicly informed the Court that they were close to accepting a mediators proposal resolving claims on behalf of the putative U.S. class (*see* ECF No. 79), additional individual arbitrations were filed against 23andMe with JAMS asserting claims arising from the Incident. Guyon Decl. ¶ 13. In these arbitrations, residents of California, Illinois, and other jurisdictions represented by named plaintiffs in the Consolidated Class Action Complaint assert nearly identical claims to those that are alleged in the Complaint here, and which are Released Claims in the Settlement Agreement. Guyon Decl. ¶ 13.

On August 28, 2024, additional individual arbitration demands were filed with JAMS in which claimants assert claims arising from the Incident. Guyon Decl. ¶ 17. Counsel representing those claimants filed the day after counsel for 23andMe informed arbitration counsel of the executed Term Sheet, which was a matter of public record as of July 30, 2024. *See* ECF No. 89. On August 29, 2024, the same firm filed additional individual arbitration demands with JAMS in which claimants assert claims arising from the Incident. Guyon Decl. ¶ 17. These August 28 and 29 demands assert claims on behalf of residents of California, Illinois, and twelve other states represented by named plaintiffs in the Consolidated Class Action Complaint for alleged violations of unspecific consumer protection and common law violations, the California Privacy Rights Act, the California Confidentiality of Medical Information Act, and for Illinois residents, the Illinois Genetic Information Privacy Act—the same claims that are asserted in the Consolidated Class Action Complaint in the MDL, and the same claim on behalf of the same Settlement Class Members that are released in the Settlement Agreement.

As of August 29, 2024, 23andMe has been informed by four additional firms that they intend to initiate individual arbitration demands asserting claims arising from the Incident. Guyon Decl. ¶¶ 18-20.

III.   **ARGUMENT**

   **A.  Legal Standard**

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of

23ANDME, INC.'S MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651; *see Keith v. Volpe*, 118 F.3d 1386, 1390 (9th Cir. 1997) (holding the All Writs Act "empowers the federal courts to enjoin state proceedings that interfere, derogate, or conflict with federal judgments, orders, or settlements"). The All Writs Act is limited only by the Anti-Injunction Act, which provides that a federal court "may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C § 2283.

The Court's authority to issue injunctions under the All Writs Act and the exception to the Anti-Injunction Act is not limited to proceedings in state court; rather, federal courts have broad injunctive powers to stay or enjoin a variety of activities to protect their own jurisdiction. Citing the All Writs Act, 28 U.S.C. § 1651, the Ninth Circuit has determined that a federal court's injunctive powers extend to enjoining the filing and further prosecution of arbitration proceedings, and the district courts have frequently done so. *See Hartley v. Stamford Towers Ltd. P'ship*, 36 F.3d 1102 (9th Cir. 1994) (unpublished). Courts outside the Ninth Circuit have found the same. *See, e.g.*, *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 382, 382–83 (8th Cir. 1994) (relying in part on the All Writs Act in concluding that "[n]o matter what, courts have the power to defend their judgments as res judicata, including the power to enjoin or stay subsequent arbitrations"); *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 219–22 (E.D.N.Y. 2013) ("Court finds that it has the power to temporarily stay a pending private arbitration as well as to temporarily enjoin any future private arbitrations . . . the Court grants the Plaintiffs' motion to temporarily stay the pending arbitrations and to temporarily enjoin the Defendants from filing any additional arbitrations"); *United States v. Mason Tenders Dist. Council of Greater New York*, 205 F. Supp. 2d 183, 188 (S.D.N.Y. 2002) (noting that, under the All Writs Act, federal courts have the "authority to enjoin and bind non-parties when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction").

**B. The Agreed-Upon Injunction Is Necessary And Appropriate Under The All Writs Act**

Ample authority within the Ninth Circuit and elsewhere supports the issuance of the preliminary injunction agreed upon in the Settlement Agreement here pursuant to the All Writs Act and the Anti-

Injunction Act. In *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), the Ninth Circuit affirmed the district court's temporary stay pending final approval of a nationwide class action settlement, holding that, "[a]lthough comity requires federal courts to exercise extreme caution in interfering with state litigation, federal courts have the power to do so [under the All Writs Act and Anti-Injunction Act] when their jurisdiction is threatened." 150 F.3d 1011, 1025 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Sandpiper Vill. Condo. Ass'n, Inc. v. La.-Pac. Corp.*, 428 F.3d 831, 845 (9th Cir. 2005) (explaining that *Hanlon* "recognized that a temporary stay pending settlement of the nationwide class action was appropriate under the All Writs Act and the Anti-Injunction Act because concurrent state proceedings at such a sensitive stage in the federal proceedings would have threatened the jurisdiction of the district court").

This Court and other Judges in this district have previously granted similar injunctive relief in preliminarily approving class action settlements.[2] In *Roberts v. AT&T Mobility LLC*, for example, this Court ordered a similar injunction as agreed upon in the Settlement Agreement barring Settlement Class Members from filing or prosecuting claims "in any judicial, administrative, arbitral or other forum" pending final approval. No. 3:15-cv-03148-EMC (N.D. Cal. Mar. 21, 2021) (Dkt. 205) at 11, ¶ 36.[3]

Other district courts within the Ninth Circuit have also granted similar preliminary injunctions

---

[2] *See, e.g.*, *In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2019 WL 1411510, at *16 (N.D. Cal. Mar. 28, 2019) ("all Members of the Settlement Classes who do not validly request exclusion from the Settlement Classes shall be enjoined from commencing or prosecuting any action, suit, proceeding, claim, or cause of action in any court or before any tribunal" pending final settlement approval); *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *28 (N.D. Cal. Oct. 25, 2016) (enjoining class members "who have not properly opted out . . . from commencing, filing, initiating, instituting, pursuing, maintaining, enforcing or prosecuting, either directly or indirectly, any Released Claims in any judicial, administrative, regulatory, arbitral or other proceeding, in any jurisdiction or forum . . .").

[3] *See also Keirsey v. eBay, Inc*, No. 12-CV-01200-JST, 2013 WL 5755047, at *7 (N.D. Cal. Oct. 23, 2013) ("Plaintiff and all members of the Class and any other person, representative, or entity acting on behalf of any members of the Class are, until the Fairness Hearing, barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as members of a class action or otherwise), any claim, lawsuit, arbitration, administrative, regulatory or other proceeding arising out of the Released Claims against any of the Released Persons."); *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 3:12-CV-06003-CRB, 2015 WL 1153864, at *7 (N.D. Cal. Mar. 13, 2015) (granting preliminary injunction of "filing, commencing, prosecuting, intervening in, participating in, or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory or other proceeding . . ." pending final approval).

pending final settlement approval. *See, e.g.*, *Mercado v. Volkswagen Grp. of Am., Inc.*, No. 518CV02388JWHSPX, 2021 WL 8773053, at *5 (C.D. Cal. Nov. 4, 2021) ("Pending the Court's determination of whether to grant final approval of this Settlement, all Settlement Class Members and/or their representatives are preliminarily barred from commencing, prosecuting, continuing to prosecute, or participating in any action or proceeding against any of the Released Parties (as defined in the Settlement Agreement), in any court, tribunal or other forum . . . pending its determination as to final approval of this Settlement."); *Hartranft v. TVI, Inc.*, No. SACV1501081CJCDFM, 2019 WL 1746137, at *6 (C.D. Cal. Apr. 18, 2019) (preliminarily enjoining all class settlement members and their representatives "from commencing or prosecuting against the Released Parties any action or proceeding in any court or tribunal asserting any of the Released Claims" pending final settlement approval).

There are currently four separate state court actions filed against 23andMe in two different Superior Courts in California related to the Security Incident. These cases encompass the same claims, same putative classes or class members, and, for at least one plaintiff, the same counsel as the MDL cases that are now before this Court. Guyon Decl. ¶¶ 2-10.

Moreover, individual arbitration demands have been recently filed against 23andMe asserting claims based on the identical factual predicate as the Released Claims under the Settlement Agreement. While each of these mass arbitration claims individually has limited potential value, if the claimants (or their counsel) pay their filing fees and the claims move forward in the arbitral forum, 23andMe's ability to pay the Qualified Settlement Fund is threatened. *See* Guyon Decl. ¶ 21. Indeed, it is clear from the timing of these mass arbitrations—directly in response to public filings confirming the Settlement Agreement and conversations with 23andMe's counsel confirming the same (Guyon Decl. ¶¶ 12-17)—that these arbitrations are not intended to benefit the Settlement class, but to undermine the Settlement Agreement and jeopardize 23andMe's financial condition.

Pursuant to Federal Rule of Civil Procedure 23(d), which "vests a district court with the authority and discretion to protect the interests and rights of class members and to ensure its control over the integrity of the settlement approval process," *Hanlon*, 150 F.3d at 1025, the Court is empowered and should grant 23andMe's request for injunctive relief to protect the interests of the class members in this MDL. Indeed,

the parallel state court actions and mass arbitration proceedings asserting the same claims on behalf of Settlement Class Members threaten this Court's jurisdiction, and a temporary stay is warranted to effectuate this nationwide class action settlement. The Settlement Agreement includes the resolution of the same claims asserted against 23andMe in the parallel state court actions and the filed and threatened arbitration proceedings. ECF No. 103-2 at ¶ 37. Following preliminary approval of the Settlement, the notice plan and notice materials will be disseminated to the Class and will discuss the terms of the proposed Settlement and their rights as Settlement Class Members. *Id*. at ¶¶ 74-79. Settlement Class Members should be allowed to evaluate their options under the Settlement individually without potentially confusing competing notices or communication from state court cases and ongoing individual arbitrations involving the same claims.

Competing actions would jeopardize the realization of the Settlement, interfere with this Court's ability to manage the settlement, and potentially cause unnecessary confusion for Settlement Class Members. *See, e.g.*, *In re Volkswagen*, 229 F. Supp. 3d at 1073 (granting a stay of all state-court actions relating to released claims in a MDL putative class action settlement, finding that a state court's disposition of claims similar to or overlapping the released claims would implicate the same legal and evidentiary issues and, thus, such action would threaten the Court's jurisdiction); *Jacobs v. CSAA Inter-Ins.*, 2009 WL 1201996, at *3 (N.D. Cal. May 1, 2009) (invoking the "necessary in aid of jurisdiction" exception to enjoin named and absent members from participating in a state court action relating to claims that are similarly asserted in the federal action as necessary and appropriate to preserve this court's jurisdiction over the approval and administration of the class action settlement); *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 2023 WL 6194109, at *26 (C.D. Cal. July 31, 2023) (issuing a preliminary injunction to remain in effect until final approval of the settlement agreement, finding that the potential filing of "copycat lawsuits in other jurisdictions" could impose on the court's jurisdiction and ability to manage the settlement process). The All Writs Act is properly invoked where, as here, actions in state court and other parallel proceedings "threaten[] to interfere with the federal court's orderly handling of the massive federal litigation." *Newbe v. Enron Corp.*, 338 F.3d 467, 474 (5th Cir. 2003).

Moreover, without the injunction, the threat of the ongoing state court cases and arbitration proceedings undermines the ability of 23andMe to fund the settlement at final approval and this Court's

jurisdiction to oversee and enforce the settlement. As shown in the concurrently-filed Motion for Preliminary Approval, 23andMe is in an extremely uncertain financial condition. *See* ECF No. 103-1 pp. 11-12, 34-36. The filed or threatened mass arbitration claims threaten to impose exorbitant filing fees on 23andMe, presumably intended to force the company to enter into different mass settlements with each counsel threatening mass arbitration claims. Such settlements would benefit only a very limited number of the members of the Settlement Class, and the mass arbitration counsel who have orchestrated that strategy. Alternatively, if 23andMe were to be forced to pay the filing fees, it would call into question its ability to fund the Settlement here. This threat undermines the Court's facilitation of the Parties' collaborative efforts to achieve a class-wide Settlement for the benefit of all 6.4 million members of the Settlement Class under the Court's jurisdiction and supervision.

Under the All Writs Act, this Court has the power to "issue all writs necessary or appropriate" to protect the Court's continuing jurisdiction over complex litigation and ongoing global settlement efforts from competing state and arbitration proceedings that threaten to derail the steps taken by the Court and the Parties. 28 U.S.C. § 1651. Where, as here, parallel proceedings threaten to impede the Parties' Settlement and the federal MDL Court's ability to enforce the Settlement Agreement, an injunction enjoining the parallel proceedings is proper.

## IV.    CONCLUSION

For these reasons, pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court should issue a preliminary injunction enjoining Settlement Class Members and their representatives from filing or pursuing any Released Claims, including in state court or an arbitral forum, pending the Court's final approval of the Settlement Agreement, unless and until they have received Notice and have submitted a valid request to individually exclude themselves from the Settlement Class under the process set out in the Settlement Agreement.

Dated: September 12, 2024

**GREENBERG TRAURIG LLP**

/s/ *Rebekah S. Guyon*
Rebekah S. Guyon (SBN 291037)
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700
*Rebekah.guyon@gtlaw.com*

*Attorneys for Defendant 23andMe, Inc.*