1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE 23ANDME, INC. CUSTOMER
DATA SECURITY BREACH
LITIGTATION.

Case No.  24-md-03098-EMC

**ORDER RE SUPPLEMENTAL
BRIEFING AND/OR EVIDENCE**

Docket No. 103

The Court has reviewed the papers submitted in conjunction with the motion for preliminary approval.  Based on those papers, the Court orders the parties to provide supplemental briefing and/or evidence on the following issues.  The supplemental briefing shall be filed by October 2, 2024.  A joint brief is strongly preferred.  If one party does not take a position on an issue, it may so state.

A.    23andMe's Financial Condition

Plaintiffs indicate that 23andMe's financial condition played a factor in deciding to settle and the terms of the settlement.  According to Plaintiffs, "[p]rior to [the second] mediation [with Mr. Wulff], the group [of Plaintiffs' lawyers participating in the mediation] engaged an independent forensic accounting firm to advise it with respect to 23andMe's financial condition."  Co-Lead Counsel Decl. ¶ 24.  What did the firm learn about the company's condition and what did it advise?  (If there is any concern here about privilege or trade secrets, the information may be lodged with the Courtroom Deputy (EMCCRD@cand.uscourts.gov) instead of filed.  Alternatively, the information may be filed under seal.)

B.      Investigation and/or Discovery

What investigation and/or discovery was done, both by Plaintiffs and 23andMe?  *See* Sett. Agmt., Recital ¶ 14.

If either side engaged experts, *see, e.g.*, Sett. Agmt., Recital ¶ 6, what did the experts do?

C.      Cause of the Data Breach

What do the parties know about the cause of the data breach?  Were Plaintiffs able to confirm one way or the other the cause claimed by 23andMe?  *See* CAC ¶ 2 ("Defendant has publicly stated that the Data Breach was a result of compromised user credentials whereby attackers gained access to data through passwords that users had reused from other website that were hacked . . . .").

D.      Compromised Personal Information

What personal information exactly was compromised?  *See, e.g.*, CAC ¶ 424.

If genetic information was compromised, can the parties explain what that information reveals about an individual – *e.g.*, ancestry, relationships, health, etc.?

Which genetic information can support submission of a Health Information Claim, and which genetic information cannot?  *See* Sett. Ben. Plan. ¶ 5 (addressing Health Information Claims).

Is there any indication whether compromised personal information has actually been used (*e.g.*, identity fraud, targeting ethnic groups)?

E.      Class Size

The parties indicate that the nationwide class size is about 6.4 million.  *See* Co-Lead Counsel Decl. ¶ 44 ("23andMe's investigation determined the threat actor downloaded Personal Information without authorization relating to approximately 6.4 million natural persons in the United States.").  What are the best estimates for the size of the subclass, *i.e.*, how many class members resided at the relevant time in Alaska, California, Illinois, and/or Oregon?

F.      Maximum Value of the Case

What is the maximum value of the case if Plaintiffs were to prevail?  An explanation as to how this value was reached should be provided.

United States District Court
Northern District of California

United States District Court
Northern District of California

G.     Net Settlement Fund

Under the settlement agreement, 23andMe is to pay out a gross settlement amount of $30 million, none of which shall revert back to the company.  *See* Sett. Agmt. ¶ 48.

Before any money will distributed to the class, certain deductions will be made from the gross settlement fund.  *See* Sett. Agmt. ¶ 48; Sett. Ben. Plan ¶ 3.  Specifically, there will be deductions for:

- Settlement administration costs, estimated to be $727,000 to $1,038,000.  *See* Peak Decl. ¶ 49 (testifying that "Verita has agreed to cap the costs of notice and settlement administration at $727,000-$1,038,000 depending on the claims rate and primary method by which claims are filed"); *see also* Co-Lead Counsel Decl. ¶ 65 (testifying that "Verita has estimated the anticipated costs of issuing notice and administering the Settlement at a 10% claims rate at a capped amount of $1,038,000 rate").

- Service awards, up to $1,000 for each named plaintiff, *see* Sett. Agmt. ¶ 98, which would be about $35,000.

- Attorneys' fees of no more than 25% of the gross settlement fund, *i.e.*, no more than $7.5 million.  *See* Sett. Agmt. ¶ 97.

- Litigation expenses, to date approximately $183,000.  *See* Co-Lead Counsel Decl. ¶ 59.

In addition, there will be a deduction from the gross settlement fund for the cost of "Privacy Shield" (although it is a benefit for the class and not anyone else).  *See* Sett. Ben. Plan. ¶ 3.

If the maximum deductions above are made (excluding the unknown cost of Privacy Shield), this would appear to leave about $21,244,000 for distribution to the class.  Is this correct?

What is the estimated cost of Privacy Shield (not its retail value to a consumer)?

H.     Claims Rates and Average Awards

Do the parties have an estimate as to the expected enrollment rate for Privacy Shield? What has been the experience in other similar class actions?

For the monetary relief, it appears "the Settlement Administrator has estimated that there will be between a 5-10% claims rate based on its experiences in other data breach cases." Co-Lead Counsel Decl. ¶ 66; Peak Decl. ¶ 37. Is this the estimated claims rate for each of the claims that can be made (Extraordinary Claims, Health Information, and Statutory Cash)? If not, what is the estimated claims rate for each?

For Extraordinary Claims, do the parties have a sense of the number of likely claimants and how much an average award will be? In addition, do the parties have a sense of how much of the $5 million fund will be claimed?

For Statutory Cash Claims, do the parties have a sense of how much an average award will be? (The notices suggest $100.) How is that estimate calculated? In addition, do the parties have a sense of what the size of the fund for these claims will be?

Explanations should be provided for all of the above.

I.      Plan of Allocation/Settlement Benefits Plan

Plaintiffs shall explain how they arrived at the plan of allocation, *i.e.*, the Settlement Benefits Plan. For example, did Plaintiffs consider whether a nominal payment should be given to all members in the nationwide class?

Why do persons whose health information was compromised get a set payment, but not persons who had other personal information compromised?

Why did persons in putatively targeted groups (Ashkenazi Jewish or Chinese descent) not get recognized in the plan of allocation?

Why are Extraordinary Claims limited to the costs specified in the Settlement Benefits Plan? *See* Sett. Ben. Plan. ¶ 4.

What is the basis for concluding that only 7,500 customers had health information compromised – that is, information that would support a Health Information Claim? *See* Co-Lead Counsel Decl. ¶ 19 ("23andMe confirmed during negotiations that approximately 7,500 customers had some form of health information compromised in the Security Incident.").

Is preferential treatment being given to those with Statutory Cash Claims?

United States District Court
Northern District of California

J.      Injunctive Relief

Do the Business Practice Commitments, *see* Sett. Agmt. ¶ 70, differ from 23andMe's practices in the past?

K.      Attorneys' Fees

Identify all timekeepers (grouped by firms) and their hourly rates.

How much time did each firm spend on each major litigation task?

Why should *all* pre-appointment time associated with Settlement, Experts, and Discovery be compensated?  Given the number of counsel involved before appointment of Co-Lead Counsel, isn't at least some of this duplicative?

Why does Class Counsel expect to spend thousands of more hours on the case after preliminary approval of the settlement?

L.      Settlement Administration Cost

Will settlement administration cost be capped at $1,038,000 (*e.g.*, regardless of the claims rate)?

Why is the cost of administration so high?

M.      Class Notice

For email notice, can the settlement administrator determine whether an email has been received and opened?

Did the parties discuss notice via social media advertising?

N.      Response to Class Notice

Is it correct that class members will have 35 days to opt out, 35 days to object, and 90 days to file claims?

For opt outs, why is an electronic opt out not recognized unless there is an additional verification?  *See* Sett. Agmt. ¶ 82 ("To be effective and valid, Opt-Out requests submitted online through the claims portal must be submitted by the Opt-Out Deadline and must verify the Opt-Out request no later than three (3) business days following the Opt-Out Deadline using the link sent to the email address of the Settlement Class Member.").

For opt outs, the parties shall provide the agreement made by the parties referred to in ¶ 88

5

1   of the Settlement Agreement – *i.e.*, 23andMe's right to terminate the Settlement Agreement if

2   there is a certain number of opt outs.  The agreement may be lodged with the Court by emailing a

3   copy to the Courtroom Deputy (EMCCRD@cand.uscourts.gov).

4          For objections, why does an objector need to provide information verifying that they are a

5   settlement member?  *See* Sett. Agmt. ¶ 90.iii (providing that a written objection must include, *inter*

6   *alia*, "[i]nformation which verifies the objector is a Settlement Class Member (e.g., a copy of the

7   Class Notice or of the original notice of the security incident addressed to the objecting Settlement

8   Class Member)").

9          For claims, why does a person making a Health Information Claim need to submit a claim

10  if 23andMe already knows whose health information was compromised?  *See* Sett. Ben. Plan ¶

11  12.b (providing that "Settlement Class Members with Health Information Claims must submit a

12  Claim Form").  Is this simply because a person may make a request for an electronic payment?

13  O.     <u>Language in the Class Notice</u>

14         1.     <u>Email Short-Form Notice (Peak Decl., Ex. 1)</u>

15                •   Page 1.  Can the first bolded sentence say more than just "You are Eligible for

16                    Benefits from a Class Action Settlement"?  Specifically, can class members be told

17                    that they may be entitled to monetary relief?  Specifics about the monetary relief

18                    should be provided.  Can't there also be reference to the $30 million gross

19                    settlement fund?

20                •   Page 1.  In the section "What Does the Settlement Provide," the estimated dollar

21                    amounts of settlement administration costs, attorneys' fees, expenses, and service

22                    awards should be provided.

23                •   Page 1.  In the section "What Does the Settlement Provide," can an example or two

24                    of the Business Practice Commitments be given?

25                •   Page 2.  In the section "How To Get Benefits," why does a class member have to

26                    submit a claim in order to get an enrollment code for Privacy Shield?  In other

27                    words, can an enrollment code be given as part of the class notice?

28                •   Page 2.  In the section "Your Other Options," the discussion of objections should

make clear that a person who objects remains a part of the class and must still submit a claim if they want, *e.g.*, to get a monetary payment.

- Page 3.  In the section "When will the Court decide whether to finally approve the Settlement," the estimated dollar amount of attorneys' fees should be specified. Also, it is correct that expenses are capped at $350,000?  Finally, the settlement agreement refers to service awards of $1,000 each, and not $500, as stated in the notice.  Which amount is correct?  The total amount of service awards should also be expressly stated.

2.  <u>Direct Mail Postcard Notice (Peak Decl., Ex. 2)</u>

- Can't the second box say more than just "You are eligible for benefits from a $30 million class action settlement"?  Specifically, can't class members be told that they may be entitled to monetary relief?  Specifics about the monetary relief should be provided.

3.  <u>23andMe In-App Notice and Web-Based Notice (Peak Decl., Ex. 3)</u>

- Can't the notice say more than just "If you information was compromised in the 23andMe Security Incident you are eligible for benefits from a Class Action Settlement"?  Specifically, can't class members be told that they may be entitled to monetary relief?  Specifics about the monetary relief should be provided?  Can there also be reference to the $30 million gross settlement fund?

4.  <u>Settlement Website Long-Form Notice (Peak Decl., Ex. 4)</u>

- Page 1.  Can't the second box say more than just "There is a $30,000,000 settlement of a lawsuit.  You may be entitled to benefits?"  Specifically, class members should be told that they may be entitled to monetary relief.  Specifics about the monetary relief should be provided.

- Page 1.  In the section "Important things to know," the second bullet point should include a statement that one possible benefit is monetary relief.  The third bullet point should make clear that a person who objects must still file a claim(s) in order to get benefits.

United States District Court
Northern District of California

- Page 2.  In the flow chart, the box on objecting should make clear that a person must (not just may) submit a claim in order to get benefits.

- Page 4.  For #22 in the Table of Contents, it appears that a word is missing, *i.e.*, "Claim."

- Page 5.  In the section "What do I do next," there is a typo in the chart ("Gt no payment").  Also, the part of the chart that discusses objections should make clear that a person who objects must still file a claim in order to get benefits.

- Page 6.  In the section "What is this lawsuit about," there should be a clarification that the federal lawsuits that have been filed have been consolidated.

- Page 6.  In the section "What is the lawsuit called," there should be the same clarification as above.

- Pages 8-9.  In the section "What does the Settlement provide," the estimated dollar amounts should be provided for the deductions from the gross settlement fund.

- Page 10.  In the section "How can I enroll in [Privacy Shield]," why does a class member have to submit a claim in order to get an enrollment code Privacy Shield?  In other words, can't an enrollment code be given as part of the class notice?

- Page 11.  In the section "How will the Settlement compensate me for a Health Information Claim," there should be a "Submit a Claim Form" box at the very end (that is, assuming claims must be submitted in order to get the payments).

- Page 12.  In the section "How has 23andMe changed its business practices as a result of the Security Incident," can an example or two of the Business Practice Commitments be given?

- Pages 12-13.  In the section "When will I get my monitoring payment," there should be estimated dollar figures for service awards, attorneys' fees, and expenses.

- Page 14.  In the section "What does it mean to object to the Settlement," there should be a statement making clear that an objector must still file a claim(s) if they want to obtain any benefits.

- Page 15.  In the section "How do I tell the Court that I don't like the Settlement,"

8

the address at the bottom should be corrected.  There is no "Class Action Clerk" in the Clerk's Office.

- Page 16.  In the section "What's the difference between objecting and submitting an Opt-Out," there should be a clarification that an object must (not just may) submit a claim in order to get benefits.

- Page 16.  In the section "Do I have a lawyer in this case," phone numbers and email addresses should be provided for Class Counsel.

- Page 17.  In the section "How will the lawyers be paid," the estimated dollar figure for attorneys' fees should be specified.

- Page 17.  In the section "Can I enroll in [Privacy Shield] later," the first sentence should be "Yes."

P.    Preliminary Injunction

In ¶ 73.h of the Settlement Agreement, the parties agreed that the Court should include a preliminary injunction as part of any preliminary approval order.  Specifically, there would be a

> preliminary injunction of all Settlement Class Members and their representatives from filing, commencing, prosecuting, maintaining, intervening in, conducting, continuing, or participating in any other lawsuit or administrative, regulatory, arbitration or other proceeding based on the Released Claims, unless and until they personally submit a timely request for individual exclusion pursuant to the Settlement Agreement after receiving Notice.

Sett. Agmt. ¶ 73.h.

23andMe argues that this provision is needed because "[c]ompeting actions would jeopardize the realization of the Settlement, interfere with this Court's ability to manage the settlement, and potentially cause unnecessary confusion for Settlement Class Members."  Def.'s Br. at 10; *see also Sandpiper Vill. Condo. Ass'n v. Louisiana-Pacific Corp.*, 428 F.3d 831, 845 (9th Cir. 2005) (taking note of a prior decision where "[w]e concluded that a temporary stay pending settlement of the nationwide class action was appropriate under the All Writs Act and the Anti-Injunction Act because concurrent state proceedings at such a sensitive stage in the federal proceedings would have threatened the jurisdiction of the district court").  Plaintiffs note that "[t]he injunction tracks similar preliminary injunctions approved by this Court in granting

United States District Court
Northern District of California

1  preliminary approval of class action settlements.  *See, e.g.*, *Roberts v. AT&T Mobility LLC*, No.

2  3:15-cv-03418-EMC (N.D. Cal. Mar. 31, 2021)."[1]  Co-Lead Counsel Decl. ¶ 70.  They add that,

3  "[g]iven 23andMe's financial position, Plaintiffs support the entry of the preliminary injunction,

4  but note that the provision is severable from the remainder of the Settlement Agreement.  [Sett.

5  Agmt.] ¶ 105."  Co-Lead Counsel Decl. ¶ 70.

6          Has either party discussed this requested preliminary injunction with the attorneys

7  representing the plaintiffs in the state court cases or the claimants in the arbitration proceedings?

8  If so, what is the substance of the communications?

9          Do the parties expect there to be substantial opt-outs because of the state court cases or

10  arbitrations?

11

12          **IT IS SO ORDERED**.

13

14  Dated: September 25, 2024

15

16  _____

17  EDWARD M. CHEN
    United States District Judge

18

19

20

21

22

23

24

25

26

27  _____
    [1] *See Roberts*, No. C-15-3418 EMC (N.D. Cal.) (Docket No. 205) (Order ¶ 36) (stating that "[t]his
28  bar and injunction is necessary to protect and effectuate the Settlement Agreement and this
    Preliminary Approval Order, and this Court's authority to effectuate the Settlement, and is ordered
    in aid of this Court's jurisdiction").