Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Los Angeles, CA 90212
Telephone: (866) 252-0878
Facsimile: (865) 522-0049
astraus@milberg.com

*Attorney for Proposed Intervenors*
*Vivian Gonczi, Howard Packer, and Lance Alligood*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No.: 3:24-md-03098-EMC |
|  | **NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT** |
|  | Judge: Hon. Edward M. Chen |
|  | Courtroom: 5, 17th Floor |
|  | Hearing Date: October 17, 2024 |
|  | Hearing Time: 1:30 p.m. |

## <u>NOTICE OF MOTION AND MOTION TO INTERVENE</u>

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE that on October 17, 2024, at 1:30 p.m., or on such other date or time as this matter may be heard, in the courtroom of the Honorable Judge Edward M. Chen, located at 450 Golden Gate Avenue, 17th Floor, Courtroom 5, San Francisco, California 94102, Intervenors Vivian Gonczi, Howard Packer, and Lance Alligood (collectively, "Intervenors")

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

will and hereby do, move for an order allowing intervention under Federal Rule of Civil Procedure Rule 24(a) as a matter of right or, in the alternative, under Rule 24(b) for permissive intervention, for the purpose of opposing the proposed class settlement before the Court.

This Motion is made on the grounds that the proposed class action settlement in this matter is intentionally designed to undermine the rights of claimants actively pursuing individual arbitrations against 23andMe pursuant to a contract, specifically 23andMe's own Terms of Service, which require individual arbitration as the exclusive means by which to resolve any and all disputes with the company. The proposed Intervenors are among approximately 4,966 claimants who are represented by the undersigned counsel and who previously provided notices to 23andMe of their respective individual claims and have initiated their individual arbitrations against the company regarding the compromise of their genetic data via the 23andMe data breach at issue before this Court (collectively, "Claimants"). These Claimants have ongoing arbitration proceedings based on specific damages arising from the exposure of their highly sensitive genetic information by 23andMe. The class settlement, as currently proposed, requests extraordinary and unprecedented relief in the form of an injunction of thousands of pending arbitrations, which would effectively extinguish Intervenors and Claimants' private contractual rights to pursue arbitration while also offering inadequate compensation for the distinct and long-lasting harms they have suffered and will continue to suffer because of 23andMe's data breach. The Motion will be heard on this Notice of Motion and Memorandum in Support below, as well as other filings and arguments that may be submitted and the Proposed Order filed herewith.

Dated: September 26, 2024                Respectfully submitted,

Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Los Angeles, CA 90212
(919) 600-5000
astraus@milberg.com

By:      *Alex R. Straus*
         Alex R. Straus, Esq.

*Attorney for Proposed Intervenors Jovanni Valle,*
*Viviana Gonczi, Howard Packer, and Lance*
*Alligood*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................... 6

STATEMENT OF RELEVANT FACTS ....................................................................................... 8

    A.   Status of the Class Action Litigation ............................................................................. 8

    B.   Status of the Mass Arbitration Proceedings.................................................................... 9

    C.   The Settlement and the Burdensome Opt-Out Process.................................................. 10

ARGUMENT ............................................................................................................................... 12

    A.   The Proposed Intervenors Satisfy the Requirements of Rule 24(a) and Should Be
Allowed to Intervene as a Matter of Right................................................................... 12

    B.   Alternatively, Proposed Intervenors Should Be Entitled to Permissive Intervention....... 23

CONCLUSION............................................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

*NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT*
Case No.: 3:24-md-03098-EMC

**Page(s)**

**Cases**

331 F. App'x 452 (9th Cir. 2009) ................................................................. 11

*Alaniz v. Tillie Lewis Foods,*
    572 F.2d 657 (9th Cir. 1978) .............................................................. 12

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir.2003) ............................................................. 19

*California ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006) .............................................................. 14

*California v. Tahoe Reg'l Planning Agency,*
    792 F.2d 775 (9th Cir. 1986) .............................................................. 19

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
    595 U.S. 267, 142 S. Ct. 1002, 212 L.Ed.2d 114 (2022) ..................... 11

*County of Elko,*
    298 F.3d 1122 (9th Cir. 2002) ........................................................ 12, 13

*County of Orange v. Air California,*
    799 F.2d 535 (9th Cir. 1986) .............................................................. 11

*Day v. Apoliona,*
    505 F.3d 963 (9th Cir. 2007) .............................................................. 12

*Glass v. UBS Fin. Servs., Inc.,*
    No. 06-4068, 2007 WL 474936 (N.D. Cal. Jan. 17, 2007) ............. 11, 12

*Prete v. Bradbury,*
    438 F.3d 949 (9th Cir. 2006) .............................................................. 10

*Smith v. Los Angeles Unified Sch. Dist.,*
    830 F.3d 843 (9th Cir. 2016) .............................................................. 15

*Southwest Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) .............................................................. 16

*Spangler v. Pasadena City Bd. of Educ.,*
    552 F.2d 1326 (9th Cir. 1977) ............................................................ 21

*United States v. City of Los Angeles,*
    288 F.3d 391 (9th Cir. 2002) .............................................................. 15

*United States v. Oregon,*
    839 F.2d 635 (9th Cir. 1988) .............................................................. 10

*United States v. Oregon,*
    913 F.2d 576 (9th Cir. 1990) .............................................................. 10

**Rules**

Federal Rule of Civil Procedure Rule 24(a) ..................................... 1, 5, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

This Motion to Intervene is filed on behalf of Intervenors Vivian Gonczi, Howard Packer, and Lance Alligood, who are among approximately 5,000 Claimants represented by the undersigned counsel and who are currently engaged in arbitration proceedings against 23andMe pending before JAMS. Intervenors and similarly situated Claimants were directly affected by the April 2023 data breach caused by 23andMe's inadequate data security policies and practices, which allowed unidentified third parties to download and sell extraordinarily sensitive personally identifiable information about their genomics, DNA profiles, ancestries and ethnicities on the Dark Web. The data of nearly one million 23andMe users with alleged Jewish ancestry, including their home addresses, was sold by cyber criminals on hacking platforms.[1] The exposure of this data, is particularly dangerous given the current volatile political climate, including the war in the Middle East.[2]

Intervenors assert that the proposed class action settlement seeks extraordinary and unprecedented relief.  It seeks to strip away contractual rights between private parties to the benefit of 23andMe and detriment of the Claimants and Class Members. At the time they signed up for 23andMe's services, 23andMe forced these Claimants and Class Members to surrender their rights to sue in court over any and all disputes and controversies and instead required them

---

[1] Oldfield, Ariella, *23andMe faces lawsuit as hackers sell information on users with Jewish heritage*, THE TIMES OF ISRAEL, Jan. 31, 2024, *available at* https://www.timesofisrael.com/23andme-faces-lawsuit-as-hackers-sell-information-on-users-with-jewish-heritage/ (last accessed Sept. 25, 2024).

[2] Antisemitic incidents increased by 36% in the United States in 2022 with more than 3,500 incidents, many of which were assaults targeting Jewish people. Sganga, Nicole, *Highest number of antisemitic incidents since 1979 recorded last year, Anti-Defamation League finds*, CBS NEWS, Mar. 23, 2023, *available at* https://www.cbsnews.com/news/antisemitic-incidents-most-since-1979-anti-defamation-league-annual-report/ (last accessed Sept. 25, 2024).

*NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT*
Case No.: 3:24-md-03098-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to pursue their claims through private arbitration proceedings.  When 23andMe instituted this adhesive contract and arbitration requirement, it hoped it would be immune from lawsuits and liability, fully believing no consumer would ever waste their time or money to actually go through the arbitration process.  23andMe was wrong.  In the wake of the data breach, thousands of Claimants sought to enforce their rights through 23andMe's own arbitration process.  Faced with the reality that 23andMe's own arbitration process no longer benefitted 23andMe, 23andMe now seeks to avoid the very dispute resolution process it created.  Essentially, 23andMe seeks to play a game of "heads I win, tails you lose."  In other words, if 23andMe thought it could avoid liability through the arbitration process, there is no doubt 23andMe would seek to invoke that arbitration clause to kill a lawsuit.  But now that the arbitration clause no longer serves to benefit 23andMe, it has completely disavowed that clause and rushed to reach a class wide settlement to impair the contractual rights of Claimants and Class Members.   The proposed settlement before the Court threatens to enjoin class members, including Intervenors and Claimants, from pursuing ongoing private arbitrations unless and until they affirmatively opt out within a narrow timeframe set by the settlement. There is no basis to enjoin these ongoing arbitrations.  Moreover, the opt-out provisions, as outlined in paragraphs 73(h) and 80-88 of the Settlement Agreement, unfairly burden Claimants by requiring strict compliance with a convoluted opt-out process clearly geared towards making it difficult for Claimants and Class Members to opt out and pursue individual arbitration. Moreover, the proposed class settlement fails to provide adequate safeguards against the risks posed by exposure of the arbitration claimants' genetic data, such as the incorporation of logging and monitoring programs and requiring annual SOC 2 Type 2 assessments specifically

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

sought by the arbitration claimants to ensure long-term protection and independent oversight of 23andMe's data security practices.

This Motion is brought under Federal Rule of Civil Procedure 24(a) for intervention as a matter of right, as Intervenors and Claimants have a protectable interest that will be impaired if the proposed class settlement is approved without their participation. Alternatively, Intervenors seek permissive intervention under Rule 24(b), as their claims share common legal and factual questions with the class action yet focus on the improperly requested injunction of their individual arbitrations through which they seek specific relief necessary to address the unique harm caused by the genetic data breach. Pursuant to this Motion, Intervenors seek leave to file the Opposition to Proposed Injunction and Opt-Out Procedures Sought by Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, attached hereto as Exhibit A.

<u>**STATEMENT OF RELEVANT FACTS**</u>

**A.      Status of the Class Action Litigation**

In October 2023, 23andMe publicly disclosed that a significant data breach occurred, compromising millions of users' personal and genetic data. Following this announcement, over forty (40) class action lawsuits were filed, all alleging that 23andMe failed to adequately protect user data and violated various consumer protection laws. These lawsuits were consolidated into a Multidistrict Litigation (MDL) in the Northern District of California, overseen by the Honorable Edward M. Chen. On September 12, 2024, the MDL parties reached a proposed settlement which includes a $30 million fund to compensate affected users. While the proposed settlement provides for general monetary compensation and credit monitoring services, it requests extraordinary and unprecedented relief by asking this Court to strip away contractual

rights between private parties by way of an injunction of thousands of pending private arbitrations. Specifically, ¶ 73.h) of the proposed settlement agreement requests:

> "preliminary injunction of all Settlement Class Members and their representatives from filing, commencing, prosecuting, maintaining, intervening in, conducting, continuing, or participating in any other lawsuit or administrative, regulatory, arbitration or other proceeding based on the Released Claims, unless and until they personally submit a timely request for individual exclusion pursuant to the Settlement Agreement after receiving Notice."

Plaintiff's Proposed Settlement, ECF No. 103-2, ¶ 73(h). Further, the proposed settlement lacks relief specifically addressing the long-term consequences associated with the exposure of genetic data, a central issue for Intervenors and Claimants. Notably, the request for a preliminary injunction has drawn the attention of the Court, prompting the Honorable Judge Chen to question whether "either party discussed this requested preliminary injunction with the attorneys representing the plaintiffs in the state court cases or the claimants in the arbitration proceedings?" Order Re Supp. Briefing and/or Evidence, ECF No. 111, ¶ P. The answer on behalf of counsel for the Intervenors and Claimants with pending arbitrations is a definitive "no."

## B. Status of the Mass Arbitration Proceedings

Beginning in December 2023, the undersigned counsel sent 23andMe notices of dispute on behalf of thousands of Claimants regarding its April 2023 data breach. And in February 2024, one hundred (100) Claimants filed individual demands for arbitration of their claims with JAMS in accord with 23andMe's governing Terms of Service. Claimants and 23andMe paid their respective filing fees to JAMS and confirmed their readiness to proceed. JAMS is currently in the process of assigning arbitrators to preside over these individual matters. The next step will be for those arbitrators to schedule preliminary hearings and enter scheduling orders. Notices of

dispute were sent to 23andMe on behalf of thousands of additional Claimants throughout April and May 2024.  In July 2024, an additional 4,866 Claimants submitted individual demands for arbitration of their claims to JAMS where they remain pending.

Intervenors and Claimants' claims seek relief for 23andMe's negligence in safeguarding their highly sensitive personal and genetic data, and the long-term risks occasioned by the breach, including potential misuse of genetic information and future discrimination.  Significantly, the specific relief requested by Intervenors and Claimants in their demands surpass the general remedies included in the proposed class action settlement. As a general matter, Claimants stand to recover far more through private arbitration than simply participating as absent class members in this Settlement.  Moreover, they also seek non-monetary relief not covered by the settlement, including, for example, logging and monitoring programs, ongoing independent oversight through annual SOC 2 Type 2 assessments, and stricter data security protocols to ensure continuous protection of genetic data. These particular remedies are crucial to adequately address the unique harm caused by exposure of the arbitration claimants' genetic information.

## C.     The Settlement and the Burdensome Opt-Out Process

The proposed class settlement improperly includes a preliminary injunction provision which, if approved, would enjoin *all* class members—including Intervenors and Claimants who are currently pursuing arbitration—from filing, commencing, or participating in any arbitration or related proceedings unless they submit a timely request for exclusion. This injunction would effectively bar Intervenors and Claimants from continuing to pursue their claims in arbitration unless and until they go through the onerous opt-out procedure proposed under the class settlement. Plaintiff's Proposed Settlement, ECF No. 103-2, ¶ 73(h). The proposed opt-out

procedures unreasonably require any class members wanting to opt out of the class to submit a written request that must:

- Include the case name of the Litigation: In Re: 23andMe, Inc., Customer Data Security Breach Litigation, Case No. 24-md-03098-EMC;

- Identify the name and current email and mailing addresses of the Person seeking exclusion from the Settlement;

- Identify the 23andMe username or email associated with the 23andMe account for the Person seeking exclusion from the Settlement;

- Be individually signed by the Person seeking exclusion using wet-ink signature, DocuSign, or other similar process for transmitting authenticated digital signatures;

- Include an attestation clearly indicating the Person's intent (to be determined by the Notice and Claims Administrator) to be excluded from the Settlement;

- Attest that the Person seeking exclusion had a 23andMe user account as of August 11, 2023.

Plaintiff's Proposed Settlement, ECF No. 103-2, ¶ 81.  Even opt-out requests submitted electronically via the claims portal require jumping through an additional hoop by verifying the request within three business days of the Opt-Out Deadline, which is clearly intended to void otherwise valid opt-out requests.  *Id.* at ¶ 82.

Significantly, the proposed opt-out procedures do not allow for the undersigned counsel to opt their own clients (i.e., Intervenors and Claimants) out of the class en masse or otherwise, despite the fact that Intervenors and Claimants are represented by counsel and, as 23andMe has full knowledge, have expressed their intent to continue their individual arbitrations. Indeed, the

settlement agreement expressly states that any such requests seeking exclusion on behalf of more than one individual shall be deemed invalid. *Id*. at ¶ 83.

Additionally, the proposed class settlement offers only non-descript remedies such as "credit monitoring" in addition to the proposed limited monetary compensation. These non-specific remedies fail to address distinct, long-term risks posed by 23andMe's exposure of Intervenors and Claimants' genetic data. Intervenors and Claimants are understandably concerned that these generalized remedies are insufficient to protect them from future harm, given that genetic information, once exposed, cannot be changed or retracted. Thus, the class settlement's failure to account for these unique risks requires preservation of the arbitration claimants' ability to pursue the specifically tailored relief sought in the ongoing arbitration proceedings.

## **ARGUMENT**

### A. The Proposed Intervenors Satisfy the Requirements of Rule 24(a) and Should Be Allowed to Intervene as a Matter of Right.

A court must allow intervention to anyone who "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). In order to intervene as a matter of right, a prospective intervenor must show: (1) the motion is timely, (2) the applicant has a significantly protectable interest relating to the property or transaction that is the subject of the action, (3) the disposition of the action may impair or impede the applicant's ability to protect that interest, and (4) the existing parties do not adequately represent the applicant's interest. *United States v. Oregon*, 839 F.2d 635, 637 (9th Cir. 1988). Courts interpret the requirements for

intervention broadly, favoring intervention where possible. *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (internal quotation marks omitted).

### 1.   The Application to Intervene Is Timely

Timeliness is the "threshold requirement" for a party seeking to intervene under Rule 24(a). *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). Three factors determine whether a motion is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986). Here, the proposed settlement has only now reached the stage where the MDL parties have agreed on terms, and the plaintiffs having moved this Court for conditional certification of the settlement class and preliminary approval. ECF No. 103-1. The Motion to Intervene, therefore, is at this point timely and appropriate. Courts routinely find intervention in response to a proposed settlement to be timely when intervenors act promptly upon learning a proposed settlement may adversely affect their interests. *E.g., Glass v. UBS Fin. Servs., Inc.*, No. 06-4068, 2007 WL 474936, at *3 (N.D. Cal. Jan. 17, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009). Timeliness is generally measured from the point when the proposed intervenor receives notice the settlement terms may be contrary to their interests, not from the beginning of the litigation. *Id.*

In this case, Intervenors moved to intervene shortly after learning the proposed settlement does not adequately protect their rights. The settlement negotiations were conducted confidentially and without the inclusion of the undersigned counsel, and the terms were only made public via the filing of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement on September 12, 2024. The motion to intervene was filed promptly on September 26, 2024, only fourteen days after the settlement became public, well within the time frame

1    allowed for intervention (with no undue delay) and prior to any related hearings or issuance of

2    notice to the putative class. It is important to remember the "*most important circumstance* relating

3    to timeliness is that the [proposed intervenors] sought to intervene as soon as it became clear that

4    [their] interests would no longer be protected by the parties in this case." *Cameron v. EMW*

5    *Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279-80, 142 S. Ct. 1002, 212 L.Ed.2d 114 (2022)

6    (cleaned up and emphasis added). That "most important" consideration strongly weighs in favor

7    of intervention here.

8          The second factor asks whether intervention will prejudice the existing parties. Prejudice

9    occurs when intervention would expose a negotiated settlement to contrary authority, delay the

10   relief being sought, or compromise settlements reached after extensive negotiations. *Glass*, 2007

11   WL 474936, at *4-5; *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978). *Day v.*

12   *Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (although the State of Hawaii could have sought

13   intervention at any time during two years of proceedings, its motion did not cause prejudice to

14   plaintiffs).  However, when potential intervenors act as soon as they have notice that a proposed

15   settlement may be contrary to their interests, as Intervenors did here, courts generally find no

16   prejudice. *Carpenter v. County of Elko*, 298 F.3d 1122, 1125 (9th Cir. 2002) ("[T]he interveners

17   acted promptly after they had notice that the government may not have adequately represented

18   their interests in negotiating the settlement[.]");  *Day*, 505 F.3d at 965 ("A would-be intervenor's

19   delay in joining the proceedings is excusable when the intervenor does not know or have reason

20   to know that his interests might be adversely affected by the outcome of litigation.").

21         Here, there is no prejudice to the existing parties because the Intervenors acted as soon as

22   they had notice to promptly protect their rights. Conversely, the proposed settlement—if

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

approved without intervention—threatens to extinguish Intervenors and Claimants' ability to continue pursuing their arbitrations or to secure specific relief for the unique injuries arising from the exposure of their sensitive genetic data. The MDL plaintiffs, through this settlement, purport to resolve claims on behalf of *all* affected users. ECF No. 103-1, p. 8. But the proposed class settlement places an undue burden on the Intervenors and Claimants, effectively barring them from pursuing their individual arbitrations as required under 23andMe's Terms of Service and further seeks to prevent them from seeking more tailored relief from the long-term consequences of 23andMe's breach.

Intervention will not delay or disrupt the current settlement proceedings. Intervenors do not seek to derail the MDL settlement for those who wish to participate in it. Rather, they seek to ensure their interests in arbitration and more comprehensive relief are fully represented and protected if their claims are encompassed by the proposed settlement. Therefore, allowing intervention will not unduly prejudice the existing parties or cause significant delays.

The third factor—the reason for and length of any delay—also indicates in favor of timeliness. As discussed above, this motion was filed shortly after the settlement terms were made public on September 12, 2024. The Intervenors acted promptly upon realizing the proposed settlement threatened their rights, filing this motion within two weeks of learning about the class settlement and its terms. Significantly, at no time did counsel for 23andMe attempt to communicate with the undersigned counsel regarding the existence of the putative class settlement or its potential impact on Intervenors and Claimants' pending arbitrations. In fact, the evidence suggests 23andMe's counsel aimed to hide their class settlement negotiations and thrust

*NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT*
Case No.: 3:24-md-03098-EMC

the settlement upon Claimants without notice. There was no undue delay in bringing this Motion and the Intervenors have moved as swiftly as possible to protect their interests.

Courts acknowledge that, when settlement negotiations have been conducted confidentially, potential intervenors lack notice that their interests are unprotected until the settlement terms are disclosed. *E.g., Carpenter*, 298 F.3d at 1125 ("[T]he mediation proceedings had been conducted under an order of confidentiality and the settlement negotiations were not conducted in open court.  By entering into confidential settlement discussions, the government does not give notice that it may not be adequately representing the interests of any group of citizens."). Here, the Intervenors were not privy to the settlement negotiations and only became aware of the settlement terms when the motion for preliminary approval was filed. The Intervenors have therefore moved to intervene at the earliest possible moment.

In sum, this Motion is timely under the standards established by the Ninth Circuit. The proposed Intervenors acted promptly after becoming aware of the proposed class settlement, and their intervention will not prejudice the existing parties or disrupt the settlement process. Therefore, the timeliness requirement for intervention is satisfied.

### 2. The Proposed Intervenors Have the Requisite Interest in the Subject Matter of This Case

The Intervenors have a significant and legally protectable interest in the subject matter of this case. Under Rule 24(a)(2), intervention must be allowed upon demonstration of an interest in the underlying litigation that is "significantly protectable" and directly affected by the outcome of the case. A party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). Here, the arbitration claimant's rights are directly protected under privacy and contract laws, as they seek specific relief for the exposure of their sensitive genetic data. These claimants have a direct and substantial interest in ensuring that the proposed class settlement does not extinguish their ability to pursue the specific remedies they are entitled to under arbitration.

Here, Intervenors and Claimants have a direct and substantial interest in ensuring the proposed class settlement does not extinguish their ability to pursue their pending individual arbitrations before JAMS or to seek the specific relief discussed above through arbitration. If the class settlement is approved in its current form, Paragraph 73(h) will prevent *all* class members—including Intervenors and Claimants—from filing or continuing arbitration proceedings unless they individually comply with a cumbersome opt out procedure within a narrow timeframe. This provision directly threatens Intervenors and Claimants' ongoing claims and right to pursue arbitration, undermining their efforts to seek specific relief for the long-term risks caused by the exposure of their legally protected genetic data.

Courts consistently determine Rule 24(a)(2) should be broadly construed in favor of intervention. *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). To intervene as of right, the proposed intervenors must show they have a protectable interest that may be impaired by the litigation. In *Smith v. Los Angeles Unified Sch. Dist.*. the court recognized that denying intervention could impair the ability of a sub-class to safeguard their interest, particularly where their rights were threatened by the policies and agreements formed within the class action

framework. *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 863 (9th Cir. 2016) (holding that denying intervention would impair a subclass' ability to protect its interest, particularly where the class action framework threatened the rights of the subclass to challenge district-wide policies)). Similarly, here, the proposed settlement's injunction threatens the arbitration claimants' ability to obtain tailored relief for the exposure of their genetic data through arbitration and hinders their ability to ensure long-term protection and independent oversight of 23andMe's data security practices.

The proposed class settlement seeks to enjoin ongoing arbitration proceedings, which directly conflicts with Intervenors' efforts to secure tailored relief through arbitration. Here, the Intervenors identify a unique, protectable interest in pursuing arbitration which will be impaired if the proposed class settlement is approved in their absence. By enjoining all arbitration, the settlement risks leaving Intervenors and Claimants without the opportunity to proceed with their respective arbitrations or obtain the specific relief they seek. This substantial impairment justifies intervention as a matter of right under Rule 24.

### 3. Disposition of the Case Will, as a Practical Matter, Substantially Impair or Impede Proposed Intervenors' Interests.

A proposed intervenor's interests are impaired "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (citing advisory committee's notes). The proposed class settlement substantially affects the Intervenors' interests because it threatens to extinguish their private contractual rights, including the ability to pursue their pending arbitrations and more comprehensive and tailored relief sought through arbitration,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

leaving them barred from proceeding and with only inadequate generalized remedies that fail to redress the unique harms they suffered.

Intervenors and Claimants have already initiated arbitration proceedings against 23andMe, seeking specific relief for the exposure of their sensitive genetic data. Significant time and money has been spent preparing, filing, and pursuing their demands in arbitration. Claimants stand to recover far more monetarily through private arbitration than by participating as absent class members in the proposed settlement before the Court.  Moreover, the non-monetary relief sought includes detailed protocols necessary to prevent future breaches and to ensure that 23andMe adheres to enhanced security standards. For example, the arbitration demands the implementation of logging and monitoring programs, which are essential for real-time oversight of data security and detection of potential future breaches. Furthermore, the arbitration calls for a third-party assessor to conduct SOC 2 Type 2 assessments on an annual basis to independently evaluate 23andMe's compliance with the terms of any award. This ongoing, independent oversight is crucial considering the extraordinarily sensitive nature of the exposed genetic data yet is entirely absent from the proposed class settlement relief.

The relief offered in the proposed class settlement is far less comprehensive. Plaintiff's Proposed Settlement, ECF No. 103-2, ¶¶ 70-72. Even though it includes measures such as multi-factor authentication, unspecified annual audits, and password protection, these measures (while positive) are insufficient to address the *long-term* risks associated with the exposure of *genetic* data. The settlement lacks the rigorous third-party monitoring and independent audits sought by the arbitration claimants. For instance, the internal audits in the settlement do not have the depth and independence of the SOC 2 Type 2 assessments, which the arbitration claimants believe are

critical for ensuring 23andMe maintains robust data protection protocols over time. Additionally, while the settlement provides for a policy regarding the retention of personal information for inactive or deactivated accounts, Settlement Agreement, ¶ 70(g), it does not address the Intervenors and Claimants' specific concern for the necessity of ongoing third-party validation of data deletion and secure handling of genetic information. This omission leaves Intervenors and Claimants without assurance that their sensitive genetic data will be adequately safeguarded in the future.

If the proposed class settlement is approved in its current form, it would have far reaching implications. Essentially, Parties could strip away private contractual rights when they no longer suit them under the guise of the All Writs Act by way of an injunction that prevents class members, including Intervenors and Claimants, from pursuing their ongoing arbitration proceedings unless and until they jump through various hoops such as the onerous opt-out procedures set forth in the Settlement Agreement. Settlement Agreement, Paragraph, ¶ 73(h). This provision directly threatens Intervenors and Claimants' ability to obtain the specific relief they seek, forcing them to choose between forfeiting their arbitration claims or accepting generalized relief that does not fully address their injuries.

The opt-out process is not straightforward and imposes unnecessary burdens on class members, particularly the nearly 5,400 arbitration claimants. It requires claimants to submit a variety of detailed personal information—including current and past email addresses, 23andMe account details, and a signed attestation—all within a narrow timeframe. These stringent requirements, combined with the demand for a personal signature, create significant obstacles, making it difficult for claimants to opt out.

This process seems tailored to suppress the impact and voice of the arbitration claimants by making it impractical for many to meet the complex and time-sensitive requirements. The sheer number of claimants involved in ongoing arbitration underscores the importance of individualized relief, yet the burdensome opt-out process increases the likelihood that many will inadvertently lose their right to pursue arbitration. Instead, they may be forced to accept a generalized settlement that does not address their specific injuries or the long-term risks associated with the exposure of their sensitive genetic data.

In sum, the proposed class settlement seeks to completely bar Intervenors' pending arbitrations and simultaneously fails to offer comprehensive and specific relief necessary to address the unique and long-lasting harm they experienced. The potential loss of their right to pursue arbitration, along with the opportunity to obtain meaningful, tailored relief that directly addresses the exposure of their sensitive genetic data, constitutes a significant impairment of their protectable interests. As such, the approval of the class settlement, without intervention, may substantially impair or impede the Intervenors' ability to safeguard their rights. This unquestionable risk to their interests makes intervention necessary under Rule 24(a)(2).

### 4. Proposed Intervenors Are Inadequately Represented by Existing Parties

To determine whether representation is adequate, courts consider: (1) whether a party before the court will make the same arguments the prospective intervenor would; (2) whether the present party is capable and willing to make those same arguments; and (3) whether the intervenor would offer necessary elements to the proceedings that other parties would neglect. *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986). Although the burden is on the proposed intervenors to show that representation is inadequate, this burden is minimal and may be satisfied by a showing that representation of their interests by parties

*NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT*
Case No.: 3:24-md-03098-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

presently before the court "may be" inadequate. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.2003). The Intervenors focus on preserving their right to continue their respective arbitration proceedings and to seek specific types of relief through arbitration, as opposed to accepting the broad, generalized relief offered by the class settlement. The Intervenors and Claimants already initiated arbitration proceedings to address the specific harms resulting from the exposure of their genetic information and submitted their arbitration demands to JAMS months before the class settlement was presented to the Court. Their primary interest lies in ensuring they have an unimpaired opportunity to continue pursuing their arbitrations and seek relief specifically tailored to their unique circumstances. In contrast, the MDL class representatives are primarily concerned with securing broad relief for all class members, the majority of whom have not exercised their rights to arbitrate their claim. The settlement offers only generalized remedies like financial compensation and credit monitoring, failing to address the specific and long-term harm caused by the exposure of genetic information. These broad MDL remedies do not account for the distinct and potentially lifelong risks faced by those whose sensitive genetic data was compromised. The Intervenors' interests are unlikely to be fully represented by the class representatives, who (as demonstrated by the terms of the proposed MDL settlement) failed to recognize and provide for these unique concerns. Moreover, the proposed settlement extinguishes for all class members, including the Intervenors, all rights to seek or to continue arbitration unless they strictly comply with an opt-out process that is clearly designed to discourage participation and prevent opting out. By requiring detailed personal information, multiple account details, and personal signature within a narrow timeframe, the process imposes unnecessary hurdles. These complex requirements make it difficult for claimants to opt out, effectively steering them into a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

generalized settlement that fails to address their specific claims. This provision directly conflicts with the Intervenors' interests, as they seek to continue their arbitrations in pursuit of more comprehensive relief. The tension between the relief sought by the MDL class representatives and the Intervenors demonstrates why the Intervenors' interests are not adequately represented by the existing MDL parties.

The class settlement, by contrast, forces claimants into a one-size-fits-all resolution that fails to account for the unique risks posed by the exposure of the specific type of potentially dangerous genetic information made available to the criminal elements of the Dark Web. The Intervenors' distinct interests in obtaining different relief through arbitration cannot be adequately represented by the MDL class, justifying intervention under Rule 24(a)(2).

## B. Alternatively, Proposed Intervenors Should Be Entitled to Permissive Intervention

Even if the Court finds that intervention as of right is not warranted, the proposed Intervenors should be granted permissive intervention under Rule 24(b). Permissive intervention is appropriate when the applicant's claim shares a common question of law or fact with the main action and will not unduly delay or prejudice the adjudication of the original parties' rights. *Id.* Here, both the class members and Intervenors seek relief for 23andMe's failure to protect sensitive personal and genetic information, making the legal and factual issues common. Courts regularly allow permissive intervention when the intervenor provides a unique perspective not fully represented by existing parties. *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). The Intervenors' concerns regarding the continued pursuit of individual arbitrations and the long-term risks of genetic data exposure, including potential misuse and

*NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT*
Case No.: 3:24-md-03098-EMC

discrimination, offer a valuable perspective that complements the class action and may not otherwise be presented to the Court.

Permissive intervention will not cause undue delay or prejudice. The Intervenors seek only to protect their right to pursue individualized relief through arbitration, without derailing the settlement for other class members. Their intervention ensures their distinct interests are safeguarded, particularly against a settlement that does not address their specific prayers for relief.

Permissive intervention should be granted as the Intervenors provide necessary elements to the proceedings without impeding the overall settlement.

## **CONCLUSION**

The Intervenors have a protectable interest in the subject matter of this case and meet the four elements for intervention as of right under Rule 24(a): the motion is timely, they have a direct interest in the case, that interest would be impaired if intervention is denied, and the existing parties do not adequately represent their interests.

For these reasons, the Court should grant the Intervenors' motion to intervene and grant them leave to file the Opposition to Proposed Injunction and Opt-Out Procedures Sought by Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, attached hereto as Exhibit A.  A Proposed Order granting this Motion is attached hereto as Exhibit B.

Dated: September 26, 2024.

Respectfully submitted,

Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Los Angeles, CA 90212
astraus@milberg.com

By: _Alex R. Straus_
Alex R. Straus, Esq.

*Attorney for Proposed Intervenors Vivian Gonczi,
Howard Packer, and Lance Alligood*

*NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT*
Case No.: 3:24-md-03098-EMC