Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Los Angeles, CA 90212
Telephone: (866) 252-0878
Facsimile:  (865) 522-0049
astraus@milberg.com

*Attorney for Proposed Intervenors
Vivian Gonczi, Howard Packer,
and Lance Alligood*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No.: 3:24-md-03098-EMC |
| | **NOTICE OF CORRECTED[1] MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT** |
| | Judge: Hon. Edward M. Chen |
| | Courtroom: 5, 17th Floor |
| | Hearing Date: October 17, 2024 |
| | Hearing Time: 1:30 p.m. |

## <u>NOTICE OF CORRECTED MOTION AND MOTION TO INTERVENE</u>

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE that on October 17, 2024, at 1:30 p.m., or on such other date or time as this matter may be heard, in the courtroom of the Honorable Judge Edward M. Chen,

---

[1] Proposed Intervenors and their Counsel file this "Corrected Motion" in the interest of full transparency (*see infra* at 9) and to correct certain statements made in their original motion and supporting papers after meeting and conferring with Class Counsel.

located at 450 Golden Gate Avenue, 17th Floor, Courtroom 5, San Francisco, California 94102, Intervenors Vivian Gonczi, Howard Packer, and Lance Alligood (collectively, "Intervenors") will and hereby do, move for an order allowing intervention under Federal Rule of Civil Procedure Rule 24(a) as a matter of right or, in the alternative, under Rule 24(b) for permissive intervention, for the purpose of opposing the proposed class settlement before the Court.

This Motion is made to protect the rights of claimants actively pursuing individual arbitrations against 23andMe pursuant to a contract, specifically 23andMe's own Terms of Service, which require individual arbitration as the exclusive means by which to resolve any and all disputes with the company. The proposed Intervenors are among approximately 4,966 claimants who are represented by the undersigned counsel and who previously provided notices to 23andMe of their respective individual claims and have initiated their individual arbitrations against the company regarding the compromise of their genetic data via the 23andMe data breach at issue before this Court (collectively, "Claimants"). These Claimants have ongoing arbitration proceedings based on specific damages arising from the exposure of their highly sensitive genetic information by 23andMe. The class settlement, as currently proposed, requests extraordinary and unprecedented relief in the form of an injunction of thousands of pending arbitrations, which would effectively extinguish Intervenors and Claimants' private contractual rights to pursue arbitration where these Claimants seek different relief than that afforded under the Class Settlement for the distinct and long-lasting harms they have suffered and will continue to suffer because of 23andMe's data breach. The Motion will be heard on this Notice of Motion and Memorandum in Support below, as well as other filings and arguments that may be submitted and the Proposed Order filed herewith.

Dated: October 1, 2024

Respectfully submitted,

*/s/ Alex R. Straus*
Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90210
Telephone:  (866) 252-0878
Facsimile:  (865) 522-0049
astraus@milberg.com

*Attorney for Proposed Intervenors Vivian Gonczi,*
*Howard Packer, and Lance Alligood*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………..6

STATEMENT OF RELEVANT FACTS ..................................................................... 8

   A.   Status of the Class Action Litigation ............................................... 8

   B.   Status of the Mass Arbitration Proceedings .................................... 10

   C.   The Settlement and the Burdensome Opt-Out Process ..................... 11

ARGUMENT ........................................................................................... 12

   A.   The Proposed Intervenors Satisfy the Requirements of Rule 24(a) and Should Be Allowed to Intervene as a Matter of Right ............................................. 12

   B.   Alternatively, Proposed Intervenors Should Be Entitled to Permissive Intervention ....... 21

CONCLUSION ......................................................................................... 21

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Alaniz v. Tillie Lewis Foods,*
  572 F.2d 657 (9th Cir. 1978) .................................................................. 15
*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir.2003) ................................................................. 21
*California ex rel. Lockyer v. United States,*
  450 F.3d 436 (9th Cir. 2006) .................................................................. 17
*California v. Tahoe Reg'l Planning Agency,*
  792 F.2d 775 (9th Cir. 1986) .................................................................. 21
*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
  595 U.S. 267, 142 S. Ct. 1002, 212 L.Ed.2d 114 (2022) ...................... 14
*County of Elko,*
  298 F.3d 1122 (9th Cir. 2002) ........................................................... 15, 16
*County of Orange v. Air California,*
  799 F.2d 535 (9th Cir. 1986) .................................................................. 13
*Day v. Apoliona,*
  505 F.3d 963 (9th Cir. 2007) .................................................................. 15
*Glass v. UBS Fin. Servs., Inc.,*
  No. 06-4068, 2007 WL 474936 (N.D. Cal. Jan. 17, 2007) ................. 14, 15
*Prete v. Bradbury,*
  438 F.3d 949 (9th Cir. 2006) .................................................................. 13
*Smith v. Los Angeles Unified Sch. Dist.,*
  830 F.3d 843 (9th Cir. 2016) .................................................................. 18
*Southwest Ctr. for Biological Diversity v. Berg,*
  268 F.3d 810 (9th Cir. 2001) .................................................................. 18
*Spangler v. Pasadena City Bd. of Educ.,*
  552 F.2d 1326 (9th Cir. 1977) ................................................................ 23
*United States v. City of Los Angeles,*
  288 F.3d 391 (9th Cir. 2002) .................................................................. 18
*United States v. Oregon,*
  839 F.2d 635 (9th Cir. 1988) .................................................................. 13
*United States v. Oregon,*
  913 F.2d 576 (9th Cir. 1990) .................................................................. 13

## <u>Rules</u>

Federal Rule of Civil Procedure Rule 24(a) ...................................... 1, 5, 10

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This Motion to Intervene is filed on behalf of Intervenors Vivian Gonczi, Howard Packer, and Lance Alligood, who are among approximately 5,000 Claimants represented by the undersigned counsel and who are currently engaged in arbitration proceedings against 23andMe pending before JAMS. Intervenors and similarly situated Claimants were directly affected by the April 2023 data breach caused by 23andMe's inadequate data security policies and practices, which allowed unidentified third parties to download and sell extraordinarily sensitive personally identifiable information about their genomics, DNA profiles, ancestries and ethnicities on the Dark Web. The data of nearly one million 23andMe users with alleged Jewish ancestry, including their home addresses, was sold by cyber criminals on hacking platforms.[2] The exposure of this data, is particularly dangerous given the current volatile political climate, including the war in the Middle East.[3]

Intervenors assert that the proposed class action settlement seeks extraordinary and unprecedented relief.  It seeks to strip away contractual rights between private parties to the benefit of 23andMe and detriment of the Claimants and Class Members. At the time they signed up for 23andMe's services, 23andMe forced these Claimants and Class Members to surrender their rights to sue in court over any and all disputes and controversies and instead required them to pursue their claims through private arbitration proceedings.  When 23andMe instituted this

---

[2] Oldfield, Ariella, *23andMe faces lawsuit as hackers sell information on users with Jewish heritage*, THE TIMES OF ISRAEL, Jan. 31, 2024, *available at* https://www.timesofisrael.com/23andme-faces-lawsuit-as-hackers-sell-information-on-users-with-jewish-heritage/ (last accessed Sept. 25, 2024).

[3] Antisemitic incidents increased by 36% in the United States in 2022 with more than 3,500 incidents, many of which were assaults targeting Jewish people. Sganga, Nicole, *Highest number of antisemitic incidents since 1979 recorded last year, Anti-Defamation League finds*, CBS NEWS, Mar. 23, 2023, *available at* https://www.cbsnews.com/news/antisemitic-incidents-most-since-1979-anti-defamation-league-annual-report/ (last accessed Sept. 25, 2024).

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

adhesive contract and arbitration requirement, it hoped it would be immune from lawsuits and liability, fully believing no consumer would ever waste their time or money to actually go through the arbitration process. 23andMe was wrong. In the wake of the data breach, thousands of Claimants sought to enforce their rights through 23andMe's own arbitration process. Faced with the reality that 23andMe's own arbitration process no longer benefitted 23andMe, 23andMe now seeks to avoid the very dispute resolution process it created. Essentially, 23andMe seeks to play a game of "heads I win, tails you lose." In other words, if 23andMe thought it could avoid liability through the arbitration process, there is no doubt 23andMe would seek to invoke that arbitration clause to kill a lawsuit. But now that the arbitration clause no longer serves to benefit 23andMe, it has completely disavowed that clause and rushed to reach a class wide settlement that could impair the contractual rights of Claimants and Class Members. The proposed settlement before the Court threatens to enjoin class members, including Intervenors and Claimants, from pursuing ongoing private arbitrations unless and until they affirmatively opt out within a narrow timeframe set by the settlement. There is no basis to enjoin these ongoing arbitrations. Moreover, the opt-out provisions, as outlined in paragraphs 73(h) and 80-88 of the Settlement Agreement, unfairly burden Claimants by requiring strict compliance with a convoluted opt-out process clearly geared towards making it difficult for Claimants and Class Members to opt out and pursue individual arbitration. Furthermore, Claimants seek relief that different than the relief being afforded under the proposed settlement, including, for example, the incorporation of logging and monitoring programs and requiring annual SOC 2 Type 2 assessments to ensure long-term protection and independent oversight of 23andMe's data security practices.

This Motion is brought under Federal Rule of Civil Procedure 24(a) for intervention as a matter of right, as Intervenors and Claimants have a protectable interest that will be impaired if the proposed class settlement is approved without their participation. Alternatively, Intervenors seek permissive intervention under Rule 24(b), as their claims share common legal and factual

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

questions with the class action yet focus on the improperly requested injunction of their individual arbitrations through which they seek different relief to address the unique harm caused by the genetic data breach. Pursuant to this Motion, Intervenors seek leave to file the Opposition to Proposed Injunction and Opt-Out Procedures Sought by Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, attached hereto as Exhibit A.

## **STATEMENT OF RELEVANT FACTS**

### A.    **Status of the Class Action Litigation**

In October 2023, 23andMe publicly disclosed that a significant data breach occurred, compromising millions of users' personal and genetic data. Following this announcement, over forty (40) class action lawsuits were filed, all alleging that 23andMe failed to adequately protect user data and violated various consumer protection laws. These lawsuits were consolidated into a Multidistrict Litigation (MDL) in the Northern District of California, overseen by the Honorable Edward M. Chen. On September 12, 2024, the MDL parties reached a proposed settlement which includes a $30 million fund to compensate affected users. While the proposed settlement provides for general monetary compensation, which Intervenors do not take issue with, it requests extraordinary and unprecedented relief by asking this Court to strip away contractual rights between private parties by way of an injunction of thousands of pending private arbitrations. Specifically, ¶ 73.h) of the proposed settlement agreement requests:

> "preliminary injunction of all Settlement Class Members and their representatives from filing, commencing, prosecuting, maintaining, intervening in, conducting, continuing, or participating in any other lawsuit or administrative, regulatory, arbitration or other proceeding based on the Released Claims, unless and until they personally submit a timely request for individual exclusion pursuant to the Settlement Agreement after receiving Notice."

Plaintiff's Proposed Settlement, ECF No. 103-2, ¶ 73(h). Further, Intervenors intend to seek different non-monetary relief than that provided under the Settlement to address the long-term

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

consequences associated with the exposure of genetic data, a central issue for Intervenors and Claimants.

Notably, the request for a preliminary injunction has drawn the attention of the Court, prompting the Honorable Judge Chen to question of whether "either party discussed this requested preliminary injunction with the attorneys representing the plaintiffs in the state court cases or the claimants in the arbitration proceedings?" Order Re Supp. Briefing and/or Evidence, ECF No. 111, ¶ P. Intervenors and Claimants submit this Motion to advise the Court they unequivocally oppose the requested preliminary injunction.

**B.    Milberg's Role in the Class Action Proceedings**

The undersigned law firm (Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg")) filed four (4) class action complaints as local counsel for other law firms related to the 23andMe data incident that were ultimately consolidated as part of these MDL proceedings. *See J.S. et al. v. 23andMe, Inc.*, No. 23-cv-05234, ECF No. 1 (filed 10.12.2023), *Greenberg v. 23andMe, Inc.*, No. 23-cv-5302, ECF No. 1 (filed 10.17.2023); *Hofffman et al. v. 23andMe, Inc.*, No. 23-cv-05332, ECF No. 1 (filed 10.19.2023); *Dube v. 23andMe, Inc.*, No. 23-cv-5768, ECF No. 1 (filed 11.9.2023). Specifically, Milberg associate John J. Nelson—one of approximately 120 lawyers at the firm—served in a purely local counsel capacity in these proceedings for various out of state law firms. Several of these clients for which Milberg served as local counsel ultimately approved the settlement before the Court. Mr. Nelson may have received emails from Class Counsel about the proposed settlement, including the terms now complained of (i.e., the injunction and opt out provisions) but he was not substantively involved in the settlement discussions and did not advise any of the Plaintiffs to approve the settlement. Mr. Nelson has now withdrawn from his limited role as local counsel in these proceedings. Milberg files this corrected Motion in the interest of transparency, so the Court is aware that Milberg had a limited role in the class action proceedings.

While Class Counsel and/or 23andMe may contend the Milberg law firm tacitly "signed off" on the proposed settlement and its terms by serving as local counsel in the proceedings and not previously voicing an objection to the proposed settlement, Milberg respectfully disagrees with this contention given its limited role in the proceedings.  In any event, and as the Court knows, the Court has an independent obligation under Rule 23 to review whether the proposed terms are fair and reasonable.

### C.      Status of the Mass Arbitration Proceedings

Beginning in December 2023, the undersigned counsel sent 23andMe notices of dispute on behalf of thousands of Claimants regarding its April 2023 data breach. And in February 2024, one hundred (100) Claimants filed individual demands for arbitration of their claims with JAMS in accord with 23andMe's governing Terms of Service.  Claimants and 23andMe paid their respective filing fees, which amounted to hundreds of thousands of dollars, to JAMS and confirmed their readiness to proceed. JAMS is currently in the process of assigning arbitrators to preside over these individual matters. The next step will be for those arbitrators to schedule preliminary hearings and enter scheduling orders. Notices of dispute were sent to 23andMe on behalf of thousands of additional Claimants throughout April and May 2024.  In July 2024, an additional 4,866 Claimants submitted individual demands for arbitration of their claims to JAMS where they remain pending.

Intervenors and Claimants' claims seek relief for 23andMe's negligence in safeguarding their highly sensitive personal and genetic data, and the long-term risks occasioned by the breach, including potential misuse of genetic information and future discrimination.  Significantly, the specific relief requested by Intervenors and Claimants in their demands is different than the remedies included in the proposed class action settlement. Claimants intend to seek significantly more money through the arbitration proceedings than they will likely recover by simply participating as absent class members in this Settlement.  Moreover, they also seek different non-monetary relief than that provided for under the Settlement, including, for example, logging and

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

monitoring programs, ongoing independent oversight through annual SOC 2 Type 2 assessments, and additional data security protocols to ensure continuous protection of genetic data. Claimants seek these remedies to address the unique harm caused by exposure of their genetic information.

### D.    The Settlement and the Burdensome Opt-Out Process

The proposed class settlement improperly includes a preliminary injunction provision which, if approved, would enjoin *all* class members—including Intervenors and Claimants who are currently pursuing arbitration—from filing, commencing, or participating in any arbitration or related proceedings unless they submit a timely request for exclusion. This injunction would effectively bar Intervenors and Claimants from continuing to pursue their claims in arbitration unless and until they go through the onerous opt-out procedure proposed under the class settlement. Plaintiff's Proposed Settlement, ECF No. 103-2, ¶ 73(h). The proposed opt-out procedures unreasonably require any class members wanting to opt out of the class to submit a written request that must:

- Include the case name of the Litigation: In Re: 23andMe, Inc., Customer Data Security Breach Litigation, Case No. 24-md-03098-EMC;

- Identify the name and current email and mailing addresses of the Person seeking exclusion from the Settlement;

- Identify the 23andMe username or email associated with the 23andMe account for the Person seeking exclusion from the Settlement;

- Be individually signed by the Person seeking exclusion using wet-ink signature, DocuSign, or other similar process for transmitting authenticated digital signatures;

- Include an attestation clearly indicating the Person's intent (to be determined by the Notice and Claims Administrator) to be excluded from the Settlement;

- Attest that the Person seeking exclusion had a 23andMe user account as of August 11, 2023.

Plaintiff's Proposed Settlement, ECF No. 103-2, ¶ 81.   Even opt-out requests submitted electronically via the claims portal require jumping through an additional hoop by verifying the request within three business days of the Opt-Out Deadline, which is clearly intended to void otherwise valid opt-out requests.  *Id.* at ¶ 82.

Significantly, the proposed opt-out procedures do not allow for the undersigned counsel to opt their own clients (i.e., Intervenors and Claimants) out of the class en masse or otherwise, despite the fact that Intervenors and Claimants are represented by counsel and, as 23andMe has full knowledge, have expressed their intent to continue their individual arbitrations. Indeed, the settlement agreement expressly states that any such requests seeking exclusion on behalf of more than one individual shall be deemed invalid. *Id.* at ¶ 83.

Additionally, as discussed above, Intervenors and Claimants intend to seek monetary and non-monetary remedies that are different than the remedies provided for under the proposed class settlement. This fact also militates in favor of preserving the arbitration claimants' ability to pursue the specifically tailored relief sought in the ongoing arbitration proceedings.

## **ARGUMENT**

### A.   **The Proposed Intervenors Satisfy the Requirements of Rule 24(a) and Should Be Allowed to Intervene as a Matter of Right.**

A court must allow intervention to anyone who "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). In order to intervene as a matter of right, a prospective intervenor must show: (1) the motion is timely, (2) the applicant has a significantly protectable interest relating to the property or transaction that is the subject of the action, (3) the disposition of the action may impair or impede the applicant's ability to protect that interest, and (4) the existing parties do not adequately represent the applicant's interest. *United States v. Oregon*, 839 F.2d 635, 637 (9th Cir. 1988). Courts interpret the requirements for

intervention broadly, favoring intervention where possible. *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (internal quotation marks omitted).

### 1.      The Application to Intervene Is Timely

Timeliness is the "threshold requirement" for a party seeking to intervene under Rule 24(a). *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). Three factors determine whether a motion is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986). Here, the proposed settlement has only now reached the stage where the MDL parties have agreed on terms, and the plaintiffs having moved this Court for conditional certification of the settlement class and preliminary approval. ECF No. 103-1. The Motion to Intervene, therefore, is at this point timely and appropriate. Courts routinely find intervention in response to a proposed settlement to be timely when intervenors act promptly upon learning a proposed settlement may adversely affect their interests. *E.g., Glass v. UBS Fin. Servs., Inc.*, No. 06-4068, 2007 WL 474936, at *3 (N.D. Cal. Jan. 17, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009). Timeliness is generally measured from the point when the proposed intervenor receives notice the settlement terms may be contrary to their interests, not from the beginning of the litigation. *Id.*

In this case, Intervenors moved to intervene shortly after the proposed settlement  was publicly filed and it was revealed that Claimants' private arbitration proceedings could potentially be enjoined and they would have to undergo a burdensome opt-out procedure. Intervenors also learned that the relief afforded under the Settlement does not encompass what they seek in private arbitration. The motion to intervene was filed promptly on September 26, 2024, only fourteen days after the settlement became public, well within the time frame allowed for intervention (with no undue delay) and prior to any related hearings or issuance of notice to the putative class. It is important to remember the "*most important circumstance* relating to timeliness is that the [proposed intervenors] sought to intervene as soon as it became clear that

[their] interests would no longer be protected by the parties in this case." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279-80, 142 S. Ct. 1002, 212 L.Ed.2d 114 (2022) (cleaned up and emphasis added). That "most important" consideration strongly weighs in favor of intervention here.

The second factor asks whether intervention will prejudice the existing parties. Prejudice occurs when intervention would expose a negotiated settlement to contrary authority, delay the relief being sought, or compromise settlements reached after extensive negotiations. *Glass*, 2007 WL 474936, at *4-5; *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978). *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (although the State of Hawaii could have sought intervention at any time during two years of proceedings, its motion did not cause prejudice to plaintiffs. However, when potential intervenors act as soon as they have notice that a proposed settlement may be contrary to their interests, as Intervenors did here, courts generally find no prejudice. *Carpenter v. County of Elko*, 298 F.3d 1122, 1125 (9th Cir. 2002) ("[T]he interveners acted promptly after they had notice that the government may not have adequately represented their interests in negotiating the settlement[.]");  *Day*, 505 F.3d at 965 ("A would-be intervenor's delay in joining the proceedings is excusable when the intervenor does not know or have reason to know that his interests might be adversely affected by the outcome of litigation.").

Here, there is no prejudice to the existing parties because the Intervenors acted as soon as they had notice to promptly protect their rights. Conversely, the proposed settlement—if approved without intervention—threatens to extinguish Intervenors and Claimants' ability to continue pursuing their arbitrations where they seek relief not encompassed by the proposed settlement. The proposed settlement purports to resolve claims on behalf of *all* affected users. ECF No. 103-1, p. 8. But the proposed class settlement places an undue burden on the Intervenors and Claimants, effectively barring them from pursuing their individual arbitrations as required under 23andMe's Terms of Service and, by extension, prevents them from seeking relief that they could not obtain if they simply participated in the class settlement as an absent class member.

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

Intervention will not delay or disrupt the current settlement proceedings. Intervenors do not seek to derail the MDL settlement for those who wish to participate in it. Rather, they seek to ensure their interests in arbitration and, by extension, the relief they seek in arbitration, are fully represented and protected if their claims are encompassed by the proposed settlement. Therefore, allowing intervention will not unduly prejudice the existing parties or cause significant delays.

The third factor—the reason for and length of any delay—also indicates in favor of timeliness. As discussed above, this motion was filed shortly after the settlement terms were made public on September 12, 2024. The Intervenors acted promptly, filing this motion within two weeks of learning about the class settlement and its terms. There was no undue delay in bringing this Motion and the Intervenors have moved swiftly to protect their interests.

Courts acknowledge that, when settlement negotiations have been conducted confidentially, potential intervenors lack notice that their interests are unprotected until the settlement terms are disclosed. *E.g., Carpenter*, 298 F.3d at 1125 ("[T]he mediation proceedings had been conducted under an order of confidentiality and the settlement negotiations were not conducted in open court.  By entering into confidential settlement discussions, the government does not give notice that it may not be adequately representing the interests of any group of citizens."). Here, the Intervenors obviously could not take any action until the terms of the proposed settlement were publicly filed and they did so within two weeks of that filing. The Intervenors have therefore moved to intervene at the earliest possible moment.

In sum, this Motion is timely under the standards established by the Ninth Circuit. The proposed Intervenors acted promptly after the terms of the proposed class settlement became public, and their intervention will not prejudice the existing parties or disrupt the settlement process. Therefore, the timeliness requirement for intervention is satisfied.

### 2. The Proposed Intervenors Have the Requisite Interest in the Subject Matter of This Case

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

The Intervenors have a significant and legally protectable interest in the subject matter of this case. Under Rule 24(a)(2), intervention must be allowed upon demonstration of an interest in the underlying litigation that is "significantly protectable" and directly affected by the outcome of the case. A party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). Here, the arbitration claimant's rights are directly protected under privacy and contract laws, as they seek specific relief for the exposure of their sensitive genetic data. These claimants have a direct and substantial interest in ensuring that the proposed class settlement does not hinder their ability to pursue the specific remedies they are entitled to under arbitration.

Here, Intervenors and Claimants have a direct and substantial interest in ensuring the proposed class settlement does not extinguish their ability to pursue their pending individual arbitrations before JAMS or to seek the specific relief discussed above through arbitration. If the class settlement is approved in its current form, Paragraph 73(h) will prevent *all* class members—including Intervenors and Claimants—from filing or continuing arbitration proceedings unless they individually comply with a cumbersome opt out procedure within a narrow timeframe. This provision directly threatens Intervenors' and Claimants' ongoing claims and right to pursue arbitration and, by extension, the ability to obtain both monetary and non-monetary relief they could otherwise not obtain if they simply participated as an absent class member in the proposed settlement.

Courts consistently determine Rule 24(a)(2) should be broadly construed in favor of intervention. *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). To intervene as of right, the proposed intervenors must show they have a protectable interest that may be

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

impaired by the litigation. In *Smith v. Los Angeles Unified Sch. Dist.*. the court recognized that denying intervention could impair the ability of a sub-class to safeguard their interest, particularly where their rights were threatened by the policies and agreements formed within the class action framework. *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 863 (9th Cir. 2016) (holding that denying intervention would impair a subclass' ability to protect its interest, particularly where the class action framework threatened the rights of the subclass to challenge district-wide policies)). Similarly, here, the proposed settlement's injunction threatens the arbitration claimants' ability to obtain  they could otherwise not obtain if they simply participated as an absent class member in the proposed settlement.

In sum, the Intervenors identify a unique, protectable interest in pursuing arbitration which will be impaired if the proposed class settlement is approved in their absence. By enjoining all arbitrations, the settlement risks leaving Intervenors and Claimants without the opportunity to proceed with their respective arbitrations or obtain the specific relief they seek. This substantial impairment justifies intervention as a matter of right under Rule 24.

### 3. Disposition of the Case Will, as a Practical Matter, Substantially Impair or Impede Proposed Intervenors' Interests.

A proposed intervenor's interests are impaired "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (citing advisory committee's notes). The proposed class settlement substantially affects the Intervenors' interests because it threatens to extinguish their private contractual rights, including the ability to pursue their pending arbitrations and the different monetary and non-monetary relief sought through arbitration.

Intervenors and Claimants have already initiated arbitration proceedings against 23andMe (spending hundreds of thousands of dollars in the process), seeking relief they could otherwise not obtain if they simply participated as an absent class member in the proposed

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

settlement. Significant time and money has been spent preparing, filing, and pursuing their demands in arbitration. Claimants believe they stand to recover far more monetarily through private arbitration than by participating as absent class members in the proposed settlement before the Court.  Moreover, the non-monetary relief they seek is different than what they could obtain if they simply participated as an absent class member.  For example, the arbitration demands the implementation of logging and monitoring programs, which are essential for real-time oversight of data security and detection of potential future breaches. Furthermore, the arbitration calls for a third-party assessor to conduct SOC 2 Type 2 assessments on an annual basis to independently evaluate 23andMe's compliance with the terms of any award.

Intervenors and Claimants cannot obtain the relief they seek through the proposed class settlement. Plaintiff's Proposed Settlement, ECF No. 103-2, ¶¶ 70-72. Even though it includes measures such as multi-factor authentication, annual audits, and password protection, these measures (while positive) are different than the measures Claimants and Intervenors intend to pursue at arbitration, including, for example, SOC 2 Type 2 assessments, which the arbitration claimants believe are critical for ensuring 23andMe maintains robust data protection protocols over time. Additionally, Intervenors and Claimants intend to seek ongoing third-party validation of data deletion and secure handling of genetic information. Intervenors and Claimants cannot obtain this relief if they participate as absent class members in the proposed settlement.

If the proposed class settlement is approved in its current form, it would have far reaching implications.  Essentially, Parties could strip away private contractual rights when they no longer suit them under the guise of the All Writs Act by way of an injunction that prevents class members, including Intervenors and Claimants, from pursuing their ongoing private arbitration proceedings unless and until they jump through various hoops such as the onerous opt-out procedures set forth in the Settlement Agreement. Settlement Agreement, Paragraph, ¶ 73(h). This provision directly threatens Intervenors and Claimants' ability to obtain the different monetary and non-monetary relief they seek.

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

The opt-out process is not straightforward and imposes unnecessary burdens on class members, particularly the nearly 5,000 arbitration claimants. It requires claimants to submit a variety of detailed personal information—including current and past email addresses, 23andMe account details, and a signed attestation—all within a narrow timeframe. Even after class members opt out, they have to then verify their opt-out, essentially requiring class members to opt out of the settlement twice. These stringent requirements, combined with the demand for a personal signature, create significant obstacles, making it difficult for claimants to opt out.

This process seems tailored to suppress the impact and voice of the arbitration claimants by making it impractical for many to meet the complex and time-sensitive requirements. The burdensome opt-out process increases the likelihood that many will inadvertently lose their right to pursue arbitration, including a greater monetary recovery and different non-monetary relief than that which is provided for under the proposed settlement.

In sum, the proposed class settlement seeks to completely bar Intervenors' pending arbitrations and prevent them from pursuing relief that is different than what they would obtain if they simply participated as an absent class member. The potential loss of their right to pursue an ongoing arbitration, along with the opportunity to obtain different relief that Intervenors believe will directly address the exposure of their sensitive genetic data, constitutes a significant impairment of their protectable interests. As such, the approval of the class settlement, without intervention, may substantially impair or impede the Intervenors' ability to safeguard their rights. This unquestionable risk to their interests makes intervention necessary under Rule 24(a)(2).

### 4.   Proposed Intervenors Are Inadequately Represented by Existing Parties

To determine whether representation is adequate, courts consider: (1) whether a party before the court will make the same arguments the prospective intervenor would; (2) whether the present party is capable and willing to make those same arguments; and (3) whether the intervenor would offer necessary elements to the proceedings that other parties would neglect.

1    *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986). Although the

2    burden is on the proposed intervenors to show that representation is inadequate, this burden is

3    minimal and may be satisfied by a showing that representation of their interests by parties

4    presently before the court "may be" inadequate. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th

5    Cir.2003). The Intervenors focus on preserving their right to continue their respective arbitration

6    proceedings and to seek specific, different relief through arbitration, as opposed to that which is

7    being offered by the class settlement. The Intervenors and Claimants already initiated arbitration

8    proceedings and submitted their arbitration demands to JAMS months before the class settlement

9    was presented to the Court. Their primary interest lies in ensuring they have an unimpaired

10   opportunity to continue pursuing their arbitrations and seek the relief to which they believe they

11   are entitled under the circumstances. At bottom, Intervenors and Claimants simply cannot obtain

12   the relief they seek through the proposed class settlement. The Intervenors' interests are therefore

13   unlikely to be fully represented by the class representatives who are seeking different relief (both

14   monetary and non-monetary) in the class proceedings. Moreover, the proposed settlement

15   extinguishes for all class members, including the Intervenors, all rights to seek or to continue

16   arbitration unless they strictly comply with an opt-out process that is clearly designed to

17   discourage participation and prevent opting out. By requiring detailed personal information,

18   multiple account details, and personal signature within a narrow timeframe, the process imposes

19   unnecessary hurdles. These complex requirements make it difficult for claimants to opt out,

20   effectively depriving them of their contractual right to arbitrate and steering them into a proposed

21   settlement that affords different relief than what they would seek through arbitration. This

22   provision directly conflicts with the Intervenors' interests, as they seek to continue their

23   arbitrations in pursuit of different relief afforded under the proposed class settlement. The tension

24   between the different relief sought by the MDL class representatives and the Intervenors

25   demonstrates why the Intervenors' interests are not adequately represented by the existing MDL

26   parties.

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

The Intervenors' distinct interests in obtaining different relief through arbitration cannot be adequately represented by the MDL class, justifying intervention under Rule 24(a)(2).

**B. Alternatively, Proposed Intervenors Should Be Entitled to Permissive Intervention**

Even if the Court finds that intervention as of right is not warranted, the proposed Intervenors should be granted permissive intervention under Rule 24(b)**.** Permissive intervention is appropriate when the applicant's claim shares a common question of law or fact with the main action and will not unduly delay or prejudice the adjudication of the original parties' rights. *Id.* Here, both the class members and Intervenors seek relief for 23andMe's failure to protect sensitive personal and genetic information, making the legal and factual issues common. Courts regularly allow permissive intervention when the intervenor provides a unique perspective not fully represented by existing parties. *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). The Intervenors' concerns regarding the continued pursuit of individual arbitrations and the long-term risks of genetic data exposure, including potential misuse and discrimination, offer a valuable perspective that complements the class action and may not otherwise be presented to the Court.

Permissive intervention will not cause undue delay or prejudice. The Intervenors seek only to protect their right to pursue individualized relief through arbitration, without derailing the settlement for other class members. Their intervention ensures their distinct interests are safeguarded, particularly when they seek different relief than that which is afforded under the proposed class settlement.

Permissive intervention should be granted as the Intervenors provide necessary elements to the proceedings without impeding the overall settlement.

## **CONCLUSION**

The Intervenors have a protectable interest in the subject matter of this case and meet the four elements for intervention as of right under Rule 24(a): the motion is timely, they have a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

direct interest in the case, that interest would be impaired if intervention is denied, and the existing parties do not adequately represent their interests.

For these reasons, the Court should grant the Intervenors' motion to intervene and grant them leave to file the Opposition to Proposed Injunction and Opt-Out Procedures Sought by Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, attached hereto as Exhibit A.  A Proposed Order granting this Motion is attached hereto as Exhibit B.

Dated: October 1, 2024.

Respectfully submitted,

*/s/ Alex R. Straus*
Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90210
(919) 600-5000
astraus@milberg.com

*Attorney for Proposed Intervenors Vivian Gonczi,*
*Howard Packer, and Lance Alligood*

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC

## **CERTIFICATE OF SERVICE**

I, Alex R. Straus, an attorney, hereby certify that on October 1, 2024, I caused a true and correct copy of the foregoing document to be filed and served electronically via the Court's CM/ECF system.

*/s/ Alex R. Straus*
Alex R. Straus

NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM IN SUPPORT
CASE NO.: 3:24-md-03098-EMC