Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Los Angeles, CA 90212
Telephone: (866) 252-0878
Facsimile:  (865) 522-0049
astraus@milberg.com

*Attorney for Proposed Intervenors*
*Vivian Gonczi, Howard Packer, and Lance Alligood*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No.: 3:24-md-03098-EMC |
| | **INTERVENORS' MEMORANDUM IN OPPOSITION TO PROPOSED INJUNCTION AND OPT-OUT PROCEDURES SOUGHT BY PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Judge: Hon. Edward M. Chen |
| | Courtroom: 5, 17th Floor |
| | Hearing Date: October 17, 2024 |
| | Hearing Time: 1:30 p.m. |

OPPOSITION TO MOTION FOR APPROVAL OF PROPOSED SETTLEMENT
CASE NO.: 3:24-md-03098-EMC

1

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 4

ARGUMENT ............................................................................................................ 4

   I.    The Proposed Injunction Is Not Authorized Under the All Writs Act and Would Stifle the Intervenors' Right to Arbitrate Under the FAA. ......................................................... 4

   II.   The Proposed Opt-Out Provisions are Unduly Harsh and Should Not Be Adopted. ..... 8

CONCLUSION ....................................................................................................... 11

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO MOTION FOR APPROVAL OF PROPOSED SETTLEMENT
CASE NO.: 3:24-md-03098-EMC

1

## TABLE OF AUTHORITIES

2

**Page(s)**

**Cases**

3

4

*Abernathy v. DoorDash, Inc.*,
  438 F. Supp. 3d 1062 (N.D. Cal. 2020) ............................................................ 9
*Arena v. Intuit Inc.*,
  No. 19-cv-02546, 2021 WL 834253 (N.D. Cal. Mar. 5, 2021) ...................... 5, 6, 7
*Bushley v. Credit Suisse First Boston*,
  360 F.3d 1149 (9th Cir. 2004) .......................................................................... 4
*Hadley v. Kellogg Sales Co.*,
  No. 16-cv-04955, 2020 WL 836673 (N.D. Cal. Feb. 20, 2020) ........................ 9
*Hartley v. Stamford Towers Ltd. P'ship*,
  36 F.3d 1102, 1994 WL 463497 (9th Cir. 1994) .............................................. 4
*In re Cintas Corp. Overtime Pay Arb. Litig.*,
  No. 06-cv-1781, 2009 WL 1766595 (N.D. Cal. June 22, 2009).................... 4, 10
*In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*,
  71 F.3d 298 (8th Cir. 1995) .......................................................................... 4, 6
*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) ........................................................................ 5
*Morales v. Lexxiom, Inc.*,
  No. -cv-06549, 2011 WL 13180212 (C.D. Cal. Apr. 5, 2011) .......................... 4
*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  523 F.3d 1091 (9th Cir. 2008) .......................................................................... 4
*Newman v. AmeriCredit Fin. Servs., Inc.*,
  No. 11-cv-3041, 2014 WL 12789177 (S.D. Cal. Feb. 3, 2014).......................... 7
*Roberts v. AT&T Mobility LLC*,
  No. 15-cv-03418, 2021 WL 9564450 (N.D. Cal. Mar. 31, 2021) ...................... 6
*Smothers v. NorthStar Alarm Servs., LLC*,
  No. 17-cv-00548, 2019 WL 3080822 (E.D. Cal. July 15, 2019)......................... 7
*Stott v. Cap. Fin. Servs., Inc.*,
  277 F.R.D. 316 (N.D. Tex. 2011) ...................................................................... 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

**Regulations**

20

28 U.S.C. § 1651 .................................................................................................. 4

21

22

**Rules**

23

Fed. R. Civ. P. 23……………………………………………………………………….7

24

**Other Authorities**

25

26

4 Newberg on Class Actions § 13:19 (5th ed. 2011) ............................................ 6

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

Proposed Intervenors, Vivian Gonczi, Lance Alligood, and Howard Packer (collectively, "Intervenors"), are class members who, along with approximately 5,000 additional claimants represented by the undersigned counsel (collectively, "Claimants"), filed arbitration demands with JAMS against Defendant, 23andMe, Inc. ("23andMe"). In December 2023, 23andMe was provided notice of Intervenors' arbitration claims. And between January and May 2024, 23andMe was provided notice of nearly 5,000 additional arbitration claims for other Claimants represented by the undersigned counsel. Demands for arbitration were submitted to JAMS for all 5,000 of these claims between February and July 2024. Intervenors and Claimants each have an immediate right to arbitration under 23andMe's October 4, 2023 Terms of Service, and the Federal Arbitration Act ("FAA"). For these reasons, the Intervenors oppose the anti-arbitration injunction and strict opt-out procedures contained in Plaintiffs' Proposed Settlement, ECF No. 103-2.

## **ARGUMENT**

### I.    **The Proposed Injunction Is Not Authorized Under the All Writs Act and Would Stifle the Intervenors' Right to Arbitrate Under the FAA.**

Plaintiffs' and 23andMe's motion for approval of the proposed class action settlement seeks extraordinary and unprecedented relief. Through their Motion and corresponding proposed settlement, they surreptitiously seek to strip away the contractual rights of millions of individuals by way of an injunction. The proposed injunction would bar Claimants from pursuing their pending arbitrations—a process that 23andMe required Claimants agree to as a condition for their service—to the benefit of 23andMe and the detriment of the Claimants and Class Members. Make no mistake about it: If enforcing arbitration would benefit 23andMe, it would have utilized that clause to kill the lawsuits filed in this Court. But because arbitration no longer serves to benefit 23andMe, they are seeking to disavow their contractual obligation to the detriment of the Claimants. 23andMe cannot "have its cake and eat it too."

OPPOSITION TO MOTION FOR APPROVAL OF PROPOSED SETTLEMENT
CASE NO.: 3:24-md-03098-EMC

In seeking to enjoin all pending arbitrations, Plaintiffs overstate the authority granted by the All Writs Act and do not address the rights granted to arbitration claimants by the FAA. Under the All Writs Act, courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. "However, parallel proceedings in different forums do not inherently compromise a court's jurisdiction. . . . The All Writs Act is wholly discretionary, and enjoining a parallel action is an extraordinary remedy." *See Morales v. Lexxiom, Inc.*, No. -cv-06549, 2011 WL 13180212, at *2 (C.D. Cal. Apr. 5, 2011) (citing *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1100 n.13 (9th Cir. 2008) ("[T]he mere fact that some other court might complete its proceedings before the district court was able to complete the proceedings in this case does not justify an injunction.")).

By seeking to enjoin thousands of pending *arbitrations*, the Motion seeks relief that is not only "extraordinary" but also "disfavored" under the FAA. As this Court held, "[t]he [FAA] represents Congress's intent 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.' *It is for these reasons that stays of arbitration are disfavored*." *In re Cintas Corp. Overtime Pay Arb. Litig.*, No. 06-cv-1781, 2009 WL 1766595, at *5 (N.D. Cal. June 22, 2009) (emphasis added) (citing *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004)).

To be sure, some courts held that the All Writs Act may authorize "an injunction barring arbitration of a dispute settled in a *prior* class action," thereby "protect[ing] the *res judicata* effect of that *prior* judgment." *In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 302 (8th Cir. 1995) (emphasis added and internal citation omitted); *accord Hartley v. Stamford Towers Ltd. P'ship*, 36 F.3d 1102, 1994 WL 463497, at *4 (9th Cir. 1994) (unpublished) (case where arbitration was filed after class settlement and was precluded by "the releases granted by the District Courts in the class action judgments"). But that is not the situation here.

The proposed injunction here would stop thousands of arbitrations that are already in progress, including those filed by the Intervenors. Plfs' Memo., at 31, ECF No. 103-1 (admitting

OPPOSITION TO MOTION FOR APPROVAL OF PROPOSED SETTLEMENT
CASE NO.: 3:24-md-03098-EMC

as much). No class settlement has been approved. Nor has any final judgment been entered. Enjoining these arbitrations is therefore not a proper exercise under the All Writs Act. In this situation, "[s]uch injunctions raise serious concerns." *Arena v. Intuit Inc.*, No. 19-cv-02546, 2021 WL 834253, at \*11 (N.D. Cal. Mar. 5, 2021) (explaining that a pre-approval injunction is "an extraordinary measure best reserved for extraordinary circumstances").

The proposed injunction would also violate Intervenors' rights under the FAA. In *Piper*, the Eighth Circuit reversed an anti-arbitration injunction because, "[a]lthough the court . . . has wide discretion to control a class action, including the opt-out process, that discretion must be exercised consistent with the policies and principles of the FAA when a class member *with an immediate right to arbitrate its claim* seeks to opt out." 71 F.3d at 304 (emphasis added). While the district court found that arbitration "'could jeopardize' the 'carefully negotiated' class action settlement," the Eighth Circuit "conclude[d] that this is an insufficient basis upon which to limit [claimant's] rights under the FAA." *Id*. at 302-33. Simply put, the All Writs Act does not provide authority to enjoin pending arbitrations when, as here, no class judgment has been entered and the claimants have an "immediate right to arbitrate." *Id*. at 304.

The Eleventh Circuit reached the same conclusion. It rejected an argument that arbitration would threaten a judgment's preclusive effect, concluding the district court "erred in enjoining arbitration under the All Writs Act." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1110 (11th Cir. 2004) ("[T]he [All Writs] Act allows district courts to issue injunctions only 'in aid of their jurisdiction.' The court's brief discussion . . . did not even begin to explain how allowing an arbitration involving arbitrable issues to proceed—even if those claims were nonjusticiable— threatened or undermined either its jurisdiction over a pending matter (the remaining nonarbitrable claims), or any previous orders it entered."); *see id.* at 1113 ("[T]he court was not empowered to enjoin arbitration of the nonarbitrable claims under the All Writs Act.").

The reasoning of *Piper* and *Klay* applies here. This Court employed similar reasoning when it refused to enjoin thousands of pending arbitrations, even after a proposed class settlement

OPPOSITION TO MOTION FOR APPROVAL OF PROPOSED SETTLEMENT
CASE NO.: 3:24-md-03098-EMC

had been brought to the Court's attention. *See Arena*, 2021 WL 834253, at *11 ("To the extent that 'extraordinary' circumstances could support enjoining parallel proceedings, that is not the case here, where the circumstances caution against interfering with proceedings brought by tens of thousands of class members before a class has been finally certified, or a settlement finally approved.").

As in *Arena*, here there are no "extraordinary circumstances" justifying an anti-arbitration injunction. Again, no class settlement has been approved, no final judgment has been entered, and many arbitrations have been pending for some time. The mere fact that the arbitrations overlap with this action is insufficient to justify the "extraordinary remedy" requested.

Plaintiffs also assert "[t]he proposed injunction tracks similar preliminary injunctions approved by this Court," Plfs' Memo., at 40, but support this claim with only a single case, *Roberts v. AT&T Mobility LLC*, No. 15-cv-03418, 2021 WL 9564450 (N.D. Cal. Mar. 31, 2021). While the *Roberts* court enjoined "filling, commencing, prosecuting, or enforcing any action against the Released Parties," *id.* at *6, it did so without mentioning any pending arbitrations. Unlike this case, then, the *Roberts* court did not confront any "class member with an immediate right to arbitrate." *Piper*, 71 F.3d at 304. Because *Roberts* contains no substantive discussion of this issue, it is unpersuasive at best and irrelevant at worst. "[A]lthough courts sometimes 'simply sign the moving parties' proposed preliminary approval order without focusing on the fact that they are thereby enjoining parallel litigation,' issuing such an injunction at the preliminary approval stage 'would be an extraordinary measure best reserved for extraordinary circumstances.'" *Arena*, 2021 WL 834253, at *11 (quoting 4 Newberg on Class Actions § 13:19 (5th ed. 2011)).

In sum, the proposed injunction violates Intervenors' rights under the FAA and goes well beyond the authority typically exercised under the All Writs Act. 23andMe cannot run from its contractual obligations simply because it no longer benefits from them. The requested injunction should be denied and otherwise stripped from the Settlement.

OPPOSITION TO MOTION FOR APPROVAL OF PROPOSED SETTLEMENT
CASE NO.: 3:24-md-03098-EMC

1

**II.     The Proposed Opt-Out Provisions are Unduly Harsh and Should Not Be Adopted.**

2

3          The Court should also reject Plaintiffs' request for burdensome opt-out procedures,

4     which only serve to make it difficult for Class Members to opt out of the Settlement. The

5     information requested including "written attestations," current email addresses, prior email

6     addresses, and personal signatures is overly burdensome. Proposed Settlement, ¶ 81, ECF No.

7     103-2. These clauses would unfairly preclude nearly 5,000 Claimants from opting out through

8     counsel and continuing with their arbitrations. *Cf. Newman v. AmeriCredit Fin. Servs., Inc.*, No.

9     11-cv-3041, 2014 WL 12789177, at *6 (S.D. Cal. Feb. 3, 2014) (disapproving opt-out provision

10    stating that "class members may not opt out as a group"). They have no place in the Settlement

11    Agreement and only hurt the Class.

12         This burdensome opt-out process would cause undue prejudice to Intervenors and other

13    Claimants represented by this firm. Under 23andMe's Terms, this firm submitted Notice of

14    Dispute Letters requesting recovery of $5,000—which is, of course, different relief than the

15    $100 suggested in the Proposed Settlement. In arbitration, Claimants also seek different non-

16    monetary measures than that which they could obtain if they simply participate as absent class

17    members in the proposed settlement.

18         In similar circumstances, this Court has rejected a proposed settlement that combined

19    onerous opt-out procedures with a request for an anti-arbitration injunction. *See Arena*, 2021

20    WL 834253, at *1 (concluding that "[f]or tens of thousands of class members who are

21    arbitrating claims against Intuit, opting out is the obvious financial choice" and they "should

22    not face onerous burdens that, in this context, appear designed to suppress opt outs"); *see also*

23    *id.* ("[t]he opt out procedures are still more troubling given that the proposed settlement is

24    contingent on the Court issuing an immediate injunction"); *accord Smothers v. NorthStar Alarm*

25    *Servs., LLC*, No. 17-cv-00548, 2019 WL 3080822, at *8 (E.D. Cal. July 15, 2019) (disapproving

26    proposed adopt out-out form that would create undue difficulty and confusion).

27

28

Relatedly, the Motion for Approval misstates crucial facts about the opt-out process. It minimizes the number of Claimants who initiated arbitration proceedings, while downplaying the onerousness of the proposed opt-out provisions:

> [A]ny member of the Settlement Class who wants to control their own case can easily opt out of the Settlement to pursue arbitration or their own lawsuit and some will exercise that right. The actions of these individuals do not affect the predominance analysis here, as there are expected to be more than 6.3 million class members who will not have interest in seeking a separate action in arbitration or otherwise. There have been individuals, who through counsel have made demands for arbitration, though those numbers appear to be a very small percentage of the Settlement Class (far less than 1%).

Plfs' Memo., at 31, ECF No. 103-1.

As the Court recognized in a subsequent order, Plaintiffs did not address at least the following point:

> Do the parties expect there to be substantial opt-outs because of the state court cases or arbitrations?

Order on Supplemental Briefing, at 10, ECF No. 111.

In fact, the undersigned law firm represents nearly 5,000 Claimants who filed demands for arbitration with JAMS against 23andMe between February and July 2024. For the initial batch of demands, Claimants and 23andMe have already paid their respective filing fees and are awaiting the assignment of individual arbitrators in accord with 23andMe's arbitration clause in its Terms. In other words, the Court should expect thousands—if not tens of thousands—of opt-outs.

Each of the Intervenors and Claimants represented by this firm has an immediate right to arbitrate. Yet, to continue exercising these rights, the motion would require that the claims be paused and then followed by onerous opt-out procedures:

> The written Opt-Out request must:
> (i.) Include the case name of the Litigation: In Re: 23andMe, Inc., Customer Data Security Breach Litigation, Case No. 24-md-03098-EMC;

(ii.) Identify the name and current email and mailing addresses of the Person seeking exclusion from the Settlement;

(iii.) Identify the 23andMe username or email associated with the 23andMe account for the Person seeking exclusion from the Settlement;

(iv.) Be individually signed by the Person seeking exclusion using wet-ink signature, DocuSign, or other similar process for transmitting authenticated digital signatures;

(v.) Include an attestation clearly indicating the Person's intent (to be determined by the Notice and Claims Administrator) to be excluded from the Settlement;

(vi.) Attest that the Person seeking exclusion had a 23andMe user account as of August 11, 2023.

Proposed Settlement, ¶ 81, ECF No. 103-2.

By demanding current and former email addresses, written attestation of intent to opt-out and having possessed a 23andMe account on a particular date, and personal signatures not presented through counsel, these procedures are far from "easy." These procedures are clearly designed to make it difficult for Intervenors and Claimants to continue exercising their arbitration rights. Courts regularly disapprove measures designed to inhibit the opt-out process. *See Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067 (N.D. Cal. 2020) ("This order notes a concern that the proposed *Marciano* settlement seeks to prevent opt outs via petitioners' counsel and instead requires an original ink signature by each individual. This provision is an obvious attempt to make it as hard as possible for petitioners to opt out, thus binding them to the *Marciano* settlement."); *Hadley v. Kellogg Sales Co.*, No. 16-cv-04955, 2020 WL 836673, at *8 (N.D. Cal. Feb. 20, 2020) (finding the "procedure for submission of the opt-out form is also needlessly burdensome" because it required downloading and mailing of opt-out forms).

While Plaintiffs claim such provisions are necessary due to 23andMe's "limited funds," Plfs' Memo., at 3, they do not ask the Court to certify a "limited fund" class under Rule 23(b)(1)(3). *Cf. Stott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 326 (N.D. Tex. 2011) (describing a "limited fund" settlement in which no opt-out is permitted). Far from seeking certification under that rule, Plaintiffs argue the Intervenors may "easily opt out" and effectively seek relief in

arbitration. Plfs' Memo., at 31. The record lacks sufficient documentation to establish that 23andMe is incapable of providing the monetary and non-monetary relief sought by Intervenors and Claimants through arbitration.

These Intervenors and Claimants have an immediate right to arbitrate. Their claims have been pending in the arbitral forum for months and, under the FAA, "stays of arbitration are disfavored." *In re Cintas*, 2009 WL 1766595, at *5. Their rights should therefore not be stifled by the requested injunction and burdensome opt-out process. These elements of the Proposed Settlement should not be adopted. The Court should find that anyone who has already initiated arbitration need not opt out of the Settlement at all because they have already expressed their intent to opt out. Alternatively, the Intervenors and other individually represented class members should be permitted to opt out through their counsel *en masse*, so that they seek greater relief in the arbitral forum.

## **CONCLUSION**

For the above reasons, the Intervenors oppose two aspects of the Proposed Settlement: (1) the injunction of currently pending arbitration claims; and (2) the excessively strict opt-out procedures. Intervenors request that the Court require modification of the Proposed Settlement, severing these provisions.

OPPOSITION TO MOTION FOR APPROVAL OF PROPOSED SETTLEMENT
CASE NO.: 3:24-md-03098-EMC

Dated: October 1, 2024

Respectfully submitted,

*/s/ Alex R. Straus*

Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Los Angeles, CA 90212
Telephone: (866) 252-0878
Facsimile: (865) 522-0049
astraus@milberg.com

*Attorney for Proposed Intervenors Vivian Gonczi, Howard Packer, and Lance Alligood*

OPPOSITION TO MOTION FOR APPROVAL OF PROPOSED SETTLEMENT
CASE NO.: 3:24-md-03098-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I, Alex R. Straus, an attorney, hereby certify that on October 1, 2024, I caused a true and correct copy of the foregoing document to be filed and served electronically via the Court's CM/ECF system.

*/s/ Alex R. Straus*
Alex R. Straus

OPPOSITION TO MOTION FOR APPROVAL OF PROPOSED SETTLEMENT
CASE NO.: 3:24-md-03098-EMC