# EXHIBIT A

**GT** GreenbergTraurig

Rebekah S. Guyon
Tel 310.586.7716
Fax 310.586.7800
Rebekah.Guyon@gtlaw.com

September 19, 2024

*VIA EMAIL*

Sarah Nevins
Arbitration Practice Manager
JAMS
snevins@jamsadr.com

      Re:    *Filing by Levi & Korsinsky: 884 Claimants v. 23andMe*

Dear Ms. Nevins:

Our firm is litigation counsel to 23andMe, Inc. ("23andMe"). The 884 arbitration demands (the "884 Demands") filed on behalf of individuals ("Claimants") represented by Levi & Korsinsky, LLP ("L&K") against 23andMe on September 13, 2024 must be administratively closed or immediately stayed because they are subject to a preliminary injunction agreed to in a class action settlement and currently pending in federal court.

On September 5, 2024, 23andMe entered into a Class Action Settlement Agreement and Release resolving claims on behalf of 6.4 million individuals (including Claimants) in the consolidated federal multidistrict litigation (MDL) pending before the Honorable Edward Chen in the Northern District of California. *In re 23andMe, Inc. Customer Data Breach Litigation*, Case No. 3:24-md-03098. On September 12, 2024, the Court-appointed Interim Co-Lead Counsel for Plaintiffs filed a Motion for Preliminary Approval of the Class Action Settlement. (**Exhibit A**).

The Class Action Settlement Agreement provides for a preliminary injunction of all other litigation or arbitration claims released in the Settlement, pending the MDL Court's final approval of the settlement terms. This preliminary injunctive relief is now pending before the Court as part of the Motion for Preliminary Approval. *See* Motion at 39-40; Proposed Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Proposed Order") (**Exhibit B**), ¶ 23.

As detailed in the Motion and Respondent's Memorandum in support of the Motion ("Memorandum") (**Exhibit C**), the proposed stay is a standard provision in aid of the Court's jurisdiction in connection with federal MDL class action settlements. Moreover, here, given 23andMe's financial condition, and in the face of mass arbitration claims threatening to impose massive filing fees on 23andMe to pressure it into separate settlements, the injunctive relief is

---

**Greenberg Traurig, LLP | Attorneys at Law**

1840 Century Park East | Suite 1900 | Los Angeles, California 90067-2121 | T +1 310.586.7700 | F +1 310.586.7800

Albany. Amsterdam. Atlanta. Austin. Berlin˙ Boston. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London˙ Long Island. Los Angeles. Mexico City˙ Miami. Milan˙ Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento. Salt Lake City. San Diego. San Francisco. Seoul˙ Shanghai. Silicon Valley. Singapore˙ Tallahassee. Tampa. Tel Aviv˙ Tokyo˙ Warsaw˙ Washington, D.C. West Palm Beach. Westchester County.

Operates as: ˙Greenberg Traurig Germany, LLP, ˙a separate UK registered legal entity; ˙Greenberg Traurig, S.C.; ˙Greenberg Traurig Santa María; ˙˙Greenberg Traurig LLP Foreign Legal Consultant Office; ˙Greenberg Traurig Singapore LLP; ˙A branch of Greenberg Traurig, P.A., Florida, USA; ≠GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubengoshi Jimusho; ˙Greenberg Traurig Nowakowska-Zimoch Wysokiński sp.k.

www.gtlaw.com

September 19, 2024
Page 2

necessary to preserve 23andMe's ability to fund the MDL class action settlement, which benefits all 6.4 million class members, including Claimants.

Tellingly, L&K submitted these 884 Demands to JAMS on September 13, 2024, **the day after the Motion for Preliminary Approval was filed**, indicating that the instant claims were initiated with the intent to disrupt the Settlement on behalf of the putative class in the MDL class actions. The claims asserted in these 884 Demands arise out of the same security incident and identical factual predicate that give rise to the Settlement and are Released Claims under the Settlement. Accordingly, these 884 Demands are subject to the pending request for a preliminary injunction.

The hearing on the Motion for Preliminary Approval (including the injunctive relief) is currently scheduled for October 17, 2024. Accordingly, JAMS should administratively close the 884 Demands, or immediately stay them until after the Court in the MDL actions rules on the Motion for Preliminary Approval including the injunctive relief.

Indeed, this is precisely what Judge Eileen Brewer, the arbitrator JAMS previously assigned to a much earlier arbitration demand against 23andMe, ruled on September 18, 2024. *See Report of Teleconference and Scheduling Order No. 1*, JAMS Ref. No. 5340000882 (Sept. 18, 2024), attached as **Exhibit D**. There, Judge Brewer ruled that the case would be stayed resolution of the pending Motion for Preliminary Approval of the class action settlement, indicating that she would not unnecessarily cause 23andMe to incur fees in arbitration while a settlement that includes a preliminary injunction is pending ruling by the federal court.

Additionally, the 884 Demands should be administratively closed or stayed because they have been filed prematurely based on failure to satisfy the initial dispute resolution terms of 23andMe's Terms of Service, effective October 4, 2023 ("Terms of Service") (enclosed with L&K's demands). The Terms of Service pursuant to which Claimants here seek to invoke a right to arbitrate before JAMS provide for an Initial Dispute Resolution Period for a "period of thirty (30) days from the time informal dispute resolution is pursued." *Terms of Service*, ¶ 5(b). The Terms of Service further state that Claimants "agree to use best efforts to settle any dispute, claim, question, or disagreement directly through consultation and good faith negotiations which shall be a precondition to either party initiating a lawsuit or arbitration." *Id.* at ¶ 5(a). Here, the parties have not satisfied the requisite dispute resolution period and, therefore, Claimants' demands are premature.

Accordingly, 23andMe respectfully requests that JAMS administratively close the 884 Demands, or stay them and take no further action until the federal MDL Court rules on the pending Motion for Preliminary Approval, including injunctive relief.

Finally, to the extent L&K or the Claimants pay any filing fees, they do so at their own risk, given the Class Action Settlement and the injunctive relief that requires a stay of these proceedings, and their failure to satisfy the Initial Dispute Resolution Period, which requires that the cases be closed.

This letter is without waiver of any rights and defenses available to 23andMe, including but not limited to L&K's initiation of arbitration on behalf of claimants who have, through other

September 19, 2024
Page 3

law firms, already submitted demands against 23andMe. Nothing contained in this letter should be construed as a waiver of any rights and claims of 23andMe, and all such rights and remedies are reserved under law and equity.

Best regards,

Rebekah S. Guyon

Enclosure

cc.     Stephen L. Saxl
        Cassidy Kim
        Adam Korn
        Eduard Korsinsky
        March S. Reich

# EXHIBIT A

1  Cari Campen Laufenberg (*pro hac vice*)
2  KELLER ROHRBACK L.L.P.
   1201 Third Avenue, Suite 3400
3  Seattle, WA 98101
   Tel: (206) 623-1900
4  claufenberg@kellerrohrback.com

5  Gayle M. Blatt (SBN 122048)
6  CASEY GERRY SCHENK FRANCAVILLA
   BLATT & PENFIELD, LLP
7  110 Laurel Street
   San Diego, CA  92101
8  Tel.: (619) 238-1811
   gmb@cglaw.com
9

10  Norman E. Siegel (*pro hac vice*)
    STUEVE SIEGEL HANSON LLP
11  460 Nichols Road, Suite 200
    Kansas City, Missouri 64112
12  Tel.: (816) 714-7100
    siegel@stuevesiegel.com
13

14  *Interim Co-Lead Class Counsel*

15                **UNITED STATES DISTRICT COURT**

16                **NORTHERN DISTRICT OF CALIFORNIA**

17                **SAN FRANCISCO DIVISION**

18

19  IN RE: 23ANDME, INC. CUSTOMER DATA      No. 3:24-md-03098-EMC
    SECURITY BREACH LITIGATION
20                                          **NOTICE OF MOTION AND MOTION**
    This Document Relates to: ALL ACTIONS   **FOR PRELIMINARY APPROVAL OF**
21                                          **CLASS ACTION SETTLEMENT**

22                                          Judge:         Hon. Edward M. Chen
23                                          Courtroom:     5, 17th Floor
                                            Hearing Date:  October 17, 2024
24                                          Hearing Time:  1:30 p.m.

25

26

27

28

**TO THE COURT, THE PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 17, 2024, at 1:30 p.m. or as soon thereafter as counsel may be heard, before the Honorable Edward M. Chen, at the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Ave. San Francisco, CA 94102, Plaintiffs will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Plaintiffs base their Motion for Preliminary Approval of Class Action Settlement on this Notice; the Memorandum of Points and Authorities filed in support thereof; the Settlement Agreement and Release ("Settlement Agreement") and all exhibits attached thereto; the Declaration of Cari Campen Laufenberg, Norman E. Siegel and Gayle M. Blatt in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Class Counsel Decl."); the Declaration of Carla A. Peak ("Admin. Decl.") and all exhibits attached thereto; the Declaration of Gerald Thompson ("CyEx Decl.") all other records and papers on file in this action; any oral argument on the Motion; and all other matters properly before the Court.

Plaintiffs seek an order pursuant to Federal Rule of Civil Procedure 23(b)(3) certifying the Settlement Class more fully described in the Settlement Agreement filed concurrently herewith; preliminarily approving the Settlement as fair, reasonable, and adequate; directing notice to be disseminated to the Settlement Class in the form and manner proposed by the parties as set forth in the Settlement Agreement and Exhibits 1-4 to the Admin. Decl.; appointing Verita to serve as the Settlement Administrator; appointing Plaintiffs as Class Representatives and the undersigned attorneys as Class Counsel; and setting a hearing date and schedule for final approval of the Settlement and consideration of Class Counsel's forthcoming motion for an award of fees, costs, expenses, and service awards.

Dated: September 12, 2024

By:    */s/ Gayle M. Blatt*
Gayle M. Blatt (SBN 122048)

1

CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD, LLP
110 Laurel Street
San Diego, California 92101
Tel: (619) 238-1811
gmb@cglaw.com


By:     */s/ Cari Campen Laufenberg*
        Cari Campen Laufenberg (*pro hac vice*)
        KELLER ROHRBACK L.L.P.
        1201 Third Avenue, Suite 3400
        Seattle, WA 98101
        Tel: (206) 623-1900
        claufenberg@kellerrohrback.com


By:     */s/ Norman E. Siegel*
        Norman E. Siegel (*pro hac vice*)
        STUEVE SIEGEL HANSON LLP
        460 Nichols Road, Suite 200
        Kansas City, Missouri 64112
        Tel: (816) 714-7100
        siegel@stuevesiegel.com

        *Interim Co-Lead Class Counsel*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT – 3:24-md-03098-EMC

## CERTIFICATE OF SERVICE

I, Cass L. Lazar, hereby certify that on September 12, 2024, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ *Cass L. Lazar*
Cass L. Lazar

Cari Campen Laufenberg (*pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel: (206) 623-1900
claufenberg@kellerrohrback.com

Gayle M. Blatt (SBN 122048)
CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD LLP
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
gmb@cglaw.com

Norman E. Siegel (*pro hac vice*)
STUEVE SIEGEL HANSON LLP
460 Nichols Road
Suite 200
Kansas City, MO 64112
Tel: 816 714-7100
siegel@stuevesiegel.com

*Interim Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates to: ALL ACTIONS | No. 3:24-md-03098-EMC<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:        Hon. Edward M. Chen<br>Courtroom:  5, 17th Floor<br>Hearing Date:  October 17, 2024<br>Hearing Time:  1:30 p.m. |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     THE SETTLEMENT IS THE RESULT OF ZEALOUS ADVOCACY AND SKILLFUL
        NEGOTIATION .....................................................................................................2

        A.      Brief Summary of the Litigation.............................................................3

        B.      A Summary of the Mediation Efforts and Agreement to Settle.................4

III.    SETTLEMENT TERMS .........................................................................................5

        A.      Benefits to Settlement Class Members ....................................................5

        B.      The Settlement Includes Important Business Practice Commitments Designed to
                Enhance the Security of Settlement Class Members' Personal Information .............7

        C.      Class Definition and the Estimated Class Size .........................................8

        D.      Counsel's Fees and Costs and the Settlement Class Representatives' Service
                Awards ...................................................................................................8

        E.      The Settlement's Release is Coextensive with the Ninth Circuit's "identical factual
                predicate" Requirement ..........................................................................9

IV.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL...............................9

        A.      The Strengths and Risks of Plaintiffs' Claims........................................11

        B.      The Financial Condition of the Defendant Supports Approval of the Settlement....11

                1.      Risks Related to Class Certification ...........................................12

                2.      Comparing the Strengths and Risks of the Contract-Related Claims ...........13

                3.      Comparing the Strengths and Risks of the Negligence-Based Claims .........14

                4.      Comparing the Strengths and Risks of the Privacy-Based Torts.................16

                5.      Comparing the Strengths and Risks of the Breach of Confidence and Breach
                        of Fiduciary Duty Claims...................................................................17

                6.      Comparing the Strengths and Risks of the Conversion and Unjust
                        Enrichment Claims.............................................................................19

                7.      Comparing the Strengths and Risks of the State Consumer Protection-
                        Related Claims .................................................................................21

8.     Comparing the Strengths and Risks of the State Genetic Privacy-Based Claims ........................................................................................22

9.     Comparing the Strengths and Risks of the Other California Statutory Claims ..............................................................................................23

10.    Comparing the Strengths and Risks of the Other State Statutory Claims.....24

C.     Further Litigation Would Be Uncertain, Expensive, Complex, and Lengthy ..........25

V.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ...................................26

A.     The Settlement Class Satisfies the Rule 23(a) Prerequisites .................................26

1.     The Class Is Sufficiently Numerous ..........................................................26

2.     There Are Common Questions of Law and Fact .........................................26

3.     The Settlement Class Representatives' Claims are Typical of the Settlement Class Members' Claims ..............................................................28

4.     The proposed Settlement Class Representatives and Class Counsel Will— and Have—Fairly and Adequately Protected the Interests of the Settlement Class ...........................................................................................29

B.     The Settlement Class Satisfies Rule 23(b)(3) .........................................................30

1.     Common Issues of Law and Fact Predominate..........................................30

2.     Class Treatment is Superior .......................................................................32

C.     The Relief Offered in the Settlement Is More Than Adequate ...............................32

1.     The Settlement Is Fair and Reasonable in Light of the Defendant's Financial Condition.................................................................................................34

2.     The Notice and Claims Process is Fair and Reasonable. .............................35

3.     Interim Co-Lead Counsel Believes the Settlement Is an Outstanding Result. ..................................................................................................36

4.     The Settlement Also Satisfies the "*Bluetooth*" Factors. ..............................36

VI.     THE PROPOSED NOTICE PROGRAM, SETTLEMENT ADMINISTRATOR, AND PROCESS FOR OPT-OUTS AND OBJECTIONS SHOULD BE APPROVED ................37

A.     The Proposed Notice Plan.......................................................................................37

1.     Class Notice .................................................................................37

ii

2.      CAFA Notice ..................................................................................38

B.      The Settlement Administrator.........................................................................38

1.      The Settlement Administrator Selection Process....................................38

2.      The Settlement Administrator's Estimated Claims Rate ............................39

C.      Opt-Outs and Objections: Timeline, Instructions, and Forms ..................................39

VII.    CONCLUSION.........................................................................................................40

PROPOSED FINAL APPROVAL HEARING SCHEDULE ........................................................41

iii

TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
    2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) ................................................................31

*Alkayali v. Hoed*,
    2018 WL 3425980 (S.D. Cal. July 16, 2018) ...............................................................14

*Ambassador Hotel Co. v. Wei-Chuan Inv.*,
    189 F.3d 1017 (9th Cir. 1999) .....................................................................................25

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .....................................................................................................32

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
    2012 WL 2571719 (N.D. Cal. June 30, 2012) .............................................................16

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) .................................................................................19, 20

*Betancourt v. Advantage Hum. Resourcing, Inc.*,
    2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ................................................................36

*Browning v. Yahoo! Inc.*,
    2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) .............................................................25

*Bruton v. Gerber Prods. Co.*,
    703 F. App'x 468 (9th Cir. 2017) ................................................................................20

*Burlesci v. Petersen*,
    68 Cal. App. 4th 1062 (1998) ......................................................................................20

*Campbell v. Facebook Inc.*,
    2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) .............................................................34

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) .....................................................................................10

*Carter v. Vivendi Ticketing US LLC*,
    2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) ..............................................................34

*Castillo v. Seagate Tech., LLC*,
    2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) .............................................................13

*Cavazos v. Salas Concrete, Inc.*,
  2022 WL 2918361 (E.D. Cal. July 25, 2022) ...................................................................35

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .........................................................................................9

*Cotter v. Lyft, Inc.*,
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) ..........................................................................10

*Cotter v. Lyft, Inc.*
  176 F. Supp. 3d 930 (N.D. Cal. 2016) ............................................................................10

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010) ...................................................................................19, 20

*Ellis v. Costco Wholesale Corp.*,
  657 F. 3d 970 (9th Cir. 2011) .........................................................................................28

*Ellsworth v. U.S. Bank, N.A.*,
  2014 WL 2734953 (N.D. Cal. June 13, 2014) ................................................................12

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
  122 F.3d 1211 (9th Cir. 1997) ........................................................................................18

*Forsyth v. HP Inc.*,
  2024 WL 1354551 (N.D. Cal. Mar. 29, 2024) ...............................................................36

*Gilman v. Dalby*,
  176 Cal. App. 4th 606 (2009) .........................................................................................18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................................. Passim

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..........................................................................................29

*Hanover Ins. Co. v. Fremont Bank*,
  68 F. Supp. 3d 1085 (N.D. Cal. 2014) ...........................................................................20

*Hashemi v. Bosley, Inc.*,
  2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) ...........................................................25, 34

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009) ....................................................................................................17

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) ............................................................................................9

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ..........................................................................................................16

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ..............................................................17, 18, 19

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................25, 31, 34

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) ..........................................................................................10

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..............................................................................8, 36, 37

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................................................................................16, 17

*In re Google LLC St. View Elec. Commc'ns Litig.*,
611 F. Supp. 3d 872 (N.D. Cal. 2020) ............................................................................34

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) ............................................................................31

*In re Live Concert Antitrust Litig.*,
247 F.R.D. 98 (C.D. Cal. 2007) ......................................................................................29

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg.,*
*Sales Pracs. & Prod. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) ..........................................................................................12

*In re Netflix Privacy Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................................................13

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..........................................................................33

*In re Volkswagen "Clean Diesel" Mktg. Sales Practices & Prod. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) ..........................................................................................29

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
2017 WL 2212783 (N.D. Cal. May 17, 2017) ................................................................11

iii

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
2016 WL 6248426 (N.D. CA. October 25, 2016) ...........................................................12

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) ...................................................................................28

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2020 WL 4212811 (N.D. Cal. July 22, 2020) ...................................................27, 29, 31, 34

*Jabbari v. Wells Fargo & Co.*,
965 F.3d 1001 (9th Cir. 2020) .......................................................................................28

*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014) .......................................................................................12

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. 2003) .......................................................................................20

*Lagunas v. Young Adult Inst., Inc.*,
2024 WL 1025121 (N.D. Cal. Mar. 8, 2024) ...................................................................26

*Lane v. Facebook, Inc.*,
696 F. 3d 811 (9th Cir 2012) .........................................................................................33

*Marzec v. California Pub. Emps. Ret. Sys.*,
236 Cal. App. 4th 889 (2015) .......................................................................................18

*Mazza v, Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......................................................................................27

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015) .............................................................................26

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................36

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
238 F.R.D. 482 (C.D. Cal. 2006) ...................................................................................27

*Nguyen v. Stephens Inst.*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021) ..........................................................................20

*O'Connor v. Uber Techs., Inc.*,
201 F. Supp. 3d 1110 (N.D. Cal. 2016) ..........................................................................11

*Opperman v. Path, Inc.*,

    2016 WL 3844326 (N.D. Cal. July 15, 2016) ..................................................................16, 17

*Parsons v. Ryan*,

    754 F.3d 657 (9th Cir. 2014) ...........................................................................................28

*Phillips Petroleum Co v. Shutts*,

    472 U.S. 797 (1985) ........................................................................................................32

*Rudolph v. Hudson's Bay Co.*,

    2019 WL 2023713 (S.D.N.Y. May 7, 2019) ...................................................................14

*Rutherford Holdings, LLC v. Plaza Del Rey*,

    223 Cal. App. 4th 221 (2014) ..........................................................................................20

*Singh v. Roadrunner Intermodal Servs., LLC*,

    2018 WL 4382202 (E.D. Cal. Sept. 13, 2018) ................................................................35

*Slaven v. BP Am., Inc.*,

    190 F.R.D. 649 (C.D. Cal. 2000) ....................................................................................26

*Snyder & Assocs. Acquisitions LLC v. United States*,

    859 F.3d 1152 (9th Cir. 2017) .........................................................................................20

*St. Louis, I.M. & S. Ry. Co. v. Williams*,

    251 U.S. 63 (1919) ..........................................................................................................23

*Sutter Health v. Superior Ct.*,

    227 Cal. App. 4th 1546 (2014) ........................................................................................19

*Sweet v. DeVos*,

    2020 WL 4876897 (N.D. Cal. May 22, 2020) ................................................................33

*Trosper v. Styker Corp.*,

    2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) ................................................................29

*True v. Am. Honda Motor Co.*,

    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ..........................................................................10

*Tyson Foods, Inc. v. Bouaphakeo*,

    577 U.S. 442 (2016) ........................................................................................................30

*Valliere v. Tesoro Ref. & Mktg. Co. LLC*,

    2020 WL 13505042 (N.D. Cal. June 26, 2020)...............................................................29

*Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP,*
   593 F. Supp. 2d 1153 (S.D. Cal. 2008) ..................................................................17

*Wakefield v. ViSalus, Inc.,*
   51 F.4th 1109 (9th Cir. 2022) ................................................................................23

*Wal-Mart Stores, Inc., v. Dukes,*
   564 U.S. 338 (2011) ..........................................................................................10, 27

*Williams v. Boeing Co.,*
   517 F.3d 1120 (9th Cir. 2008) ................................................................................9

*Worldvision Enterprises, Inc. v. Am. Broad. Companies, Inc.,*
   142 Cal. App. 3d 589 (1983) ..................................................................................18

*Young v. Facebook, Inc.,*
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ..................................................................13

*Young v. Wideawake Death Row Ent., LLC,*
   2011 WL 13371881 (C.D. Cal. May 16, 2011) ........................................................14

Statutes

18 U.S.C. § 1407 .......................................................................................................4

Rules

Fed. R. Civ. P. 23 ................................................................................................35, 37

Fed. R. Civ. P. 23(a) ................................................................................................26

Fed. R. Civ. P. 23(a)(2) ............................................................................................27

Fed. R. Civ. P. 23(a)(3) ............................................................................................28

Fed. R. Civ. P. 23(a)(4) ............................................................................................29

Fed. R. Civ. P. 23(b)(3) ..........................................................................13, 30, 31, 32

Fed. R. Civ. P. 23(c)(2)(B), (e)(1) ............................................................................37

Fed. R. Civ. P. 23(d) ................................................................................................40

Fed. R. Civ. P. 23(e) ..........................................................................................33, 36

Fed. R. Civ. P. 23(e)(2) ........................................................................................2, 10

Fed. R. Civ. P. 23(e)(2)(C)(ii) ..................................................................................35

Fed. R. Civ. P. 23(g) ..................................................................................................4

<u>Other Authorities</u>

4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. 2002) .................................25

7AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1780.1 (3d ed.) ...............12

## STATEMENT OF THE ISSUES TO BE DECIDED

The issues to be decided on this Motion are:

1. Whether the proposed Settlement warrants preliminary approval;

2. Whether to certify this action as a class action for purposes of settlement;

3. Whether the Court should approve the Notice Plan, including the selection of Verita as Claims Administrator;

4. Whether the Court should set deadlines for Settlement Class Members to exercise their rights in connection with the proposed Settlement; and,

5. Whether the Court should schedule a Final Approval Hearing to determine whether the Settlement, Settlement Benefits Plan, forthcoming application for attorneys' fees and expenses, and request for Settlement Class Representatives' Service Awards should be finally approved.

## I.    INTRODUCTION

The proposed Settlement Class Representatives[1] and Defendant 23andMe have reached a settlement that will create a non-reversionary Settlement Fund of $30 million to provide substantial relief to Settlement Class Members. This is an outstanding result at an early juncture in the case and maximizes the relief available from a Defendant in an uncertain financial situation.

The benefits provided by the Settlement Fund are carefully tailored to redress the harms faced by the victims of the 23andMe Security Incident announced in October 2023, which involved the release of Personal Information, including limited health information and ethnic and genetic information. *See* Dkt. 78, Consolidated Class Action Complaint ("Complaint" or "Compl."). If the Settlement is approved, the benefits available to Settlement Class Members will provide: (1) monetary reimbursement for Extraordinary Claims up to $10,000 for losses incurred as the direct result of the Security Incident, including expenses for identity fraud, the installation of physical security or monitoring systems, and professional mental health treatment; (2) cash payments for Settlement Class Members who were residents of states with genetic privacy laws providing for statutory damages (Alaska, California, Illinois, and Oregon); (3) cash payments for Settlement Class Members that had health information compromised in the Security Incident, and (4) three years of state of the art Privacy & Medical Shield + Genetic Monitoring ("Privacy Shield") for all Settlement Class Members who enroll. Privacy Shield is a unique monitoring program with added components designed specifically for this Settlement that provides extensive benefits for victims of the Security Incident. Further, as part of the Settlement, 23andMe agreed to implement and maintain—at its own expense—important Business Practice Commitments, which will strengthen the security and protections of the Personal Information in its possession. These benefits are described more fully in the Settlement Benefits Plan ("SBP") and below. In short, the Settlement addresses the central allegation of this Litigation and achieves key relief sought by Plaintiffs.[2]

Considering the substantial monetary and non-monetary benefits conferred upon Settlement

[1] The capitalized terms in this memorandum have the meaning set forth in the Settlement Agreement.
[2] While 23andMe denies Plaintiffs' allegations, it has agreed to the Settlement Agreement and does not oppose this Motion.

Class Members and the significant risks faced through continued litigation including the financial condition of the Defendant, the terms of the Settlement are "fair, reasonable, and adequate" in accordance with Federal Rule of Civil Procedure 23(e)(2). Therefore, Plaintiffs respectfully request the Court preliminarily approve the proposed Settlement, appoint Class Counsel and the Settlement Class Representatives, authorize the provision of Notice to the Settlement Classes, and set a hearing to consider final approval of the Settlement. In support of this Motion, Plaintiffs submit the Settlement Agreement ("SA") (Ex. A); an agreed proposed order granting preliminary approval (Ex. A-1); the proposed Settlement Benefits Plan ("SBP") (Ex. B); the Case Comparison Chart (Ex. C); Declaration of Class Counsel ("Class Counsel Decl.") (Ex. D); the Declaration of Carla A. Peak on behalf of the proposed Notice and Claims Administrator including details of the Notice Program, attaching the proposed Settlement Notices and Claim Form ("Admin. Decl.") (Ex. E); and the Declaration of Gerald Thompson on behalf of CyEx, the provider of Privacy Shield ("CyEx Decl.") (Ex. F).

## II.     THE SETTLEMENT IS THE RESULT OF ZEALOUS ADVOCACY AND SKILLFUL NEGOTIATION

The severity of this Security Incident combined with 23andMe's challenging financial position presented extraordinary challenges to achieving the Settlement, far beyond those in a typical data breach MDL. Class Counsel Decl. ¶ 33. Even prior to the Security Incident and the resulting wave of lawsuits now centralized in this Court, 23andMe's financial condition was dire. Revenue and earnings were in steep decline, and by September 2023 (a month before the Security Incident) its stock started trading below $1. Class Counsel Decl. ¶ 29. 23andMe's financial issues were exacerbated by revelation of the Security Incident, and by November 2023, 23andMe's stock was no longer in compliance with Nasdaq regulations that require listed stocks maintain a minimum bid price of $1 per share. *Id*. 23andMe had recently reported a substantial loss in the first half of its calendar year based on declining revenue. The latest quarterly report revealed losses of $69.4 million on revenue of only $40.4 million.[3] And as of September 10, 2024, 23andMe's stock was trading at an all-time low of

---

[3] 23andMe Holding Co., *Form 8-K* (Aug. 5, 2024), https://www.sec.gov/Archives/edgar/data/1804591/000180459124000045/me-20240808x8kxexx991.htm.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT – 3:24-md-03098-EMC

$0.30 a share resulting in a market capitalization of roughly $151 million. Class Counsel Decl. ¶ 31.

Given 23andMe's financial position, litigation exposure in this and other cases, and limited funds available, an early attempt at resolution was a rational path forward for the proposed Class. The Court recognized the precariousness of the situation for the Class and ordered Interim Co-Lead Counsel to "immediately upon appointment" arrange "for further mediation with Randy Wulff who is designated as mediator in this case[.]" Dkt. 62, Pretrial Order No. 2, ¶ 9. Following two mediation sessions prior to the appointment of Interim Co-Lead Counsel, on June 26, 2024, the Parties attended a third in-person mediation session with Mr. Wulff. After another lengthy arms-length session, the Parties were at an impasse. Mr. Wulff then presented a mediator's proposal that was eventually accepted by both Parties. The Parties then turned to documenting the agreement under the terms and conditions set forth in the Settlement Agreement. As a condition of the Settlement, and in exchange for payment of the Settlement Fund, the Settlement Class Representatives, on behalf of the proposed Settlement Class, agreed to release their claims and all potential claims that could have been brought based on the identical factual predicate as those alleged in the Complaint.

## A.   Brief Summary of the Litigation

On August 11, 2023, a threat actor on the dark web claimed to have samples of 23andMe genetic user data for sale. Compl. ¶¶ 418-419. In early October 2023, a threat actor made available via a link to certain Personal Information, including the ethnicity information relating to data of one million 23andMe users with Ashkenazi Jewish DNA descent, and another 100,000 with Chinese DNA. *Id.* ¶ 420. On October 6, 2023, a researcher examining the leaked database reported the data included more than 300,000 users of Chinese heritage. Compl. ¶ 421. On that date, 23andMe confirmed it was the source of the stolen data, and after an investigation, determined the threat actor downloaded Personal Information without authorization relating to approximately 6.6 million natural persons in the United States. *Id.* ¶¶ 422-439.[4] The Personal Information accessed varied on a person-by-person basis. For most of the impacted customers, the Personal Information accessed by the threat actor included the Personal Information from a customer's DNA Relatives profile or Family Tree Profile

---

[4] This number was confirmed to be 6.4 million natural persons in the United States. SA ¶ 3.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT – 3:24-md-03098-EMC

within 23andMe's DNA Relatives feature, which may have included their name, sex, birth year, information about the customer's ancestry based on their genetic information, self-reported location (city/zip code), ancestor birth locations, family names and family tree information. For a small number of customers, the threat actor also accessed Personal Information about the customer's present or future health based on the analysis of their genetic data, their self-reported health information, and their uninterpreted genotype data. *Id.* ¶ 1.

After announcement of the Security Incident, over 40 putative class action lawsuits were filed against 23andMe asserting claims for a raft of common law torts and various statutory claims— including several that provide statutory damages for the disclosure of genetic information. On December 21, 2023, 23andMe filed a Motion to Transfer Actions to the Northern District of California Pursuant to 18 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings with the Judicial Panel on Multidistrict Litigation, MDL No. 3098. On April 11, 2024, the JPML centralized the Litigation before the Honorable Edward M. Chen of the Northern District of California, where dozens of putative class action lawsuits were pending. The Court considered applications for the appointment of Interim Co-Lead Counsel under Fed. R. Civ. P. 23(g) and held a hearing on the motions on June 3, 2024. On June 5, 2024, the Court appointed Interim Co-Lead Counsel. Dkt. 62. Upon appointment, Interim Co-Lead Counsel filed a 186-page consolidated complaint on June 26, 2024, alleging 40 causes of action. Dkt. 78. The operative complaint in this action is a superseding operative complaint that aggregated claims brought by litigants around the country.

**B.    A Summary of the Mediation Efforts and Agreement to Settle**

Prior to the appointment of Interim Co-Lead Counsel, starting in January 2024, a small group of Plaintiffs' counsel and 23andMe scheduled an early mediation for January 31, 2024. Class Counsel Decl. ¶ 23. Other Plaintiffs' lawyers—including Interim Co-Lead Counsel—learned of the mediation and participated either in person or by Zoom. Plaintiffs' counsel representing nearly every case filed against 23andMe participated in the January 31, 2024, mediation overseen by Mr. Wulff, which although productive, did not result in a settlement. *Id.*

Subsequently, a smaller group of Plaintiffs' counsel, including Interim Co-Lead Counsel

Norman E. Siegel and Gayle M. Blatt, agreed to participate in a second mediation with 23andMe before Mr. Wulff, with a commitment to keep all Plaintiffs' counsel informed as to the progress of the negotiations. Class Counsel Decl. ¶ 24. Prior to this mediation, the group engaged an independent forensic accounting firm to advise it with respect to 23andMe's financial condition, and continued their work with experts to, among other things, develop business practice changes designed to protect Settlement Class Members' sensitive data. *Id*. On March 20, 2024, the Parties engaged in a second day-long mediation under the direction of Mr. Wulff. Like the first mediation, the process was productive but did not result in a settlement. *Id*.

On June 5, 2024, the Court appointed Mr. Siegel, Ms. Blatt and Cari C. Laufenberg to serve as Interim Co-Lead Counsel, authorizing them to pursue the Litigation on behalf of the Plaintiffs, and to continue settlement negotiations on behalf of the Plaintiffs and the putative class members, which now comprise the Settlement Class. Dkt. 62. Interim Co-Lead Counsel and Defendant were directed by the Court to coordinate with Mr. Wulff for further attempts at resolution. Dkt. 62 ¶ 9.

Beginning prior to the first mediation on January 31, 2024, the Parties exchanged informal discovery in preparation for the mediation sessions before Mr. Wulff and continued discussions through June 26, 2024, when an additional mediation session was held. The arm's length mediation sessions resulted in a mediator's proposal for resolution of Plaintiffs' claims against Defendant. Class Counsel Decl. ¶ 26. On July 12, 2024, all Parties accepted the mediator's proposal, reaching agreement in principle to resolve this Litigation. *Id*. The acceptance of the mediator's proposal resulted in the July 29, 2024, execution of a term sheet containing the material terms of the Settlement. Class Counsel Decl. ¶ 28. And, now presented for the Court's consideration, is the formal Settlement Agreement, attached as Exhibit A, which forms the basis of this Motion.

## III.    SETTLEMENT TERMS

### A.    Benefits to Settlement Class Members

The Settlement Agreement provides monetary benefits in the form of a non-reversionary Settlement Fund of $30,000,000, which shall be used to pay for: (1) benefits to the Settlement Class as outlined below; (2) Notice and Claims Administrative Costs; (3) attorneys' fees and expenses

awarded by the Court; and (4) Service Awards awarded by the Court. SA ¶¶ 58-59. The Net Settlement Fund shall be used to pay for cash payments to Settlement Class Members who make valid claims, and to provide Privacy Shield for all Settlement Class Members who enroll. SBP ¶ 3.

*First*, Settlement Class Members may make an Extraordinary Claim for verifiable unreimbursed costs or expenditures up to $10,000 related to the Security Incident. Extraordinary Claims provide reimbursement for: (1) unreimbursed costs incurred as a direct result of identity fraud or falsified tax returns that the Settlement Class Member establishes were the result of the Security Incident; (2) unreimbursed costs associated with the purchase of a physical security or monitoring system that a Settlement Class Member establishes was purchased in response to the Security Incident; and (3) unreimbursed costs associated with seeking professional mental health counseling or treatment that a Settlement Class Member establishes were the result of the Security Incident. *Id.* ¶ 4.

*Second*, Settlement Class Members who were residents of Alaska, California, Illinois or Oregon —states that have genetic privacy laws with statutory damages provisions—may make a Statutory Cash Claim. *Id.* ¶ 6. Interim Co-Lead Counsel anticipates that, depending on the claims rate, the Statutory Cash Claims will result in payments of approximately $100 for eligible claimants. Class Counsel Decl. ¶ 38.[5]

*Third,* the small number of Settlement Class Members that had health information compromised in the Security Incident may submit a Health Information Claim. Health Information Claims will be paid a fixed $100 cash payment. *Id.* ¶ 38.[6]

*Fourth*, all Settlement Class Members will be entitled to enroll in Privacy Shield, which will be available for three years. This monitoring program was developed by experts in the field specifically for this case, and provides substantial web and dark web monitoring for Settlement Class Members. CyEx Dec. ¶¶ 6-7. Privacy Shield will also aid in reducing Settlement Class Members' digital

---

[5] By way of example, Interim Co-Lead Counsel estimates that a 10% claims rate for Statutory Cash Claims will result in payments of at least $100—and up to 35% more if the Extraordinary Claims Fund is not exhausted.

[6] All Extraordinary Claims, Statutory Cash Claims, and Health Information Claims shall be paid pursuant to the Payment Schedule detailed in the Settlement Benefits Plan submitted by Interim Co-Lead Counsel in conjunction with this motion for Preliminary Approval. SA ¶ 43.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT – 3:24-md-03098-EMC

footprint. The extensive benefits are described in the Declaration of Gerald Thompson. *See id.* ¶¶ 6-7.

To take advantage of the cash payments and to enroll in Privacy Shield, Settlement Class Members will submit Claim Forms to the Notice and Claims Administrator electronically or download a form for mailing from the Settlement Website. SA ¶ 100. Settlement Class Members will be able to receive their payments by an electronic payment option or can opt for a mailed check. SBP ¶ 13. Activation codes for Privacy Shield will be automatically sent after the Effective Date to Settlement Class Members who submitted a claim. However, even if they do not make a claim for Privacy Shield prior to the Claims Deadline, Settlement Class Members will be entitled to enroll *at any point* during the three-year period that Privacy Shield is active and will be able to take advantage of the remaining time available on the three-year term of the program. SBP ¶ 12. Should any funds remain from the failure of Settlement Class Members to timely negotiate a settlement check or to timely provide required tax information such that a settlement check could issue, they will be used to extend the active period for Privacy Shield. No funds may revert to 23andMe. SBP ¶ 8.

**B.   The Settlement Includes Important Business Practice Commitments Designed to Enhance the Security of Settlement Class Members' Personal Information**

As additional consideration for the Settlement, 23andMe commits to adopting, paying for, implementing and maintaining the following Business Practices Commitments related to information security to safeguard current users' and Settlement Class Members' Personal Information. Each Business Practice Commitment is described in detail in the Settlement Agreement. SA ¶¶ 70. These commitments include: (1) enhanced password protection; (2) mandated multi-factor authentication; (3) annual security awareness training; (4) annual computer scans and cybersecurity audits; (5) information security program; (6) maintenance of data breach incidents response plan and threat management; and (7) limited retention of inactive Personal Information. *Id.* Moreover, the Class Notice will provide a link where Settlement Class Members can have their information deleted by 23andMe, subject to certain conditions such as legal record retention requirements. SA ¶ 71. At least 14 days in advance of the Final Approval Hearing, 23andMe will file a report with the Court, with a copy to Class Counsel, detailing the status of its compliance with the Business Practice Commitments identified above. The report is to be certified by the most senior 23andMe employee with responsibility

for overseeing the Business Practice Commitments. *Id.* at ¶ 72.

**C.      Class Definition and the Estimated Class Size**

The Settlement Class includes: "all natural persons who were residents of the United States on August 11, 2023 and whose Personal Information was compromised in the Security Incident." SA ¶ 44. The Statutory Subclass is defined to include Settlement Class Members who were residents of Alaska, Oregon, California or Illinois as of August 11, 2023. SA ¶ 51. The Settlement Class and Statutory Subclass specifically exclude: (i) 23andMe and its officers and directors; (ii) all Settlement Class Members who timely and validly request to opt-out from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) potential class members who have provided 23andMe with an express release of claims arising out of or related to the Security Incident prior to the Effective Date of this Settlement. SA ¶ 44.[7] 23andMe's investigation determined the threat actor downloaded Personal Information without authorization relating to approximately 6.4 million natural persons in the United States. SA ¶ 3. The Statutory Subclass includes approximately 1.4 million natural persons in the United States. Class Counsel Decl. ¶ 44.

**D.      Counsel's Fees and Costs and the Settlement Class Representatives' Service Awards**

Interim Co-Lead Counsel anticipate they will petition the Court for attorneys' fees of up to 25% of the Qualified Settlement Fund, and reimbursement of reasonable expenses incurred in the Litigation. SA ¶ 97; *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("*In re Bluetooth*"). The Settlement Class and the Court will have a full opportunity to consider the appropriate fees as part of the final approval process. There is no "clear sailing" agreement, and final approval is not contingent upon approval of the requested attorneys' fees, costs and expenses. SA ¶¶ 97, 99, 104. Interim Co-Lead Counsel also intends to request reimbursement for expenses associated with the retention of cybersecurity and financial experts, mediation costs, and other costs incurred during the Litigation.

---

[7] The Settlement Class definition encompasses the same persons as the Nationwide Class in the Complaint. The "Nationwide Ethnically Targeted Persons Class" is subsumed within the Settlement Class definition. The proposed Statutory Subclass definition applies only to residents of the four states with genetic privacy statutes that provide statutory damages, as alleged in the Complaint, and here, the eligibility is defined as of August 11, 2023, the date the initial data appeared on the dark web.

The current compensable common benefit lodestar—as explained in detail in the Class Counsel Declaration—is currently approximately $3,560,000, with approximately $1,500,000 likely to be incurred during the remainder of the case.[8] Class Counsel Decl. ¶¶ 49-56. Should proposed Class Counsel seek $7,500,000 in fees (25% of the Fund), the resulting lodestar multiplier would be 1.48. *Id.* ¶ 57. Proposed Class Counsel will submit finalized figures in connection with their forthcoming motion for fees and expenses. ¶ 58.

Under the Settlement, proposed Class Counsel will seek approval of Settlement Awards of $500 for each Settlement Class Representative, which 23andMe will not oppose. SA ¶ 98. The Settlement is not contingent upon approval of the Service Awards to the Settlement Class Representatives, and the Settlement Class and the Court will have a full opportunity to evaluate the request for such awards as part of the final approval process. *Id.* ¶¶ 99, 104.

**E.     The Settlement's Release is Coextensive with the Ninth Circuit's "identical factual predicate" Requirement**

The Settlement Agreement proposes a mutual release between each Settlement Class Member and specified Parties listed in the Agreement, including 23andMe and its past or present parents, subsidiaries, directors, employees, and agents, for all the claims asserted as part of this MDL as well as claims that have not been asserted but "aris[e] out of the identical factual predicate as the allegations" in the Litigation. SA ¶¶ 15, 37-39; *Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.,* 517 F.3d 1120, 1133 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1287 (9th Cir. 1992)). There are two state court cases, which assert overlapping class claims related to the Security Incident, which would be covered by the release as would any individual action or arbitration unless the Settlement Class Member elects to opt out of the Settlement. These claims and their known status are addressed in further detail in the Declaration of Class Counsel. Class Counsel Decl. ¶¶ 45-48.

### IV.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Under Federal Rule of Civil Procedure 23(e)(2), before approving a class action settlement, a

---

[8] Interim Co-Lead Counsel have reviewed the time submitted by representing counsel in the MDL and provided an explanation of the lodestar in their declaration. Further review will be conducted, and more details provided in conjunction with the formal Motion for Attorneys' Fees.

district court must conclude that the settlement is "fair, reasonable, and adequate." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 780 (9th Cir. 2022) (quoting Fed. R. Civ. P. 23(e)(2)); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016). "Courts reviewing class action settlements must 'ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights,' while also accounting for 'the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120–21 (9th Cir. 2020) (citations omitted).

A district court's review of a proposed class action settlement generally involves two steps. First, at the preliminary approval stage, a court "determines whether a proposed settlement is 'within the range of possible approval' and whether or not notice should be sent to class members." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010) (citation omitted).[9] In evaluating whether the proposed settlement falls "within the range of possible approval," the most important factor is "'plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Cotter v. Lyft, Inc.* 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (citation omitted). And where, as here, the settlement was reached prior to class certification, "the district court must apply a 'higher standard of fairness.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338 (2011)); *see also In re Apple Inc. Device Performance Litig.*, 50 F.4th at 776 ("As we have repeatedly admonished, settlement prior to class certification requires extra scrutiny.").

Under the factors set forth in *Hanlon*, a district court must consider:

> [T]he strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement.[10]

---

[9] *See also, e.g.*, U.S.D.C., N.D. Cal., *Procedural Guidance for Class Action Settlements*, https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements.

[10] The last factor—the reaction of class members—is not known because Class Members have not yet had the opportunity to react. This factor will need to be evaluated at the final approval stage.

10

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1120 (N.D. Cal. 2016) (quoting *Hanlon*, 150 F.3d at 1026). As shown below, these factors, as well as others, strongly favor preliminary approval.

**A.    The Strengths and Risks of Plaintiffs' Claims**

Plaintiffs believe their claims are meritorious, and the strength of Plaintiffs' claims is a critical factor that drove settlement negotiations and the proposed Settlement Agreement. At the same time, Plaintiffs face substantial risks that could decrease the amount of recovery—or even defeat recovery on a classwide basis altogether. The strengths and risks of Plaintiffs' claims are addressed below, first with respect to overarching considerations and then by categories of claims. With respect to each category of claims, Plaintiffs offer, to the extent possible, an estimate of the range of recovery for each category of claims as well as the extent to which Plaintiffs believe a discount is appropriate for settlement purposes.[11]

**B.    The Financial Condition of the Defendant Supports Approval of the Settlement**

Simply put, the overarching consideration that weighs in favor of preliminary approval is 23andMe's financial condition. As set forth above, 23andMe has dwindling resources and faces substantial financial challenges. Plaintiffs' counsel engaged an independent forensic accounting firm that confirmed what is apparent in 23andMe's publicly-filed reports—the company has limited funds, no reliable access to new capital, and mounting litigation exposure in other proceedings and investigations, meaning that any litigated judgment significantly more than the Settlement is likely to be uncollectable. This fact weighs strongly in favor of settlement approval. *See, e.g.*, *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Prods. Liab. Litig.,* MDL 2672, 2016 WL 6248426, at *11 (N.D. CA. October 25, 2016) (noting that a settlement class could also receive nothing not only "because of the risks of litigation *but also because of the solvency risks*[.]" (emphasis added)); *In re*

---

[11] Plaintiffs do not analyze punitive damages at this stage, even though some claims allow for their recovery. Plaintiffs do not intend to argue against the imposition of punitive damages. Rather, punitive damages are inherently unpredictable and discretionary; as such, they typically play a limited role in determining the fairness of a settlement. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, MDL No. 2672, 2017 WL 2212783, at *24 (N.D. Cal. May 17, 2017) (because "any award of punitive damages is inherently speculative and discretionary, courts regularly approve settlements that offer no or little compensation representing the risk of a punitive damages award") (citation omitted).

11

*Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (noting that the defendant's "potential inability to pay litigated judgments . . . weighs in favor of the court's adequacy ruling").

### 1.   Risks Related to Class Certification

Although Plaintiffs believe a class would be certified for at least some, if not all, of their nationwide claims, as well as claims brought on behalf of the State Subclasses, Plaintiffs recognize the significant risk of an adverse class certification ruling by this Court, the Ninth Circuit, or the Supreme Court. In this regard, Plaintiffs have already developed evidence of 23andMe's general practices, and many of Plaintiffs' claims concern standard provisions that apply uniformly to every person using 23andMe's services. *See, e.g.*, *Ellsworth v. U.S. Bank, N.A.,* No. 3:12-cv-02506-LB, 2014 WL 2734953, at \*20 (N.D. Cal. June 13, 2014) ("identical mortgage contracts" supports certification). For example, Plaintiffs' contract claims concern standard provisions that apply uniformly to every person using 23andMe's services. Likewise, with regard to Plaintiffs' negligence claims, Plaintiffs' allegations concerning 23andMe's duties vis-à-vis its users' Personal Information applies equally to all Settlement Class Members, as do its arguments regarding whether 23andMe breached its duties to Settlement Class Members. *See Jimenez v. Allstate Ins. Co.,* 765 F.3d 1161, 1168 (9th Cir. 2014).

However, as noted above, Plaintiffs also face significant risks with respect to class certification. For instance, choice of law issues could also present a potential hurdle for some of Plaintiffs' nationwide claims. *See* 7AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1780.1 (3d ed.) (noting that class actions requiring application of multiple state laws can implicate Rule 23(b)(3)'s requirements of predominance and superiority). Similarly, for other claims, 23andMe might successfully argue that individualized issues would predominate. Further, even if Plaintiffs successfully certified one or more classes, there would be a risk that the Court could later decertify the class. *See In re Netflix Privacy Litig.*, Case No. 5:11-cv-00379 EJD, 2013 WL 1120801, at \*6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.").

### 2.  Comparing the Strengths and Risks of the Contract-Related Claims

Plaintiffs bring contract-based claims—breach of express contract, breach of implied contract, and breach of the implied covenant of good faith and fair dealing (Counts 5, 6, and 107)—based on 23andMe's breach of its agreement with Plaintiffs and Settlement Class Members by failing to protect their Personal Information. Dkt. 78 at 109. Specifically, Plaintiffs allege that 23andMe (1) failed to take reasonable steps to use safe and secure systems to protect that information; and (2) allowed Personal Information to be disclosed to unauthorized third parties, in violation of applicable agreements with 23andMe. *Id.* In support of these contract-based claims, Plaintiffs believe they could prove that 23andMe's data security systems were deficient and were the proximate cause of the exfiltration of Plaintiffs' Personal Information. Conversely, there remain significant risks in continuing to litigate these claims. For example, 23andMe may argue that Plaintiffs' express breach of contract claim fails to identify which specific contractual provision 23andMe breached. *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (explaining that a claim for breach of contract "must allege the specific provisions in the contract creating the obligation the defendant is said to have breached"). Such an argument may prove convincing for the Court.

However, Plaintiffs' breach of implied contract claim may address concerns in that regard. *See, e.g.*, *Castillo v. Seagate Tech., LLC*, Case No. 16-cv-01958-RS, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016) (noting in declining to dismiss implied breach of contract claim that, "[w]hile Seagate made no explicit promises as to the ongoing protection of personal information, it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently."); *Rudolph v. Hudson's Bay Co.*, Case No. 18-cv-8472 (PKC), 2019 WL 2023713, at *11 (S.D.N.Y. May 7, 2019) ("Other courts applying California law have concluded that an implied contract is formed where a person discloses sensitive information in order to receive a benefit, with the expectation that such information will be protected.").

Damages may prove challenging for Plaintiffs' contract-based claims given the difficulties in quantifying the resulting economic and non-economic harm suffered on a classwide basis. Likewise,

the remedy of restitution also entails risk.[12] Pursuing this remedy would not require Plaintiffs to demonstrate their own quantifiable loss, and restitutionary disgorgement may be appropriate where, as here, "actual damages are difficult to prove." *Young v. Wideawake Death Row Ent., LLC*, Case No. CV 10-1010 CAS (JEMx), 2011 WL 13371881, at *2–3 (C.D. Cal. May 16, 2011); *see also* Rest. (Third) of Restitution and Unjust Enrichment § 1 cmt. a (2011). Nevertheless, quantifying the extent to which 23andMe was unjustly enriched is a hurdle that may be difficult for Plaintiffs to overcome, as associating certain profits with 23andMe's broad misconduct in this case will likely be challenging, and for this reason the Court might find Plaintiffs' method of calculating of such figures to be unpersuasive or reject them altogether.

Given the above challenges, trying the contract-based claims carries risk, requiring a discount. Plaintiffs assert that there is a relatively wide range of possible recoveries if their contract-based claims were successful at trial, ranging from a significant fraction of the settlement amount at the low end to several times the settlement amount at the high end. Given the merits-based and procedural risks, the benefit Settlement Class Members would receive under the proposed Settlement Agreement appropriately accounts for the risks associated with continuing to litigate Plaintiffs' contract claims.

### 3. Comparing the Strengths and Risks of the Negligence-Based Claims

Plaintiffs allege that 23andMe is liable for negligence and negligence per se (Counts 1 and 2) for failing to provide fair, reasonable, or adequate data security practices to safeguard Plaintiffs' and Settlement Class Members' sensitive Personal Information. Plaintiffs believe they would be able to prove that 23andMe owed a duty to Plaintiffs and Settlement Class Members to exercise reasonable care in safeguarding their Personal Information, and that it breached that duty. In this regard, Plaintiffs believe that they would be able to demonstrate how 23andMe failed to (1) implement adequate security systems, (2) detect the Security Incident while it was ongoing, (3) maintain security systems consistent with industry standards during the period of the Security Incident, (4) comply with regulations protecting the Personal Information at issue, and (5) disclose in a timely and adequate manner that

---

[12] *See Alkayali v. Hoed*, Case No. 3:18-cv-777-H-JMA, 2018 WL 3425980, at *6–7 (S.D. Cal. July 16, 2018) ("California law permits plaintiffs to seek disgorgement of a defendant's unjust enrichment as a restitutionary remedy for breach of contract.").

1    Plaintiffs' and Settlement Class Members' Personal Information in 23andMe's possession had been

2    compromised.

3          However, the negligence-based claims face obstacles as well. First, 23andMe may argue that

4    at least some Plaintiffs assumed the risk of identity theft and fraud by recycling their login credentials

5    and failing to use a unique password. In a letter to a group of users who filed claims against the

6    company, 23andMe said that "users negligently recycled and failed to update their passwords

7    following these past security incidents, which are unrelated to 23andMe," and that "[t]herefore, the

8    incident was not a result of 23andMe's alleged failure to maintain reasonable security measures."[13]

9          Second, as noted above, Plaintiffs presentation of a classwide damages model quantifying the

10   Settlement Class Members' damages attributable to 23andMe's negligence may be subject to

11   challenge. Although 23andMe admitted that different categories of Plaintiffs' Personal Information

12   were compromised, including, *inter alia*, names, sex, dates of birth, various genetic information,

13   ancestry reports, and family tree information,[14] 23andMe could argue that not all categories of

14   information were compromised by unauthorized third parties for all Settlement Class Members.

15   Separately, Plaintiffs also face the risk that 23andMe may be able to successfully argue that

16   quantifiable actual damages theories may not predominate at the class certification stage. *See, e.g.*,

17   *Opperman v. Path, Inc.*, No. 3:13-cv-00453-JST, 2016 WL 3844326, at *14–15 (N.D. Cal. July 15,

18   2016) (discussing issues with valuing privacy on a classwide basis). This means that Plaintiffs might

19   elect to pursue nominal damages, which are appropriate "where the amount of damages is uncertain."

20   *Id.* at *16 (*quoting Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 5:11-cv-01846-LHK, 2012 WL

21   2571719, at *28 (N.D. Cal. June 30, 2012)).

22         Litigating the negligence claims therefore carries risk, meriting a discount. Plaintiffs assert that

23   there is a range of possible recoveries if their negligence-based claims were successful at trial,

24   however, the analysis is not without challenge. To date, there have been no data breach cases tried to

25

26   [13] Lorenzo Franceschi-Biccierai, *23andMe tells victims it's their fault that their data was breached*,
     TechCrunch (Jan. 3, 2024), https://techcrunch.com/2024/01/03/23andme-tells-victims-its-their-fault-
27   that-their-data-was-breached.
     [14] Dkt. 78 at 75.

28
                                                      15

verdict, and the damages range is therefore difficult to quantify. Traditionally, Plaintiffs have advanced damages models based on various measurements designed to make Plaintiffs and the Class whole, including for example, the retail value of restorative monitoring programs for the class. However, these damages models remain untested. Given this, the assumed range of verdicts, were Plaintiffs successful, has the potential to range from a fraction of the settlement amount at the low end to multiples of the settlement. Given the merits-based and procedural risks, the benefits Settlement Class Members would receive under the proposed Settlement Agreement appropriately accounts for the risks associated with continuing to litigate Plaintiffs' negligence claims.

### 4. Comparing the Strengths and Risks of the Privacy-Based Torts

Plaintiffs' privacy-based torts—invasion of privacy based upon intrusion upon seclusion and invasion of privacy under the California Constitution (Counts 4 and 17)—require showing that (1) Plaintiffs had a reasonable expectation that their Personal Information would be kept private, and that (2) 23andMe's disclosure of their sensitive Personal Information was highly offensive. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (listing elements for both claims). Both elements are mixed questions of law and fact. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 40 (1994).

Plaintiffs privately disclosed their Personal Information to 23andMe as part of obtaining genetic testing and analysis services. Dkt. 78 at 131. Plaintiffs are confident the evidence will support Plaintiffs' allegation that they had a reasonable expectation that their most sensitive Personal Information would be kept confidential and protected from unauthorized disclosure. *Id.* However, significant risks remain with proving these privacy-based torts at trial. To prevail, Plaintiffs must prove that the disclosure of their Personal Information was highly offensive to a reasonable person. "Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009)). *See id.* ("the highly

offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy"). Because the "highly offensive" analysis requires a holistic interpretation of many factors, in part guided by public policy, 23andMe could succeed in arguing that some or all of the compromised Personal Information does not meet this high bar. *Cf. In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) (explaining that courts routinely refuse to dismiss invasion of privacy claims in data breach cases "involve[ing] medical information[] because the disclosure of such information is more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive'") (citing cases).

Moreover, for the same reasons as discussed above with respect to Plaintiffs' negligence-based claims, Plaintiffs may face challenges in quantifying the damages attributable to 23andMe's privacy violations on a classwide basis, and might therefore elect to pursue nominal damages. *See, e.g.*, *Opperman,* 2016 WL 3844326, at *14–16. As such, litigating the privacy-based tort claims carries risk, meriting a discount. As with Plaintiffs' other claims, their privacy-based tort claims could result in recoveries from a fraction of the settlement amount to multiples of the settlement. The proposed Settlement Agreement therefore appropriately accounts for the risks associated with continuing to litigate Plaintiffs' privacy-based tort claims.

### 5. Comparing the Strengths and Risks of the Breach of Confidence and Breach of Fiduciary Duty Claims

To allege breach of fiduciary duty (Count 8), a plaintiff must show "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d 1153, 1169 (S.D. Cal. 2008). Whether a fiduciary duty exists is a question of law. *Marzec v. California Pub. Emps. Ret. Sys.*, 236 Cal. App. 4th 889, 915 (2015). In response, 23andMe would likely argue that 23andMe did not owe Plaintiffs a fiduciary duty. "A fiduciary relationship is any relation existing between parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party." *Gilman v. Dalby*, 176 Cal. App. 4th 606, 613 (2009) (cleaned up). "[T]raditional examples of fiduciary relationships include those of trustee/beneficiary, corporate directors and majority shareholders, business partners, joint adventurers, and agent/principal." *Id.* at 614. The Court may rule

17

that Plaintiffs entered into an arms-length business relationship with 23andMe insufficient to create a fiduciary duty, despite the fact that Plaintiffs tasked 23andMe with safeguarding their sensitive Personal Information as part of this relationship. *See Worldvision Enterprises, Inc. v. Am. Broad. Companies, Inc.*, 142 Cal. App. 3d 589, 595 (1983) ("The mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty in the absence of an act creating or establishing a fiduciary relationship known to law."). Such an argument raised by defendants has found support in similar factual circumstances. *See, e.g.*, *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d at 1145–46 ("Plaintiffs have failed to allege sufficient facts to establish a fiduciary relationship between themselves and Defendants," as "Plaintiffs simply allege that Defendants collected Plaintiffs' private information so Defendants could provide their genetic testing to screen for and diagnose diseases," which "is not a situation where the parties have a special relationship.").

Similarly, the tort for breach of confidence in California (Count 3) "is based upon the concept of an implied obligation or contract between the parties that confidential information will not be disclosed." *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1226-27 (9th Cir. 1997). A plaintiff must allege "(1) the plaintiff conveyed 'confidential and novel information' to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Id.* at 1227 (citation omitted).

23andMe may argue that Plaintiffs' breach of confidence fails as a matter of law because 23andMe did not "disclose" Plaintiffs' sensitive Personal Information, but it was instead stolen from 23andMe. Resolution of this issue would therefore depend on how the Court interprets the word "disclosure" for the claim's fourth element. Some California courts have followed the interpretation that favors 23andMe, when disclosure of information is due to an unauthorized party's activities rather than a defendant's affirmative actions. *See, e.g.*, *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d at 1146–47 ("Plaintiffs do not allege that Defendants affirmatively shared any information

or performed any act that gave hackers information," and because "Defendants made no 'disclosure' of Plaintiffs' confidential information, they cannot be held liable on a claim for breach of confidence."); *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1555–56 (2014) (explaining that the "ordinary meaning" of the word "disclosure" "suggest[s] that disclosure occurs when the health care provider affirmatively shares medical information with another person or entity").

Further, for the same reasons as discussed above with respect to Plaintiffs' privacy- and negligence-based claims, Plaintiffs would likely face challenges in quantifying the damages attributable to 23andMe's violations on a classwide basis, and might therefore elect to pursue nominal damages. To date, there are no data breach verdicts on which to base the expected range of recoveries with any assurance. Therefore, litigating the breach of confidence and breach of fiduciary duty claims carries risk, meriting a discount. The rage of potential outcomes is from a fraction of the settlement amount to multiples of settlement amount. Given these risks, the Settlement appropriately accounts for the risks associated with continuing to litigate Plaintiffs' breach of confidence and breach of fiduciary duty claims.

### 6. Comparing the Strengths and Risks of the Conversion and Unjust Enrichment Claims

"In California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010)). Rather, unjust enrichment (Count 10) describes "the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id.* (quoting 55 Cal. Jur. 3d Restitution § 2).

As such, the Court may construe this cause of action as a quasi-contract claim seeking restitution, as other courts in this District have done. *See Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1057 (N.D. Cal. 2021). *But see Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) ("[T]he California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed[.]")). If so, 23andMe may argue that Plaintiffs may not simultaneously maintain both claims for breach of contract and unjust enrichment. "As a matter of law, a quasi-contract claim for unjust enrichment 'cannot lie where there exists between the parties a

19

valid express contract covering the same subject matter.'" *Nguyen*, 529 F. Supp. 3d at 1057 (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). *See Durell*, 183 Cal. App. 4th at 1370 ("As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract."). Likewise, this claim therefore may face similar challenges and likely outcomes as discussed above with respect to Plaintiffs' claim for breach of implied contract.

Relatedly, "conversion is the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results." *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1161 (9th Cir. 2017) (internal quotation marks omitted). The elements of conversion (Count 9) are: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Hanover Ins. Co. v. Fremont Bank*, 68 F. Supp. 3d 1085, 1100 (N.D. Cal. 2014) (citing *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998)). Plaintiffs believe they will be able to show their ownership of the property at issue—their own Personal Information. *See Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (explaining that in California, "[p]roperty is a broad concept that includes 'every intangible benefit and prerogative susceptible of possession or disposition'") (citation omitted). And Plaintiffs likewise believe they will be able to demonstrate 23andMe's conversion by its wrongful conduct in failing to adequately safeguard Plaintiffs' Personal Information.

As both claims seek restitution as a remedy, it may prove challenging to present a defensible damages theory for these claims, and quantifying the extent to which 23andMe was unjustly enriched is a hurdle that may be difficult for Plaintiffs to overcome, as associating certain profits with 23andMe's broad misconduct in this case would likely be challenging, and the Court might find Plaintiffs' method of calculating such figures to be unpersuasive or reject it altogether. Given these challenges, there is a relatively wide range of possible recoveries, ranging from a significant fraction of the settlement amount to several multiples of the settlement amount. The Settlement therefore appropriately accounts for the risks associated with continuing to litigate Plaintiffs' conversion and unjust enrichment claims.

7.    **Comparing the Strengths and Risks of the State Consumer Protection-Related Claims**

Plaintiffs and the various State Subclasses assert claims under state consumer protection statutes (Counts 11, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 31, 33, 34, 35, 36, 38, and 40) based on 23andMe's unfair and deceptive trade practices, failure to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Subclass Members' Personal Information, and misrepresenting that 23andMe would protect the privacy and confidentiality of such information.

There remain significant risks in continuing to litigate these claims through trial, including that 23andMe would likely contest whether certain statutory requirements of each claim are satisfied. During discovery, Plaintiffs would seek to obtain evidence to support their allegations, for example, that 23andMe engaged in unfair and deceptive trade practices, committed fraudulent acts in connection with selling its services to consumers, and that 23andMe intended to mislead Plaintiffs and Subclass Members and induce them to rely on 23andMe's misrepresentations and omissions. Notwithstanding the compelling evidence Plaintiffs believe would be obtained through discovery, there would remain a risk of unfavorable rulings as to one or more of Plaintiffs' consumer protection claims at the motion to dismiss stage, class certification, summary judgment, or trial. Further, even if Plaintiffs were successful at trial, they may face challenges in proving damages, as many consumer protection statutes only provide for actual rather than statutory damages.[15] Plaintiffs would likely also face challenges in quantifying the damages attributable to 23andMe's violations on a classwide basis for the same reasons as discussed above with respect to Plaintiffs' privacy and negligence-based claims.

For these reasons, continued litigation over Plaintiffs' consumer protection claims carries risk, meriting a discount. Plaintiffs assert that there is a relatively wide range of possible recoveries ranging from a significant fraction of the settlement amount to multiples of the settlement. This amount would vary on factors including the number of Subclass Members included in each of the 19 states covered by Plaintiffs' consumer protection-related claims. The Settlement therefore appropriately accounts for

---

[15] *See* Carolyn L. Carter & Jonathan Sheldon, Unfair and Deceptive Acts and Practices, *National Consumer Law Center*, (10th ed. 2021) (App'x. A – Statute-by-Statute Analysis of State UDAP Statutes).

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT – 3:24-md-03098-EMC

the risks associated with continuing to litigate Plaintiffs' various consumer protection claims.

**8.      Comparing the Strengths and Risks of the State Genetic Privacy-Based Claims**

Plaintiffs who are members of the Statutory Subclass assert claims under state genetic privacy statutes in Alaska, Illinois, and Oregon[16] based on 23andMe's violation of Plaintiffs' and Statutory Subclass Members' statutorily protected rights to privacy of their genetic information (Counts 13, 24, and 32). 23andMe's own disclosure of the Security Incident supports Plaintiffs' claims. However, there remain significant risks with pursuing these claims through trial. First, 23andMe will likely argue that the information compromised in the Security Incident is not protected by the statutes upon which the Plaintiffs' state genetic privacy claims are based, challenging whether these state laws explicitly safeguard the kind of "DNA analysis" and "genetic information" that was compromised in the Security Incident. *See* Dkt. 78 at 120, ¶ 664 (defining "DNA analysis" under the Alaska Genetic Privacy Act); *id.* at 145, ¶¶ 816-17 (defining "genetic information" under the Illinois Genetic Information Privacy Act); *id.* at 161, ¶ 907 (describing "genetic information" under the Oregon Genetic Privacy Law).

Although Plaintiffs believe they would demonstrate that state genetic privacy statutes apply to the claims of Plaintiffs and Statutory Subclass Members, and that the disclosure of their genetic information was unauthorized, continued litigation would still present significant risks. 23andMe would likely contest whether the statutes apply to the information compromised in the Security Incident, whether all of the discrete requirements of the genetic privacy claims are satisfied, and whether these claims could be maintained on a classwide basis. Further, there are very few cases interpreting these genetic privacy statutes—and even fewer that apply to the facts at issue here—and for this reason there is uncertainty regarding how these statutes would be interpreted and applied. In this regard, given the absence of robust, well-settled case law under such statutes, continuing to litigate Plaintiffs' statutory genetic privacy claims would necessarily involve an unquantifiable degree of risk.

Evaluation of the risk therefore merits a discount. Nevertheless, the statutory damages available for Plaintiffs' genetic privacy claims are significant, ranging from $100 for inadvertent

---

[16] Settlement Class Members residing in California on August 11, 2023, are also members of the Statutory Subclass.  Their applicable statutory claims are discussed below in section 10.

violations to $150,000 or more for knowing or reckless violations. Although there is a relatively wide range of possible recoveries if the genetic privacy claims were successful at trial, given the statutory damages available for these claims, Plaintiffs estimate that any recoveries could be many orders of magnitude more than the settlement amount at the high end. Due to the aggregate value of the statutory claims, if successful, an award of statutory damages would likely face a due process challenge and potentially be significantly reduced. *See Wakefield v. ViSalus, Inc.* 51 F.4th 1109, 1123 (9th Cir. 2022) (finding that "aggregated statutory damages . . . are subject to constitutional limitation in extreme situations—that is, when they are 'wholly disproportioned' and 'obviously unreasonable' in relation to the goals of the statute and the conduct the statute prohibits," *quoting St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)). And here, regardless of any constitutional issues, the financial condition of the Defendant would likely prohibit satisfaction of any judgment under any of the statutory claims obtained through trial.

### 9. Comparing the Strengths and Risks of the Other California Statutory Claims

California Plaintiffs asserted claims under the California Confidentiality of Medical Information Act, the California Consumer Privacy Act, the California Customer Records Act, and the California Consumer Legal Remedies Act (Counts 14, 15, 16, and 18) based on 23andMe's failure to take adequate security measures to store and protect its customers' Personal Information. Available information—including 23andMe's own disclosure of the Security Incident—supports Plaintiffs' claims. However, there remain significant risks with pursuing these claims through trial.

Although Plaintiffs believe they would demonstrate that the other California statutes apply to the claims of the California Plaintiffs and Subclass Members, 23andMe would likely contest whether the statutes apply to the information compromised in the Security Incident, whether all of the discrete requirements of the California statutory claims are satisfied, and whether these claims could be maintained on a classwide basis. This risk, and the due process issue addressed herein, merit a discount. Some of Plaintiffs' California statutory claims entitle Plaintiffs to seek actual or statutory damages. Under California's Consumer Privacy Act, for example, California Plaintiffs and Subclass Members are entitled to seek statutory damages up to $750 per consumer. *See* Dkt. 78 at ¶ 702. As

such, given the statutory damages available for these claims, Plaintiffs estimate that any verdict, were Plaintiffs successful, would be orders of magnitude more than the settlement amount. If Plaintiffs prevailed at trial on their CCPA or other California statutory claims, an award of statutory damages would likely face the same due process challenges addressed above. As such, the benefit Settlement Class Members would receive under the proposed Settlement Agreement appropriately accounts for the risks associated with continuing to litigate Plaintiffs' California statutory claims.

**10.    Comparing the Strengths and Risks of the Other State Statutory Claims**

Plaintiffs assert claims under other state statutes based on, among other things, 23andMe's failure to disclose the Security Incident in a timely and accurate fashion (Counts 30 and 37) and unauthorized disclosure of confidential healthcare records (Count 39). There remain significant risks in continuing to litigate these claims through trial, including that 23andMe would likely contest whether certain statutory requirements of each claim are satisfied. As such, there would remain a significant risk of unfavorable rulings as to one or more of these other state statutory claims. Further, even if Plaintiffs were successful at trial, to the extent prescribed statutory damages are not provided for, Plaintiffs would face significant challenges in proving damages, including challenges in quantifying the damages attributable to 23andMe's violations on a classwide basis for the same reasons as discussed above with respect to Plaintiffs' privacy and negligence-based claims.

Therefore, continued litigation over Plaintiffs' other state statutory claims carries risk, meriting a discount. Plaintiffs assert that there is a relatively wide range of possible recoveries if Plaintiffs' other state statutory claims were successful at trial, ranging from a significant fraction of the settlement amount at the low end to multiples the settlement at the high end. This amount would vary on factors including the number of Subclass Members included in each of the states covered by Plaintiffs' other state statutory claims. Given the merits-based and procedural risks discussed above, the benefit Settlement Class Members would receive under the proposed Settlement Agreement appropriately accounts for the risks associated with continuing to litigate Plaintiffs' other state statutory claims.[17]

---

[17] In addition to the claim-specific risks described above, some damages may be duplicative. While tenable arguments exist to the contrary, 23andMe could argue that damages for the contract, negligence,

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT – 3:24-md-03098-EMC

**C.      Further Litigation Would Be Uncertain, Expensive, Complex, and Lengthy**

Continuing this Litigation would be extremely expensive, complex, uncertain, and lengthy. In this regard, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002). Because data breach case law is still relatively undeveloped, data breach cases are among the more risky and uncertain areas of class action litigation. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 317 (N.D. Cal. 2018) ("Data-breach litigation is in its infancy with threshold issues still playing out in the courts."). For example, "damages methodologies in data breach cases are largely untested and have yet to be presented to a jury." *Hashemi v. Bosley, Inc.*, No. 21-946 PSG (RAOx), 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022). As the *Hashemi* court noted, "it is difficult to estimate Plaintiffs' expected recovery given the relative dearth of precedent and exemplar cases that have proceeded to trial." *Id.* Given these uncertainties, "[c]ourts have noted that legal uncertainty supports approval of a settlement." *In re Anthem*, 327 F.R.D. at 317. *See Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) (noting that "legal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval.").

In addition to the risks set forth above, there is a risk of unfavorable rulings at the motion to dismiss and summary judgment stages, such as with respect to complex issues including injury, damages, or statutory requirements for claims brought under relatively untested state privacy laws. Moreover, there is the risk of an adverse jury verdict at trial. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 664 (S.D.N.Y. 2015) (approving settlement and noting that jury verdict "could have turned on, among other factors, the persuasiveness of each side's expert witnesses" and "the justifications advanced by" the defendant for its practices). In particular, the complexity and number

---

and privacy claims all compensate Plaintiffs for the same harm: injury from 23andMe's failure to securely maintain their sensitive Personal Information. If such an argument proves successful, damages on the claims may not be stacked on top of each other. *See, e.g.*, *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1032 (9th Cir. 1999) ("[A] plaintiff may not receive multiple awards for the same item of damage.").

of issues involved would make presenting the case to the trier of fact and proving damages on a classwide basis challenging, and it is possible that a jury might not reach a unanimous verdict on all issues. While Plaintiffs believe they would be able to present a compelling case to a jury, the complex and relatively novel issues at stake here create a wide range of potential outcomes. Finally, even if Plaintiffs were to obtain a favorable jury verdict, 23andMe would still have arguments as to why this Court, the Ninth Circuit, or the Supreme Court should reduce or overturn the verdict. Additionally, 23andMe's dire financial condition could result in the Settlement Class Members receiving no compensation for the harms resulted from this Security Incident.

Resolving the action at this time saves the Parties the expenses of additional litigation and substantially benefits the Class by providing meaningful relief now, without having to wait or face the risks and uncertainties inherent with protracted litigation of the matter. Nearly all class action settlements reflect tradeoffs and difficult choices. Here, the Parties' ability to reach a settlement eliminates these risks by ensuring that Plaintiffs and Settlement Class Members receive a recovery that is certain and immediate, and the total value of the benefits under the proposed Settlement Agreement appropriately accounts for the risks of further protracted litigation.

## V.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

### A.     The Settlement Class Satisfies the Rule 23(a) Prerequisites

#### 1.     The Class Is Sufficiently Numerous

Numerosity requires the proposed class to be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a). Numerosity is generally satisfied when the class exceeds forty members. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000); *Lagunas v. Young Adult Inst., Inc.*, No. 23-CV-00654-RS, 2024 WL 1025121, at *3 (N.D. Cal. Mar. 8, 2024) (class of 299 employees sufficiently numerous). The class here is made up of approximately 6.4 million individuals. SA ¶ 3.

#### 2.     There Are Common Questions of Law and Fact

Commonality requires that the action involve "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); see also *Mazza v, Am. Honda Motor Co.,* 666 F.3d 581, 589 (9th Cir. 2012). (characterizing commonality as a "limited burden" which "only requires a single significant question of law or fact"). Where claims "derive from a common core of salient facts, and share many common

legal issues," commonality is met. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006). The class claims primarily derive from 23andMe's failure to implement basic data security policies and measures where it knew or should have known its existing policies and measures were inadequate. Thus, "whether [23andMe] employed sufficient security measures to protect the Settlement Class Members' Personal Information from the Data Breaches lies at the heart of every claim." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *3 (N.D. Cal. July 22, 2020). "Related factual questions about whether [23andMe] knew that its data security was inadequate and whether [it] timely disclosed and adequately responded to the Data Breaches also apply uniformly across the entire Settlement Class." *Id.*

This uniform conduct raises common questions, resolution of which will generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 350 (2011). Though no judicial determination has been made, Interim Co-Lead Counsel believe it is likely that California law would likely be applied to the primary common law claims. 23andMe's Terms of Service specify that California law applies to its Terms of Service, under which certain of the Settlement Class Members' claims arise. 23andMe is headquartered in California, is the forum for disputes dictated by the Terms of Service, the activity and decisions which led to the Settlement Class Members' damages occurred in California, and the documents and witnesses with information relevant to this matter are in California too.

Though Plaintiffs' Consolidated Class Action Complaint includes numerous state consumer statutory and other claims, not all claims are likely to be pursued in this case for reasons analyzed herein. *Jabbari v. Wells Fargo & Co.*, 965 F.3d 1001, 1008 (9th Cir. 2020) ("Only rarely will a class assert every possible claim that might offer relief").

The common legal and factual questions arising from Plaintiffs' claims include whether 23andMe owed a duty to the Settlement Class Members to exercise due care in safeguarding and preventing unauthorized access to their personal and genetic information; whether 23andMe breached that duty; whether 23andMe implemented and maintained reasonable data security procedures and practices commensurate with the sensitivity of the information being stored; whether 23andMe acted

negligently in connection with the monitoring and/or protecting of Settlement Class Members' personal and genetic information; whether 23andMe breached its contractual obligations to Settlement Class Members, and whether such breach caused harm; whether 23andMe's actions constitute a violation of the applicable data privacy statutes of Alaska, California, Illinois, and Oregon; whether 23andMe adequately addressed and fixed the vulnerabilities which permitted the Security Incident to occur; and whether Defendant caused Plaintiffs' and Settlement Class Members' damages. These more than suffice to meet the commonality requirement.

### 3. The Settlement Class Representatives' Claims are Typical of the Settlement Class Members' Claims

Fed. R. Civ. P. 23(a)(3) requires that the Settlement Class Representatives claims be typical of the claims of the proposed class. The test is whether other members of the class have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether the class members have been injured by the same course of conduct. *Ellis v. Costco Wholesale Corp.,* 657 F. 3d 970, 984 (9th Cir. 2011). Further, the typicality requirement is a "permissive requirement" and "requires only that Plaintiffs' claims be 'reasonably co-extensive,' not 'substantially identical' with the proposed class members' claims." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 593 (N.D. Cal. 2015) (quoting *Hanlon*, 150 F.3d at 1020). Where a plaintiff suffered a similar injury and other class members were injured by the same course of conduct, typicality is satisfied. *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

Here, the experiences of the Settlement Class Representatives match the experiences of the millions of other Settlement Class Members that make up the Settlement Class. 23andMe failed to adopt practices that would have prevented the cybercriminals from accessing the personal and genetic information of the members of the Settlement Class, and cybercriminals took advantage of those failures. Because the Settlement Class Representatives' allegations involve the "same course of conduct," which is "not unique to the named plaintiffs," typicality is satisfied here. *Valliere v. Tesoro Ref. & Mktg. Co. LLC*, No. 17-CV-00123-JST, 2020 WL 13505042, at *5 (N.D. Cal. June 26, 2020) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

1
2

**4.    The proposed Settlement Class Representatives and Class Counsel Will—and Have—Fairly and Adequately Protected the Interests of the Settlement Class**

3

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly

4

and adequately protect the interests of the class" which requires that the named plaintiffs (1) not have

5

conflicts of interest with the proposed Class; and (2) be represented by qualified and competent

6

counsel. *In re Volkswagen "Clean Diesel" Mktg. Sales Practices & Prod. Liab. Litig.,* 895 F.3d 597,

7

607 (9th Cir. 2018). Both criteria are readily met here.

8

The proposed Settlement Class Representatives do not have any interests antagonistic to the

9

other Settlement Class Members, whose interests they will continue to vigorously protect. *See, e.g.*,

10

*In re Yahoo! Inc.*, 2020 WL 4212811, at *4–5. The Settlement Class Representatives are aligned with

11

Settlement Class Members as their interest is in proving that 23andMe should have prevented the theft

12

of their personal and genetic information. And they are aligned in seeking remuneration from 23andMe

13

for the resulting harm. In addition, each proposed Settlement Class Representative understands their

14

duties as class representatives, has agreed to consider and protect the interests of absent Settlement

15

Class Members, and has participated in this Litigation and Settlement. The proposed Settlement Class

16

Representatives have provided their counsel with necessary factual information, reviewed pleadings,

17

have had ongoing communications with their counsel regarding various issues pertaining to this case,

18

and will continue to do so until the case closes. Their participation easily meets the adequacy

19

requirement. *See Trosper v. Styker Corp.*, No. 13-CV-0607-LHK, 2014 WL 4145448, at *43 (N.D.

20

Cal. Aug. 21, 2014) ("All that is necessary is a 'rudimentary understanding of the present action and .

21

. . a demonstrated willingness to assist counsel in the prosecution of the litigation.'" (quoting *In re*

22

*Live Concert Antitrust Litig.*, 247 F.R.D. 98, 120 (C.D. Cal. 2007) (citation omitted))).

23

Interim Co-Lead Counsel are highly qualified lawyers who have successfully prosecuted high-

24

stakes complex cases and consumer class actions. *See* Class Counsel Decl. ¶ 4. They have devoted the

25

resources necessary to see this case through despite risk. *Id.* ¶ 5. Interim Co-Lead Counsel's work on

26

this case began months before their appointment and has included, since their appointment in their

27

interim capacity, preparing a Consolidated Complaint, addressing issues of appropriate representative

28

29

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT – 3:24-md-03098-EMC

plaintiffs, consulting with experts, evaluating ongoing informal discovery, preparing to and attending mediation, including analyzing documents produced in mediation, evaluating options for settlement benefits that would meet the needs of this Settlement Class, and reaching the proposed Settlement. They have been guided by the Settlement Class Members' interests throughout the management of this case and present this Settlement as in their best interests without reservation. *Id.* ¶ 5.

**B.    The Settlement Class Satisfies Rule 23(b)(3)**

Rule 23(b)(3) requires that (i) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (ii) that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

**1.    Common Issues of Law and Fact Predominate**

The predominance inquiry under Rule 23(b)(3) focuses on whether the "common questions present a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (citation and quotation omitted). If so, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (citation and quotation omitted). Even if just one common question predominates, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (footnotes omitted).

The common questions in this case, described above, can be resolved for all members of the Settlement Class in a single adjudication. 23andMe's data security policies were common to all Settlement Class Members, and whether 23andMe failed to properly secure their personal and genetic information can be answered on a classwide basis. Whether 23andMe was negligent, by virtue of its security practices, is a question that focuses on 23andMe's conduct and thus can be answered for the class as a whole. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942 (N.D. Cal. 2022) (explaining that claims that "require common proof of the defendant's conduct" are appropriate for class certification). Whether 23andMe failed to meet contractual obligations to keep Settlement Class Members' personal information private, and whether or not 23andMe could

have readily prevented this loss to the Settlement Class Members by taking action can be resolved classwide, using the same expert analysis, documentary evidence and testimony. *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.,* No. 3:16-cv-05486, 2018 WL 8949777 at *5 (N.D. Cal. Oct. 15, 2018) ("Predominance is satisfied because the overarching common question… can be resolved using the same evidence for all class members and is exactly the kind of predominant common issue that makes certification appropriate."). Indeed, "the focus on a defendant's security measures in a data breach class action 'is the precise type of predominant question that makes class-wide adjudication worthwhile.'" *In re Yahoo! Inc.*, 2020 WL 4212811, at *7 (quoting *In re Anthem*, 327 F.R.D. at 312). And whether or not the type of information released in this Security Incident is covered by the applicable statutes protecting genetic information can be determined by common evidence. Thus, common questions abound.

Rule 23(b)(3) also requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy" and lists four non-exclusive factors relevant to a predominance finding: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. The applicable factors weigh in favor of a predominance finding.

In this matter, any member of the Settlement Class who wants to control their own case can easily opt out of the Settlement to pursue arbitration or their own lawsuit and some will exercise that right. The actions of these individuals do not affect the predominance analysis here, as there are expected to be more than 6.3 million class members who will not have interest in seeking a separate action in arbitration or otherwise. There have been individuals, who through counsel have made demands for arbitration, though those numbers appear to be a very small percentage of the Settlement Class (far less than 1%). But even if that percentage increases, the efficiencies of collectively adjudicating the many common legal and factual questions, as well as the risks and expense of litigating this case weigh in favor of predominance. Moreover, there are two known class action cases

and two multi-plaintiff cases arising out of this incident that are pending in the Santa Clara Superior Court awaiting a ruling on a petition for Judicial Council for coordinated proceedings. Those cases are in their early stages with a Case Management Conference scheduled for October 31, 2024. The plaintiffs in those cases are Settlement Class Members who may participate in the Settlement, or they may opt to request exclusion. The JPML has already made the decision to centralize the actions before this Court and made findings suggesting the desirability of concentrating the litigation of the claims in this forum. And where, as here, the court is deciding the certification in the settlement context, it need not consider manageability issues. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).

### 2.     Class Treatment is Superior

Rule 23(b)(3)'s "superiority" element "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. A class action is the only reasonable method here to efficiently and fairly adjudicate Settlement Class Members' claims against 23andMe. S*ee, e.g., Phillips Petroleum Co v. Shutts,* 472 U.S. 797, 809 (1985) ("Class actions…permit the plaintiffs to pool claims which would be uneconomical to litigate individually").

The sheer number of potential separate trials, were they to be pursued, also favors certification. Even if Settlement Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Thus, superiority of class treatment to the instant litigation is easily shown here.

### C.     The Relief Offered in the Settlement Is More Than Adequate

The Settlement benefits provide fair, reasonable and adequate relief for all Settlement Class Members. FRCP 23 (e) requires that a settlement seeking to bind absent class members must be fair, reasonable and adequate. Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Sweet v. DeVos*, No. C 19-03674 WHA, 2020 WL 4876897, at *1 (N.D. Cal. May 22, 2020) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon*, 150 F. 3d at 1027. And "whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F. 3d 811, 819 (9th Cir 2012).

The cash value of the Settlement Fund is $30 million. The benefits to the Class account for the multiple aspects of harm the Settlement Class Members have suffered, and the damages caused by the exposure of Settlement Class Members' Personal Information are squarely addressed by the settlement benefits. Like most data breach settlements, this Settlement compensates those that suffered financial loss as a result of fraud. But given the unique allegations of harm here, this Settlement also compensates Settlement Class Members who spent money on counseling for anxiety or emotional unrest due to the sensitive nature of the information exposed in this incident. Moreover, to the extent any Settlement Class Member spent money to increase their physical security, those expenses are reimbursable under the Settlement. This unique reimbursement plan is directed toward the harms suffered by the Settlement Class Members here.

Further, all Settlement Class Members residing in states that provide statutory damages for exposure of genetic information on August 11, 2023 (the date it was first reported genetic information was downloaded onto certain dark web sites) are entitled to claim a Statutory Cash payment. And the small number of those Settlement Class Members that had health information compromised will receive $100, in addition to any other payments for which they are eligible. Importantly, the Settlement Fund will be used to provide all Settlement Class Members with a unique and robust monitoring plan to assist in mitigating the damage caused by this particular incident. Thus, the Settlement provides fair and adequate relief to all Settlement Class Members because the relief is tailored to the types of injuries suffered. *In re Anthem*, 327 F.R.D. at 332 ("A plan of allocation that reimburses class members based

33

on the type and extent of their injuries is generally reasonable") (citing cases).

The Settlement also provides for Business Practice Commitments which will provide enhanced security for Settlement Class Members' Personal Information. SA ¶ 70. These may not be available through a trial of this matter, and they include enhanced password protection, mandated two or multifactor authentication; annual security training; annual computer scans and cybersecurity audits; and Information Security Program and Retention Policy changes. This is a benefit to all Settlement Class Members, provided and paid for solely by 23andMe. Finally, the Settlement will provide clear instructions for Settlement Class Members on how to delete their data with a link in the Notice to where they can request such deletion.

This is a significant result for all Settlement Class Members. In fact, "other courts have approved settlements in privacy and security cases when each class member received just a few dollars or less." *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *5 (C.D. Cal. Oct. 30, 2023); *see, e.g., In re Yahoo! Inc.*, 2020 WL 4212811, at *10 (approving a Settlement Fund of $117.5 million with a settlement class size of approximately 194 million and collecting cases where recovery was only a few dollars per person or less); *Hashemi*, 2022 WL 2155117, at *7 (collecting cases with estimated settlement values of less than $1 per class member). Some privacy class actions have even settled for non-monetary relief alone. *See, e.g., Campbell v. Facebook Inc*., 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of settlement providing for declaratory and injunctive relief in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig*., 611 F. Supp. 3d 872 (N.D. Cal. 2020) (granting final approval of settlement providing injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data).

### 1. The Settlement Is Fair and Reasonable in Light of the Defendant's Financial Condition.

As stated earlier, a factor to consider when evaluating any class action settlement is whether the defendant is in a precarious financial situation. This is a factor that can weigh heavily in favor of approving a proposed settlement. *See, e.g., Cavazos v. Salas Concrete, Inc*., No.

34

119CV00062DADEPG, 2022 WL 2918361, at *5 (E.D. Cal. July 25, 2022) (finding that defendant's threatened insolvency and the possibility that the class members would recover nothing weighed heavily in favor of settlement); *Singh v. Roadrunner Intermodal Servs., LLC*, No. 115CV01497DADBAM, 2018 WL 4382202, at *3 (E.D. Cal. Sept. 13, 2018) ("Having voiced a concern about defendants' declining financial condition and its possible default at every stage of the settlement process, the court finds plaintiffs' counsel's concerns to be both legitimate and persuasive").

These financial struggles reveal 23andMe is a company that could not withstand a significant judgment. So, the Settlement obtained here is not only prudent, but is a significant victory for the Settlement Class Members. Class Counsel Decl. ¶ 32.

### 2. The Notice and Claims Process is Fair and Reasonable.

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id*.

Here, the relief distribution is straightforward. Settlement Class Members are able to easily complete and submit either online or by mail, a simple Claim Form covering all available types of relief. Any required documentation can be uploaded to the Settlement Website or sent to the Claims Administrator by mail. In addition, Settlement Class Members are encouraged to use a Claim Form to enroll in Privacy Shield to receive the maximum length of that benefit, though valid enrollments will be accepted at any time during the three years the services are available. SBP, ¶ 12(d). Cash payments will be made by digital payment or check, at the Settlement Class Member's election, and codes to activate Privacy Shield will be provided to Settlement Class Members following the Effective Date as set forth in the SBP ¶¶ 12-13. Thus, the procedures for submitting a claim or enrolling in Privacy Shield are not unduly demanding and the proposed method of distributing relief is adequate.

### 3. Interim Co-Lead Counsel Believes the Settlement Is an Outstanding Result.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Forsyth v. HP Inc.*, No. 16-CV-04775-EJD, 2024 WL 1354551, at *5 (N.D. Cal. Mar. 29, 2024) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). Here, Interim Co-Lead Counsel, who have decades of experience litigating class actions, believe that the Settlement reflects a significant success. Class Counsel Decl. ¶ 18. Furthermore, as discussed previously, the unique nature of this Security Incident and Plaintiffs' damages theories and claims do carry a risk that this Court, a jury, or an appellate court may find them unavailing. "Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Betancourt v. Advantage Hum. Resourcing, Inc.*, No. 14-CV-01788-JST, 2016 WL 344532, at *4 (N.D. Cal. Jan. 28, 2016). When Defendant's financial condition is considered, Interim Co-Lead Counsel individually and collectively believe this is an outstanding result for the Class.

### 4. The Settlement Also Satisfies the "*Bluetooth*" Factors.

Prior to class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair. *In re Bluetooth*, 654 F.3d at 946. At the preliminary approval stage, courts are directed to consider the three factors set out in *In re Bluetooth*. *See id*. at 947. Evaluation of these factors assists the Court in determining whether Plaintiffs' counsel have "allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Here, evaluation of the *Bluetooth* factors further supports granting preliminary settlement approval.

Here, all Settlement Class Members will receive benefits of value. This is not a settlement in which the entire class will "receive[] no monetary distribution but class counsel are amply rewarded." *Id*. In fact, it is expected that nearly $20,000,000 in cash payments will be distributed. In addition, Class Counsel anticipates requesting a fee of 25% of the Settlement Fund as attorneys' fees plus

reimbursement of reasonable expenses. The Settlement Agreement does not include a "clear sailing" provision. *Id*. Rather, all attorneys' fees will be payable solely from the Settlement Fund in a percentage determined by the Court. SA ¶ 97. The fees are therefore not being paid by 23andMe in exchange for Plaintiffs' acceptance of an unfair class settlement. *In re Bluetooth*, 654 F.3d at 947. Further, this is a non-reversionary settlement, reached through arm's length negotiations and under no circumstances will 23andMe receive any of the settlement funds back. The entire Settlement Fund, less notice and administration, taxes, attorneys' fees and costs, will be utilized to provide cash and other benefits to claimants. SA ¶ 59. Any residual funds available due to uncashed or unclaimed benefits will be used to fund additional months of Privacy Shield for the benefit of the Settlement Class Members. SBP ¶ 8. Thus, the *Bluetooth* factors are more than satisfied here.

## VI. THE PROPOSED NOTICE PROGRAM, SETTLEMENT ADMINISTRATOR, AND PROCESS FOR OPT-OUTS AND OBJECTIONS SHOULD BE APPROVED

### A. The Proposed Notice Plan

#### 1. Class Notice

Rule 23 requires the Court to direct the best notice practicable to all class members who would be bound by a proposed settlement. *See* Fed. R. Civ. P. 23(c)(2)(B), (e)(1). The proposed Notice plan meets those standards. *See generally* Admin. Decl. Notice will be effectuated the following ways: (i) via email using the same email list 23andMe used to notify its affected customers of the Security Incident; (ii) where an email address is unavailable, via direct mail notice to the mailing address 23andMe used to notify its affected customers of the Security Incident; (iii) by notice provided through 23andMe's website and mobile application to the Settlement Class Members upon logging into their accounts on the website or mobile application; and (iv) the media plan as implemented by the Settlement Administrator. SA ¶ 75.

The Settlement Administrator will establish the Settlement Website. *Id.* ¶¶ 78, 100(g). The Settlement Website will contain an online claims submission portal, FAQs, and downloadable copies of important case documents, including: (1) Class Notice and Claim Form; (2) the Settlement Agreement; (3) Plaintiffs' Consolidated Complaint; (4) Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; (5) Order Granting Preliminary Approval; and, when filed, (6) Plaintiffs'

Motion for Attorneys' Fees, Litigation Expenses and Service Awards, Plaintiffs Motion for Final Approval of Class Action Settlement and any Orders thereon. *Id.*

The Settlement Administrator will establish a toll-free help telephone line with information responsive to frequently asked questions about the Settlement and will provide Settlement Class Members the opportunity to request a call back or leave a message requesting assistance. The number shall be included in the Class Notice and posted on the Settlement Website. The Notice and Claims Administrator will establish and maintain a P.O. Box and email inbox, as well as provide mailed paper copies of the Class Notice and Claim Form upon request. *Id.*

### 2. CAFA Notice

The Notice and Settlement Administrator, at the direction of 23andMe, will provide notice pursuant to the Class Action Fairness Act ("CAFA") within ten (10) days after the Settlement Agreement is filed with the Court. SA ¶ 76.

## B. The Settlement Administrator

### 1. The Settlement Administrator Selection Process

Interim Co-Lead Counsel propose Verita (formally KCC) as the Notice and Claims Administrator. They do so only after evaluating bids from nine prospective settlement administrators. Class Counsel Decl. ¶ 63. Interim Co-Lead Counsel discussed and received bids from these nine prospective administrators for the methods of notice contemplated in this case based on the Settlement Class Member data available, including email, mail, mobile application, and media notice. *Id.* Only after receiving and evaluating the revised bids did Interim Co-Lead Counsel select Verita.

Collectively, Interim Co-Lead Counsel have used Verita as a settlement administrator on 2 occasions in the past two years, as detailed in their Declaration. *Id.* ¶ 65; *see also* Admin. Decl. ¶ 9. Verita has considerable experience as the appointment settlement administrator in large data breach class action settlements. Admin. Decl. ¶¶ 8, 10. In its declaration, Verita details the extensive data security measures it has established to securely handle Settlement Class Members' data. Admin. Decl. ¶¶ 41-45. It also maintains comprehensive insurance coverage, including sufficient Errors & Omissions coverage. Admin. Decl. ¶ 46. The Parties would not have selected Verita absent their comfort with its procedures for securely handling class member data.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT – 3:24-md-03098-EMC

Verita has agreed to cap the costs of notice and administration between $727,000 and $1,038,000, depending on the claims rate, the percentage of online claims, and the percentage of claimants who choose digital payments. Admin. Decl. ¶ 49. The costs will be paid out of the Settlement Fund. SA ¶ 59. The estimated costs are reasonable when compared to the value of the Settlement and the size of the Settlement Class, including the anticipated engagement by the Class as set forth below.

### 2. The Settlement Administrator's Estimated Claims Rate

Estimating a claims rate is complex. However, the Settlement Administrator has estimated that there will be between a 5-10% claims rate based on its experiences in other data breach cases. Admin. Decl. ¶ 37. The Notice Plan proposed here is intended to maximize the claims rate and encourage as much Settlement Class Member participation as possible. *See generally* Admin. Decl. ¶¶ 15-32.

## C. Opt-Outs and Objections: Timeline, Instructions, and Forms

The proposed Class Notice advises Settlement Class Members of their right (i) to opt out of the Settlement or (ii) to object to the Settlement, to Class Counsel's Motion for Attorneys' Fees, or to Service Awards to the Class Representatives, and (iii) of the associated deadlines. Admin. Decl. Exs. 1, 2, 4. The proposed schedule ensures that Settlement Class Members have at least 95 days from the order granting preliminary approval to opt out or object to the Settlement, with at least 35 days to opt out or object to the motion for attorneys' fees and expenses. N.D. Cal. Procedural Guidance ¶ 9.

The opt-out and objection instructions are in plain language and clearly prompt those who wish to opt-out or to object to provide the specific information each action requires. Class Counsel Decl. ¶ 68; Admin. Decl. Exs. 1, 2, 4. The Class Notice clearly informs Settlement Class Members of the Opt-Out Deadline, how to opt-out, the consequences of opting out, and requires that they supply only the information needed to opt out of the Settlement. Admin. Decl. Exs. 1, 2, 4; SA ¶¶ 80-84. Similarly, the Class Notice informs Settlement Class Members about how to send their written objections to the Court or file in person with the Court (or if represented by counsel to have counsel e-file), tells them that the Court can only approve or deny the Settlement and cannot change its terms, and clearly identifies the Objection Deadline. Class Counsel Decl. ¶ 69; Admin. Decl. Exs. 1, 2, 4.

The Settlement Agreement also provides for a preliminary injunction to enjoin ongoing

litigation and arbitrations against 23andMe until such time as the Settlement Class Member opts-out of the Settlement after receiving Notice. SA ¶ 73(h). This injunction is within the Court's jurisdiction pursuant to Federal Rule 23(d), which "vests a district court with the authority and discretion to protect the interests and rights of class members and to ensure its control over the integrity of the settlement approval process." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). The proposed injunction tracks similar preliminary injunctions approved by this Court in granting preliminary approval of class action settlements. *See, e.g., Roberts v. AT&T Mobility LLC*, No. 3:15-cv-03418-EMC (N.D. Cal. Mar. 31, 2021). In order to protect this MDL Settlement and the Court's jurisdiction, and particularly given 23andMe's financial position, Plaintiffs support the entry of the preliminary injunction in the proposed Preliminary Approval Order but note that the provision is severable from the remainder of the Settlement Agreement. SA ¶ 105.

## VII.   CONCLUSION

The proposed Settlement is immediate, substantial, and fair. It achieves the goals of the Litigation, benefits the entire Settlement Class, and accounts for the risks and uncertainties of continued, vigorously contested litigation and 23andMe's financial position. Plaintiffs therefore are pleased to present the Settlement to the Court for its consideration. Plaintiffs respectfully request that the Court preliminarily approve the $30 million non-reversionary Settlement, certify the Settlement Class, appoint the undersigned as Class Counsel and the Named Plaintiffs as Settlement Class Representatives, order dissemination of Class Notice to Settlement Class Members in accordance with the proposed Notice Plan, set a date for the Final Approval Hearing, and stay related actions as set forth in the proposed order.

## PROPOSED FINAL APPROVAL HEARING SCHEDULE

Plaintiffs' [Proposed] Order granting Preliminary Approval of Class Action Settlement, filed herewith, includes the following proposed schedule for the approval process:

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| 23andMe shall serve or cause to be served the notice required by the CAFA | 10 days following the filing of the Motion for Preliminary Approval |
| 23andMe shall deposit the Notice Payment into the Qualified Settlement Fund for purposes of facilitating the Notice Program | 10 days following the Preliminary Approval Order |
| 23andMe shall, for the purpose of facilitating Notice, provide or cause to be provided to the Notice and Claims Administrator information about the Settlement Class Members as set forth in SA ¶ 75 to effectuate the Notice Program | 20 days following the Preliminary Approval Order |
| Notice Program substantial completion deadline ("Notice Deadline") | 60 days following the Preliminary Approval Order |
| Class Counsel shall file a motion for fees, expenses, costs, and Service Awards | 35 days before the Objection Deadline (60 days following the Preliminary Approval Order) |
| Deadline for objections and opt-outs ("Objection Deadline and Opt-Out Deadline") | 35 days after the Notice Deadline (95 days following the Preliminary Approval Order) |
| Notice and Claims Administrator shall provide a final report to Class Counsel that summarizes the number of opt-outs received to date | 10 days after the Opt-Out Deadline (105 days following the Preliminary Approval Order) |
| Class Counsel shall file all papers in support of the application for the Final Approval Order and Final Judgment | 55 days after the Notice Deadline (115 days following the Preliminary Approval Order) |
| Deadline for submitting a claim ("Claims Deadline") | 90 days from the Notice Deadline (150 days following the Preliminary Approval Order) |
| Deadline for 23andMe to report on compliance with Business Practice Commitments | 14 days before Final Approval Hearing |
| Hearing on Final Approval of the Settlement | At least 35 days after the filing of Motion for Final Approval (Civil LR 7-2(a)) |

41

1

2      RESPECTFULLY SUBMITTED this 12th day of September, 2024.

3                                           */s/ Gayle M. Blatt*
                                           Gayle M. Blatt (SBN 122048)
4                                          CASEY GERRY SCHENK FRANCAVILLA BLATT
                                           & PENFIELD LLP
5                                          110 Laurel Street
                                           San Diego, CA 92101
6                                          Tel: (619) 238-1811
                                           gmb@cglaw.com
7

8                                          Cari Campen Laufenberg (*pro hac vice*)
                                           KELLER ROHRBACK L.L.P.
9                                          1201 Third Avenue, Suite 3400
                                           Seattle, WA 9f8101
10                                         Tel: (206) 623-1900
                                           claufenberg@kellerrohrback.com
11

12                                         Norman E. Siegel (*pro hac vice*)
                                           STUEVE SIEGEL HANSON LLP
13                                         460 Nichols Road
                                           Suite 200
14                                         Kansas City, MO 64112
                                           Tel: (816) 714-7100
15                                         siegel@stuevesiegel.com

16
                                           *Interim Co-Lead Counsel*
17

18

19

20

21

22

23

24

25

26

27

28
                                           42
      MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
                CLASS ACTION SETTLEMENT – 3:24-md-03098-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I, Cass L. Lazar, hereby certify that on September 12, 2024, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ *Cass L. Lazar*
Cass L. Lazar

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT – 3:24-md-03098-EMC

# EXHIBIT B

1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

11

**NORTHERN DISTRICT OF CALIFORNIA**

12

**SAN FRANCISCO DIVISION**

13

14  IN RE: 23ANDME, INC. CUSTOMER DATA
    SECURITY BREACH LITIGATION

No. 3:24-md-03098-EMC

15  This Document Relates to: ALL ACTIONS

**[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT**

16

17

18  Judge:           Hon. Edward M. Chen
    Courtroom:       5, 17th Floor
19  Hearing Date:    October 17, 2024
    Hearing Time:    1:30 p.m.

20
21
22
23
24
25
26
27
28

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement which seeks approval of the proposed class action settlement, the plan of allocation, the form and manner of notice, certification of the proposed Class for settlement and scheduling of a final approval hearing ("Motion") at which the Court will consider final approval of the Settlement, and Class Counsels' motion for attorneys' fees, costs and service awards in this action.

WHEREAS, Court-appointed Co-Lead Counsel on behalf of Plaintiffs and a defined proposed Settlement Class, and Defendant 23andMe, Inc. ("23andMe" or "Defendant") have entered into a Settlement Agreement and Release, dated September 5, 2024 ("Settlement Agreement"), that, subject to the Court's approval and final hearing on the matter, will resolve this lawsuit;

WHEREAS, the Court, for purposes of this Order, unless otherwise defined herein, adopts all terms capitalized herein as defined in the Settlement Agreement;

WHEREAS, this matter has come before the Court pursuant to Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement, and all corresponding and supporting documents attached thereto (the "Motion"), the record in this matter, and the briefs and arguments of counsel;

WHEREAS, the Court finds that it has jurisdiction over the Litigation and each of the Parties;

WHEREAS, the Court held a Preliminary Approval Hearing on October 17, 2024,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.      The Court retains continuing and exclusive jurisdiction over this Litigation, including the Settlement Class Representatives, Defendant, Settlement Class Members, and all matters arising out of or connected with the settlement, including the administration and enforcement of the Settlement Agreement.

### Preliminary Approval

2.      The Court has carefully reviewed all of the terms of the proposed Settlement Agreement, all corresponding and supporting documents attached thereto, Plaintiffs' Motion and corresponding papers filed therewith, including the Declaration of counsel and the Notice and Claims Administrator. Based on its review of these documents, and having heard the Parties, the Court finds that the terms of

the Settlement Agreement fall within the range of possible approval, and it is likely it will be able to approve the proposed Settlement as fair, reasonable, and adequate, and the result of vigilant, informed, non-collusive arms-length negotiations.

3.      The Court hereby GRANTS preliminary approval of the Settlement, and all of the terms and conditions contained therein.

**<u>Preliminary Certification of Settlement Class</u>**

4.      The Court preliminarily certifies, for settlement purposes only pursuant to Federal Rule of Civil Procedure 23(b)(3), the Settlement Class and subclass defined in the Settlement Agreement as follows:

**Settlement Class:**

All natural persons who were residents of the United States on August 11, 2023 and whose Personal Information was compromised in the Security Incident.

**Statutory Subclass:**

Settlement Class Members who were residents of Alaska, Oregon, California or Illinois on August 11, 2023.

5.      Excluded from the Settlement Class are (i) 23andMe and its officers and directors; (ii) all Settlement Class Members who timely and validly request to opt-out from the Settlement Class under the opt-out procedures provided in ¶¶ 79-87; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) potential class members who have provided 23andMe with an express release of claims arising out of or relating to the Security Incident prior to the Effective Date of this Settlement.

6.      The Court preliminarily finds that the Settlement Class and Statutory Subclass each satisfy the requirements of Federal Rule of Civil Procedure 23(a) for settlement purposes: (1) the Settlement Class and Statutory Subclass are each sufficiently numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the Settlement Class and Statutory Subclass, (3) the Settlement Class and Statutory Subclass Representatives' claims are typical of those of the Settlement Class and Statutory Subclass Members, and (4) the Settlement Class and Statutory Subclass Representatives fairly and adequately protect the interests of the Settlement Class and

Statutory Subclass. The Court further finds that the Settlement Class and Statutory Subclass satisfy the requirements of Federal Rule of Civil Procedure 23(b)(3) for settlement purposes: common questions of law and fact predominate over questions affecting individual members, and a class action is a superior method for fairly and efficiently adjudicating the Litigation.

7.     The Court hereby appoints the Plaintiffs listed in Exhibit 2 to the Settlement Agreement as Settlement Class Representatives.

8.     The Court hereby appoints Gayle M. Blatt of the firm Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, Norman E. Siegel of Stueve Siegel Hanson LLP and Cari Campen Laufenberg of Keller Rohrback L.L.P. as Class Counsel. The Court authorizes Class Counsel to enter into the Settlement on behalf of the Settlement Class Representatives and the Settlement Classes, and to bind them all to the duties and obligations contained therein, subject to final approval by the Court of the Settlement.

### Notice and Administration

9.     Verita is appointed as the Notice and Claims Administrator and shall perform all duties necessary for notice and administration as set forth in the Settlement Agreement and Notice Plan. Pursuant to the Settlement Agreement, Verita will make important documents, such as the Settlement Agreement and Claim Form (which Settlement Class members have the option to submit online), available on the Settlement Website.

10.     The Court finds that the Notice Plan as set forth in the Settlement Agreement satisfies the requirements of due process and provides the best notice practicable under the circumstances pursuant to Federal Rule of Civil Procedure 23(e)(1). The form, content and method of providing Class Notice and the Notice Plan are reasonably calculated under the circumstances to inform the Settlement Class Members of the pendency and nature of the litigation, the terms and conditions of the Settlement Agreement, the right of Settlement Class Members to object to the Settlement Agreement or exclude themselves from the Settlement Class, including instructions about the process for doing so, and the Final Approval Hearing details such that the Notice and Notice Plan fully comply with the requirements of Rule 23(c) and (e). The Court approves the Notice and Notice Plan, including the Claim Form, and

directs the Notice and Claims Administrator and the Parties to proceed with providing Notice to the Settlement Class as set forth in the Settlement Agreement, Notice Plan and this Order.

### Settlement Class Member Exclusions and Objections

11.     Settlement Class Members who request to opt-out and exclude themselves from the Settlement Class must do so by notifying the Notice and Claims Administrator in writing. To be valid, each Person wishing to opt-out of the Settlement Class shall: (i) include the case name of the Litigation: *In Re: 23andMe, Inc., Customer Data Security Breach Litigation*, Case No. 24-md-03098-EMC; (ii) identify the name and current address of the Person seeking exclusion from the Settlement; (iii) be individually signed by the Person seeking exclusion using wet-ink signature, DocuSign, or other similar process for transmitting authenticated digital signatures; (iv) include an attestation clearly indicating the Person's intent (to be determined by the Settlement Administrator) to be excluded from the Settlement; and (v) attest that the Person seeking exclusion had a 23andMe user account as of August 11, 2023. To be effective, written Opt-Out requests must be postmarked by the Opt-Out Deadline. Online Opt-Out requests must be submitted through the claims portal by the Opt-Out Deadline and must verify the Opt-Out request within three (3) business days following the Opt-Out Deadline using the link sent to the email address of the Settlement Class Member.

12.     Settlement Class Members who submit a valid and timely Opt-Out Request will not be bound by the terms of the Settlement Agreement. Any Settlement Class Member who does not submit a timely Opt-Out Request in accordance with the Settlement Agreement will forfeit the opportunity to be excluded from the Settlement and will be bound by the Settlement Agreement upon entry of the Final Approval Order and Judgment.

13.     Settlement Class Members who wish to object to the Settlement Agreement must do so by filing a timely written objection with the Court in accordance with the procedures outlined in the Class Notice, filed or postmarked no later than the Objection Deadline. The objection must include:

    a.    The case name and number of the Litigation;

    b.   The full name, address, telephone number, and email address of the objecting Settlement Class Member;

c. Information which verifies the objector is a Settlement Class Member, (e.g., a copy of the Class Notice or of the original notice of the Security Incident addressed to the objecting Settlement Class Member);

d. A written statement of all grounds for the objection, accompanied by any legal support for the objection;

e. A statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

f. A statement confirming whether the objector intends to personally appear or testify at the Final Approval Hearing;

g. The identity of all counsel representing the objector and whether they will appear at the Final Approval Hearing;

h. A statement of whether the objector has sold or otherwise transferred the right of their recovery to this Litigation to another person or entity, and, if so, the identity of the person or entity; and

i. The objector's signature or other duly authorized representative.

14.    To be timely, written notice of an objection in the appropriate form must be filed with the Court, either electronically or in person, or mailed and postmarked to the Class Action Clerk for the Northern District of California 450 Golden Gate Ave., San Francisco, CA 91402, no later than the Objection Deadline.

15.    Any Settlement Class Member who does not timely submit a written objection pursuant to the procedures outlined above and as detailed in the Notice and Settlement Agreement waives the right to object or be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement Agreement.

**Final Approval Hearing**

16.    The Court will hold a Final Approval Hearing on _____, 2025, in the Courtroom 5, 17th Floor of the United States District Court, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102.

17.    At the Final Approval Hearing, the Court will review, and rule on, the following issues:

a. Whether this matter should be finally certified as a class action for settlement

5

purposes under Fed. R. Civ. P. 23(a) and (b)(3)

    b.   Whether the settlement should be approved as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)

    c.   Whether a Final Approval Order and Judgment should be entered;

    d.   Whether the Settlement Class Members should be bound by the releases set forth in the Settlement Agreement;

    e.   Whether the application of Class Counsel for an award of attorneys' fees, costs, and expenses should be approved under Fed. R. Civ. P. 23(h) and the amount, if any, of any Service Awards to the Settlement Class Representatives; and

    f.   Any other issues the Court deems appropriate.

18.    Settlement Class Members do not need to attend the Final Approval hearing, nor take any other action to indicate their approval of the proposed Settlement Agreement. Settlement Class Members who wish to be heard must appear at the Final Approval Hearing. The Final Approval Hearing may be postponed, adjourned, transferred, or continued without further notice to the Settlement Class Members.

**<u>Reasonable Procedures</u>**

19.    Class Counsel and Defense Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Amended Settlement Agreement, including making, without further approval of the Court, minor changes to the form or content of the notices and other exhibits that they jointly agree are reasonable or necessary to further the purpose of effectuating the Settlement Agreement.

**<u>Extension of Deadlines</u>**

20.    Upon application of the Parties and good cause shown, the deadlines set forth in this Order may be extended by order of the Court, without further notice to the Settlement Class. Settlement Class Members must check the Settlement Website regularly for updates and further details regarding

extensions of these deadlines. The Court reserves the right to adjourn or continue the Final Approval Hearing, and to extend the deadlines set forth in this Order, without further notice of any kind to the Settlement Class.

**Settlement Administration Timeline, Injunction, and Termination**

21.     To facilitate the timely administration of this case, the Court hereby sets the following schedule:

| Event | Deadline |
|---|---|
| Defendant to provide Settlement Class Member data to Settlement Administrator | 20 days after entry of this Order |
| Last day for Settlement Administrator to email or mail, where email address is not available, Settlement Notice to Settlement Class Members | 60 days after entry of this Order |
| Last day for Settlement Class Members to submit Claim Forms | 90 days from the Notice Deadline |
| Deadline to Submit Motion for Attorneys' Fees, Costs and Service Awards | At least 35 days before the Objection Deadline |
| Deadline to Object and Comment on Settlement | 35 days from the Notice Deadline |
| Deadline to Submit Request for Exclusion | 35 days from the Notice Deadline |
| Final Approval Hearing | _____ |

22.     All proceedings and deadlines in this matter, except those required to implement this Order and the Settlement Agreement, are hereby stayed and suspended until further order from the Court.

23.     Preliminary Injunction. Pending final determination of whether the Settlement Agreement should be finally approved, all Settlement Class Members and their representatives are barred and enjoined, unless and until they have received Notice and have submitted a valid request to exclude themselves from the Settlement Class under the process set out in the Settlement Agreement, from filing, commencing, prosecuting, conducting, continuing or enforcing any action or proceeding against the Released Parties insofar as such action asserts Released Claims, directly or indirectly, in any judicial, administrative, arbitral, or other forum. The Court finds that issuance of this bar and preliminary injunction is necessary and appropriate to protect the Settlement, implement the terms of

this Preliminary Approval Order, aid and preserve this Court's authority to effectuate the Settlement, and is ordered in aid of this Court's jurisdiction.

24.     In the event that the Settlement Agreement is terminated pursuant to the terms of the Settlement Agreement, (1) the Settlement Agreement and this Order shall become null and void and shall be without prejudice to the rights of the parties, shall have no further force or effect, and shall not be used in this litigation or any other proceedings for any purpose other than as necessary to enforce the terms of the Settlement Agreement that survived termination, (2) this litigation will revert to the status that existed before the Settlement Agreement was executed, and (3) no term(s) or draft(s) of the Settlement Agreement or any part of the settlement discussions, negotiations, or documentation of any kind, related to the Settlement Agreement whatsoever shall (a) be admissible into evidence for any purpose in this litigation or in any other action or proceeding other than as may be necessary to enforce the terms of the Settlement Agreement that survived termination, (b) be deemed an admission or concession by any settling party regarding the validity of any of the Released Claims or the propriety of certifying any class against Defendant, or (c) be deemed an admission or concession by any of the parties regarding the truth or falsity of any facts alleged in the litigation or the availability or lack of availability of any defense to the Released Claims.

**IT IS SO ORDERED.**


Dated: _____          _____
                                                    Hon. Edward M. Chen
                                                    United States District Court Judge

# EXHIBIT C

1    **GREENBERG TRAURIG, LLP**
2    Ian C. Ballon (SBN 141819)
     *Ballon@gtlaw.com*
3    1900 University Avenue, 5th Floor
     East Palo Alto, California 94303
4    Telephone: 650-328-8500

5    Stephen L. Saxl (*admitted pro hac vice*)
     *saxls@gtlaw.com*
6    One Vanderbilt Avenue
     New York, NY 10017
7    Telephone: (212) 801-8184

8    Rebekah S. Guyon (SBN 291037)
9    *GuyonR@gtlaw.com*
     1840 Century Park East, Suite 1900
10   Los Angeles, California 90067
     Telephone: 310-586-7700
11

12   Kristin O'Carroll (SBN 312902)
     *ocarrollk@gtlaw.com*
13   101 Second Street, Suite 2200
     San Francisco, California 94105-3668
14   Telephone: 415-655-1300

15   *Attorneys for Defendant 23andMe, Inc.*
16

17              **UNITED STATES DISTRICT COURT**
18            **NORTHERN DISTRICT OF CALIFORNIA**

19

20   IN RE: 23ANDME, INC., CUSTOMER DATA
     SECURITY BREACH LITIGATION
21

22

23

24

25

26

27

| | |
|---|---|
| | CASE NO.  24-md-03098-EMC |
| | Hon. Edward M. Chen |
| | **DEFENDANT 23ANDME, INC.'S MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Judge: Hon. Edward M. Chen |
| | Courtroom: 5, 17th Floor |
| | Hearing Date: October 17, 2024 |
| | Hearing Time: 1:30 pm |

28

1                      Case No. 24-md-03098-EMC

## I.     **INTRODUCTION**

Defendant 23andMe, Inc. ("23andMe") submits this memorandum in support of preliminary approval of the Settlement Agreement to further demonstrate the need for the preliminary injunctive relief provision in the proposed Preliminary Approval Order (ECF No. 103-2, at ¶ 22).

As set forth in Plaintiffs' Motion for Preliminary Approval, 23andMe believes that the Settlement is fair, adequate, and reasonable. Further, a preliminary injunction of other litigation or arbitration claims, pending the Court's determination of final approval, unless and until individual Settlement Class Members have received Notice and have submitted a valid request to opt out, is in line with ample authority from this Court, this District, and the Ninth Circuit, even without the additional factors that are the subject of this separate memorandum. Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and the "necessary in aid of" exception to the Anti-Injunction Act, 28 U.S.C. § 2283, the Court is empowered to enter the injunction enjoining Settlement Class Members and their representatives, pending the Court's determination of whether the Settlement Agreement should be given final approval, from filing, commencing, prosecuting, conducting, continuing or enforcing any action or proceeding against the Released Parties insofar as such action asserts Released Claims, directly or indirectly, in any judicial, administrative, arbitral, or other forum. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *see also, e.g.*, *Roberts v. AT&T Mobility LLC*, No. 3:15-cv-03148-EMC (N.D. Cal. Mar. 21, 2021) (Dkt. 205).

This MDL involves class actions brought on behalf of more than six million individuals. The Settlement Agreement is the product of three mediations and extensive arms-length negotiation, promoted by the efforts of this Court and the mediator. In addition to being a standard term necessary to protect these efforts and aid the Court's jurisdiction over this Settlement pending final approval, the specific facts here especially warrant a temporary preliminary injunction. In addition to this MDL, 23andMe faces parallel litigation in state court and private arbitration forums on behalf of tens of thousands of Settlement Class Members asserting the same claims that are released pursuant to the Settlement Agreement. Moreover, 23andMe's financial condition is well documented in the public record. *See, e.g.,* ECF No. 103-1 pp. 11-12, 34-36. Individual claimants who knowingly choose to opt-out of the proposed Settlement may attempt to proceed in state court or arbitration should they decline the benefits of the Settlement Agreement

following Notice. However, such proceedings should not move forward until that time. In particular, it is plain that counsel driving the mass arbitration filings against 23andMe—which includes at least one firm that is also counsel of record for a named plaintiff in this MDL—does not intend to initiate arbitration to benefit the Settlement Class. Indeed, these mass arbitrations were filed directly in response to learning that the MDL was on the verge of being, or had been, settled. These arbitrations are intended to and would undermine the Settlement Agreement by threatening 23andMe with filing fees that will nearly eclipse the Qualified Settlement Fund. In light of 23andMe's financial condition, it is in the interests of the Settlement Class and 23andMe to enjoin those proceedings unless and until Settlement Class Members have received notice of the Settlement and individually decided whether to exercise their right to opt out.

## II.   RELEVANT BACKGROUND

### A.  The Security Incident

In early October 2023, an unauthorized third party was able to gain access to certain 23andMe customer accounts through a credential stuffing attack because the username and password used on 23andMe.com were the same as those that were used on other websites that were previously compromised or otherwise available ("Stuffed Accounts"). The information accessed in the Stuffed Accounts by the unauthorized third party varied by user account, and may have included health information. *See Addressing Data Security Concerns*, (Oct. 6, 2023), 23ANDME.COM, https://blog.23andme.com/articles/addressing-data-security-concerns. Using this access, an unauthorized third party was able to access the DNA Relatives or Family Tree profile information of certain 23andMe customers that were connected through 23andMe's optional DNA Relatives feature as genetic relatives of one or more of Stuffed Account customers, and the unauthorized actor posted a subset of this information (but not health information) to the dark web. *Id*.

23andMe customers may participate in the DNA Relatives features if they elect to do so. *See DNA Relatives Privacy & Display Settings*, 23ANDME.COM, https://customercare.23andme.com/hc/en-us/articles/212170838-DNA-Relatives-Privacy-Display-Settings. The DNA Relatives feature allows users to share certain information about themselves with other genetic relatives, and see their genetic relatives, but only if their genetic relatives have also chosen to participate in the DNA Relatives feature. *Id*. In other words, once a customer elects to participate in the DNA Relatives feature, they have agreed to identify

themselves as a genetic relative of any other unidentified and unknown customer of 23andMe who has also elected to participate in the feature—it is neither private nor confidential, and it is information that was voluntarily disclosed to thousands of other unknown 23andMe customers prior to the Security Incident. None of the information available to users of the features can be used to cause financial or pecuniary harm, or even impersonate a person based on "genetics"—it is only information indicating a potential relationship between users of the feature.

Upon learning of the unauthorized access, 23andMe promptly notified customers and law enforcement of the Incident. 23andMe notified the public of the Incident via a blog post on October 6, 2023, and directly notified all customers via email on or around October 10, 2023.

Shortly after 23andMe disclosed the Security Incident, almost 40 lawsuits were filed in federal courts around the country, primarily in the Northern District of California.[1] The lawsuits allege that 23andMe had failed to properly protect customer information in accordance with its responsibilities, had inadequate data security protocols, was unjustly enriched by the use of information of the impacted individuals, violated various state genetic information privacy statutes and other state consumer statutes, failed to provide adequate notice pursuant to various breach notification statutes or common law duty, invasion of privacy and other claims related to the Security Incident.

A thorough summary of the federal court litigation to date in this MDL is provided in Plaintiffs' Motion for Preliminary Approval. ECF No. 103-1 pp. 3-4.

## B. The State Court Actions

In addition to this MDL, parallel litigation against 23andMe has been initiated in California state court and private arbitration forums. Currently four separate state court actions filed in two different Superior Courts in California assert claims arising from the Security Incident. *See* Declaration of Rebekah S. Guyon ("Guyon Decl."), ¶¶ 2-5 (Sept. 12, 2024).

- *Vasquez v. 23andMe, Inc.*, Case No. 23CV424996, was filed in the Santa Clara Superior Court on October 31, 2023. *Vasquez* asserts claims arising from the Security Incident on behalf of a putative class of California residents for (1) negligence; (2) breach of implied

---

[1] A total list of all lawsuits filed is attached hereto as Exhibit 1.

23ANDME, INC.'S MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

contract; (3) breach of implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (6) violation of the California Consumer Privacy Act, Cal. Civil Code §§ 1798.100, *et seq.* and §1798.150(a); and (7) violation of the California Customer Records Act, Cal. Civil Code §§ 1798.80, *et seq.*—the same claims that are asserted in the Consolidated Class Action Complaint in the MDL, and the same claim on behalf of the same Settlement Class Members that are released in the Settlement Agreement. Guyon Decl., Ex. A.

- *Morgenstern v. 23andMe, Inc.*, Case No. 23-610816, was filed in San Francisco Superior Court on December 4, 2023. *Morgenstern* asserts claim arising from the Security Incident on behalf of a putative class of California residents for (1) negligence; (2) negligence *per se*; (3) breach of implied contract; (4) invasion of privacy; (5) conversion; and (6) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 Based on "Unfair" and/or "Unlawful" Acts and Practices—the same claims that are asserted in the Consolidated Class Action Complaint in the MDL, and the same claim on behalf of the same Settlement Class Members that are released in the Settlement Agreement. Guyon Decl., Ex. B. Plaintiffs' counsel in *Morgenstern* (Scott+Scott Attorneys and Lexington Law Group) are also plaintiffs' counsel in federal case *Scott v. 23andMe Holding Co., 23andMe, Inc*. (Case No. 23-cv-5980) pending in the MDL.

- *Wilkus v. 23andMe, Inc.,* Case. No. 24CV429673, was filed on January 23, 2024 in Santa Clara Superior Court. *Wilkus* is not a class action, but a consolidated individual case in which 13 residents of Illinois assert claims arising from the Security Incident for (1) violation of the Illinois Genetic Information Privacy Act, 410 Ill. Comp. Stat. Ann. 513, *et seq.*; (2) negligence; (3) breach of actual and implied contract; (4) invasion of privacy – intrusion upon seclusion; and (5) unjust enrichment—the same claims that are asserted in the Consolidated Class Action Complaint in the MDL, and the same claim on behalf of the same Settlement Class Members that are released in the Settlement Agreement. Guyon

23ANDME, INC.'S MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Decl., Ex. C.

- *Shaw v. 23andMe, Inc*., Case No. TC24-2263, was filed on July 10, 2024 in Santa Clara Superior Court. Like *Wilkus*, *Shaw* is not a class action, but a consolidated individual case in which residents of California assert claims arising from the Security Incident for (1) violation of the Illinois Genetic Information Privacy Act, 410 Ill. Comp. Stat. Ann. 513, *et seq.*; (2) negligence; (3) breach of actual and implied contract; (4) invasion of privacy – intrusion upon seclusion; and (5) unjust enrichment—the same claims that are asserted in the Consolidated Class Action Complaint in the MDL, and the same claim on behalf of the same Settlement Class Members that are released in the Settlement Agreement. Guyon Decl., Ex. D.

On January 24, 2024, Morgenstern filed a Petition for Coordination with the Judicial Council ("Petition for Coordination") that seeks to coordinate the *Morgenstern* and *Vasquez* cases. Guyon Decl., Exs. E, F. 23andMe thereafter filed a Notice of Potential Add-On Case to coordinate *Wilkus* and *Shaw* with *Morgenstern* and *Vasquez* in Judicial Council Coordination Proceeding No. 5315. Guyon Decl., Ex. G. *Morgenstern*, *Vasquez*, and *Wilkus* have been stayed pending a case management conference before Judge Charles Adams in Santa Clara Superior Court on October 31, 2024. Guyon Decl., Ex. H, I. 23andMe has not been served with the complaint in *Shaw*. Guyon Decl. ¶ 5.

### C.  The Arbitrations

To date, as detailed in the concurrently filed under seal in the Declaration of Rebekah S. Guyon, numerous arbitrations have been filed against 23andMe in which claimants assert claims arising from the Security Incident. Guyon Decl. ¶ 11.

On February 14, 2024, individual arbitrations were filed against 23andMe with JAMS in which claimants, residents of California and Illinois, assert claims against 23andMe arising from the Incident. Guyon Decl. ¶ 12. These include claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and invasion of privacy, which are duplicative of the claims asserted on behalf of the nationwide class in the MDL. ECF No. 78, ¶¶ 525-638; Guyon Decl. ¶ 12. California claimants further assert alleged violations of California's Unfair Competition Law, California Consumer Privacy Act, and

California Customer Records Act—the same claims that are asserted on behalf of the nationwide class and California subclass in the MDL, and which are Released Claims in the Settlement Agreement. ECF No. 78, ¶¶ 639-654, 688-709.

On July 10, 2024, one day after the Parties publicly informed the Court that they were close to accepting a mediators proposal resolving claims on behalf of the putative U.S. class (*see* ECF No. 79), additional individual arbitrations were filed against 23andMe with JAMS asserting claims arising from the Incident. Guyon Decl. ¶ 13. In these arbitrations, residents of California, Illinois, and other jurisdictions represented by named plaintiffs in the Consolidated Class Action Complaint assert nearly identical claims to those that are alleged in the Complaint here, and which are Released Claims in the Settlement Agreement. Guyon Decl. ¶ 13.

On August 28, 2024, additional individual arbitration demands were filed with JAMS in which claimants assert claims arising from the Incident. Guyon Decl. ¶ 17. Counsel representing those claimants filed the day after counsel for 23andMe informed arbitration counsel of the executed Term Sheet, which was a matter of public record as of July 30, 2024. *See* ECF No. 89. On August 29, 2024, the same firm filed additional individual arbitration demands with JAMS in which claimants assert claims arising from the Incident. Guyon Decl. ¶ 17. These August 28 and 29 demands assert claims on behalf of residents of California, Illinois, and twelve other states represented by named plaintiffs in the Consolidated Class Action Complaint for alleged violations of unspecific consumer protection and common law violations, the California Privacy Rights Act, the California Confidentiality of Medical Information Act, and for Illinois residents, the Illinois Genetic Information Privacy Act—the same claims that are asserted in the Consolidated Class Action Complaint in the MDL, and the same claim on behalf of the same Settlement Class Members that are released in the Settlement Agreement.

As of August 29, 2024, 23andMe has been informed by four additional firms that they intend to initiate individual arbitration demands asserting claims arising from the Incident. Guyon Decl. ¶¶ 18-20.

## III.  **ARGUMENT**

### A.  **Legal Standard**

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of

their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651; *see Keith v. Volpe*, 118 F.3d 1386, 1390 (9th Cir. 1997) (holding the All Writs Act "empowers the federal courts to enjoin state proceedings that interfere, derogate, or conflict with federal judgments, orders, or settlements"). The All Writs Act is limited only by the Anti-Injunction Act, which provides that a federal court "may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C § 2283.

The Court's authority to issue injunctions under the All Writs Act and the exception to the Anti-Injunction Act is not limited to proceedings in state court; rather, federal courts have broad injunctive powers to stay or enjoin a variety of activities to protect their own jurisdiction. Citing the All Writs Act, 28 U.S.C. § 1651, the Ninth Circuit has determined that a federal court's injunctive powers extend to enjoining the filing and further prosecution of arbitration proceedings, and the district courts have frequently done so. *See Hartley v. Stamford Towers Ltd. P'ship*, 36 F.3d 1102 (9th Cir. 1994) (unpublished). Courts outside the Ninth Circuit have found the same. *See, e.g.*, *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 382, 382–83 (8th Cir. 1994) (relying in part on the All Writs Act in concluding that "[n]o matter what, courts have the power to defend their judgments as res judicata, including the power to enjoin or stay subsequent arbitrations"); *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 219–22 (E.D.N.Y. 2013) ("Court finds that it has the power to temporarily stay a pending private arbitration as well as to temporarily enjoin any future private arbitrations . . . the Court grants the Plaintiffs' motion to temporarily stay the pending arbitrations and to temporarily enjoin the Defendants from filing any additional arbitrations"); *United States v. Mason Tenders Dist. Council of Greater New York*, 205 F. Supp. 2d 183, 188 (S.D.N.Y. 2002) (noting that, under the All Writs Act, federal courts have the "authority to enjoin and bind non-parties when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction").

### B.  The Agreed-Upon Injunction Is Necessary And Appropriate Under The All Writs Act

Ample authority within the Ninth Circuit and elsewhere supports the issuance of the preliminary injunction agreed upon in the Settlement Agreement here pursuant to the All Writs Act and the Anti-

Injunction Act. In *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), the Ninth Circuit affirmed the

district court's temporary stay pending final approval of a nationwide class action settlement, holding that,

"[a]lthough comity requires federal courts to exercise extreme caution in interfering with state litigation,

federal courts have the power to do so [under the All Writs Act and Anti-Injunction Act] when their

jurisdiction is threatened." 150 F.3d 1011, 1025 (9th Cir. 1998), overruled on other grounds by *Wal-Mart

Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Sandpiper Vill. Condo. Ass'n, Inc. v. La.-Pac. Corp.*,

428 F.3d 831, 845 (9th Cir. 2005) (explaining that *Hanlon* "recognized that a temporary stay pending

settlement of the nationwide class action was appropriate under the All Writs Act and the Anti-Injunction

Act because concurrent state proceedings at such a sensitive stage in the federal proceedings would have

threatened the jurisdiction of the district court").

This Court and other Judges in this district have previously granted similar injunctive relief in

preliminarily approving class action settlements.[2] In *Roberts v. AT&T Mobility LLC*, for example, this

Court ordered a similar injunction as agreed upon in the Settlement Agreement barring Settlement Class

Members from filing or prosecuting claims "in any judicial, administrative, arbitral or other forum"

pending final approval. No. 3:15-cv-03148-EMC (N.D. Cal. Mar. 21, 2021) (Dkt. 205) at 11, ¶ 36.[3]

Other district courts within the Ninth Circuit have also granted similar preliminary injunctions

---

[2]     *See, e.g.*, *In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2019 WL 1411510, at *16 (N.D. Cal. Mar. 28, 2019) ("all Members of the Settlement Classes who do not validly request exclusion from the Settlement Classes shall be enjoined from commencing or prosecuting any action, suit, proceeding, claim, or cause of action in any court or before any tribunal" pending final settlement approval); *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *28 (N.D. Cal. Oct. 25, 2016) (enjoining class members "who have not properly opted out . . . from commencing, filing, initiating, instituting, pursuing, maintaining, enforcing or prosecuting, either directly or indirectly, any Released Claims in any judicial, administrative, regulatory, arbitral or other proceeding, in any jurisdiction or forum . . .").

[3]     *See also Keirsey v. eBay, Inc*, No. 12-CV-01200-JST, 2013 WL 5755047, at *7 (N.D. Cal. Oct. 23, 2013) ("Plaintiff and all members of the Class and any other person, representative, or entity acting on behalf of any members of the Class are, until the Fairness Hearing, barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as members of a class action or otherwise), any claim, lawsuit, arbitration, administrative, regulatory or other proceeding arising out of the Released Claims against any of the Released Persons."); *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 3:12-CV-06003-CRB, 2015 WL 1153864, at *7 (N.D. Cal. Mar. 13, 2015) (granting preliminary injunction of "filing, commencing, prosecuting, intervening in, participating in, or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory or other proceeding . . ." pending final approval).

pending final settlement approval. *See, e.g.*, *Mercado v. Volkswagen Grp. of Am., Inc.*, No. 518CV02388JWHSPX, 2021 WL 8773053, at *5 (C.D. Cal. Nov. 4, 2021) ("Pending the Court's determination of whether to grant final approval of this Settlement, all Settlement Class Members and/or their representatives are preliminarily barred from commencing, prosecuting, continuing to prosecute, or participating in any action or proceeding against any of the Released Parties (as defined in the Settlement Agreement), in any court, tribunal or other forum . . . pending its determination as to final approval of this Settlement."); *Hartranft v. TVI, Inc.*, No. SACV1501081CJCDFM, 2019 WL 1746137, at *6 (C.D. Cal. Apr. 18, 2019) (preliminarily enjoining all class settlement members and their representatives "from commencing or prosecuting against the Released Parties any action or proceeding in any court or tribunal asserting any of the Released Claims" pending final settlement approval).

There are currently four separate state court actions filed against 23andMe in two different Superior Courts in California related to the Security Incident. These cases encompass the same claims, same putative classes or class members, and, for at least one plaintiff, the same counsel as the MDL cases that are now before this Court. Guyon Decl. ¶¶ 2-10.

Moreover, individual arbitration demands have been recently filed against 23andMe asserting claims based on the identical factual predicate as the Released Claims under the Settlement Agreement. While each of these mass arbitration claims individually has limited potential value, if the claimants (or their counsel) pay their filing fees and the claims move forward in the arbitral forum, 23andMe's ability to pay the Qualified Settlement Fund is threatened. *See* Guyon Decl. ¶ 21. Indeed, it is clear from the timing of these mass arbitrations—directly in response to public filings confirming the Settlement Agreement and conversations with 23andMe's counsel confirming the same (Guyon Decl. ¶¶ 12-17)—that these arbitrations are not intended to benefit the Settlement class, but to undermine the Settlement Agreement and jeopardize 23andMe's financial condition.

Pursuant to Federal Rule of Civil Procedure 23(d), which "vests a district court with the authority and discretion to protect the interests and rights of class members and to ensure its control over the integrity of the settlement approval process," *Hanlon*, 150 F.3d at 1025, the Court is empowered and should grant 23andMe's request for injunctive relief to protect the interests of the class members in this MDL. Indeed,

the parallel state court actions and mass arbitration proceedings asserting the same claims on behalf of Settlement Class Members threaten this Court's jurisdiction, and a temporary stay is warranted to effectuate this nationwide class action settlement. The Settlement Agreement includes the resolution of the same claims asserted against 23andMe in the parallel state court actions and the filed and threatened arbitration proceedings. ECF No. 103-2 at ¶ 37. Following preliminary approval of the Settlement, the notice plan and notice materials will be disseminated to the Class and will discuss the terms of the proposed Settlement and their rights as Settlement Class Members. *Id*. at ¶¶ 74-79. Settlement Class Members should be allowed to evaluate their options under the Settlement individually without potentially confusing competing notices or communication from state court cases and ongoing individual arbitrations involving the same claims.

Competing actions would jeopardize the realization of the Settlement, interfere with this Court's ability to manage the settlement, and potentially cause unnecessary confusion for Settlement Class Members. *See, e.g.*, *In re Volkswagen*, 229 F. Supp. 3d at 1073 (granting a stay of all state-court actions relating to released claims in a MDL putative class action settlement, finding that a state court's disposition of claims similar to or overlapping the released claims would implicate the same legal and evidentiary issues and, thus, such action would threaten the Court's jurisdiction); *Jacobs v. CSAA Inter-Ins.*, 2009 WL 1201996, at *3 (N.D. Cal. May 1, 2009) (invoking the "necessary in aid of jurisdiction" exception to enjoin named and absent members from participating in a state court action relating to claims that are similarly asserted in the federal action as necessary and appropriate to preserve this court's jurisdiction over the approval and administration of the class action settlement); *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 2023 WL 6194109, at *26 (C.D. Cal. July 31, 2023) (issuing a preliminary injunction to remain in effect until final approval of the settlement agreement, finding that the potential filing of "copycat lawsuits in other jurisdictions" could impose on the court's jurisdiction and ability to manage the settlement process). The All Writs Act is properly invoked where, as here, actions in state court and other parallel proceedings "threaten[] to interfere with the federal court's orderly handling of the massive federal litigation." *Newbe v. Enron Corp.*, 338 F.3d 467, 474 (5th Cir. 2003).

Moreover, without the injunction, the threat of the ongoing state court cases and arbitration proceedings undermines the ability of 23andMe to fund the settlement at final approval and this Court's

jurisdiction to oversee and enforce the settlement. As shown in the concurrently-filed Motion for Preliminary Approval, 23andMe is in an extremely uncertain financial condition. *See* ECF No. 103-1 pp. 11-12, 34-36. The filed or threatened mass arbitration claims threaten to impose exorbitant filing fees on 23andMe, presumably intended to force the company to enter into different mass settlements with each counsel threatening mass arbitration claims. Such settlements would benefit only a very limited number of the members of the Settlement Class, and the mass arbitration counsel who have orchestrated that strategy. Alternatively, if 23andMe were to be forced to pay the filing fees, it would call into question its ability to fund the Settlement here. This threat undermines the Court's facilitation of the Parties' collaborative efforts to achieve a class-wide Settlement for the benefit of all 6.4 million members of the Settlement Class under the Court's jurisdiction and supervision.

Under the All Writs Act, this Court has the power to "issue all writs necessary or appropriate" to protect the Court's continuing jurisdiction over complex litigation and ongoing global settlement efforts from competing state and arbitration proceedings that threaten to derail the steps taken by the Court and the Parties. 28 U.S.C. § 1651. Where, as here, parallel proceedings threaten to impede the Parties' Settlement and the federal MDL Court's ability to enforce the Settlement Agreement, an injunction enjoining the parallel proceedings is proper.

## IV.  **CONCLUSION**

For these reasons, pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court should issue a preliminary injunction enjoining Settlement Class Members and their representatives from filing or pursuing any Released Claims, including in state court or an arbitral forum, pending the Court's final approval of the Settlement Agreement, unless and until they have received Notice and have submitted a valid request to individually exclude themselves from the Settlement Class under the process set out in the Settlement Agreement.

23ANDME, INC.'S MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated: September 12, 2024

**GREENBERG TRAURIG LLP**

*/s/ Rebekah S. Guyon*
Rebekah S. Guyon (SBN 291037)
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700
*Rebekah.guyon@gtlaw.com*

*Attorneys for Defendant 23andMe, Inc.*

23ANDME, INC.'S MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# EXHIBIT D



IN RE THE MATTER OF: )
)
███████████ )
)
Claimant, )          JAMS Ref. No. 5340000882
)
)
vs. )          **Arbitrator: Hon. Eileen M. Brewer (ret.)**
)
**23andMe, Inc.,** )
)
Respondent. )

<u>REPORT OF TELECONFERENCE AND</u>

<u>SCHEDULING ORDER NO. 1</u>

COUNSEL ARE REQUESTED TO CAREFULLY REVIEW THIS ORDER AND REPORT ANY CORRECTIONS TO THE CASE MANAGER.

A PRELIMINARY TELECONFERENCE WAS CONDUCTED IN THIS MATTER ON SEPTEMBER 17, 2024, PURSUANT TO WRITTEN NOTICE, AND THE FOLLOWING ORDER IS MADE RESPECTING THE CONDUCT OF THIS ARBITRATION:

1.  ███████████Claimant and Rebecca Guyon and Kristin O'Carroll, counsel for Respondent, participated in this teleconference.

2.  This matter is stayed until November 12, 2024.

3.  The next teleconference is scheduled for November 12, 2024 at 2:00 p.m. CDT.

DATED: **September 18, 2024**

*/s/ Eileen M. Brewer*
_____
**Hon. Eileen M. Brewer (Ret.)**
JAMS Arbitrator