# EXHIBIT B

FILED
San Francisco County Superior Court

NOV 26 2019

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| JACOB RIMLER, GIOVANNI JONES, DORA LEE, KELLYN TIMMERMAN, and JOSHUA ALBERT, on behalf of themselves and others similarly situated and in their capacities as Private Attorney General Representatives, | Case No. CGC-18-567868 |
| Plaintiff, | ORDER RE MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT |
| v. | |
| POSTMATES, INC. | |
| Defendant. | |

Plaintiffs' motion for preliminary approval of class settlement was scheduled for hearing on November 22, 2019 at 10:00 a.m. in Department 304.  Prior to the hearing the Court issued a tentative ruling.  Plaintiffs and defendant submitted on the tentative.  Therefore, the Court continues the hearing to January 31, 2020 at 1:30 p.m. and directs Plaintiffs to address the following in supplemental briefing to be filed not later than January 15, 2020.  Plaintiffs are directed to cross reference this order in their supplemental filings to the Court.

- 1 -

*Rimler v. Postmates, Inc., CGC-18-567868 Order re Motion for Preliminary Approval*

## I.   Class Certification for Settlement Purposes

Plaintiffs must provide their own declarations setting forth the basic material facts about their employment to demonstrate their adequacy to represent a settlement class.  Their declarations should also set forth whether they have worked in each of the municipalities that impose civil penalties that are being released, and if not, why it is proper to release class members' local-ordinance claims that they do not themselves possess.  Plaintiffs should also disclose whether they received consideration of any kind, directly or indirectly, for the release of their individual claims because that bears on their adequacy.

## II.   Reasonableness of the Settlement Consideration

### A.   Maximum Value of the Claims

In their valuation of the case, Plaintiffs have declined to advise the Court as to the maximum value of all the class claims and PAGA claims or the bases for their valuation.  Plaintiffs must do so.  In addition, due to the explicit release of additional claims in the Settlement Agreement not pleaded in the First Amended Complaint or Proposed Second Amended Complaint, the Court believes Plaintiffs must provide a full valuation of *all* released claims and provide the Court with an explanation of how they calculated the value of these claims.  If Plaintiffs do not believe that the valuation should extend to all released claims, Plaintiffs must provide argument supported by citation to legal authority in support of their position.  All information should be set forth in a declaration except for the legal arguments, if any, as to the valuation of all released claims.

### B.   The Settlement Discount

Plaintiffs have set forth several reasons to discount the settlement.  However, the Court cannot evaluate the reasonableness of the discount without knowing what the discount is, a value that in turn depends on the maximum value of the claims.  Plaintiffs' counsel's reliance on a settlement discount provided in a previous class settlement her firm negotiated with Postmates, i.e., *Singer v. Postmates, Inc.* (N.D. Cal. Sept. 1, 2017) 2017 WL 4842334, to guide her analysis here is not adequate.  This federal case was settled prior to the California Supreme Court decision in *Dynamex* that adopted the less stringent ABC test, and the passage of Assembly Bill 5 (A.B. 5).  Second, while a substantial discount for

- 2 -

PAGA penalties may be reasonable, counsel failed to provide any factual or legal basis to justify the near 100% discount. None of the cases Plaintiffs cited justify the 0.09% allocation.

In a supplemental filing, Plaintiffs must: (1) Justify the 0.09% allocation; (2) Discuss the maximum civil penalty that could be imposed if Plaintiffs were to succeed on their PAGA claims; and (3) Provide an evaluation of the factors the Court would be called on to consider in determining the ultimate civil penalty amount.

## C.     Investigation and Discovery

Plaintiffs' counsel must disclose, in a declaration, the "substantial data" that was received in advance of mediation and the discovery that was obtained in the *Albert* case before the case was stayed. Generalized statements will be deemed insufficient.

## D.     Dispute Resolution Fund

Plaintiffs' counsel must justify the $250,000 set aside from the class and explain how compensating for payments mistakenly excluded from the class should not be covered as part of the $450,000 set aside for claims administration.

## III.   Notice

### A.     LWDA

Counsel must attest to compliance with Cal. Lab. Code § 2699(l)(2).

### B.     Process

The notice process as outlined in the present motion is very confusing and raises concerns about the adequacy of the notice to the class. The questions and concerns about the notice process are summarized in the following informal list.

- Why are the parties relying on e-mail notice and then mailed notice? Were alternatives such as notice via the Postmates App considered? If so, why were they rejected? If not, why not?
- Exclusion/Objection deadline: This is defined as '60 days after the Mailed Notice Date.' (Proposed Settlement Agreement, ¶ 2.12.) It is unclear what the Mailed Notice Date purports to be. Compare ¶¶

- 3 -

3.1 and 6.2.  Second, it's unclear if 'initial distribution' means distribution via electronic mail or postal mail.  To the extent the parties are referring to electronic mail, there is no extension for those individuals to whom notice is accomplished via postal mail.  Are the parties agreeable to expanding the 'Mailed Notice Date' to include initial distribution when postal mail is utilized?  If the parties are opposed to extending the 60-day deadline, the settlement should contain clear terms requiring prompt mailing of Notices by the Settlement Administrator if an email returns undeliverable.  (See *Id.* at ¶ 6.5.)

- Non-wages and Form 1099:  What is the justification to exclude all payments under the settlement from the IRS reporting requirements?  (See *Id.* at ¶ 4.2.)  A declaration from a tax expert will suffice to provide the response on this issue.

- Opt outs:  First, what interest do Plaintiffs have for preventing counsel to opt out on behalf of their clients, either individually or on behalf of a group?  What is the justification for preventing counsel from even helping *submit* an opt out?  Second, explain the email procedures for opting out?  (See *Id.* at ¶ 7.1.)  For example, do class members have to download a form, complete it, print it, sign it, and attach it to an email?  Or may a class member simply opt out in the body of an email?  To the extent class members may submit claim forms through an online portal why are the procedures requesting exclusion different?  Third, the Court should ultimately decide whether a contested opt out is valid. (*Id.* at ¶ 7.5.)

- Objections:  First, to the extent the Settlement Agreement requires objectors to file objections with the Court, this requirement should be excluded.  (*Id.* at ¶¶ 8.1, 8.2, 8.4.)  Second, no separate 'Notice' of an intent to appear at the final approval hearing, of any kind, should be required.  (See *Id.* at ¶ 8.4.)  Third, a legal basis for each objection should not be required.  (*Id.* at ¶ 8.3.)  Fourth, to the extent the settlement doesn't provide an email procedure / online submission portal for Objections, the parties should explain why.  Fifth, what interest do Plaintiffs have for preventing counsel to object on behalf of their clients, either individually or on behalf of a group?  What is the justification for preventing counsel from even helping *submit* an objection?  (See *Id.* at ¶¶ 8.3, 8.5.)  Sixth, explain the purpose and the effect of ¶ 8.7: "It shall be Settlement Class Counsel's sole responsibility to respond" to any

- 4 -

objections made with respect to Counsel's award and Plaintiffs' service awards.  Seventh, it's not clear what "supporting papers" are contemplated in ¶ 8.2.

- Exclusion of an Individual:  What is a 'reasonable amount of time' in which an individual must notify the Settlement Administrator that they have been excluded from the class list?  (See *Id.* ¶ 6.11.)  How does an individual notify the Settlement Administrator?  What is the timeframe for them to submit a Claim Form, an Objection, or an Opt out?  Is the 60-day deadline tolled for these individuals?  If there is no further money left in the Dispute Resolution Fund after they have submitted a Claim Form will that individual be able to opt out of the settlement?

- Claim Form:  First, the deadline to submit the Claim Form - 'the Bar date'- is not defined in the Settlement Agreement.  (See *Id.* at ¶ 5.3.)  Second, the settlement provides that claim forms are submitted through an online portal or by mail.  The Notice provides a third option—by email.  Was this third option intended?

- Reminders:  The Settlement Agreement calls for 'reminders' to be sent to Class Members following the initial Notice.  (*Id.* at ¶ 6.7.)  Who will receive these reminders?  How will reminders be sent, via email or postal mail?  When will the two reminders be sent?  What information will the reminders contain?

- Settlement Share Disputes:  The Settlement Agreement provides that the Notice will inform Class Members of their right to dispute the information upon which their share of the Settlement will be calculated.  (*Id.* at ¶¶ 6.3, 6.4.)  However, there is no further information explaining the process by which Class Members are required to dispute, e.g., through the claim form or by letter; by electronic mail or postal mail; and what documentation is required and/or acceptable.

## C.  Substance

The questions and concerns about the notice substance are summarized in the following informal list.

- Have the parties confirmed that English language notice is appropriate for Postmates's workforce – i.e., is English language proficiency required for the job?

*Rimler v. Postmates, Inc.*, CGC-18-567868 Order re Motion for Preliminary Approval

- The summary paragraph should provide an estimated total of the $11,500,000 which will be available for distribution to the class after attorneys' fees and other costs (which appears to be approximately $6,890,000 based on the present terms of the settlement).

- Page 1-2:  There should be a more thorough summary of the recipients options – (1) Participating in the settlement by either (a) Submitting a claim, (b) Doing nothing, in which case they will receive no payment and release claims they may have against Postmates, (c) Objecting to the settlement, (d) Disputing the information provided as a basis for calculating their claim amount; or (2) Electing not to participate in the settlement by opting out.  The summary should succinctly set forth the options and reference the *specific* sections in the notice where more information is provided with respect to each option.

- Page 2, § 2:  This section should disclose and briefly discuss the federal actions of *Lee* and *Albert*.

- Page 3, third paragraph:  The references to approval of the class representatives and class counsel should include the word "preliminarily."

- Page 3, § III:  The Notice should disclose that the settlement amount includes a Dispute Resolution Fund of $250,000.  The Notice should state that the Administration Costs are capped at $450,000, as set forth in the Settlement Agreement, not "estimated" at $450,000.

- Page 4, § III:  The Notice should explain what 'demonstrate in writing an interest in initiating an arbitration demand against Postmates prior to October 17, 2019' means. (See first paragraph, line 4.) The fifth, sixth, and seventh paragraphs discussing the rights and options of class members is confusing.  A reader could reasonably come away with the impression that only individuals who submit a claim form, to the exclusion of individuals who object, are participating in the settlement such that they will receive a payment if the settlement is approved.  The Notice should be clear that both submitting a claim form and objecting are options that constitute participation in the settlement, such that a payment will be received if the settlement is approved.

- Page 4-6, § IV:  The Notice should state the effect of the release, and who it impacts, in plain and concise language.  For example:  "If the Court grants final approval of the Settlement, the Court will enter judgment, the Settlement will bind all Class Members who have not opted out, and the judgment

*Rimler v. Postmates, Inc.*, CGC-18-567868 Order re Motion for Preliminary Approval

will bar all Class Members from bringing any claims released in the Settlement.  The release is described below."  This section also should clearly disclose the following: (1) that only by submitting a claim form, is the Class Member consenting to join as a party plaintiff to the FLSA claims and releasing those claims; and (2) that even by excluding yourself from the settlement class members still release the PAGA claims.  The second paragraph on page 6 is confusing because it appears that by 'doing nothing' or not timely excluding yourself from the settlement, a person releases their FLSA claims.  Also, the third and fourth paragraphs cover distinctly different information.  The fourth paragraph should not start with "This means that . . ."

- Page 6, § V: The Notice discloses the formula used to calculate a class member's settlement share. However, it does not disclose each class members' estimated Delivery Miles or estimated value of each mile used to compute the settlement share.  This makes it practically impossible for a class member to dispute those figures or make a reasonable estimate of their payment.  The following information should be clearly disclosed in each individual notice:  (1) The estimated net settlement amount for distribution to class members; (2) The fact that employer-side payroll taxes will be deducted from the settlement amount; (3) Any factors that may impact the estimate for the net settlement amount (i.e., claims submitted, opt outs, reduced fee or incentive awards, successful disputes, exclusions of class members, etc.); and (4) The data used to calculate that specific class member's share of the net settlement amount, i.e., the estimated Delivery miles for that class member and estimated recovery per mile,  which the class member may contest, including whether he or she is expected to have their points doubled.

- Page 7, § VI: This section should disclose the procedure and the means by which to notify the Settlement Administrator of any change of address and how to request a replacement check if lost or misplaced.  This section should explain the procedure to dispute the estimated Delivery Miles and what documentation is required and/or acceptable.  Lastly, the last paragraph, line 3, states that "payments will be mailed within a "couple months."  The Settlement Agreement and the preceding section state that payment will be distributed approximately 30 days after the settlement becomes final. (Page 6, § V; see Proposed Settlement Agreement ¶¶ 5.1, 5.6.)

- Page 7, § VII:  The Notice does not provide the procedure to email an opt out.  (See Proposed Settlement Agreement ¶ 7.1.)  This section should disclose that opting out of the settlement will still release the PAGA claims but that those who want to opt out may still object to the PAGA component of the settlement.

- Page 8, §VIII:  The first sentence of the first and third paragraphs is confusing because a class member may opt out and still object to the PAGA portion of the settlement.  Paragraph 8.3 of the Settlement Agreement and the Notice are inconsistent.  The Notice contains an additional requirement whereby objecting Class Members must include their dates of service with Postmates.  (See first paragraph, line 6.)  All reference to the Court should be excluded. The Notice should be clear that objections are submitted *by mail* to the Settlement Administrator.  This section should also disclose that Class Members may submit an objection, including to the settlement itself, the request for attorney's fees, or Plaintiffs' awards, and also submit a claim form for payment.  "In the manner provided" in the last sentence of the third paragraph is vague.

- Page 8, § IX:  The third sentence in lines 7-8 is vague: "The court will listen to people who have made a timely written request to speak at the hearing."  It is not clear what website line 10 is referring to. This section should disclose that at the final approval hearing the Court will consider Class Counsel's application for attorney's fees and Plaintiffs' service awards, in addition to whether the settlement is fair, reasonable, and adequate.

- Page 8-9, § X:  This section should also direct the reader to the website.  The URL should be displayed prominently at the end of the notice and the documents contained on the settlement website should be listed, i.e., the operative complaint, the *Lee* complaint, *Albert* complaint and any other complaint upon which a release of claims may be based, notice, settlement agreement, preliminary approval order, all papers filed in connection with preliminary approval motions (including all orders and tentative rulings) to the class.  In addition, the Notice should direct the reader to the Court's website (https://www.sfsuperiorcourt.org/online-services), which provides access to the full docket in this case free of charge.  The Notice should contain instructions on how to use the website.

- Any and all revisions to settlement terms should be reflected in the notice.

- 8 -

*Rimler v. Postmates, Inc.*, CGC-18-567868 Order re Motion for Preliminary Approval

## IV.   Allocation and Distribution of Funds

The questions and concerns about the allocation and distribution of funds are summarized in the following informal list.

- The Individual Settlement Amounts will be apportioned based on the estimated number of miles driven while using the Postmates application as a courier.  This approach may be justified on the basis that computing specific damages for each Class Participant is impossible or infeasible.  However, it is not clear whether impossibility of infeasibility exists here for three reasons:  First, Plaintiffs should be in possession of records that elucidate variations in the (i) meal and rest break, (ii) overtime, (iii) and sick pay violation rates experienced by putative class members.  Second, waiting time penalties, in particular, would only be available to individuals who no longer work for Defendant.  Third, arguably class members who worked for Postmates after *Dynamex* presumably have stronger claims than those class members whose reimbursement claims may not be retroactive.  Please explain the justification for computing the Individual Settlement Amounts in the chosen manner.

- The settlement's proposal to double the points of class members 'who opt out of arbitration, initiate arbitration, or demonstrate in writing an interest in initiating an arbitration demand against Postmates' is vague.  Additionally, the reasons for such an allocation should be set forth in more detail.

- To the extent that no class member is capable of receiving a $100 settlement check the reminder provision is futile.  To the extent that no class member is capable of receiving a $50 settlement check, the redistribution process is similarly futile.  Please provide, assuming a 100% claim rate, the number of class members expected to receive an individual payment of at least $50 and the number expected to receive at least $100.

## V.   Release of Claims

The questions and concerns regarding the Release are summarized in the following informal list.

- Please explain the justification for the broad release of claims and the justification for Plaintiffs' additional release of claims without proper compensation. To the extent Plaintiffs claim the service awards may be used as consideration for Plaintiffs' release of additional claims, Plaintiffs must

- 9 -

provide argument supported by citation to legal authority in support of their position. All information should be set forth in a declaration.

- Plaintiffs must reconcile ¶ 2.29 which purports to limit the FLSA release to those who submit valid claims, with ¶ 9.2 and ¶ 2.41 that effectuates a release unless a class member opts out.

- The Release encompasses "all claims that are based on [sic] reasonably related to the claims alleged in or that could have been alleged in the *Rimler* SAC, including any allegations in *Lee, Albert,* and/or *Rimler* preceding said amended complaint, and all misclassification claims." (*Id.* at ¶ 2.41.) Plaintiffs must explain the justification for including a release of claims encompassed in three additional complaints, two of which are in a different jurisdiction.

## VI.   Miscellaneous Issues

- Class Definition ¶¶ 2.36, 2.7:  Why does the Class definition include couriers who have only been 'approved to use the Postmates platform' as opposed to those who have actually used the platform and completed at least one delivery?

- Proposed Settlement ¶ 2.31:  Plaintiffs seek to file a second amended complaint, but Plaintiffs have not filed a motion or a stip/order to do so. A settlement based on the proposed Second Amended Complaint will not be approved until it is the operative complaint. The parties must comply with Cal. Rules of Court, rule 3.1324 in filing any such amendment.

- Proposed Settlement ¶¶ 3.6.3, 3.8.11, ¶9.3:  The Court will not order Settlement Class Members preliminarily and permanently enjoined from initiating litigation against Postmates.

- Proposed Settlement ¶ 3.8.15:  This section purports to allow amendments, modifications, and expansions of the agreement without further approval from the Court after final approval. The Court should not be omitted from this process.

- Proposed Settlement ¶ 4.5:  Explain the parties' "6-month grace period to come to an agreement regarding terms applicable in the event any appeal of the settlement is file."

- Proposed Settlement ¶ 6.10:  The Settlement Administrator will have to provide receipt of valid Claim Forms *and* Objections to the Court.

- Proposed Settlement ¶ 10.6:  This seems to be a release concerning the administration of the settlement. ¶ 10.6 bars any action against Plaintiffs, Class Counsel, Settlement Administrator, or Postmates based on distributions made under the agreement. Why is this proper?

- Plaintiffs must select a Settlement Administrator.  The proposed administrator must submit a declaration confirming how it will protect sensitive personal information and its ability to administer the settlement.

- When will the website be accessible to Class Members? What does content-neutral mean?  (*Id.* at ¶ 6.9.)

- Explain whether an objection is valid and/or waives any rights if the objector does not include a statement of whether they intend to appear at the final approval hearing, either individually or through counsel?  If so, what is the justification?

IT IS SO ORDERED.

Dated:  November 25, 2019

_____

Anne-Christine Massullo

Judge of the Superior Court

*Rimler v. Postmates, Inc.*, CGC-18-567868 Order re Motion for Preliminary Approval

## CERTIFICATE OF ELECTRONIC SERVICE
### (CCP 1010.6(6) & CRC 2.251)

I, Ericka Larnauti, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On November 26, 2019, I electronically served the attached document via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:  November 26, 2019

T. Michael Yuen, Clerk

By: _____

Ericka Larnauti, Deputy Clerk