Jonathan D. Waisnor (SBN 5137302)
Melissa H. Nafash (*pro hac vice forthcoming*)
Alexander F. Schlow (*pro hac vice forthcoming*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
jwaisnor@labaton.com
mnafash@labaton.com
aschlow@labaton.com
*Attorneys for Proposed Intervenors
Nancy Adame, Rebecca Adams, Josh Ades,
Heather Appleman, and Michael Atkinson-Leon*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: 23ANDME, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 24-md-03098-EMC |

**[PROPOSED] MEMORANDUM OF LAW
OBJECTING TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY ............................... 2

ARGUMENT ........................................................................................................................................ 5

    A.    Applicable Standard ............................................................................................... 5

    B.    The Proposed Settlement's Opt Out Procedures Unfairly And Unreasonably Burden Class Members Like Intervenors Who Are Prosecuting Individual Arbitrations ............................................................................................................ 6

    C.    There Is No Basis For The Stay of Arbitrations Requested Here ............................ 11

CONCLUSION ................................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020) ........................................ 8, 11
*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ........................................................................... 5
*Arena v. Intuit Inc.*, No. 19-cv-02546-CRB,
  2021 U.S. Dist. LEXIS 41944 (N.D. Cal. Mar. 5, 2021) ..................................................... passim
*Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK,
  2020 U.S. Dist. LEXIS 30193 (N.D. Cal. Feb. 20, 2020) ...................................................... 6, 10
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................................ 5, 13
*Heckman v. Live Nation Entm't, Inc.*, 686 F. Supp. 3d 939 (C.D. Cal. 2023) ................................. 3
*In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935 (9th Cir. 2011) ............................... 6
*In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC,
  2018 U.S. Dist. LEXIS 235043 (N.D. Cal. June 7, 2018) ........................................................... 8
*In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC,
  2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 28, 2019) ........................................................ 13
*In re Piper Capital Management*, 71 F.3d 298 (8th Cir. 1995) ........................................ 6, 12, 13
*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  MDL No. 2627 CRB (JSC), 2016 U.S. Dist. LEXIS 148374 (N. D. Cal. Oct. 25, 2016) ............ 13
*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004) ..................................... 12, 13
*Newman v. AmeriCredit Fin. Servs., Inc.*, No. 11cv3041 DMS (BLM),
  2014 WL 12789177 (S.D. Cal. Feb, 3, 2014) ............................................................................ 6
*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) ............................................................ 8, 11
*Peleg v. Neiman Marcus Group, Inc.*, 140 Cal.Rptr.3d 38 (Ct. App. 2012) .................................. 3
*Roberts v. AT&T Mobility LLC,* No. 3:15-cv-03418-EMC,
  2021 U.S. Dist. LEXIS 261734 (N.D. Cal. Mar. 31, 2021) ..................................................... 14
*Ruch v. AM Retail Grp., Inc.*, No. 14-cv-05352-MEJ,
  2016 U.S. Dist. LEXIS 39629 (N.D. Cal. Mar. 24, 2016) .......................................................... 6
*Smothers v. NorthStar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN,
  2019 WL 3080822 (C.D. Cal. July 15, 2019) ............................................................................ 6
*Tompkins v. 23andMe, Inc.*, 834 F.3d 1019 (9th Cir. 2016) ......................................................... 2
*United States v. Rothenberg*, 554 F. Supp. 3d 1039 (N. D. Cal. 2021) ....................................... 14

**Statutes**

15 U.S.C. § 7001 .......................................................................................................................... 9
28 U.S.C. §1651 ................................................................................................................... 12, 14
Cal. Civ. Code § 1633.5 ............................................................................................................... 9
Fed. R. Civ. P. 23 ........................................................................................................................ 5

**Treatises**

4 Newburg on Class Actions § 13:19 (5th ed. 2011) .................................................................. 11

Intervenors[1] respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 103, the "Settlement Motion"). Intervenors oppose two aspects of the Proposed Settlement[2] (1) a proposed injunction that would stay pending arbitrations that the Court does not have authority to issue, and (2) opt out procedures that unduly burden class members such as Intervenors who have already begun to pursue claims through arbitration.

## PRELIMINARY STATEMENT

As set forth in their accompanying Motion to Intervene, Intervenors are part of a group of approximately 11,000 individuals residing in California and Illinois represented by undersigned counsel who have been actively seeking to arbitrate their claims against defendant 23andMe, Inc. ("23andMe" or "Defendant") stemming from the same data breach at issue in this action. Intervenors first notified 23andMe of their claims in February, 2024.

The 23andMe Terms of Service dated June 8, 2022 ("Terms")[3] applicable to Intervenors' dispute with 23andMe contain a straightforward and unambiguous arbitration provision, of the kind routinely enforced under the Federal Arbitration Act. As relevant here, the Terms provide:

> Except for [small claims and intellectual property disputes], all claims arising out of or relating to these Terms (including their formation, performance and breach), the parties' relationship with each other and/or your use of the Services shall be finally settled by binding arbitration administered on a confidential basis by JAMS, in accordance with the JAMS Streamlined Arbitration Rules and Procedures, excluding any rules or procedures governing or permitting class actions. Each party will have the right to use legal counsel in connection with arbitration at its own expense. The parties shall select a single neutral arbitrator in accordance with the JAMS Streamlined Arbitration Rules and Procedures. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms, including, but not limited to, any claim that all or any part of these Terms is void or voidable. Terms, ¶5(b).

---

[1] The Intervenors are Nancy Adame, Rebecca Adams, Josh Ades, Heather Appleman, and Michael Atkinson-Leon.

[2] ECF No. 103-2.

[3] The Terms are available at: https://web.archive.org/web/20220610073236/https://www.23andme.com/about/tos/

[PROPOSED] MEMORANDUM OF LAW OBJECTING TO PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 24-MD-03098-EMC

The terms also include an express "Class action and Class Arbitration Waiver," requiring all arbitration to "be conducted in our respective individual capacities only and not as a class action." *Id.*, ¶5(c).

Intervenors have accordingly sought individual arbitration of their disputes under the Terms, complying with the individualized dispute resolution and arbitration process 23andMe imposes on all its users. For years, 23andMe has compelled its customers, like Intervenors and the other class members here, to arbitrate their claims against it rather than litigate them. This has included prior consolidated class actions like this one. *See, e.g. Tompkins v. 23andMe, Inc.*, 834 F.3d 1019 (9th Cir. 2016) (affirming this Court's granting of 23andMe's motion to compel a putative class action to arbitration under 23andMe's Terms of Service). In other words, by seeking to arbitrate their claims, Intervenors and other arbitration claimants have done exactly what 23andMe has aggressively required of its users for years, in accordance with the 23andMe-drafted arbitration agreement applicable to their disputes.

Indeed, in its submissions in support of preliminary approval of the settlement here, 23andMe readily admits that it is currently facing contractual arbitration filing fee obligations that "will nearly eclipse the [$30 million] Qualified Settlement Fund." 23andMe's Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 105, the "23andMe Memorandum" or "23andMe Mem.") at 1-2. Yet, rather than upholding its end of the bargain and fulfilling its contractual obligations to arbitrate, 23andMe has engaged in gamesmanship and delay, and now attempts to impose an onerous and economically unreasonable settlement, with an unduly burdensome opt-out procedure, on Intervenors. As set forth below, the proposed settlement in this action would unduly burden Intervenors' right to arbitrate, potentially releasing 23andMe from its contractual obligations in exchange for no additional consideration. The proposed settlement should be rejected or, at a minimum, exclude class members who have noticed 23andMe of their intention to arbitrate.

**FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY**

Intervenors are 5 of a group of approximately 11,000 individuals represented by Labaton Keller Sucharow LLP who retained counsel to seek individualized arbitration of their claims against

2

23andMe (as the 23andMe-drafted terms of service require). Intervenors claims arise from the same data breach at issue in this putative class action. Intervenors have engaged in months of direct negotiation with 23andMe and its counsel, and have pursued individual arbitrations against 23andMe when they could not resolve their claims.

Between February 8 and August 29, 2024, counsel for the Intervenors engaged in extensive discussions with 23andMe's counsel in an effort to resolve the Proposed Intervenors' disputes. *See* Declaration of Melissa H. Nafash ("Nafash Dec."), filed concurrently herewith, ¶¶3-13. These discussions included numerous letters, emails, videoconference and teleconference calls, and the (ultimately unsuccessful) negotiation of a possible agreement to toll Intervenors' claims pending pre-arbitration resolution. *Id.*

The very issues now plaguing the proposed settlement were primary points of contention during these negotiations. Counsel for Intervenors, aware of this class action lawsuit and concerned that 23andMe might attempt to negotiate a class settlement, sought an agreement intended to provide efficiency and certainty for all parties. Specifically, Intervenors' counsel asked 23andMe either to agree not to include Intervenors and the other individuals seeking arbitration in any class settlement, or alternatively allow them to opt out of any class settlement through a single communication by counsel, rather than any cumbersome individual opt-out process. *Id.*, ¶8. 23andMe refused both proposals. *Id*.

Ultimately, for this reason and others, negotiations were unsuccessful and Intervenors and approximately 11,000 other individuals represented by Labaton filed individual arbitrations against 23andMe before JAMS on August 29 and 30, 2024.[4]

---

[4] 23andMe issued an improper, unenforceable update to its Terms the day before it publicly announced the full extent of the data breach, which designates another arbitral forum, National Arbitrators and Mediators, as the provider for "mass arbitrations." 23andMe argued these terms should control their dispute with Intervenors and the other individuals represented by undersigned counsel. Such update was plainly unenforceable. *See, e.g.*, *Heckman v. Live Nation Entm't, Inc.*, 686 F. Supp. 3d 939, 953 (C.D. Cal. 2023) (noting the "extreme amount of procedural unconscionability" inherent in amending an arbitration provision "(1) to bring about a significant change in the parties' agreement (from individual, bilateral arbitration to mass arbitration); (2) unilaterally; (3) in the midst of ongoing litigation; (4) to be applied retroactively."); *Peleg v. Neiman Marcus Group, Inc.*, 140 Cal.Rptr.3d 38, 42 (Ct. App. 2012) ("[A]n arbitration contract containing a modification provision is

Footnote continued on next page

Thus, 23andMe has been directly aware that Intervenors were represented by individual counsel with respect to the data breach at issue here since early this year, and negotiated with Intervenors' counsel for approximately 6 months. Simultaneous with these direct negotiations with the Proposed Intervenors' counsel, 23andMe and class counsel have negotiated settlement of this action without including Intervenors in their discussions. The 23andMe Memorandum directly acknowledges as much, noting that 23andMe "faces parallel litigation in . . . private arbitration forums on behalf of tens of thousands of [putative] Settlement Class members." 23andMe Mem. at 1. 23andMe further directly acknowledges that funds it might pay out as part of the proposed settlement might jeopardize its ability to pay the arbitration fees it promised its users it would pay. *Id.* at 1-2.

At no point during their extensive communication with Intervenors' counsel did counsel for 23andMe inform Intervenors that it intended to seek a preliminary injunction against their arbitrations as part of preliminary approval of the class settlement. Nafash Dec., ¶11. This is despite the fact that the issue of potential opt-outs from a possible future class action settlement was repeatedly discussed. *Id.*, ¶¶8-11. Although 23andMe's counsel did offer to "make an introduction" to class counsel to discuss the contemplated class settlement on July 16, 2024, an offer Intervenors' counsel accepted, 23andMe's counsel never made any such introduction. *Id.*, ¶9. Instead, 23andMe's counsel did not again communicate with counsel for Intervenors until August 22, 2024, when they provided a redline of the proposed tolling agreement discussed above. In a comment bubble therein, 23andMe informed Intervenors for the first time that it had agreed to a term sheet to settle this action, which it falsely claimed "d[id] not impair or burden arbitration rights." *Id.,* ¶11. Other than this mischaracterization, 23andMe provided no information about the content or terms of the proposed settlement. *Id.* In a subsequent conference call on August 27 (before the motion for preliminary approval was filed),

---

illusory if an amendment, modification, or revocation—a contract change—applies to claims that have accrued or are known to the" drafting defendant).

JAMS has indicted that it cannot continue with administration of these individuals' claims unless the parties agree to proceed before it or a court directs the parties to do so. Nafash Dec., ¶13. This dispute as to which version of the arbitration clause controls does not change the critical facts: Intervenors and the other class members have a right to arbitrate their disputes with 23andMe, and Intervenors and the other arbitration claimants represented by undersigned counsel. Indeed, 23andMe is actively arbitrating with individuals represented by other intervening counsel.

4

[PROPOSED] MEMORANDUM OF LAW OBJECTING TO PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 24-MD-03098-EMC

Intervenors' counsel informed 23andMe's counsel that Intervenors and the other approximately 11,000 individuals represented by undersigned counsel expected to opt out of the settlement. *Id.*, ¶12.

At no point did 23andMe or its counsel claim that they believed that the company would not have sufficient funds to satisfy its arbitration obligations with Intervenors. *Id.* Indeed, even to this date, 23andMe has only provided the Court, and not Intervenors, with sealed information regarding "details regarding non-public consumer arbitrations arising from the Incident that have been filed against 23andMe" and "non-public and competitively sensitive business and financial information" that it is using to justify its request for an injunction and burdensome opt-out requirements. *See* Declaration of Rebekah S. Guyon In Support Of Defendant 23andMe, Inc.'s Administrative Motion To File Documents Under Seal, ECF No. 104-1, ¶¶2-3. Intervenors counsel have not had an opportunity to review or challenge that information.

Rather than acknowledging that the Intervenors have, and have asserted, a contractual right to arbitrate their claims *under a contract 23andMe drafted*, a contract that grants jurisdiction to the arbitral forum to decide the merits of their claims, 23andMe now asks this Court to stay the arbitration proceedings Proposed Intervenors have started, and to assert jurisdiction over issues the parties already agreed belong before arbitrators, all without Intervenors' input or consent. This Court should reject such gamesmanship, which runs directly contrary to the interests of tens of thousands of class members.

## ARGUMENT

### A.  Applicable Standard

"[S]ettl[ing]class actions present[s] unique due process concerns for absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). For this reason, "the district court has a fiduciary duty to look after the interests of those absent class members." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (collecting cases). Under Fed. R. Civ. P. 23(e)(2), a court may approve a settlement "only after a hearing and only on finding that" the settlement is "fair, reasonable, and adequate." Courts must generally consider eight factors in making this determination:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed

and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

"At every step of the Court's Rule 23(e) analysis," it must "bear[] in mind the stakes for different members of the proposed class," including "arbitration claimants, like Intervenors." *Arena v. Intuit Inc.*, No. 19-cv-02546-CRB, 2021 U.S. Dist. LEXIS 41944, at *27 (N.D. Cal. Mar. 5, 2021) (denying preliminary approval of proposed class action settlement that would impose burdensome opt-out procedures on arbitration claimants). If a proposed settlement, "considered in context" including the circumstances and interests of such arbitration claimants, "does not fall 'within the range of possible approval,'" preliminary approval must be denied. *Id.* at *28 (quoting *Ruch v. AM Retail Grp., Inc.*, No. 14-cv-05352-MEJ, 2016 U.S. Dist. LEXIS 39629 at *7 (N.D. Cal. Mar. 24, 2016)). As clear precedent establishes, the Proposed Settlement here falls short of the minimum fairness for preliminary approval, because it unreasonably burdens arbitration claimants like Intervenors.

    **B.**     **The Proposed Settlement's Opt Out Procedures Unfairly And Unreasonably Burden Class Members Like Intervenors Who Are Prosecuting Individual Arbitrations**

"Although the court supervising a class action has wide discretion to control a class action, including the opt-out process, that discretion must be exercised consistent with the policies and principles of the FAA when a class member with an immediate right to arbitrate its claim seeks to opt out." *In re Piper Capital Management*, 71 F.3d 298, 304 (8th Cir. 1995). Indeed, even in the absence of a clear contractual arbitration right, courts routinely deny class settlements that unreasonably impede class members' right to opt out. *See, e.g., Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2020 U.S. Dist. LEXIS 30193 at *22 (N.D. Cal. Feb. 20, 2020); *Smothers v. NorthStar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN, 2019 WL 3080822, at *8 (C.D. Cal. July 15, 2019); *Newman v. AmeriCredit Fin. Servs., Inc.*, No. 11cv3041 DMS (BLM), 2014 WL 12789177, at *6 (S.D. Cal. Feb, 3, 2014). "To that end, any settlement here must permit class members to opt out in a manner that is straightforward and respectful of their existing claims. The proposed settlement falls short in this regard . . ." *Arena*, 2021 U.S. Dist. LEXIS 41994 at *35.

6

[PROPOSED] MEMORANDUM OF LAW OBJECTING TO PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 24-MD-03098-EMC

This Court's holding in *Arena v. Intuit, Inc.* is instructive, and its facts and reasoning on all fours with this case. There, like here, this Court considered a motion for preliminary approval of a class action settlement, while tens of thousands of individual arbitrations were pending. *Id.* at *16-17. There, like here, the arbitration claimants had retained the same law firm, and asserted claims arising from the same factual nexus as the claims at issue in the class action. *Id.* at *17. Similarly, the circumstances of the proposed settlement, involving a defendant that had previously enforced mandatory arbitration against consumers and was now seeking a release of consumer claims through a class action settlement, suggested one motivation for the settlement was to enjoin and ultimately impede class members' arbitration rights. And there, like here, those arbitration claimants intervened to oppose preliminary approval, challenging the settlement agreement's imposition of a stay on their arbitrations and its onerous individualized opt-out requirements. *Id.* at *27-28. In *Arena,* this Court accepted the intervenors' arguments and denied preliminary approval of the settlement agreement.

The *Arena* court first noted that, as is the case here, "tens of thousands of Intuit customers have already begun individually arbitrating analogous claims against Intuit." *Id.* at *16. It noted that these arbitrations "have had significant financial consequences for Intuit, with more costs on the horizon," *id.*, and that such future fees might amount to "tens of millions" of dollars. *Id.* at *20. The same is true here, as 23andMe's own briefing in support of the Settlement Motion acknowledges that it faces multiple ongoing arbitrations by different groups of customers. *See* Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 105, the "23andMe Memorandum" or "23andMe Mem.") at 2 (noting that 23andMe's anticipated "arbitration filing fees . . . will nearly eclipse the Qualified Settlement Fund"). This Court noted that "these individual arbitrations expose Intuit to enormous fees and costs." *Arena,* 2021 U.S. Dist. LEXIS 41994 at *20-21.

In denying preliminary approval of the settlement, the *Arena* Court noted that this potential fee exposure created a "weak bargaining position in the arbitration proceedings" for Intuit, and that this made it "economically irrational for arbitration claimants with legitimate claims to participate in the proposed settlement." *Id.* at *27. There, class members were expected to receive approximately $28 per person against estimated damages of $100 per class member. Here, the calculus is even more

favorable to arbitration claimants. Intervenors are residents of California and Illinois, which are "Statutory Cash" claims under the proposed settlement. While Statutory Cash Claims in the settlement will receive "approximately $100," Intervenors have alleged statutory damages in excess of $1,000 each – an approximately 90% discount. Given that it would be irrational for a motivated individual to accept such low compensation from a superior bargaining position, "the proposed settlement's primary effect on arbitration claimants" like Intervenors "is to stall their arbitrations until they comply with the proposed opt out procedures." *Id.* at *27-28. For this reason, this Court concluded that "the amount offered in settlement is plainly inadequate, and many class members have justifiably had a negative reaction to the proposed settlement's opt out procedures, which expose a significant segment of the class to undue burdens." *Id.* at *28-29 (internal quotation marks omitted).

As to those opt out procedures, the Court in *Arena* noted "several troubling features" of the proposed opt-out process, including "a 'wet ink' (not electronic) signature," "opt outs to be mailed in hard copy," and that "the opt out procedure does not permit opting out through counsel." *Id.* at *35-36. Such "opt out requirements . . . are unduly burdensome given the unique circumstances of this litigation," i.e., a situation where tens of thousands of absent class members are actively seeking resolution of their claims through arbitration. *Id.* at *36.

Though the proposed opt out procedures in this case differ superficially from those at issue in *Arena*, their effect is the same: to make it more difficult for arbitration claimants to opt out, for no reason other than facilitating 23andMe's attempt "to avoid facing claims in arbitration." *Id.* at *31. The primary method for opting out is nearly identical to that rejected by this Court in *Arena*: a mailed, written request for exclusion "individually signed by the Person seeking exclusion using wet-ink signature." Proposed Settlement, ¶¶ 11, 80-81. Such "wet ink" signature requirements are routinely rejected as unreasonably burdensome. *See, e.g., Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067 (N.D. Cal. 2020) (characterizing a wet-ink opt out provision as "an obvious attempt to make it as hard as possible for petitioners to opt out"); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 783-84 (7th Cir. 2014) (wet-ink signature requirement supported "the inference that [Defendant] was trying to minimize" submissions); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2018 U.S. Dist. LEXIS 235043 at *4, *10 (N.D. Cal. June 7, 2018) (noting that a proposed settlement raised

8

"serious concerns" in part because it required a "claimant seeking . . . relief to submit a physical signature").

Although the Proposed Settlement also allows opt out requests to be individually submitted electronically through their claims portal and signed via "DocuSign, or other similar process," *id.*, claimants electing to opt out electronically must individually "verify the Opt-Out request within three (3) business days following the Opt-Out Deadline using" an additional link "sent to the email address of the Settlement Class Member," and "forfeit the opportunity to be excluded" if they do not perform this additional step. *Id.*, ¶¶11-12, 81-85. As the Court has already noted, no explanation is given for why "an electronic opt out [is] not recognized unless there is an additional verification." Order Re Supplemental Briefing And/Or Evidence, ECF No. 111 ("Supplemental Briefing Order") at 5. Such a requirement is not an element of any applicable law. California law expressly provides that an electronic signature, without a second "verification" step, is as a matter of law just as valid as a wet-ink signature. *See* Cal. Civ. Code § 1633.5. Federal law similarly requires, "[n]otwithstanding any statute, regulation, or other rule of law . . . a signature, contract, or other record relating to [a transaction affecting interstate commerce] may not be denied legal effect, validity, or enforceability solely because it is in electronic form." 15 U.S.C. § 7001. So why require a second verification step solely for opt-outs?

The answer is obvious: some number of Claimants who submit their opt-outs electronically will inevitably fail to check the box or follow the verification link for any number of reasons, because it will be caught in their spam folders, they are confused as to why they need to undertake an additional step to opt-out, they have previously retained a lawyer to represent them in negotiating a settlement with 23andMe and understood their lawyer to be the primary point of communication, or they can't respond in seventy-two (72) hours. Those individuals will then lose their right to arbitrate.

The Proposed Settlement also includes onerous opt out provisions going beyond even those invalidated in *Arena*. Most glaring, the Proposed Settlement expressly prohibits "Opt-Out requests seeking exclusion on behalf of more than one individual," a requirement that adds *nothing* to the opt-out process other than burden and inefficiency. Proposed Settlement, ¶83. The requirement also lacks clarity for large groups of class members who, like intervenors, have retained common counsel

9

to handle their arbitration claims. It is unclear whether, for example, counsel for such claimants could collect individual opt out attestations from all of their clients and then mail them together in a single box rather than in individual envelopes.

The Proposed Settlement also requires class members who wish to opt out, whether they do so online or via mail, to *themselves* draft and sign "an attestation clearly indicating the Person's intent . . . to be excluded," with the adequacy of the attestation "to be determined by the Notice and Claims Administrator" with no apparent process for review or reconsideration. *Id.*, ¶81(v). This is a transparent attempt to burden class members who wish to opt out with the added uncertainty and labor of drafting their own notice, the sufficiency of which the Claims Administrator will determine after the fact based on hidden standards. Such a requirement is undoubtedly improper: this Court has previously held that even an opt-out process requiring a class member to "download a [prewritten] Opt-Out Form from the Settlement Website . . . complete the form, and mail it to the Class administrator" was "needlessly burdensome for class members." *Hadley*, 2020 U.S. Dist. LEXIS 30193 at *22. A process where a claimant isn't even given a prewritten form and must instead *guess* at what opt-out language will be acceptable to the Claims Administrator is even worse.

Indeed, while Intervenors and other arbitration claimants are likely to be uniquely burdened by these requirements, absent class members also have an interest in efficiencies in the administration of the settlement that are ill-served by such onerous opt-out procedures. For example, this Court has already raised concerns regarding the cost of the notice and settlement administration process, which the parties guesstimate could run as high as $1,038,000. Supplemental Briefing Order at 5. It is unclear how much of this cost will be incurred in connection with the Claims Administrator's need to create additional electronic verification of opt-outs, the parties' insistence that they won't accept opt-outs transmitted by attorneys who are currently representing opt-outs in arbitration, or how much the parties estimate the processing and manual review of opt-outs by arbitration claimants to cost. Monies paid to the Claims Administrator to impede opt-outs is not a benefit that accrues to the class, but to 23andMe, which is attempting to enact another barrier to arbitration not found in its Terms.

The overall intended effect of these provisions is to push arbitration claimants like Intervenors toward an economically irrational outcome that benefits 23andMe, "an obvious attempt to make it as

hard as possible for petitioners to opt out, thus binding them to the [class] settlement." *Abernathy* 438 F. Supp. 3d at 1067; *see also, e.g., Pearson,* 772 F.3d at 783–84 (noting that it was "hard to resist the inference that [the Defendant] was trying to minimize" submissions). To the extent such onerous requirements are *ever* permissible, it is only where "opting out would be financially risky at best and economically irrational at worst," such as when a class settlement offers class members their "full possible recovery" or awards tens of thousands of dollars to each class member. *Arena*, 2021 U.S. Dist. LEXIS 41994 at *37 (internal quotation marks omitted). "Here, the inverse is true. For tens of thousands of class members who are arbitrating claims . . . opting out is the obvious financial choice." *Id.* at *38. "[C]lass members should not face onerous burdens that, in this context, appear designed to suppress opt outs." *Id.*

### C. There Is No Basis For The Stay of Arbitrations Requested Here

"The opt out procedures" proposed by class counsel and 23andMe here "are still more troubling given that the proposed settlement is contingent on the Court issuing an immediate injunction" against pending and future arbitrations. *Id.* "Such injunctions raise serious concerns," because "at the preliminary stage of a class action settlement, the court has not given notice to the class, not heard objections to the settlement, not weighed the settlement's strengths and weaknesses in an adversarial setting, and likely not finally certified a class." *Id.* at 39 (citing 4 Newburg on Class Actions § 13:19 (5th ed. 2011)) (internal quotation marks omitted). As such, "issuing such an injunction at the preliminary approval stage would be an extraordinary measure best reserved for extraordinary circumstances." *Arena*, 2021 U.S. Dist. LEXIS 41994 at *39 (internal citations and quotation marks omitted).

Plaintiff's submissions in support of preliminary approval do not even attempt to show such extraordinary circumstances, and 23andMe only attempts to do so via vague gestures toward its financial situation and the costs of arbitration, and a "secret" declaration filed under seal. Otherwise, 23andMe simply relies on unsupported innuendo concerning the motivations of those class members who are seeking arbitration under the Terms 23andMe wrote. But the fact that 23andMe finds these arbitrations inconvenient, or its contractual obligations costly, are not reasons to grant an injunction. To the contrary, as courts have repeatedly found, an absent class member's "contractual and statutory

11

1  right to arbitrate may not be sacrificed on the altar of efficient class action management." *In re Piper Capital Management*, 71 F.3d at 303. For this reason, at the preliminary approval stage, when no judgement has been entered, an injunction barring claimants like Intervenors from exercising their arbitration rights is impermissible. *Id.*

This is true even where, as here, the class action parties make unsupported arguments that continuing arbitration might complicate settlement efforts for financial or administrative reasons. A court should not "accept the class action parties' conclusory assertion that immediate arbitration by [objectors] (and perhaps others) will frustrate their class action settlement." *Id.* at 303. To the contrary, "the class action court should not be concerned if the settlement fund is ultimately reduced because many claimants elect to arbitrate." *Id.* This is because, "[a]lthough the court . . . has wide discretion to control a class action, including the opt-out process, that discretion must be exercised consistent with the policies and principles of the FAA when a class member with an immediate right to arbitrate its claim seeks to opt out." *Id.* at 304. As such, even a risk that arbitration "could jeopardize . . . the class action settlement," there is "an insufficient basis upon which to limit [Intervenors'] rights under the FAA." *Id.* (reversing a district court's injunction of arbitration at the preliminary approval stage, and allowing claimants who wished to arbitrate to opt out of a proposed settlement via direct communication to the court through counsel rather than through the standard opt-out process). In sum, a "district court violate[s] the FAA and abuse[s] its discretion when it enjoin[s]" class members like Intervenors "from arbitrating [their] claim[s]." *Id.* at 303.[5]

The All Writs Act, 28 U.S.C. § 1651, cited heavily by 23andMe, does not provide the authority to strip Intervenors of their rights under the Terms and the FAA. The All Writs "Act allows district courts to issue injunctions only 'in aid of their jurisdiction.'" *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1110 (11th Cir. 2004). Thus, a district Court is "not empowered to enjoin arbitration . . . under the All Writs Act" where, as here, such "arbitration involving arbitrable issues," neither

---

[5] Indeed, because the proposed injunction is severable from the rest of the agreement, denying the proposed injunction might very well have the opposite effect, encouraging the parties to move more quickly to consummate the proposed settlement.

"threaten[s] [n]or undermine[s] either its jurisdiction over a pending matter . . . or any *previous* orders it entered." *Id.* at 1110, 1113 (11th Cir. 2004) (emphasis added); *see also Piper*, 71 F.3d at 303-04.

The reasoning in *Piper* and *Klay* applies with equal force to facts like those here, as the *Arena* court recognized. *See Arena,* 2023 U.S. Dist. LEXIS 41994 at *39-40 ("To the extent that "extraordinary" circumstances could support enjoining parallel proceedings, that is not the case here, where the circumstances caution against interfering with proceedings brought by tens of thousands of class members before a class has been finally certified, or a settlement finally approved. Those class members have an obvious, non-speculative incentive to opt out of the settlement and continue proceeding through arbitration."). 23andMe can show no such "extraordinary" threat to any *previous* order of this Court, as required for injunctive relief under the All Writs Act. For its part, class counsel has not even attempted to do so, in fact emphasizing that the proposed "necessary" injunction is severable from the rest of the agreement.

None of the cases 23andMe relies upon for the novel proposition that the All Writs Act confers authority on the Court to enjoin pending arbitrations governed by the FAA involved any arbitrations that were pending at the time of preliminary approval. Indeed, most of them do not even involve an arbitration clause at all. In the *MyFord* case, the Court's preliminary approval order did not include reference to arbitration or any arbitral forum. *See generally In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 28, 2019). *Volkswagen* and *Hanlon* involved motions for final approval, and in *Hanlon*, the Ninth Circuit held that the district court did not abuse its discretion in enjoining a class member from pursuing alternative state law *class* actions, *not* individualized opt-out proceedings. *Hanlon*, 150 F.3d at 1018-1024 (finding that the putative second class plaintiff's actions in maintaining a second action *did* opt him out of the settlement class); *see In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2627 CRB (JSC), 2016 U.S. Dist. LEXIS 148374 at *802 (N. D. Cal. Oct. 25, 2016). A Court's authority to enjoin the pursuit of class actions in state court purporting to affect the rights of large swathes of absent class members has no bearing on the Court's authority to enjoin individual arbitrations brought by consumers represented by counsel. In any event, as the court in *Arena* observed, the situation in *Volkswagen* was significantly different than that here, because it involved

13

a settlement of "typically at least thousands of dollars" per class member. *Arena*, 2021 U.S. Dist. LEXIS 41994 at *37. Under such circumstances, "opting out would be financially risky at best and economically irrational at worst. . . . Here, the inverse is true." *Id.* at *37-38.

In the final case cited by 23andMe, *Roberts v. AT&T Mobility LLC*, although there was an arbitration clause that might have bound class members, the opinion referenced no pending arbitrations brought by individual class members and no objections by anyone seeking to proceed with an arbitration. *See generally Roberts v. AT&T Mobility LLC,* No. 3:15-cv-03418-EMC, 2021 U.S. Dist. LEXIS 261734 (N.D. Cal. Mar. 31, 2021). This Court would not have considered whether it had the authority to issue an injunction impacting ongoing arbitrations in connection with preliminary approval of a settlement where there were no objections. *See, e.g., United States v. Rothenberg*, 554 F. Supp. 3d 1039, 1047 n.10 (N. D. Cal. 2021) (noting that a court "does not consider" an issue "in its analysis because the parties have not raised it.") One would expect 23andMe to justify its broad request for an injunction barring the prosecution of known, pending arbitration claims with some relevant authority. It has not.

The requested injunction would violate Intervenors' rights under the FAA, and reach far beyond the authority for injunctions "in aid of [the court's] jurisdiction" found in the All Writs Act. 28 U.S.C. §1651.

**CONCLUSION**

For the foregoing reasons, Intervenors respectfully request that this Court:

(i)   reject those portions of the proposed settlement that unduly burden Intervenors' rights to opt out, and instead allow Intervenors to opt out collectively through a single communication by counsel;

(ii)  reject those portions of the proposed settlement, which are severable from the remainder of the settlement, that request an injunction of arbitration proceedings inconsistent with class members' statutory and contractual rights to arbitration; and

(iii) grant such other relief as the Court deems just and proper.

Dated: October 2, 2024

Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

By: /s/ Jonathan D. Waisnor
Jonathan D. Waisnor (SBN 5137302)
Melissa H. Nafash (*pro hac vice forthcoming*)
Alexander F. Schlow (*pro hac vice forthcoming*)
140 Broadway
New York, NY  10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
jwaisnor@labaton.com
mnafash@labaton.com
aschlow@labaton.com

*Attorneys for Intervenors*

15

[PROPOSED] MEMORANDUM OF LAW OBJECTING TO PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 24-MD-03098-EMC