**GREENBERG TRAURIG, LLP**
Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700

Stephen L. Saxl (*admitted pro hac vice*)
*saxls@gtlaw.com*
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-8184

Ian C. Ballon (SBN 141819)
*Ballon@gtlaw.com*
1900 University Avenue, 5th Floor
East Palo Alto, California 94303
Telephone: 650-328-8500

Kristin O'Carroll (SBN 312902)
*ocarrollk@gtlaw.com*
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415-655-1300

*Attorneys for Defendant 23andMe, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Related to: ALL ACTIONS | Case No. 3:24-md-03098-EMC<br><br>**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: October 29, 2024<br>Time: 3:30 PM<br>Courtroom: 5, 17th Floor<br>Judge: Hon. Edward M. Chen |

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    RELEVANT FACTUAL BACKGROUND .............................................................. 4

    A.     The Arbitrations ........................................................................................... 4

    B.     The Settlement Agreement ........................................................................... 9

    C.     The Motions to Intervene ........................................................................... 11

    D.     The Melvin Objectors ................................................................................. 11

III.   THE COURT SHOULD DENY PROPOSED INTERVENOR'S MOTIONS TO INTERVENE. 12

    A.     Legal Standard ........................................................................................... 12

    B.     The Motions to Intervene Are Procedurally Unnecessary and Should be Denied. ........... 12

    C.     The Motions to Intervene Are Untimely. .................................................. 15

    D.     Proposed Intervenors Cannot Satisfy the Rule 24(a) Requirements for Intervention as a Matter of Right. .............................................................................. 20

    E.     Proposed Intervenors Have No Significant Protectable Interest to Intervene in the MDL as a Matter of Right. ........................................................................... 21

    F.     Even if Proposed Intervenors Had a Legally Valid Protectable Interest, Intervention Is Unnecessary to Protect Their Interest from Being Impaired or Impeded. ................. 22

    G.     Proposed Intervenors Are Adequately Represented. ................................. 24

    H.     Permissive Intervention Under Rule 24(b) Should Be Denied. ................. 25

IV.    THE COURT SHOULD GRANT THE SETTLING PARTIES' REQUEST FOR A PRELIMINARY INJUNCTION. .......................................................................... 25

    A.     The Agreed-Upon Injunction Is Necessary and Appropriate in Aid of the Court's Jurisdiction Under the All Writs Act. ........................................................ 25

    B.     Entering the Preliminary Injunction Will Not "Extinguish" the Proposed Intervenors' Rights to Pursue Arbitration. ...................................................................... 32

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

C.      The Class Action Settlement and Preliminary Injunction Do Not Violate the FAA for the Additional Reason That the Settlement Agreement Supersedes All Agreements Between the Parties..................................................................................................33

V.      CONCLUSION.............................................................................................................35

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In Re: 23andMe, Inc. Customer Data Security Breach Litigation*,
    MDL 3098, Case No. 24-md-03098-EMC ................................................................... *passim*

*Alaniz v. Cal. Processors, Inc.*,
    73 F.R.D. 269 (N.D. Cal. 1976).........................................................................................23

*Alexander v. Fedex Ground Package Sys., Inc.*,
    No. 05-CV-00038-EMC, 2015 WL 5698756 (N.D. Cal. Sept. 29, 2015) .............................14

*ALF Todd Creek Vill. N. LP v. Todd Creek Vill. Metro. Dist.*,
    No. 2013CV30665, 2014 Colo. Dist. LEXIS 2344 (Dist. Ct. Colo., Weld Cty. Jan. 6,
    2014) ................................................................................................................................31

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ..................................................................................... *passim*

*AlterG, Inc. v. Boost Treadmills LLC*,
    No. 18-cv-07568-EMC, 2019 WL 4221599 (N.D. Cal. Sept. 5, 2019)................................34

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
    672 F.3d 113 (2d Cir. 2011)........................................................................................33, 34

*Arena v. Intuit, Inc.*,
    No. 19-cv-02546-CRB, 2021 WL 834253 (N.D. Cal. Mar. 5, 2021) ...............................31, 32

*Ashker v. Newsom*,
    968 F.3d 939 (9th Cir. 2020), 23andMe ...........................................................................34

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation)*,
    770 F.2d 328 (2d Cir. 1985).............................................................................................27

*Bowman v. UBS Fin. Servs., Inc.*,
    No. C 04 3525 MMC, 2007 WL 1456037 (N.D. Cal. May 17, 2007)...................................35

*Brown v. Accellion, Inc.*,
    No. 5:21-CV-01155-EJD, 2023 WL 1928210 (N.D. Cal. Feb. 10, 2023).............................23

*California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
    54 F.4th 1078 (9th Cir. 2022) ....................................................................................12, 16, 19

*Callahan v. Brookdale Senior Living Communities, Inc.*,
    42 F.4th 1013 (9th Cir. 2022) ..........................................................................................12, 24

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED
INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO
PRELIMINARY APPROVAL**

*Camping Const. Co. v. District Council of Iron Workers*,
  915 F.2d 1333 (9th Cir. 1990) ........................................................................................30

*In re Cathode Ray Tube Antitrust Litig.*,
  No. 07-CV-05944-JST, 2020 WL 5224241 (N.D. Cal. Aug. 27, 2020)..............................21

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  07-cv-5944, 2014 WL 4181732 (N.D. Cal. Aug. 20, 2014)...............................................34

*In re Centurylink Sales Pracs. & Sec. Litig.*,
  No. CV 17-2832, 2020 WL 3512807 (D. Minn. June 29, 2020)........................................30

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ..........................................................................................13

*Cochran v. Accellion, Inc.*,
  No. 5:21-CV-01887-EJD, 2021 WL 5161921 (N.D. Cal. Nov. 5, 2021).........................14, 22

*Cody v. SoulCycle, Inc.*,
  No. CV1506457MWFJEMX, 2017 WL 8811114 (C.D. Cal. Sept. 20, 2017).......................15

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002)...........................................................................................................13

*Dohrmann v. Intuit, Inc.*,
  823 F. App'x 482 (9th Cir. 2020)....................................................................................31

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) .....................................................................................12, 21

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)....................................................................................................33, 34

*Gallucci v. Boiron, Inc.*,
  No. 11CV2039 ...............................................................................................................13

*Glass v. UBS Fin. Servs., Inc.*,
  No. 06-4068, 2007 WL 474936 (N.D. Cal. Jan. 17, 2007).................................................15

*Grey v. American Management Services*,
  204 Cal. App. 4th 803 (2012) .........................................................................................34

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .........................................................................................25

*Hartley v. Stamford Towers Ltd. P'ship*,
  36 F.3d 1102 (9th Cir. 1994) (unpublished) ....................................................................25

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

ACTIVE 702777897v8

*Hawaii-Pac. Venture Cap. Corp. v. Rothbard*,
   564 F.2d 1343 (9th Cir. 1977) ........................................................................24

*Hofstetter v. Chase Home Fin., LLC*,
   2011 WL 5415073 (N.D. Cal. Nov. 8, 2011) ........................................................23

*Jacobs v. CSAA Inter-Ins.*,
   No. C 07-00362-MHP, 2009 WL 1201996 (N.D. Cal. Apr. 30, 2009) .................................26

*Kalbers v. United States Dep't of Just.*,
   22 F.4th 816 (9th Cir. 2021) ........................................................................20

*Keirsey v. eBay, Inc.*,
   No. 12-CV-01200-JST, 2013 WL 5755047 (N.D. Cal. Oct. 23, 2013) .................................26

*Klay v. United Healthgroup, Inc.*,
   376 F.3d 1092 (11th Cir. 2004) ......................................................................30

*Lane v. Facebook, Inc.*,
   No. C 08-3845 RS, 2009 WL 3458198 (N.D. Cal. Oct. 23, 2009 ..........................17, 18, 23

*Marshall v. Monster Energy Co.*,
   No. CV-14-06311-MWF-PLA, 2016 WL 11758806 (C.D. Cal. Feb. 29, 2016)....................14

*Moore v. Verizon Commc'ns Inc.*,
   No. C 09-1823 ....................................................................................17, 24

*Morgan Stanley & Co., LLC v. Couch*,
   134 F. Supp. 3d 1215 (E.D. Cal. 2015)................................................................28

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)....................................................................................33

*Orange Cnty. v. Air California*,
   799 F.2d 535 (9th Cir. 1986) ....................................................................15, 17, 19

*Perry v. Proposition 8 Official Proponents*,
   587 F.3d 947 (9th Cir. 2009) ........................................................................20

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)................................................................................4, 27

*In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*,
   71 F.3d 298 (8th Cir. 1995) ......................................................................29, 30

*Raquedan v. Centerplate of Delaware Inc.*,
   376 F. Supp. 3d 1038 (N.D. Cal. 2019) ............................................................18, 23

iv      Case No. 3:24-md-03098-EMC

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED
INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO
PRELIMINARY APPROVAL**

ACTIVE 702777897v8

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010)...................................................................................33

*In re Reserve Fund Sec. & Derivative Litig.*,
    673 F. Supp. 2d 182 (S.D.N.Y. 2009)......................................................28

*Roberts v. AT&T Mobility LLC*,
    No. 3:15-CV-03418-EMC, 2021 WL 9564450 (N.D. Cal. Mar. 31, 2021) (Chen, J.)...........26

*S. California Edison Co. v. Lynch*,
    307 F.3d 794 (9th Cir. 2002) ...................................................................20

*Sandpiper Vill. Condo. Ass'n, Inc. v. La.-Pac. Corp.*,
    428 F.3d 831 (9th Cir. 2005) ...................................................................25

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016). ECF No. 117 ...................................21, 22

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ..........................................................12, 21

*Stolt-Nielsen S.A. v. AnimalFeeds Intl Corp.*,
    559 U.S. 662 (2010)..................................................................................33

*Stott v. Cap. Fin. Servs., Inc.*,
    277 F.R.D. 316 (N.D. Tex. 2011) .............................................................29

*In re TikTok, Inc., Consumer Priv. Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) .....................................................29

*United States v. State of Or.*,
    913 F.2d 576 (9th Cir. 1990) ...................................................................19

*United States v. State of Wash.*,
    86 F.3d 1499 (9th Cir. 1996) ...................................................................19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liability Litig.*,
    2016 WL 4376623 (N.D. Cal. Aug. 17, 2016), *aff'd*, 894 F.3d 1030 (9th Cir. 2018)...........23

*Zepeda v. PayPal, Inc.*,
    No. 10CV02500SBAJCS, 2014 WL 1653246 (N.D. Cal. Apr. 23, 2014) .................14, 18, 23

*Zepeda v. U.S. I.N.S.*,
    753 F.2d 719 (9th Cir. 1983) ...................................................................30

**Statutes**

28 U.S.C. § 1651(a) ............................................................................. *passim*

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED
INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO
PRELIMINARY APPROVAL**

ACTIVE 702777897v8

Cal. Code Civ. Proc. § 1281.98 ..................................................................................................10

Federal Arbitration Act ...................................................................................................30, 33

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................ *passim*

Fed. R. Civ. P. 24 ........................................................................................ *passim*

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

ACTIVE 702777897v8

Defendant 23andMe, Inc. ("23andMe") hereby submits this omnibus memorandum in opposition to the Proposed Intervenors' Motions to Intervene and in reply to objections to Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement by the Proposed Intervenors and the Melvin Plaintiffs.[1]

To minimize repetition, this memorandum responds primarily to the Proposed Intervenors' requests to intervene and on objections to the requested preliminary injunction agreed upon by 23andMe and the Settlement Class Representatives on behalf of all Settlement Class Members (together, the "Settling Parties") staying the prosecution of parallel proceedings arising from the Security Incident unless and until a Settlement Class Member opts out of the Class Action Settlement Agreement and Release, dated September 5, 2024 (the "Settlement Agreement") after receiving Notice. As set forth below, the preliminary injunction is necessary and appropriate to aid in the Court's jurisdiction and to protect the settling class members. To the extent the Proposed Intervenors or the Melvin Objectors raise other objections to the proposed Settlement, 23andMe relies on the arguments advanced by Plaintiffs in support of Plaintiffs' Motion for Preliminary Approval.

## I.    INTRODUCTION

Proposed Intervenors' Motions to Intervene are procedurally unnecessary and that alone warrants

---

[1]    Specifically, this omnibus memorandum responds to the following submissions: The Intervenors' Corrected Motion and Motion to Intervene and accompanying Intervenors' Memorandum in Opposition to Proposed Injunction and Opt-Out Procedures Sought by Plaintiffs' Motion for Preliminary Approval of Class Action Settlement filed on behalf of proposed intervenors Vivian Gonczi, Lance Alligood, and Howard Packer (the "Gonczi Proposed Intervenors") by Milberg Coleman Bryson Phillips Grossman, PLLC (Oct. 1, 2024) (ECF No. 117); the Motion to Intervene and Opposition to Preliminary Approval of Class Action Settlement filed on behalf of proposed intervenors Laura Block, Joel Davne, Aaron Hodges, and Joseph Jarrell (the "Block Proposed Intervenors") on behalf of themselves and all other arbitration claimants represented by Levi & Korsinsky, LLP (Oct. 2, 2024) (ECF No. 119); and the [Proposed] Memorandum of Law Objecting to Preliminary Approval of Class Action Settlement filed on behalf of proposed intervenors Nancy Adame, Rebecca Adams, Josh Ades, Heather Appleman, and Michael Atkinson-Leon (the "Adame Proposed Intervenors") by Labaton Keller Sucharow, LLP (Oct. 2, 2024) (ECF No. 120), (collectively, the Gonczi, Block and Adame Proposed Intervenors are referred to as "Proposed Intervenors"); and the Response to Plaintiffs' Motion for Preliminary Approval filed on behalf of objectors David Melvin and J.L., individually and on behalf of all others similarly situated (the "Melvin Objectors") by Edelson PC (Oct. 2, 2024) (ECF No. 118).

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

their denial. Ninth Circuit authority and Federal Rule of Civil Procedure 23(e) confirm that members of the putative Settlement Class do not need to intervene to object to preliminary approval of the Class Action Settlement, including the proposed temporary injunction to which the Settling Parties agreed. Intervention should also be denied for the additional reasons that it is untimely, that the Proposed Intervenors have no "significantly protectable" interest, that the disposition will not impair or impede their ability to protect their interests, and that their interests are adequately represented. Indeed, allowing intervention by the numerous Proposed Intervenors at this advanced stage would unduly complicate and delay these proceedings. Far less disruptive means, such as objecting or opting out of the Settlement, are available.

The Proposed Intervenors' objections to the proposed preliminary injunction agreed to in the Settlement Agreement and included in the proposed Preliminary Approval Order fare no better. 23andMe demonstrated in its initial Memorandum (ECF No. 105) that this is a common provision supported by ample authority, and in this case is necessary and appropriate under the All Writs Act, particularly in light of the Company's financial condition. The injunctive relief would simply require putative Settlement Class Members to await Notice before having the opportunity to opt out after considering the benefits of the proposed Settlement. Thereafter, individuals who opt out of the Settlement Class would be free to pursue their claims elsewhere.

The Proposed Intervenors nonetheless urge the Court to reject this provision, invoking their supposed need to immediately pursue arbitration. Proposed Intervenors attempt to paint a picture for the Court that thousands of ongoing arbitration proceedings are on the verge of a sudden halt in light of the Class Action Settlement. One would not know it from reading their papers, but only 100 arbitration claimants represented by counsel for any of the Proposed Intervenors have even paid their arbitration filing fees, and even in those cases, no arbitrators have been assigned. Those 100 were the only arbitration claims filed by any of these counsel prior to July 10, 2024, one day after the Settling Parties publicly informed the Court that they were close to accepting a mediator's proposal resolving claims on behalf of the putative U.S. class, even though the fact that 23andMe was negotiating a class action settlement had been known for months, since January 2024. And the firm that filed these 100 claims (Milberg) was also counsel in

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

these consolidated MDL class actions and participated in the settlement mediation on January 31, 2024. Another firm (Labaton) did not file any arbitration claims until after the Parties had executed a Term Sheet for the Settlement, and concedes that they have no pending arbitration claims, but that because JAMS has "declined to advance administration" of the claims they had filed, they claim they "intend to promptly re-file arbitration demands before NAM." ECF No. 120-3 at ¶ 13. And the third firm (Levi & Korsinsky) filed its first arbitration claims against 23andMe only *after* the motion for preliminary approval of the Settlement was filed in September. Indeed, some of the Proposed Intervenors agreed to stay their claims pending the finalization of the Class Action Settlement, a fact that is omitted from any of the briefs before the Court. A further short-term stay will not meaningfully prejudice the Proposed Intervenors or other potential arbitration claimants.

So after waiting nine months without even paying filing fees for the arbitrations, why are the Proposed Intervenors suddenly and supposedly in such a hurry? After all, none of the plaintiffs in pending state court actions or their counsel have filed objections to the proposed temporary injunction. The reason lies in the nature of the tactic of filing mass arbitration claims for which the defendant's portion of the initial filing fee alone exceeds the value of the individual's claim. As 23andMe previously showed, the mass arbitration claims threaten to impose exorbitant filing fees on 23andMe, presumably intended to force the company to enter into separate mass settlements with counsel threatening to bring the mass arbitration claims, privileging them over the 6.4 million members of the putative Settlement Class under the Court's jurisdiction and supervision.

The bottom line is that the Proposed Intervenors seek to put themselves ahead of the Class, even though the arbitration claimants allege no distinct injury. This would be improper in connection with the settlement of any consolidated MDL class action litigation, but it is particularly problematic here, where 23andMe's uncertain financial condition is a matter of public record. 23andMe negotiated this Settlement with the Interim Co-Lead Class Counsel appointed by the Court with the assistance of a highly respected mediator. It would be unfair to the Settlement Class, the Court and 23andMe to permit the Proposed Intervenors and their counsel to jeopardize the Settlement by their sudden insistence that they need to move

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

forward quickly with arbitration now that a Settlement has been announced. The potential mass arbitration claimants should go through the same process of receiving Notice of the Settlement and individually deciding whether to opt out as the other 6.4 million class members.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   The Arbitrations

The Proposed Intervenors collectively purport to represent thousands of claimants, but to date, only one firm has paid any filing fees, and that firm has only paid fees for one hundred claims. These are the only claims to have been accepted by an arbitration provider, and they are in an early posture: no arbitrators have been assigned and no substantive proceedings have commenced.

1.   Gonczi Intervenors Represented by Milberg, Coleman, Bryson, Phillips, Grossman, PLLC ("Milberg")

Commencing on December 5, 2023, Milberg began notifying 23andMe that it represents a total of 4,963 individuals with alleged claims against 23andMe arising from the Incident. Guyon Decl. ¶ 2. At the time, Milberg was counsel of record in these class actions for Plaintiffs Hoffman, Klawitter, Dube, J.S., J.T, A.L., and Greenberg. ECF No. 108 (Milberg's Notice of Withdrawal of Counsel from these actions).

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████ Guyon Decl. ¶ 3. ████████████████████████████████████████████. Id.

Nonetheless, *after* notifying 23andMe that it allegedly represented nearly 5,000 claimants with individual claims against 23andMe, Milberg participated in the January 31, 2024 mediation before Randall Wulff with counsel for 34 other putative class actions filed to date. Id. at ¶ 4.

Thereafter, on February 14, 2024, Milberg filed one hundred individual arbitration demands with JAMS. Id. ¶ 5. For those one hundred arbitration demands—and **only** those one hundred arbitration

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

demands—Milberg and 23andMe have paid the arbitration filing fees. Milberg's total arbitration fees were only ███████ *Id.* ¶ 5. 23andMe paid arbitration filing fees ████████ . *Id.*

To date (nearly eight months after these claims were filed), no arbitrators have been appointed to hear the one hundred claims, and no substantive proceedings have occurred. Indeed, from August 26, 2024 through September 24, 2024, JAMS repeatedly asked Milberg for the location of these one hundred claimants so that it could assign arbitrators, but Milberg did not provide the location information JAMS requested until September 24, 2024—several days after it withdrew as counsel of record for Plaintiffs Hoffman, Klawitter, Dube, J.S., J.T, A.L., and Greenberg. *Id.* ¶ 9; ECF No. 108.



Guyon Decl. ¶ 6.

Milberg claims that it has submitted 4,866 additional arbitration demands to JAMS that "remain pending," (ECF No. 117 at p. 10) but that is not true. On July 10, 2024—one day after the Parties publicly informed the Court that they were close to accepting a mediator's proposal resolving claims on behalf of the putative U.S. class (*see* ECF No. 79)—Milberg filed 4,766 individual arbitration demands with JAMS, and issued Milberg an invoice for ███████ in claimants' filing fees. Guyon Decl. ¶ 7. To date, Milberg has not paid those filing fees. *Id.* Thus, these demands have not progressed even through the intake process with JAMS, and there is no indication that Milberg intends to move these claims forward.

Milberg has *never* claimed that the individuals it represents in arbitration have suffered injuries in any way different from those of the putative Settlement Class, or that their injuries that would entitle them to expedited relief. Milberg argues that it seeks different relief, but even that is a misnomer. Milberg fails to differentiate the "relief" it seeks from that provided to the putative Settlement Class in any way. It claims

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

that its claimants are entitled to "more money through the arbitration proceedings than they will likely recover by simply participating as absent class members in this Settlement," (ECF No. 117 at p. 10), but provides no basis for that hypothesis—tellingly, Milberg does not claim that its claimants' injuries are different in nature and thus require more in damages. Instead, it appears that Milberg believes its claimants should receive more simply because of the threat of the costs of arbitration to 23andMe.

The business practice changes that Milberg seeks in arbitration are not more advantageous to the class than those negotiated under the Settlement. Milberg claims that it seeks "independent oversight through annual SOC 2 Type assessments." ECF 117 at 11. But SOC 2, a U.S.-specific standard measured by CPA firms, is not as comprehensive and does not require an organization to audit all available systems and processes, unlike the ISO standards provided in the Class Action Settlement. By contrast, ISO is an international standard, more rigorous than SOC 2, takes more time to implement, tends to be more costly to comply with, and requires the involvement and participation of numerous departments (security, privacy, HR, products, engineering, marketing, communications), whereas SOC typically involves just the security department. *See What's the Difference Between ISO 27001 and SOC 2?*, A-LIGN.COM, https://www.a-lign.com/articles/differences-between-iso-27001-and-soc-2 (last modified Sep. 24, 2024); Emily Bonnie, *SOC 2 vs ISO 27001: What's the Difference and Which Standard Do You Need?*, SECUREFRAME.COM (Jan. 17, 2014), https://secureframe.com/blog/soc-2-vs-iso-27001. Indeed, SOC 2 is an attestation of the company's internal control requirements based on the self-selected environments for evaluation, not a certification against the set 114 controls within a company's Information Security Management System. *See id*.

Similarly, Milberg fails to explain what "logging and monitoring programs" or "additional data security protocols," are, let alone how those vary in any way from the computer scans, information security program, incident response plan and threat management, and retention for personal information programs that are provided in the Class Action Settlement.

//

//

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

2.   Adame Intervenors Represented by Labaton, Keller, Sucharow LLP ("Labaton")

Commencing on February 9, 2024, Labaton began notifying 23andMe that it represents a total of 12,388 individuals with alleged claims against 23andMe arising from the Incident. Guyon Decl. ¶¶ 11-13, 18. Counsel for 23andMe and Labaton thereafter exchanged correspondence, and discussed Labaton's claim on a telephone conference for the first time on May 1, 2024. *Id.* ¶ 14. On May 1, 2024, counsel for 23andMe expressed its interest in a tolling agreement for Labaton's claimants' claims in light of ongoing settlement discussions with the putative class. *Id.* Labaton indicated that it was also interested in a tolling agreement. *Id.* Negotiations regarding a tolling agreement proceeded for three months, during which time 23andMe made clear to Labaton that it would not accept a tolling agreement that allowed Labaton to exclude all of its claimants from any class action settlement agreement through a single email communication from counsel in light of ongoing settlement negotiations with Class Counsel. *Id.* at ¶ 15.

The Settling Parties executed a confidential Term Sheet for the Class Action Settlement on July 29, 2024. The Settling Parties publicly reported that the Term Sheet had been signed on July 30, 2024 at the Case Management Conference before the Court. *See* ECF No. 89. And, on August 8, 2024, 23andMe detailed that a Settlement had been reached in the class action for $30 million in its publicly-filed Form 10-Q. 23andMe Holding Co., Quarterly Report (Form 10-Q) (Aug. 8, 2024).

During a conference with Melissa Nafash of Labaton on August 27, 2024, Ms. Nafash advised counsel for 23andMe that she had been unaware that a Term Sheet was executed, and further, all of Labaton's claimants would object to preliminary approval of a class action settlement regardless of its terms, which were not publicly disclosed at that time. Guyon Decl. ¶ 18. However, Labaton has *never* claimed that the individuals it represents in arbitration have suffered injuries different from the putative Settlement Class, entitling them to faster or greater relief than the 6.4 million other members of the Class.

On August 28 and 29, 2024, Labaton filed a total of 11,061 individual arbitrations with JAMS directly in response to the discussion of the executed Term Sheet. Guyon Decl. ¶ 19. These 11,061 claims include claims on behalf of over 2,800 individuals for whom Labaton failed to provide pre-filing notice as required by 23andMe's Terms of Service. *Id.*

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

On September 16, 2024, JAMS administratively closed all 11,061 Labaton arbitrations because 23andMe's Terms of Service no longer provide for JAMS as the arbitration forum for mass arbitration filings, but require that a mass arbitration be filed with NAM (National Arbitration and Mediation). Guyon Decl. ¶ 21, Ex. A. To date, Labaton has not refiled any claims with NAM. Guyon Decl. ¶ 23.

3.  Block Intervenors Represented By Levi & Korsinsky, LLP

Commencing on December 29, 2023, Levi & Korsinsky began notifying 23andMe that it represents approximately 13,000 individuals with alleged claims against 23andMe arising from the Incident. Guyon Decl. ¶¶ 24-27. Counsel for 23andMe informed Levi & Korsinsky on February 10, 2024 that it was in the process of negotiating a potential class-wide resolution of all U.S. claims arising from the Incident and invited Levi & Korsinsky's claimants to agree to stay the initial dispute resolution procedure provided in 23andMe's Terms of Service for ninety (90) days pending those settlement discussions for the putative U.S. class. *Id*. at ¶ 28. Levi & Korsinsky indicated that they were amenable to a temporary stay, although the parties never finalized a full tolling agreement. *Id*. at ¶ 29. Levi & Korsinsky has omitted these background facts from the Block Motion to Intervene.

Over the course of the following months through July 26, 2024, counsel for 23andMe and Levi & Korsinsky exchanged letters regarding additional claimants that Levi & Korsinsky allegedly represented, and in which 23andMe requested additional information to verify the claimants' demands. *Id*. at ¶ 30. 23andMe's requests for clarifying information were not responded to with clarifying information or otherwise went unanswered. *Id*. at ¶ 31.

Levi & Korsinsky did not file any arbitration demands until September 13, 2024, ***after*** Plaintiffs filed their Motion for Preliminary Approval. Only then did Levi & Korsinsky file 884 individual arbitration demands with JAMS. *Id*. at ¶ 32. 23andMe has objected to the arbitrations going forward in light of the preliminary injunction included in the Class Action Settlement and other procedural deficiencies. JAMS has not accepted these 884 demands to date. *Id*. at ¶ 33. No filing fees have been paid by either party. *Id*.

Levi & Korsinsky filed their arbitration demands one day after the Motion for Preliminary Approval was filed—clearly in response to the Settlement, not because claimants have suffered any different harm

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

requiring that their claims be litigated before the remainder of the 6.4 million members of the Settlement Class has obtained the benefit of the Settlement Agreement. Levi & Korsinsky has *never* claimed that the individuals it represents have suffered injuries different from the members of the putative Settlement Class, entitling them to faster or greater relief than the 6.4 million other members of the Class.

### B.    The Settlement Agreement

As recounted in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 103-1), on September 5, 2024, 23andMe and the Settlement Class Representatives on behalf of all Settlement Class Members entered into the Settlement Agreement that is intended to "fully, finally, and forever resolve, discharge, and settle the consolidated action *In Re: 23andMe, Inc. Customer Data Security Breach Litigation*, MDL 3098, Case No. 24-md-03098-EMC (the "Litigation")." ECF No. 103-2 at p. 1. Pursuant to the Settlement Agreement, class representatives, on behalf of the Settlement Class, agreed that the Litigation and any claims that "could have been asserted, by any Settlement Class Member against any of the Released Persons" that relate to or arise out of "the same factual predicate as the allegations in the Litigation" (the "Released Claims") would be fully settled and released. *Id.* at p. 4.

Further, the Settling Parties agreed that all Settlement Class Members, except those Settlement Class Members who lawfully opt out of the Settlement Agreement, are subject to the terms and conditions of this Settlement Agreement. The agreement defines "Settlement Class Member" to include:

> [A]ll natural persons who were residents of the United States on August 11, 2023 and whose Personal Information was compromised in the Security Incident. The Settlement Class specifically excludes: …(ii) all Settlement Class Members who timely and validly request to opt out from the Settlement Class under the opt out procedures provided in ¶¶ 80- 85; … and (iv) potential class members who have provided 23andMe with an express release of claims arising out of or related to the Security Incident prior to the Effective Date of this Settlement.

ECF No. 103-2 at ¶37.

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

Based on this provision, any Settlement Class Member who fails to lawfully opt out of the Settlement Agreement pursuant to the procedure outlined in the Settlement Agreement is subject to its terms. *Id*. at p. 4.

In order to ensure that the Settlement Agreement was administered in accordance with the Settling Parties' intentions, and in aid of the Court's jurisdiction, the Settling Parties agreed, subject to the Court's approval, to a temporary injunction, enjoining Settlement Class Members from prosecuting other litigation or arbitration claims pending the Court's determination of final approval, unless and until individual Settlement Class Members have received Notice and have submitted a valid request to opt out.

This provision, which is memorialized in Paragraph 73(h) of the Settlement Agreement, provides that the Parties will seek an order requesting:

> h) preliminary injunction of all Settlement Class Members and their representatives from filing, commencing, prosecuting, maintaining, intervening in, conducting, continuing, or participating in any other lawsuit or administrative, regulatory, arbitration or other proceeding based on the Released Claims, unless and until they personally submit a timely request for individual exclusion pursuant to the Settlement Agreement after receiving Notice.

ECF No. 103-2 at ¶73(h).

Finally, the Settling Parties agreed that the Court retains jurisdiction to implement or enforce the terms of the Settlement Agreement (*Id*. at ¶116) and that the Settlement Agreement supersedes all previous agreements between the Settling Parties. *Id*. at ¶112.

Among other reasons discussed more fully in 23andMe's Memorandum in Support of Preliminary Approval, ECF No. 105, and further below, this injunction is important in aid of the Court's jurisdiction and particularly important in light of the financial condition of 23andMe, which is further detailed with material, non-public information in the *In Camera* Declaration of Joseph Selsavage (submitted in camera along with this memorandum). Importantly, absent an injunction, the filing fees that 23andMe will face from the proposed Intervenors' arbitration demands have the potential to exceed the entire Qualified

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

Settlement Fund, and those filing fees could be due within thirty-days of the filing of putative arbitration demands pursuant to Cal. Code Civ. Proc. § 1281.98. ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

On September 12, 2024, Plaintiffs filed the Motion for Preliminary Approval of the Settlement Agreement. See ECF No. 103. The [Proposed] Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement includes the preliminary injunction provision. ECF No. 103-2, Ex. 1 at ¶23.

**C.      The Motions to Intervene**

On October 1 and 2, 2024, the Proposed Intervenors each filed Motions to Intervene in the Litigation and opposing the Settlement Agreement. In their Motions, Proposed Intervenors asked the Court to reject the preliminary injunction.[2]

**D.      The Melvin Objectors**

On October 2, 2024, the Melvin Objectors filed their Objection, raising various other objections to the proposed Settlement (to be addressed by Plaintiffs in their reply papers in further support of preliminary approval). This brief provides no substantive argument against entering the preliminary injunction other than the assertion that 23andMe intends to "capture the entire process to the greatest extent possible." ECF No. 118 at 12:18.

---

[2]      The Proposed Intervenors also argued that the opt-out procedures in the Settlement Agreement are unduly onerous. To avoid repetition, 23andMe relies on and joins in Plaintiffs' response to those arguments, and also maintains that individualized opt-out procedures are appropriate based on the facts discussed on pp. 10-11 herein.

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

The Melvin Objectors further claim that they posed questions to 23andMe regarding its partnership with Glaxo Smith Kline, which the Melvin Objectors claim were unanswered. ECF No. 118 at 4. This statement is false. Counsel for 23andMe responded to these requests, with reference to publicly-available documents, on February 15, 2024. Guyon Decl. ¶ 38.

## III.   THE COURT SHOULD DENY PROPOSED INTERVENOR'S MOTIONS TO INTERVENE.

### A.   Legal Standard

Federal Rule of Civil Procedure 24 provides for intervention as of right and permissive intervention. The party seeking intervention bears the burden of demonstrating that Rule 24 is satisfied. *See California Dep't of Toxic Substances Control v. Jim Dobbas*, *Inc.*, 54 F.4th 1078, 1086 (9th Cir. 2022). Proposed Intervenors must satisfy four requirements for intervention as of right under Rule 24(a)(2): "(1) the application must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the transaction that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court." *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir. 1999).

Permissive intervention under Rule 24(b) requires: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties. *Id.*

### B.   The Motions to Intervene Are Procedurally Unnecessary and Should be Denied.

Unlike the Melvin Objectors, who did not seek to intervene, the Proposed Intervenors' motions to intervene (the "Motions") are predicated on the erroneous premise that intervention is a procedural

prerequisite to filing their objections to preliminary approval of the Settlement, including the proposed preliminary injunction agreed to by the Parties. *See* ECF No. 117 at 8:3-5, 9:7-8; ECF No. 119 at 13:24-26; ECF No. 120 at 2:23-25.

Federal Rule of Civil Procedure 23(e) specifically provides that "[a]ny class member may object to the [settlement] proposal if it requires court approval[.]" Fed. R. Civ. P. 23(e)(5)(A). Both the Supreme Court and the Ninth Circuit have held that class members need not formally intervene to present their objections to a proposed class action settlement. *See Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002) ("Just as class action procedure allows non-named class members to object to a settlement . . . without first intervening, it should similarly allow them to appeal the [d]istrict [c]ourt's decision to disregard their objections."); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 572 (9th Cir. 2004) (affirming district court's approval of a class action settlement where court denied motions to intervene filed by plaintiffs in parallel state court class actions and allowed them instead to submit written objections to the proposed settlement and participate in the preliminary approval and fairness hearings); *see also* Manual for Complex Litigation, Fourth, § 21.643 ("A class member may appear at the settlement hearing and object ***without seeking intervention***") (emphasis added).

The Ninth Circuit's decision in *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) is further instructive. There, four plaintiffs named in parallel class actions pending in California state court sought to intervene as of right or permissively in a related federal class action for the purpose of objecting to the terms of a proposed class action settlement at the preliminary approval stage. *Id.* at 1221-1222. The Ninth Circuit affirmed the district court's denial of the state court plaintiffs' motion to intervene, holding that the motion was not timely "because the motion was filed after four years of ongoing litigation, on the eve of settlement, and threatened to prejudice settling parties by potentially derailing settlement talks, and ***especially where Objectors' concerns could largely be addressed through the normal objection process***." *Id.* at 1222 (emphasis added). The Ninth Circuit then recognized that, under the "normal objection process" for class action settlements, it was proper for the district court to grant the state court plaintiffs leave to raise objections at the preliminary settlement approval hearing, rather than allowing them to intervene. *Id.* at

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

1222 n. 3; *see also Alexander v. Fedex Ground Package Sys., Inc.*, No. 05-CV-00038-EMC, 2015 WL 5698756, at *6 (N.D. Cal. Sept. 29, 2015) (denying motion to intervene because the putative intervenor had the ability to represent his interests as an objector in the case) (citing *Allen*, 787 F.3d at 1222).

Following *Devlin* and *Allen*, district courts in the Ninth Circuit have "consistently determined that, where there is a right to object to the settlement or there is an opportunity to opt out of the settlement, ***intervention is unnecessary*** to protect a putative class member's interest." *Gallucci v. Boiron, Inc.*, No. 11CV2039 JAH(NLS), 2012 WL 12864924, at *2 (S.D. Cal. Apr. 25, 2012) (emphasis added); *see also Cochran v. Accellion, Inc.*, No. 5:21-CV-01887-EJD, 2021 WL 5161921, at *2 (N.D. Cal. Nov. 5, 2021) (denying motion to intervene as unnecessary, reasoning that "courts in this circuit have consistently held that 'intervention of right is unavailable' where, as in this case, the settlement agreement allows the putative intervenors to protect their interests by opting out of the settlement class or participating in the fairness hearing process"); *Zepeda v. PayPal, Inc.*, No. 10CV02500SBAJCS, 2014 WL 1653246, at *6 (N.D. Cal. Apr. 23, 2014) ("[c]ourts have frequently denied intervention in the class action settlement context, citing concerns about prejudice, as well as putative interveners' ability to protect their interests by less disruptive means, such as opting out of the settlement class or participating in the fairness hearing process") (collecting cases); *id.* at *8 ("Allowing the Putative Interveners to opt out or object to the settlement in the fairness hearings would be far less disruptive than allowing them to intervene, and it would still preserve their interests."); *Marshall v. Monster Energy Co.*, No. CV-14-06311-MWF-PLA, 2016 WL 11758806, at *5 (C.D. Cal. Feb. 29, 2016) ("If the [p]roposed [i]ntervenors [] are dissatisfied with the Settlement Agreement or wish to pursue their claims without the threat of an injunction, they must follow the procedure established under Rule 23. To rule otherwise is to disrupt the settlement-approval process and to arbitrarily favor the [p]roposed [i]ntervenors over class members who are yet to receive notice of the Settlement Agreement.").

In this case, nothing precludes Proposed Intervenors from simply utilizing the "normal objection process" recognized in *Allen* to raise their objections to the Settlement Agreement, including the proposed preliminary injunction, at the preliminary approval hearing. The Proposed Intervenors are members of the

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

putative Settlement Class under the Settlement Agreement, and, as such, Proposed Intervenors are statutorily entitled to object under Federal Rule of Civil Procedure 23(e). *See* Fed. R. Civ. P. 23(e)(5). Proposed Intervenors fail to identify any Supreme Court opinion or published Ninth Circuit decision that *requires* them to intervene in this MDL before this Court can consider the objections they advance. Given the alternative means available to Proposed Intervenors to object to the Settlement, the intervention Motions are unnecessary and should be denied for this reason alone.

### C.    The Motions to Intervene Are Untimely.

"A timely motion is required for the granting of intervention, whether as a matter of right or permissively." *Allen*, 787 F.3d at 1222. In determining timeliness, courts must consider three factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *See Orange Cnty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986). Here, the Motions should be denied because all three factors weigh against Proposed Intervenors.

***Stage of the Proceedings***. Proposed Intervenors argue that the first timeliness factor weighs in their favor because the Motion was filed "fourteen days after the settlement became public . . . and prior to any related hearings or issuance of notice to the putative class." ECF No. 117 at 13:23-26; ECF No. 120 at 6:28-7:2. They contend that the filing of Plaintiffs' Motion for Preliminary Approval of the Settlement Agreement on September 12, 2024 (ECF No. 103) first put them on notice that "Claimants' private arbitration proceedings could potentially be enjoined and they would have to undergo a burdensome opt-out procedure." ECF No. 117[3] at 13:19-21; ECF No. 119 at 2:20-3:9; ECF No. 120 at 6:25-28. Their arguments misconstrue the relevant inquiry for this factor. "The key question under Rule 24(a) is not when the Proposed Intervenor was on notice that his interests ***would*** be affected but when there was notice that those interests ***could*** be affected." *Cody v. SoulCycle, Inc.*, No. CV1506457MWFJEMX, 2017 WL

---

[3]    The Gonczi Intervenors cite *Glass v. UBS Fin. Servs., Inc.*, No. 06-4068, 2007 WL 474936, at *3 (N.D. Cal. Jan. 17, 2007) for the proposition that courts "routinely find intervention in response to a proposed settlement to be timely when intervenors act promptly upon learning a proposed settlement may adversely affect their interests." ECF No. 117 at 13:12-15. In *Glass*, however, the district court denied the motion to intervene, and found that each of the three factors weighed ***against*** a finding of timeliness. *See Glass*, 2007 WL 474936, at *3-6. As such, *Glass* does nothing to advance the Gonczi Intervenors' arguments.

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

8811114, at *3 (C.D. Cal. Sept. 20, 2017) (citing *California Dep't of Toxic Substances*, 309 F.3d at 1120) (emphasis in original).

Here, the record demonstrates that Proposed Intervenors had notice that their interests could be affected by the Settlement Agreement much earlier. The fact that 23andMe was engaged in settlement negotiations with Court-appointed Interim Co-Lead Class Counsel was publicly known as early as June 5, 2024; indeed, it was known to Milberg (counsel for the Gonczi Intervenors) when they attended an early mediation on January 31, 2024. Guyon Decl. ¶ 4. On July 16, 2024, the Court issued an order stating that the Parties accepted a mediator's proposal from the mediator, Randall Wulff, on July 12, 2024, and "reached an agreement in principle which requires working on a term sheet." ECF No. 85. This information was made public again in the Parties' joint case management statement filed on July 23, 2024. ECF No. 86. During the July 30, 2024 Case Management Conference, the Parties then advised the Court that a term sheet had been executed and they were working on a formal Settlement Agreement, which was memorialized in the Court's order issued on July 30 and the Parties' joint case management statement filed on August 6, 2024. ECF No. 89, 90. Following the August 13, 2024 Case Management Conference, the Court then issued an order stating that Plaintiffs were on track to return a draft settlement proposal to 23andMe by August 14, 2024, and that the Parties intended to submit a motion for preliminary approval by August 29, 2024. ECF No. 92.

On September 5, 2024, the Parties publicly filed a Joint Case Management Statement stating that the Parties "have executed a Settlement Agreement," which includes "a release on behalf of all residents of the United States on August 11, 2023 whose Personal Information was compromised in the Security Incident disclosed by 23andMe on October 6, 2023 ("Security Incident") in exchange for 23andMe's payment of $30,000,000 towards a Qualified Settlement Fund and its certification of certain business practice commitments related to the security of users' Personal Information." ECF No. 101. The Parties specifically stated therein that the Settlement Agreement:

> provides specialized and comprehensive monitoring available to all Settlement Class Members, monetary relief for qualified Settlement Class Members, and ***given the***

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

***Defendant's financial condition a provision for an injunction enjoining Settlement Class Members from pursuing claims arising from the Security Incident (including in arbitration or state court) pending their decision as to whether to request exclusion, and the submission of a valid request to be excluded from the Settlement***, among a number of standard terms which will be reflected in the forthcoming motion for preliminary approval.

*Id.* at 2:3-13 (emphasis added). Furthermore, Proposed Intervenors admit in their Motions that their counsel has been aware of this MDL since its formation. *See* ECF No. 117 at 9:10-16; ECF No. 120 at 6:25-26. The Gonczi Intervenors further admit that Milberg "may have received emails from Class Counsel about the proposed settlement, including the terms now complained of . . . ." ECF No. 117 at 9:20-21.

In *Allen*, the Ninth Circuit affirmed the district court's decision to deny a motion to intervene as untimely where, as here, the state court plaintiffs knew about the federal action for years, discussed the status of the settlement talks with counsel in the federal action, and waited until the "eve of settlement" to file a motion to intervene. *See Allen*, 787 F.3d at 1222. Following the Ninth Circuit's reasoning in *Allen*, the Court should find that the first timeliness factor weighs heavily against Proposed Intervenors. As discussed above, the record establishes that Proposed Intervenors were aware of this MDL from the outset and could have sought to intervene. They failed to do so. The record also establishes that for many months Proposed Intervenors had direct knowledge of the Parties' settlement negotiations and the mediation proceedings. Despite having notice that their interests could be affected by a Settlement Agreement, Proposed Intervenors did not seek intervention.

Instead, as in *Allen*, Proposed Intervenors waited until weeks after the Motion for Preliminary Approval was submitted to the Court to file their Motions. Under these facts, the Court should find that this factor weighs heavily against Proposed Intervenors.[4]

---

[4]    *See Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2009 WL 3458198, at *3 (N.D. Cal. Oct. 23, 2009) (denying motion to intervene as untimely where the record established that the proposed intervenors had been aware of the existence of the action in September 2008 and the existence of a pending settlement in early May 2009, but did not file their motions until two weeks after the motion for preliminary approval of the settlement was filed on September 18, 2009); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA,

17                                    Case No. 3:24-md-03098-EMC

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

*Prejudice to Other Parties*. Proposed Intervenors argue that the second timeliness factor weighs in favor of timeliness by relying on the purported prejudice that Proposed Intervenors and Claimants will suffer if the Settlement Agreement is approved without intervention. *See generally* ECF No. 117 at 14:19-15:6. Their position is fundamentally flawed. This factor is concerned with "the prejudice to *other parties*," *Orange Cnty.*, 799 F.2d at 537, and *not* Proposed Intervenors or Claimants. In any event, the record before the Court clearly establishes that 23andMe and the members of the Settlement Class will suffer prejudice if Proposed Intervenors *are* allowed to intervene at this stage of the MDL.

This MDL involves class actions brought on behalf of approximately 6,400,000 individuals. The Settlement Agreement is the product of three mediations and extensive arms-length negotiation, promoted by the efforts of this Court and the mediator. The parallel arbitrations were filed by Proposed Intervenors and Claimants in response to learning that the MDL was on the verge of being, or had been, settled. Intervention could delay approval and implementation of the Settlement. Moreover, proceeding with the arbitration claims now would undermine the Settlement Agreement by threatening 23andMe with initial filing fees that may nearly eclipse the Qualified Settlement Fund. In light of 23andMe's financial condition, it is in the interests of the Settlement Class and 23andMe to enjoin those proceedings unless and until Settlement Class Members have received notice of the Settlement and individually decided whether to exercise their right to opt out.

In their Motions, Proposed Intervenors essentially assert that the interests of thousands of claimants and their counsel should take precedence over the interests of the Settlement Class of 6.4 million individuals. *See Raquedan v. Centerplate of Delaware Inc.*, 376 F. Supp. 3d 1038, 1042 (N.D. Cal. 2019) (finding motion to intervene was untimely because intervention could derail the settlement where the parties had reached a proposed settlement and filed a motion for preliminary approval); *Zepeda*, 2014 WL 1653246, at *84 (finding that prejudice would occur where intervention "after extensive mediated settlement negotiations and when an amended motion for preliminary approval is to be filed soon - would

---

2013 WL 450365 (N.D. Cal. Feb. 5, 2013) (finding the stage of proceedings factor weighed heavily against intervention where the motion to intervene was filed at a late stage in the proceedings after the parties reached an agreement to settle).

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

delay the potential resolution of the case[]"); *see also Allen*, 787 F.3d at 1222 (intervention at the preliminary approval stage "threatened to prejudice settling parties by potentially derailing settlement talks").

Furthermore, intervention will result in additional delay in obtaining the Court's review of the Settlement Agreement and will require 23andMe to continue expending financial resources on litigation in the MDL and parallel state court and arbitration proceedings. *See Lane*, 2009 WL 3458198, at *3 (finding the parties have shown that the delay in bringing the motion has caused actual and substantial prejudice to them, including the time and money expended in continuing to negotiate and finalize the settlement agreement). For these reasons, the Court should find that this factor weighs heavily against a finding of timeliness.

***Reason and Length of Delay.*** Where, as here, the first two timeliness factors weigh against intervention, Proposed Intervenors "must convincingly explain their delay in filing their motions to intervene." *California Dep't of Toxic Substances*, 309 F.3d at 1119; *see also United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996) (affirming district court's finding that a motion to intervene was untimely where the proposed intervenor failed to present satisfactory reasons for its substantial delay in filing the motion to intervene). Here, Proposed Intervenors argue that this factor weighs in their favor because the Motions were filed two weeks after the "settlement terms were made public" and contend that they "could not have taken any action until the terms of the proposed settlement were publicly filed." ECF No. 117 at 15:20-21; *see also* ECF No. 120 at 6:25-7:3. This argument lacks merit.

In the Ninth Circuit, a party seeking intervention is required to "act as soon as he knows or has reason to know his interests might be adversely affected by the outcome of the litigation." *California Dep't of Toxic Substances*, 309 F.3d at 1120. Certainty about the exact terms of a settlement agreement is not determinative. *See id.* (holding intervention was untimely because applicants had notice of settlement negotiations and notice that they might be responsible for clean-up costs over a year before seeking to intervene; noting that while the intervenors "were not certain that the consent decree would be adverse to their interests, they had reason to know that negotiations might produce a settlement decree to their

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

detriment"). Rather, this factor looks to whether a party seeking intervention has made inquiries about the nature of settlement negotiations or has otherwise attempted to participate in the litigation. *See United States v. State of Or.*, 913 F.2d 576, 589 (9th Cir. 1990); *Orange Cnty.*, 799 F.2d at 538 (9th Cir. 1986) (requiring applicant to intervene before settlement when the applicant was aware that the parties were attempting to reach a negotiated settlement and might look to the applicant for help towards the settlement, even though the applicant did not know the terms of the settlement).

As shown above, the record establishes that Proposed Intervenors knew or had reason to know that the Settlement Agreement might adversely affect their interests months ago. Indeed, certain of the Proposed Intervenors' counsel made several inquires about the settlement negotiations, served as counsel of record in the MDL, and were present during mediation proceedings. In light of these facts, the length and reason for Proposed Intervenors' delay weighs heavily against intervention.

### D.  Proposed Intervenors Cannot Satisfy the Rule 24(a) Requirements for Intervention as a Matter of Right.

Even if the Motions were procedurally necessary and timely (which they are not), the Motions should be denied because Proposed Intervenors cannot satisfy the remaining requirements to intervene in the MDL as a matter of right under Rule 24(a). *See Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) ("Failure to satisfy any one of the requirements is fatal" on a motion to intervene.).

In an apparent attempt to distract the Court from the legal deficiencies in their Motions, Proposed Intervenors repeatedly resort to the general proposition that courts ordinarily should interpret the Rule 24(a) requirements broadly in favor of intervention. *See, e.g.*, ECF No. 117 at 12:27-13:2 (citing *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)); *id.* at 16:25 (citing *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 397 (9th Cir. 2002)); ECF No. 119 at 14:13-15 (citing *Prete*, 438 F.3d at 954). This catch-all argument is uncompelling. Although ordinarily construed liberally, the Ninth Circuit has more recently made clear that the law "do[es] not require hasty intervention." *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 823 (9th Cir. 2021). For all the reasons below, Proposed Intervenors are not entitled to intervene under Rule 24(a) as a matter of right.

**E.     Proposed Intervenors Have No Significant Protectable Interest to Intervene in the MDL as a Matter of Right.**

Proposed Intervenors must identify a "direct, non-contingent, substantial and legally protectable" interest for intervention as a matter of right. *S. California Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002). This requirement cannot be satisfied by reciting hypothetical suggestions about what "may" happen in the future. *Id.* (holding "an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right") (citation omitted); *see also Donnelly v. Glickman*, 159 F.3d 405, 411 (9th Cir. 1998) ("[w]hen an applicant's purported interest is so tenuous, intervention is inappropriate"); *In re Cathode Ray Tube Antitrust Litig.*, No. 07-CV-05944-JST, 2020 WL 5224241, at *4 (N.D. Cal. Aug. 27, 2020) (finding potential intervenors did not meet their burden of demonstrating an interest in the settlement based on arguments about what could potentially happen if the settlement is approved in the MDL class action).

Proposed Intervenors rely on their contractual right to arbitration under 23andMe's Terms of Service to establish a "significant protectable interest" at this stage in the MDL proceedings. *See* ECF No. 117 at 16:11-14; ECF No. 119 at 14:16-20; ECF No. 120 at 5:24-25. In their Motions, Proposed Intervenors argue that the Settlement Agreement will "extinguish their ability to pursue their pending individual arbitrations before JAMS or seek the specific relief discussed [] through arbitration." ECF No. 117 at 16:15-17; *see also* ECF No. 119 at 14:16-20; ECF No. 120 at 5:23-28. But the proposed injunctive relief they seek to oppose would not extinguish their right to arbitrate; at most, it would delay it for a very limited period of time. And given that only 100 claimants have even paid their arbitration filing fees, and the Proposed Intervenors' and other potential arbitration claimants' delay in pursuing arbitration, this does not rise to the level of a "significant protectable interest."

The authority cited in the Motions to support Proposed Intervenors' position that the "significantly protectable interest" requirement is satisfied are readily distinguishable. For example, the Gonczi Proposed Intervenors argue that their interest in their contractual right to arbitration is analogous to the protectable interest in *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 862 (9th Cir. 2016). ECF No. 117 at 17:1-

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

10. This is overreaching at best. Unlike Proposed Intervenors and Claimants, the sub-class in *Smith* was comprised of "moderately to severely disabled children" who moved to intervene in a class action brought on behalf of all disabled students in the Los Angeles Unified School District ("LAUSD") to challenge the legality of a policy approved by the court during a re-negotiation of a consent decree that eliminated special education centers for the sub-class of disabled children. *See Smith*, 830 F.3d at 846. And, unlike here, LAUSD rightfully did not dispute that the sub-class of disabled children in *Smith* had a "protectable interest in receiving a free appropriate public education" in conformity with their individualized education programs. *Id.* at 862. The disabled children's protectable interest in their education is a far cry from a delay in Proposed Intervenors' opportunity to exercise a contractual right to arbitrate their claims for monetary relief from 23andMe.

In sum, Proposed Intervenors have failed to satisfy the "significant protectable interest" requirement under Rule 24(a) and the Motions should be denied.

## F.   Even if Proposed Intervenors Had a Legally Valid Protectable Interest, Intervention Is Unnecessary to Protect Their Interest from Being Impaired or Impeded.[5]

Proposed Intervenors argue that the Settlement Agreement affects their interests because it "threatens to extinguish their private contractual rights, including the ability to pursue their pending arbitrations and the different monetary and non-monetary relief sought through arbitration." ECF No. 117 at 17:24. That the Settlement Agreement would "extinguish" their contractual arbitration rights is an obvious exaggeration. Paragraph 73(h) of the Settlement Agreement requests that the Court issue a "***preliminary*** injunction of all Settlement Class Members and their representatives from filing, commencing, prosecuting, maintaining, intervening in, conducting, continuing, or participating in any other lawsuit or administrative, regulatory, arbitration or other proceeding ***based on the Released Claims***, ***unless and until they personally submit a timely request for individual exclusion pursuant to the***

---

[5]   *See Cochran v. Accellion, Inc.*, No. 5:21-CV-01887-EJD, 2021 WL 5161921, at *2 (N.D. Cal. Nov. 5, 2021) (denying motion to intervene and finding that, even if the proposed intervenors possessed a protectable interest in the final settlement, it was impossible for proposed intervenors to maintain that intervention was necessary to protect their ability to object to the settlement where the court allowed them to object at the preliminary approval hearing).

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

*Settlement Agreement after receiving Notice*." ECF No. 103-2 at ¶ 73(h) (emphasis added). By its terms, the Settlement Agreement seeks to temporarily—not permanently—enjoin Proposed Intervenors and Claimants from commencing or actively litigating their claims in the arbitration proceedings until each of them submit a timely request to opt-out of the Settlement Agreement after receiving Notice. Thereafter, assuming they submit a proper opt-out request, Proposed Intervenors and Claimants may pursue their claims against 23andMe pursuant to their contractual arbitration rights.

In any event, as shown above, Proposed Intervenors have well-established procedures to protect their interests as district courts in the Ninth Circuit have held, time and again, that intervention should be denied where, as here, unnamed class members have the ability to object to or opt out of a proposed class action settlement. *See Raquedan*, 376 F. Supp. 3d at 1041 (denying motion to intervene as "plainly unmeritorious" where the purposed intervenor's interests in her claims in a parallel state court action were not impaired as the intervenor was a class member and could raise her objections to the settlement under Rule 23); *Alaniz v. Cal. Processors, Inc.*, 73 F.R.D. 269, 289 (N.D. Cal. 1976) (holding that unnamed class members' ability to opt out of the settlement "precludes the Intervenors from satisfying the impairment-of-interest test"); *see also Brown v. Accellion, Inc.*, No. 5:21-CV-01155-EJD, 2023 WL 1928210, at *2–3 (N.D. Cal. Feb. 10, 2023) (finding that courts have consistently held that the ability to file objections and opt out of a class settlement, as dictated by Rule 23, are sufficient to protect the interests of class members in a typical case seeking damages) (collecting cases); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liability Litig.*, 2016 WL 4376623, at *4 (N.D. Cal. Aug. 17, 2016) (denying putative intervenor's motion because the putative intervenor could "opt of the Settlement and litigate his claims independently, or he may instead object to it"), *aff'd*, 894 F.3d 1030 (9th Cir. 2018); *Zepeda*, 2014 WL 1653246, at *4 ("Allowing the Putative Interveners to opt out or object to the settlement in the fairness hearings would be far less disruptive than allowing them to intervene, and it would still preserve their interests."); *Hofstetter v. Chase Home Fin., LLC*, 2011 WL 5415073, at 2–3 (N.D. Cal. Nov. 8, 2011) (holding that the opportunity to opt out of a settlement adequately safeguarded a putative intervenor's interests); *Lane*, 2009 WL 3458198, at *5 ("Proposed Intervenors, however, have failed to establish that

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

their rights to raise these issues are not adequately protected through the process for submitting objections that will follow upon preliminary approval of the settlement agreement").

In light of this overwhelming authority, the Motions to intervene as a matter of right should be denied because Proposed Intervenors cannot satisfy the third requirement for intervention under Rule 24(a).

### G.   Proposed Intervenors Are Adequately Represented.

Citing *People of State of California v. Tahoe Reg'l Plan. Agency*, 792 F.2d 775 (9th Cir. 1986), Proposed Intervenors maintain that their burden to show that representation is inadequate is "minimal and may be satisfied by a showing that representation of their interests by parties presently before the court 'may be' inadequate." ECF No. 117 at 20:1-4. This is not a correct statement of the law in the Ninth Circuit.

In *Callahan v. Brookdale Senior Living Communities, Inc.*, the Ninth Circuit explained that a "***compelling showing***" is required to demonstrate inadequate representation where the proposed intervenor's interest is "identical to that of one of the present parties." 42 F.4th 1013, 1020–21 (9th Cir. 2022) (emphasis added). The Ninth Circuit then affirmed the district court's decision to deny a motion to intervene filed by a plaintiff in a parallel state court employment class action and held that the proposed intervenor's mere complaints about the proposed settlement agreement were insufficient to satisfy her burden of establishing that the class counsel in the federal action did not adequately represent her interests when negotiating and entering into the settlement. *Id.* at 1021 (stating that argument that proposed intervenor would not have agreed to a settlement "ultimately amounts to a disagreement over litigation strategy," which "is insufficient" to show inadequacy of representation); *see also Hawaii-Pac. Venture Cap. Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977) (holding appellants' dissatisfactions with the conduct of the class action proceedings were insufficient to bring themselves within the criteria for an intervention as a matter of right); *Moore*, 2013 WL 450365, at *15 (concluding that a putative intervenor's speculative, unsubstantiated belief, without more, was insufficient to satisfy the burden of demonstrating that the intervenor's interests may not be adequately represented by the existing parties).

As in *Callahan*, Proposed Intervenors' interests are identical to the putative Settlement Class Members in this MDL insofar as both seek monetary and other relief from 23andMe arising from the

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

Security Incident. Proposed Intervenors, therefore, are required to make a "compelling showing" to satisfy their burden of establishing the "inadequate representation" requirement under Rule 24(a). As the Ninth Circuit made clear, Proposed Intervenors' complaints about the terms of the Settlement Agreement are insufficient to meet this burden. Accordingly, the Motions should be denied.

### H. Permissive Intervention Under Rule 24(b) Should Be Denied.

Proposed Intervenors' requests for permissive intervention under Rule 24(b) should be denied. As discussed at length *supra*, the Motions are procedurally unnecessary and fail to satisfy the threshold timeliness requirement for intervention. Points II.B – II.C, *supra*. This alone is enough to deny permissive intervention. But even if the Motions were procedurally necessary and timely (which they are not), the record demonstrates that Proposed Intervenors were long aware of the settlement negotiations in the MDL. Instead of intervening then, Proposed Intervenors have engaged in a blatant attempt to undermine the Settlement and now seek to deplete 23andMe's financial resources to the detriment of the 6,400,000 putative Settlement Class Members in the MDL who stand to benefit from the Settlement Agreement.

The Court should deny Proposed Intervenors' request for permissive intervention.

## IV.   THE COURT SHOULD GRANT THE SETTLING PARTIES' REQUEST FOR A PRELIMINARY INJUNCTION.

### A. The Agreed-Upon Injunction Is Necessary and Appropriate in Aid of the Court's Jurisdiction Under the All Writs Act.

The All Writs Act permits this Court to issue "all writs necessary or appropriate in aid of [its] jurisdiction [ ] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This power encompasses the authority to enjoin proceedings that "interfere, derogate, or conflict with federal judgments, orders, or settlements." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) (internal quotation marks and citation omitted). Pursuant to the All Writs Act, the Ninth Circuit has held that a federal court is empowered to protect its jurisdiction by enjoining class members from initiating or prosecuting other actions that would impede the court's ability to administer a class settlement. *Sandpiper Vill. Condo. Ass'n, Inc. v. La.-Pac. Corp.*, 428 F.3d 831, 845 (9th Cir. 2005) (holding that courts have

"recognized that a temporary stay pending settlement of the nationwide class action was appropriate under the All Writs Act and the Anti-Injunction Act because concurrent state proceedings at such a sensitive stage in the federal proceedings would have threatened the jurisdiction of the district court"). The Ninth Circuit has determined that a federal court's injunctive powers extend to enjoining the filing and further prosecution of arbitration proceedings, and the district courts have frequently done so. *See Hartley v. Stamford Towers Ltd. P'ship*, 36 F.3d 1102 (9th Cir. 1994) (unpublished). Consistent with Ninth Circuit authority, courts commonly order injunctive relief temporarily precluding members of a settlement class from commencing or pursuing separate lawsuits or arbitration claims prior to formally opting out of the class settlement after receiving notice. *See, e.g.*, *Roberts v. AT&T Mobility LLC*, No. 3:15-CV-03418-EMC, 2021 WL 9564450, at *6 (N.D. Cal. Mar. 31, 2021) (Chen, J.) (enjoining plaintiffs and class members "from filing, commencing, prosecuting, or enforcing any action against the Released Parties insofar as such action asserts Released Claims, directly or indirectly, in any judicial, administrative, arbitral, or other forum" because the "injunction is necessary to protect and effectuate the Settlement Agreement and this Preliminary Approval Order, and this Court's authority to effectuate the Settlement, and is ordered in aid of this Court's jurisdiction."); *Keirsey v. eBay, Inc*., No. 12-CV-01200-JST, 2013 WL 5755047, at *7 (N.D. Cal. Oct. 23, 2013) (enjoining class members "from filing, commencing, prosecuting, maintaining, intervening in, participating in (as members of a class action or otherwise), any claim, lawsuit, arbitration, administrative, regulatory or other proceeding arising out of the Released Claims against any of the Released Persons"); *Jacobs v. CSAA Inter-Ins*., No. C 07-00362-MHP, 2009 WL 1201996, at *2-3 (N.D. Cal. Apr. 30, 2009) (invoking the "in aid of jurisdiction" exception to "enjoin named and absent members who have been given the opportunity to opt out of a class from participating in separate class actions").

The Proposed Intervenors' mass arbitration proceedings, like the parallel state court actions, assert the same claims on behalf of Settlement Class Members, threaten this Court's jurisdiction, and a temporary stay is warranted to effectuate this nationwide class action settlement. Following preliminary approval of the Settlement, the notice plan and notice materials will be disseminated to the Class and will discuss the

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

terms of the proposed Settlement and their rights as Settlement Class Members. Settlement Class Members should evaluate their options under the Settlement individually at that time.

The need for an injunction at the preliminary approval stage is particularly important in MDL class action proceedings such as this one:

> The single situation that raises the strongest argument in favor of an antisuit injunction at the preliminary approval stage concerns actions in federal court—particularly those consolidated by the Judicial Panel on Multidistrict Litigation into a single MDL proceeding— that are robustly litigated and aim to settle a large, complex matter without significant imposition by strategically filed parallel state cases. The Anti-Injunction Act prohibits federal courts from enjoining ongoing state proceedings, but one of the Act's three exceptions permits injunctions "in aid of [the federal court's] jurisdiction." The All-Writs Act simultaneously authorizes federal courts to issue writs "necessary or appropriate in aid of" their jurisdiction.

4 Newberg and Rubenstein on Class Actions § 13:19 (6th ed.)

An injunction is "in aid of [the Court's] jurisdiction" when courts address *in rem* suits "where the federal court must, at least in effect, assume control of the *res* to adjudicate the dispute." 3 Newberg and Rubenstein on Class Actions § 10:46 (6th ed.) Courts have likened complex class action litigation, such as this case, to *in rem* suits, because a class member's interest in a class action is analogous to a property interest owned by each class member. *See In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation)*, 770 F.2d 328, 337 (2d Cir. 1985); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807–08 (1985) ("[A] chose in action is a constitutionally recognized property interest possessed by each of the plaintiffs.").

*Baldwin* involved a multidistrict class action that consolidated 26 separate class actions. 770 F.2d at 336. Defendants reached settlement agreements with plaintiffs in 18 of the actions, each of which had been provisionally approved by the court and awaited only final approval while the parties to the remaining eight suits continued to participate in settlement negotiations. *Id.* The trial court entered a preliminary

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

injunction. On appeal, the Second Circuit affirmed the finding of the lower court, holding that "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control." *Id.* at 337.

Like the tentative settlements in *Baldwin,* the Settlement here effectively constitutes a *res* over which the Court should exercise exclusive authority and oversight. Importantly, the similarities to an *in rem* action are particularly evident here where, as here, a company's financial condition makes it possible that the remedy for the entire class could be threatened by ongoing parallel litigation prior to final approval. *See, e.g.*, J. Selsavage In Camera Decl.; ECF No. 103-1 pp. 11-12, 34-36 (documenting 23andMe's financial condition). Like an *in rem* action, where the recovery is inherently tied to a single piece of property, 23andMe's financial condition requires that the Court enter an injunction to preserve 23andMe's ability to fully fund the Settlement.

Given the similarity to an *in rem* action, entering the preliminary injunction will aid the Court's jurisdiction and prevent a few thousand arbitration claimants—and their counsel—from cutting in front of the parties to the litigation by pursuing individual actions that may proceed more quickly than the action that is before the Court and require 23andMe to pay initial and ongoing arbitration fees, siphoning funds otherwise available to (and already bargained for by) the putative Class of 6.4 million U.S. residents. In short, it will protect the integrity of the agreement that the Settling Parties have bargained for. *See In re Reserve Fund Sec. & Derivative Litig.*, 673 F. Supp. 2d 182, 204 (S.D.N.Y. 2009) (enjoining individual class members' parallel litigation under All Writs Act because "limited res [] is likely to be dissipated absent an injunction . . . if suits brought in state court are allowed to proceed, depleting the res and interfering with the equitable principles underlying the pro rata distribution."); *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1233 (E.D. Cal. 2015) ("majority of federal appellate courts to address the issue have held explicitly" that a federal district court "may enjoin arbitration if necessary to enforce its orders").

If, however, the arbitration claimants are, in effect, competing against the litigation class for a finite pool of resources, their representatives are incentivized to push forward with the arbitrations while the

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

remaining Settling Parties, who have negotiated the Settlement in good faith, *and* the Court implement the Settlement Agreement.

Even under ordinary circumstances, this variety of gamesmanship may frustrate the settlement process and artificially inflate the cost of litigation and warrant injunctive relief. Here, the threat to the settlement is far greater, as the financial issues facing the Company are well documented and public. *See, generally*, J. Selsavage In Camera Decl. As a result, the abuse of the mass arbitration process presents a concrete and immediate risk of disposing of enough of 23andMe's available assets that would potentially jeopardize its ability to fund the Settlement with the Class.

Proposed Intervenors cite no Ninth Circuit authority to support the argument that arbitration claimants would be harmed by entry of a temporary injunction. Their reliance on the Eighth Circuit's decision in *Piper* to argue that the temporary injunction is unwarranted is misguided. ECF No. 119 at pp. 19-20; ECF No. 120 at pp. 9, 15-16 (citing *In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 300 (8th Cir. 1995)). The district court in *Piper* only "gave one reason for issuing its injunction," which was the fear that "an arbitrator's 'ruling on an issue such as whether or not Piper made fraudulent representations could jeopardize' the 'carefully negotiated' class action settlement." *Id.* at 302. The Eighth Circuit reversed the district court holding that the amorphous threat to the efficient class action management was an insufficient basis to enjoin the arbitration. *Id.* at 302–03. Unlike the Settlement here, the defendant's financial condition was not an issue; there was no concern that limited funds would be available to the class. Importantly, *Piper* involved securities arbitrations under the NASD Code which were already proceeding prior to the settlement, unlikely the arbitrations here, all of which idled until a Settlement was reached. Further, the unique concerns presented in securities cases underscores precisely why *Piper* is inapplicable here, with the Eight Circuit recognizing the distinctive role of arbitration as the "preferred remedy in the securities industry." *Id.* at 301.

Here, the need for injunctive relief goes far beyond the sole justification provided in *Piper*. The arbitrations, which have barely begun, should be enjoined permit the settlement claims process to go forward and preserve the limited and depleting funds of the Company so that the full benefit of the

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

Settlement is available to the approximately 6.4 million U.S. residents in the Settlement Class. Other courts have distinguished *Piper* on the same basis and enjoined arbitrations under the All Writs Act "to preserve and ensure the fair distribution of the limited amount of capital available for settlement, which would be depleted regardless of the conclusions of individual arbitrators because of the cost of defending those arbitrations." *See, e.g.*, *Stott v. Cap. Fin. Servs., Inc*., 277 F.R.D. 316, 340 (N.D. Tex. 2011) (recognizing that "even if [defendant] emerged victorious from the 'arbitrations going forward, the 'limited fund' would be swiftly depleted by the vast attorneys' fees needed for its defenses in numerous arbitrations"); *see also, e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1093 (N.D. Ill. 2021) (recognizing the court held in *Piper* that it "was a violation of the Federal Arbitration Act to *enjoin* a class member, who had sought to opt out, from arbitrating its claim before the settlement was finally approved. . . . ***No such injunction is requested here***."); *In re Centurylink Sales Pracs. & Sec. Litig.,* No. CV 17-2832, 2020 WL 3512807, at *7 (D. Minn. June 29, 2020) ("No one in the *Piper Funds* case questioned whether Park Nicollet's opt-out request had an adequate and knowing basis. Here, the filing of thousands of mass opt outs by Keller, none of which include the required signatures and identifying information, raise substantial fairness concerns that were not at issue in *Piper Funds*").

Similarly, the Eleventh Circuit's decision in *Klay v. United Healthgroup, Inc*. does not apply "with equal force" here, as certain Proposed Intervenors suggest. ECF No. 120-2 at pp. 15-16 (citing *Klay v. United Healthgroup, Inc*., 376 F.3d 1092, 1113 (11th Cir. 2004)). *Klay* did not involve a settlement. And the defendant itself had previously moved to compel arbitration. Indeed, in *Klay*, the court recognized that a district court may issue an injunction under the All Writs Act to prevent prosecution of parallel litigation that "had already been settled under the terms of a federal settlement agreement." 376 F.3d at 1104. However, the court held that a district court should not enter an injunction barring arbitration proceedings after it had already ruled the claims were nonarbitrable. *Id*. at 1113. Thus, the Eleventh Circuit held it "is precisely because arbitrating nonarbitrable claims is such a pointless endeavor that it does not threaten or undermine either the district court's existing order or its jurisdiction over the pending cases," which would "be nothing more than a moot court session." *Id*.

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

Indeed, most of the other cases relied on by Proposed Intervenors also did not even involve a settlement. *Zepeda v. U.S. I.N.S.*, 753 F.2d 719 (9th Cir. 1983) (enjoining Immigration and Naturalization Service enforcement practices violative of the plaintiffs' constitutional Fourth Amendment rights); *In re Cintas Corp. Overtime Pay Arbitration Litigation*, No. 06–1781 SBA., 2009 WL 1766595, at *2 (N.D. Cal. June 22, 2009) (holding court lacks jurisdiction during "pendency of [Ninth Circuit] interlocutory appeal" to grant injunction against arbitrations in forums different than those where defendant filed motions to compel arbitration); *Camping Const. Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1341 (9th Cir. 1990) (holding preliminary injunction staying arbitration was prohibited by Norris-LaGuardia Act where case "involv[es] or grow[s] out of a labor dispute"); *ALF Todd Creek Vill. N. LP v. Todd Creek Vill. Metro. Dist.*, No. 2013CV30665, 2014 Colo. Dist. LEXIS 2344, at **4-5 (Dist. Ct. Colo., Weld Cty. Jan. 6, 2014).

The other cases cited by the Proposed Intervenors also fail to support their arguments against injunctive relief. *See* ECF No. 119 at pp. 14, 17, 18 (citing *Gomes v. Eventbrite, Inc*., No. 5:19-CV-02019-EJD, 2020 WL 6381343, at *2 (N.D. Cal. Oct. 30, 2020) (granting state court plaintiffs' motion to intervene "for the limited purpose of requesting a continuance of the hearing on the Motion until after the California State Court rules on [] demurrer" so class members in state action had chance to decide whether they wanted to opt out of settlement); *Arena v. Intuit, Inc*., No. 19-cv-02546-CRB, 2021 WL 834253, at *10 (N.D. Cal. Mar. 5, 2021) (denying motion for preliminary approval, finding opt-out process is unduly burdensome because it required mailing a hard-copy letter with a "wet-ink" signature but did not permit electronic submission).[6]

The mass arbitrations threatened by counsel for the Proposed Intervenors could force 23andMe to pay millions of dollars in filing fees long before arbitrators reach the merits of the action. The specter of these fees is typically used to strongarm a defendant into entering into a separate settlement agreement with

---

[6]     In *Arena*, defendant Intuit had previously sought to compel arbitration for the entire class, and successfully appealed the denial of its motion to compel arbitration to the Ninth Circuit. *See Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020). It was only after that appeal that Intuit sought to stay the arbitrations in connection with the proposed settlement. No such motion to compel arbitration has been filed here.

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

the arbitration claimants and their counsel. Entering the injunction, however, poses no threat to Class Members who may ultimately choose to pursue their claims in arbitration after they have had an opportunity to consider whether they would like to recover under the Settlement Agreement. They can simply opt out of the settlement after they have an opportunity to review the Settlement benefits and weigh them against the potential costs and benefits of arbitration.

The Court should reject this gamesmanship and enter an order enjoining class members from initiating or prosecuting claims pending final approval of the Settlement Agreement, unless and until a Class Member receives Notice and chooses to opt out.

### B. Entering the Preliminary Injunction Will Not "Extinguish" the Proposed Intervenors' Rights to Pursue Arbitration.

Proposed Intervenors repeatedly argue that entering the injunction will "extinguish" the rights of arbitration claimants to pursue their claims. That is simply not so. As set forth above, the request for injunctive relief is not for a permanent injunction that would preclude putative class members from seeking a different outcome in arbitration. Instead, the Settling Parties have only asked the Court to temporarily enjoin Class Members from pursuing arbitration or other litigation until they have opted out after receiving Notice of the Settlement. Thereafter, putative class members may pursue their individual claims in arbitration. Rather than being precluded from arbitrating the claims, they are delayed by, at most, a few months. Given the history of these arbitration claims, including that after many months of threats, only 100 arbitration claimants have paid their portion of the filing fees and that most of the arbitration claims were filed only after the Settling Parties announced they had reached a Settlement, arbitration claimants can hardly complain that this potential delay is a burden. And even to the extent it is, any potential burden pales in comparison to the immediate threat to recovery posed by allowing the arbitration claimants and their counsel to hijack the settlement process, which is the precise type of threat that preliminary injunctions in aid of this Court's jurisdiction are intended to thwart.

Some of the Proposed Intervenors have attempted to reframe the purpose of the preliminary injunction by arguing that 23andMe is itself engaging in gamesmanship by forcing the class members to

engage in arbitration through its terms of service, only to later refuse to participate. ECF No. 119 at p. 4:20 (arguing 23andMe had a "requirement on its customers that they must arbitrate disputes" and is now seeking to extinguish their right to do so.) That is simply not the case here. Resolution of this MDL class action litigation on behalf of 6.4 million class members has taken precedence. 23andMe has always manifested its intent to participate in this class action litigation and any claims to the contrary are belied by the facts. Any individual Settlement Class Members who choose to pursue arbitration claims may opt out of the Settlement after receiving Notice of the terms and freely pursue arbitration if they choose to do so.

### C.   The Class Action Settlement and Preliminary Injunction Do Not Violate the FAA for the Additional Reason That the Settlement Agreement Supersedes All Agreements Between the Parties.

Proposed Intervenors argue that the Class Action Settlement and preliminary injunction violates the Federal Arbitration Act ("FAA") as to all Class Members because the FAA's "enforcement of arbitration agreements does not provide for a stay of proceedings in deference to class members." *See* ECF No. 199 at 12:12-13. This framing of the issue overlooks established principles of contract interpretation, which provide that an agreement—including an agreement to arbitrate—can be amended or superseded by a subsequent agreement. *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140 (2d Cir. 2011) (explaining that while the FAA did not "explicitly confer on the judiciary the authority to . . . enjoin a private arbitration," the injunction was proper because the company, by entering into the settlement agreement, had effectively withdrawn its consent to arbitrate the released claims and the district court had retained "exclusive" jurisdiction to implement the terms of that settlement agreement.)

The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). While there is undoubtedly a liberal policy favoring arbitration, there must still be a valid arbitration agreement in place to compel a party to arbitrate and deprive the Court of jurisdiction over a controversy. *Stolt-Nielsen S.A. v. AnimalFeeds Intl Corp.*, 559 U.S. 662, 682 (2010) (holding an arbitrator

derives their powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.). The Act "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). A written agreement to arbitrate is valid, irrevocable, and enforceable, except "upon such grounds as exist at law or in equity for the revocation of any contract.'" *Moses*, 460 U.S. at 24 (quoting 9 U.S.C. § 2). Thus, arbitration is "a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

Here, there is no agreement compelling the Settlement Class Members to arbitrate the claims because the Settlement Agreement superseded the arbitration provision in the Terms of Service as it relates to the Released Claims. *Grey v. American Management Services*, 204 Cal. App. 4th 803, 809 (2012). Like an agreement to arbitrate, a "settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." *Ashker v. Newsom*, 968 F.3d 939, 944 (9th Cir. 2020)[7] (citing *Monster Energy Co. v. Schechter*, 7 Cal. 5th 781 (2019)). The Settling Class Members, through their representatives, entered into the Settlement Agreement, superseding earlier agreements made by the Settling Parties, including the arbitration provisions in the Terms of Service. *See, e.g.*, *AlterG, Inc. v. Boost Treadmills LLC*, No. 18-cv-07568-EMC, 2019 WL 4221599, at *8-9 (N.D. Cal. Sept. 5, 2019) (holding that an integration clause extinguishes any previously existing contract.)

At present, each of the Settlement Class Members is bound by the terms of the Settlement Agreement (pending the Court's approval), which does not provide for arbitration. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011) ("Absent a violation of due process or excusable neglect for failure to timely opt out, a class-action settlement agreement binds all class members who did not do so."). Of course, certain class members ultimately choose to opt out and pursue arbitration if they are unsatisfied with the Settlement; nothing in the Settlement Agreement inhibits that right. Class members

---

[7]    23andMe analyzes issues relating to the scope or formation or contracts pursuant to California law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**

retain the option to opt out. But until that occurs, they remain members of the Settlement Class and should be precluded from initiating or prosecuting parallel arbitrations.

Some of the Proposed Intervenors argue that they "opted out in December 2023 and initiated proceedings under the JAMS Terms." ECF No. 119 at 12. This is incorrect. Serving a notice of dispute is insufficient to constitute an opt-out. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 07-cv-5944, 2014 WL 4181732, at *5 (N.D. Cal. Aug. 20, 2014) ("[F]iling an individual case prior to the opt-out period and continuing to litigate that case through the opt-out period is insufficient."); *Bowman v. UBS Fin. Servs., Inc.,* No. C 04 3525 MMC, 2007 WL 1456037, at *2 (N.D. Cal. May 17, 2007) ("[T]he mere pendency and continued prosecution of a separate suit, which the litigant instituted **before commencement of the 'opt-out' period in a related class action**, neither registers nor preserves a litigant's election to 'opt out' of the related class action.")

The Proposed Intervenors have not opted out of the Class and should be subject to the injunctive relief until they receive Notice and decide individually whether to opt out or participate in the Settlement along with millions of other Class Members.

## V.     CONCLUSION

For the reasons set forth above, 23andMe respectfully requests that this Court deny the Proposed Intervenors' Motions to Intervene, grant preliminary approval of the Settlement, and enter the preliminary injunction agreed to in Paragraph 73(h) of the Settlement Agreement as set forth in Paragraph 23 of the proposed Preliminary Approval Order.

Dated: October 9, 2024

                                    **GREENBERG TRAURIG LLP**

                                    */s/ Rebekah S. Guyon*
                                    Rebekah S. Guyon (SBN 291037)
                                    1840 Century Park East, Suite 1900
                                    Los Angeles, California 90067
                                    Telephone: 310-586-7700
                                    *Rebekah.guyon@gtlaw.com*

                                    *Attorneys for Defendant 23andMe, Inc.*

**DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL**