**GREENBERG TRAURIG, LLP**
Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700

Stephen L. Saxl (*admitted pro hac vice*)
*saxls@gtlaw.com*
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-8184

Ian C. Ballon (SBN 141819)
*Ballon@gtlaw.com*
1900 University Avenue, 5th Floor
East Palo Alto, California 94303
Telephone: 650-328-8500

Kristin O'Carroll (SBN 312902)
*ocarrollk@gtlaw.com*
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415-655-1300

*Attorneys for Defendant 23andMe, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: 23ANDME, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | CASE NO. 5:23-cv-05234<br><br>Hon. Edward M. Chen<br><br>**REDACTED DECLARATION OF REBEKAH S. GUYON IN SUPPORT OF DEFENDANT 23ANDME'S OMNIBUS MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

**DECLARATION OF REBEKAH S. GUYON**

I, Rebekah S. Guyon, declare as follows:

1. I am a shareholder with Greenberg Traurig, LLP, counsel of record for defendant 23andMe, Inc. ("23andMe"). I have personal knowledge of the facts set forth in this Declaration and, if called and sworn as a witness, I could and would testify competently with respect thereto. Pursuant to Civil Local Rules 7-11 and Civil L.R. 79-5, I submit this declaration in support of 23andMe's Omnibus Opposition to Proposed Intervenors' Motions to Intervene (ECF Nos. 117, 119, 120) and Objection to Preliminary Approval of Class Action Settlement (ECF No. 118). [1]

**Alleged Arbitration Proceedings On Behalf of Claimants Represented By Milberg**

2. On December 5, 2023, Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg") submitted to 23andMe, at customercare@23andme.com, notices of individual claims on behalf of 3,272 clients pursuant to the October 4, 2023 Terms of Service ("Milberg Notice 1"). On January 8, 2024, Milberg submitted to 23andMe, at customercare@23andme.com, a second set of notices of individual claims on behalf of 1,539 clients pursuant to the same Terms of Service ("Milberg Notice 2").

3. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

4. Mr. Klinger attended the January 31, 2024 mediation before Randall Wulff.

5. On February 14, 2024, Milberg filed arbitration demands with JAMS on behalf of 50 California claimants and 50 Illinois claimants ("100 Demands"). Pursuant to the stipulated filing fees,

---

[1] As used in this Declaration, the terms "Proposed Intervenors," "Gonczi Proposed Intervenors," "Block Proposed Intervenors," and "Adame Proposed Intervenors" have the same meanings as they are defined in 23andMe's memorandum filed concurrently herewith.

Milberg paid its share of claimants' fees in the amount of ▮▮▮ in June 2024. ▮▮▮▮▮▮▮▮▮▮. These are the <u>only</u> arbitration filing fees paid by any Proposed Intervenors to date.

6.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

7.   On July 10, 2024, Milberg filed an additional 4,766 arbitration demands with JAMS, for which JAMS issued an invoice to Milberg for ▮▮▮ in claimants' filing fees ("Unpaid Demands"). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. To date, nearly three months after its filing, Milberg still has not made payment on its fees. There are currently no outstanding invoices for which 23andMe is responsible for regarding these Unpaid Demands.

8.   From August 26, 2024, JAMS repeatedly requested from Milberg location information for the 100 Demands, which is a necessary step to selecting a pool of eligible arbitrators. Milberg delayed providing this information until September 24, 2024. The 100 Demands have not advanced any further at this time. No arbitrator has been appointed.

9.   Milberg did not withdraw from any of the Federal Actions until September 20, 2024. *See* ECF 108 (withdrawing from four actions: *J.S., et al., v. 23andMe, Inc., et al.* (3:23-cv-5234); *Greenberg v. 23andMe, Inc.* (5:23-cv-5302); *Hoffman, et al. v. 23andMe, Inc.* (5:23-cv-5332); and *Dube v. 23andMe, Inc.* (5:23-cv-5768).

DECLARATION OF REBEKAH S. GUYON ISO 23ANDME'S OMNIBUS MEMORANDUM
IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND
IN OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

10. The Gonczi Intervenors are part of the July 10, 2024 Unpaid Demands that Milberg filed arbitration demands for but have not made any payment on to date.

**Alleged Arbitration Proceedings On Behalf of Claimants Represented By Labaton**

11. On February 9, 2024, Labaton Keller Sucharow ("Labaton") submitted to 23andMe, at customercare@23andme.com, a notice of claims on behalf of 3,529 clients ("Labaton Notice 1").

12. On February 22, 2024, Labaton submitted to 23andMe, at customercare@23andme.com, a second notice of claims on behalf of 1,984 additional clients ("Labaton Notice 2"). Labaton forwarded Labaton Notices 1 and 2 to me on February 27, 2024.

13. On April 25, 2024, Labaton submitted to counsel for 23andMe a third notice of claims on behalf of 4,055 additional claimants ("Labaton Notice 3").

14. Counsel for 23andMe and Labaton thereafter exchanged correspondence and, on May 1, 2024, held a telephone conference for the first time to discuss Labaton's claims. During this call, counsel for 23andMe expressed its interest in a tolling agreement for Labaton's claimants in light of ongoing settlement discussions with the putative class. Labaton indicated that it was also interested in a tolling agreement.

15. I exchanged drafts of a tolling agreement with Melissa Nafash of Labaton between May 17 and July 11, 2024. During that exchange, it became clear that Labaton was only interested in a tolling agreement that would allow Labaton to opt-out its claimants from any putative class action settlement (regardless of its terms) through a single email communication from counsel. I advised Ms. Nafash in writing on July 11, 2024 that such a term was impossible because 23andMe was in the process of negotiating a putative class settlement that would encompass the Labaton claimants' claims. During a July 12, 2024 conference of counsel, Ms. Nafash acknowledged 23andMe's position that the term was unworkable as written in light of the ongoing putative settlement negotiations and proposed alternative language, which I requested to see in writing.

16. During this time, I also suggested that Ms. Nafash confer directly with Class Counsel, and she agreed that I could make that introduction. I provided Ms. Nafash's contact information to Class Counsel on July 16, 2024 and requested that they contact her to discuss settlement negotiations.

3    Case No. 24-md-03098-EMC
DECLARATION OF REBEKAH S. GUYON ISO 23ANDME'S OMNIBUS MEMORANDUM
IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND
IN OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

17. I received a revised tolling agreement from Ms. Nafash on August 4, 2024. At the time, I was out of the office with covid-19. I responded to Ms. Nafash with a further revised tolling agreement on August 22, 2024, in which I advised Ms. Nafash of the executed Term Sheet, which was already a public record by that time.

18. Ms. Nafash and I spoke by telephone on August 27, 2024. ███████████████████████████████████████████████████████████████████████████████████████ She did not advise that any of the claimants represented by her firm have suffered different or more serious injuries than the rest of the Settlement Class.

19. The very next day, Labaton filed with JAMS arbitration demands on behalf of 8,241 clients. On August 29, 2024, Labaton filed with JAMS demands on behalf of an additional 2,820 clients. The large majority of Labaton's August 29, 2024 demands were filed without any prior notice to 23andMe and did not comply with the informal dispute resolution procedures, which applied even under the June 2022 Terms of Service that Labaton claims are the operative terms.

20. On behalf of 23andMe, I promptly submitted a request to JAMS on August 29, 2024 to administratively close the demands due to failure to opt out of the updated November 30, 2024 Terms of Service, which provide for NAM as the administrator for mass arbitrations.

21. On September 16, 2024, the JAMS National Arbitration Committee notified the parties that given the provision of NAM under the November 30, 2023 Terms of Service, JAMS is unable to proceed with administration of Labaton's 11,061 arbitration demands. A true and correct copy of JAMS's September 16, 2024 order closing the Labaton arbitrations is attached as **Exhibit A.**

22. On October 2, 2024, Labaton moved to intervene on behalf of the five Adame Intervenors. *See* ECF 120. The Adame Intervenors include four claimants who were included in the arbitration demands that Labaton filed with JAMS on August 28, 2024. Labaton did not include the remaining intervenor in any of its arbitration filings, and 23andMe has no record of ever receiving a pre-filing notice or other claim for

Proposed Intervenor Rebecca Adams. Labaton's motion to intervene was the first instance that 23andMe was notified of this claimant.

23. Labaton has not filed any further arbitrations, whether with JAMS or NAM, to date.

**Alleged Arbitration Proceedings On Behalf of Claimants Represented By Levi & Korsinsky**

24. On December 29, 2023, Levi & Korsinsky, LLP ("Levi & Korsinsky") submitted to 23andMe, at legal@23andme.com, a list of 1,481 clients ("L&K Notice 1"). For these clients, Levi & Korsinsky asserted that "[t]he prior Terms of Service remain in effect," and opted out of the November 30, 2023 changes to the Terms of Service.

25. On January 12, 2024, Levi & Korsinsky emailed to 23andMe, at customercare@23andme.com, its Notice of Dispute and Pre-Arbitration Demand Letter on behalf of 1,894 clients ("L&K Notice 2").

26. On March 22, 2024, Levi & Korsinsky emailed to 23andMe and counsel for 23andMe, including me, a list of 5,320 additional clients for whom Levi & Korsinsky stated its intent to pursue dispute resolution under the updated November 30, 2023 Terms of Service ("L&K Notice 3").

27. On June 28, 2024, Levi & Korsinsky emailed to 23andMe and counsel for 23andMe, including me, its Second Supplemental Notice of Dispute and Pre-Arbitration Demand Letter ("L&K Notice 4"), providing a list of 5,706 additional clients for whom Levi & Korsinsky stated its intent to pursue dispute resolution under the updated November 30, 2023 Terms of Service.

28. I provided Levi & Korsinsky's 23andMe's initial response to L&K Notice 1 and L&K Notice 2 on February 10, 2024, in which I expressly informed Levi & Korsinsky of the ongoing negotiations with plaintiffs' counsel for a potential class-wide resolution of all U.S. claims arising out of the Incident, which overlapped with many of the claims that Levi & Korsinsky asserted on behalf of its clients. I sought Levi & Korsinsky's feedback on a limited stay and tolling of claims during the settlement negotiations period.

29. In their L&K Notice 3, Levi & Korsinsky expressed interest in the tolling agreement and reiterated this position in their L&K Notice 4.

30. Over the following months through July 26, 2024, I exchanged letters with Levi & Korsinsky advising them of the lack of merit to their claimants' claims on multiple grounds, discussing the scheduling

of the pre-filing informal conferences required by 23andMe's Terms of Service, as well as requesting additional information to verify whether claimants were impacted by the Incident.

31. On July 18, 2024, Levi & Korsinsky responded with a supplemental list of 995 claimants (out of 3,549 email addresses that 23andMe had identified) for whom Levi & Korsinsky purported to have verified the email addresses associated with their 23andMe user accounts ("L&K Notice 5"). *See also* ECF 119-1 (stating that Levi & Korsinsky provided "updated email addresses for 995 Intervening Claimants that 23andMe had previously claim [sic] it could not identify, confirm, or associate with their 23andMe account"). However, over half of these email addresses were duplicative of what Levi & Korsinsky had previously provided.

32. On September 13, 2024, just *one day after* the Motion for Preliminary Approval was filed, Levi & Korsinsky filed with JAMS arbitration demands on behalf of 884 claimants under the October 4, 2023 Terms of Service.

33. On September 19, 2024, I, on behalf of 23andMe, requested that JAMS administratively close the demands, or implement an immediate stay, to allow the Court the opportunity to rule on the Motion for Preliminary Approval including injunctive relief, as well as other grounds upon which 23andMe believes the 884 demands should be closed. Levi & Korsinsky has objected to this request. The issue remains unaddressed by JAMS to date. To date, no invoices for filing fees for the 884 demands have been issued to either party.

34. On September 20, 2024, Levi & Korsinsky notified counsel for 23andMe that it was no longer representing 855 clients pursuant to an internal audit. These include 3 claimants who filed arbitration demands on September 19, 2024. Levi & Korsinsky did not otherwise explain the bases for these clients being dropped.

35. On October 2, 2024, Levi & Korsinsky moved to intervene on behalf of the four Block Intervenors. *See* ECF 119. The Block Intervenors include two claimants who are included in the arbitration demands that Levi & Korsinsky filed on September 13, 2024. No demand for arbitration has been filed on behalf of the remaining Block Intervenors, Aaron Hodges and Joseph Jarrell.

//

//

36. [redacted]

37. [redacted]

**23andMe's Correspondence With Edelson PC**

38. On February 14, 2024 counsel for plaintiffs David Melvin and J.L. ("Melvin Plaintiffs") sent an e-mail correspondence to me and other counsel for 23andMe that attached the letter that was submitted to the Court as Exhibit 1-A to the Declaration of J. Eli Wade-Scott In Support of Opposition to Defendant's Motion for Extension of Time (*Melvin, et al. v. 23andMe, Inc.*, No. 3:24-cv-00487, dkt. 27-1, 28-3 (N.D. Cal. Feb. 16, 2024)) and referenced on page 1 of the email correspondence that counsel for Melvin Plaintiffs mention in their Response to the Motion for Preliminary Approval. ECF 118 at p. 8 (citing *Melvin*, No. 3:24-cv-00487, dkt. 27-4). As demonstrated by *Melvin*, No. 3:24-cv-00487, dkt. 27-4, I advised counsel for Melvin Plaintiffs on February 15, 2024 that their letter (*Melvin*, No. 3:24-cv-00487, dkt. 27-1) contains "patently false assertions" and answered counsel for Melvin Plaintiffs' questions about GlaxoSmithKline by directing counsel to publicly available documents, specifically including 23andMe's Form 10-K filed with the U.S. Securities and Exchange Commission on May 25, 2023.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on October 9, 2024 at Los Angeles, California.

           */s/ Rebekah S. Guyon*
           Rebekah S. Guyon

DECLARATION OF REBEKAH S. GUYON ISO 23ANDME'S OMNIBUS MEMORANDUM
IN OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND
IN OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# Exhibit A



NOTICE TO ALL PARTIES                                                                                     September 16, 2024

      RE:    Labaton 23andMe Filings – 1601004399

Dear Parties:

JAMS has received and reviewed counsel for Respondent's August 29, 2024, letter to Sarah Nevins regarding the above-referenced filings, and counsel for Claimants' September 11 response thereto.

As you know, the firm of Labaton Keller Sucharow has filed approximately 11,000 Demands for Arbitration with JAMS on behalf of individual Claimants against Respondent 23andMe. Claimants seek arbitration under Respondent's Terms of Service effective June 8, 2022. Respondent states that it amended its Terms in November 2023 such that mass arbitrations shall be administered by another arbitration provider. As such, according to Respondent, these arbitrations should immediately be closed.

In light of Respondent's updated Terms of Service, which name another provider for mass arbitrations and which appear to have gone into effect before these Demands were filed, and given Respondent's objection to proceeding at JAMS, JAMS is unable to proceed with administration at this time. If the parties agree or a court orders the parties to proceed at JAMS, we will resume administration.

Sincerely,

/s/ Sheri Eisner

Sheri Eisner
Senior Vice President, General Counsel
Co-Chair, JAMS National Arbitration Committee