Jay Edelson (admitted *pro hac vice*)
jedelson@edelson.com
Ari Scharg (admitted *pro hac vice*)
ascharg@edelson.com
J. Eli Wade-Scott (admitted *pro hac vice*)
ewadescott@edelson.com
Michael Ovca (admitted pro hac vice)
movca@edelson.com
Emily Penkowski Perez (admitted *pro hac vice*)
epenkowski@edelson.com
Hannah P. Hilligoss (admitted *pro hac vice*)
hhilligoss@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs David Melvin, J.L., and the Putative Class*

*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE 23ANDME, INC., CUSTOMER DATA SECURITY BREACH LITIG.<br><br>This Document Relates to:<br><br>*ALL ACTIONS* | Case No. 24-md-03098-EMC<br><br>**SUPPLEMENTARY RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**<br><br>**Judge:** Hon. Edward M. Chen |

Plaintiffs David Melvin and J.L. (the "Melvin Plaintiffs") respectfully submit this supplement to their Response to Plaintiffs' Motion for Preliminary Approval. (Dkt. 118.) While the Melvin Plaintiffs' response includes a host of reasons why the proposed Settlement should not be approved, they file this supplement to bring the Court's attention to recent communications with Interim Co-Lead Class Counsel ("Class Counsel") and 23andMe's counsel on two issues that crystallized only after the deadline to oppose preliminary approval.

First, the Melvin Plaintiffs attempted to clarify the scope of the Release in the Settlement—an issue that the Melvin Plaintiffs brought to the Court's attention in their objection to preliminary approval. (Dkts. 112 at 1; 118 at 4.) There is now little question that 23andMe and Class Counsel have completely opposing views about the scope of claims released by this Settlement. Second, the Melvin Plaintiffs sought more detail about the value of the "Privacy Shield" monitoring program in the Settlement, the only benefit that the vast majority of the Class would be entitled to (if they submitted a claim), after raising concerns about its true value to the Class. (Dkts. 112 at 2; 118 at 2, 6.) Instead of providing this, Class Counsel seeks to keep the Class in the dark, both by actually redacting the costs of the monitoring program in filings—resulting in the total monetary benefit to the Class itself being redacted and unknown—as well as refusing to provide it to the Melvin Plaintiffs, even when they agreed to keep it confidential. Given a primary consideration of the approval process is an evaluation of the benefits provided to the Class, the Melvin Plaintiffs seek to supplement the record with this refusal.

**I.    Class Counsel and 23andMe Have Contradictory Views of the Ambiguously Worded Release Provisions.**

Even before MDL consolidation, the Melvin Plaintiffs pointed out that the Class likely has claims arising from 23andMe's contemplated partnerships with pharmaceutical entities and existing partnership. (*See Melvin, et al. v. 23andMe, Inc.*, No. 3:24-cv-00487, Dkt. 26 (N.D. Cal. Feb. 16, 2024).) At that time, the Court expressed its view that such claims were not part of these proceedings stemming from 23andMe's data breach. (*See* Tr. of Proceedings at 32:4-9, *Santana v. 23andMe, Inc.*, No. 3:23-cv-05147-EMC, Dkt. 81 (N.D. Cal. Feb. 22, 2024) (those

claims are "not, as currently stated, within the four corners of … the complaints"). When the Settlement appeared, however, the Melvin Plaintiffs pointed out the ambiguous language regarding the scope of the release—specifically, that the provisions *could* in fact be read to release such third-party data sharing claims. (Dkts. 112 at 1; 118 at 4.)

Class Counsel's supplemental filing on October 2, 2024 stated their position that the scope of the release did not extend to any claims arising from the "sale of data in 23andMe's possession." (Dkt 127 at 24 n.11.) The Melvin Plaintiffs reached out to 23andMe's counsel to confirm that they had the same view. (Oct. 11, 2024 Ltr. to Def.'s Counsel, attached as Exhibit 1.) 23andMe dodged the question entirely, sending back a bizarre, two-page letter that copied and pasted in block format the definition of "Released Claims"—including the exact language that the Melvin Plaintiffs explained was ambiguous—and offered nothing more than a cryptic "the language speaks for itself." (Oct. 24, 2024 Resp. to Melvin Pls., attached as Exhibit 2.) By refusing to answer what should have been a simple question, 23andMe has taken a remarkably brazen position: that the Release encompasses those claims that the Court specifically said were not before it.

This is unacceptable for at least three reasons. First, it shows that, at the negotiation table, 23andMe was the only one thinking about resolving those claims. The inclusion of this ambiguous release, followed by a refusal to disavow its apparent scope, makes clear that they were. The Melvin Plaintiffs have pointed out a number of times that 23andMe has been dictating the terms of the Settlement, (*see* Dkt. 112 at 4), and this is yet another example: 23andMe duped Class Counsel into a release that 23andMe will clearly argue extinguishes all of this liability on behalf of the entire Class in exchange for nothing.

Second, this explicit disconnect between 23andMe and Class Counsel's view of the scope of the release shows that Class Counsel does not actually know what they negotiated. Class Counsel clearly has not attempted to (i) conduct any discovery into these claims, (ii) assess their strengths and weaknesses, or (iii) secure any value for them (or even attempt to make any valuation of them) whatsoever. This further demonstrates the lack of rigor in the approach to this Settlement as a whole, supporting both Plaintiffs' objections to the Settlement

itself and Plaintiffs' objection to permanent appointment of Interim Co-Lead Class Counsel.

Finally, the Settlement can't be approved with this Release—even if the Court rejects the many other arguments the Melvin Plaintiffs have raised—because Class Members have no way of knowing what they are releasing. Nor could Notice go out to the Class when the Parties can't give a straight answer to what should be a simple question: are claims that have been expressly pointed out in the litigation actually being released? It is axiomatic that a Settlement cannot be approved when the key thing the Class is giving up—i.e., the Release—is so unclear that even the Parties don't know what it means.

### II. Class Counsel Refuses to Tell the Class the Value of the Benefits They Could Receive Under the Settlement

Following Class Counsel's supplement in support of preliminary approval (Dkt. 123), the Melvin Plaintiffs sought to remove at least one more contested issue from the Court's docket: the actual value of the Privacy Shield monitoring that Class Counsel touted as the primary benefit to the Class in connection with the proposed Settlement.

The Melvin Plaintiffs contended that this program was nothing more than the usual stock credit monitoring provided in run-of-the-mill data breach settlements, with some window dressing. (Dkts. 112 at 2; 118 at 2.) The Court had its own questions about the value of the Privacy Shield monitoring, asking Class Counsel to provide its estimated cost—not an inflated retail value. (Dkt. 111 at 3.) Class Counsel's supplemental filing, however, did not disclose this figure to the Class. (Dkt. 123 at 11.) The result is that the Class doesn't even get to know what Privacy Shield is costing them, and worse, the Class doesn't get to know the total amount of monetary relief being offered. (*See id.*)

The Melvin Plaintiffs asked Class Counsel to provide the cost of Privacy Shield to them, which they agreed they would keep confidential (despite the Melvin Plaintiffs' view that this redaction is improper). The email exchange, attached as Exhibit 3, reflects Class Counsel's continual unwillingness to share with the Class what the Privacy Shield monitoring actually costs. (*See* Oct. 11-21, 2024 Email Thread.) Class Counsel's refusal to provide information about the monetary benefits available to the Class, or the cost of Privacy Shield, to even two

class members—much less the entire Class—is designed to ensure that the Class can't make any meaningful decision about the value of this Settlement to them. The reason, of course, is that there is no real value: as we explained previously, the primary differentiator that Privacy Shield offers from a standard monitoring program is that Class Members can call in to the provider if their information appears on the Dark Web. But if there was some actual value in that, the Notice would tell Class Members *now* that their information was exposed on the Dark Web, and Class Members would quickly realize that the only thing they won in the Settlement was a phone number to a call center that can't do anything to help. The Settlement should be rejected.

      WHEREFORE, for the foregoing reasons, the Melvin Plaintiffs respectfully request that the Court allow this supplement to their Response to Plaintiffs' Motion for Preliminary Approval (Dkt. 118).

Respectfully Submitted,

**DAVID MELVIN and J.L.**, individually and on behalf of all others similarly situated,

Dated: October 25, 2024　　　　　By: */s/ J. Eli Wade-Scott*
　　　　　　　　　　　　　　　　　*One of Plaintiffs' Attorneys*

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (admitted *pro hac vice*)
jedelson@edelson.com
Ari Scharg (admitted *pro hac vice*)
ascharg@edelson.com
J. Eli Wade-Scott (admitted *pro hac vice*)
ewadescott@edelson.com
Michael Ovca (admitted *pro hac vice*)
movca@edelson.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Emily Penkowski Perez (admitted *pro hac vice*)
epenkowski@edelson.com
Hannah P. Hilligoss (admitted *pro hac vice*)
hhilligoss@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the Putative Class*