| | |
|---|---|
| Cari Campen Laufenberg (*pro hac vice*) <br> KELLER ROHRBACK L.L.P. <br> 1201 Third Avenue, Suite 3400 <br> Seattle, WA 98101 <br> Tel: (206) 623-1900 <br> claufenberg@kellerrohrback.com | Rebekah S. Guyon, SBN 291037 <br> GREENBERG TRAURIG LLP <br> 1840 Century Park East, Suite 1900 <br> Los Angeles, CA 90067 <br> Tel: 310-586-7700 <br> Rebekah.guyon@gtlaw.com |
| Gayle M. Blatt (SBN 122048) <br> CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP <br> 110 Laurel Street <br> San Diego, CA 92101 <br> Tel: (619) 238-1811 <br> gmb@cglaw.com | Stephen L. Saxl (*pro hac vice*) <br> One Vanderbilt Avenue <br> New York, NY 10017 <br> Tel: (212) 801-8184 <br> saxls@gtlaw.com |
| Norman E. Siegel (*pro hac vice*) <br> STUEVE SIEGEL HANSON LLP <br> 460 Nichols Road <br> Suite 200 <br> Kansas City, MO 64112 <br> Tel: 816 714-7100 <br> siegel@stuevesiegel.com | Ian Ballon (SBN 141819) <br> 1900 University Avenue, 5th Floor <br> East Palo Alto, CA 94303 <br> Tel: (650) 328-8500 <br> ballon@gtlaw.com |
| *Interim Co-Lead Counsel* | Kristin O'Carroll, SBN 312902 <br> 101 Second Street, Suite 2200 <br> San Francisco, CA 94105-3668 <br> Tel: 415-655-1300 <br> ocarrollk@gtlaw.com |
| | *Attorneys for Defendant 23andMe, Inc.* |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION <br><br> This Document Related to: ALL ACTIONS | Case No. 3:24-md-03098-EMC <br><br> **THE SETTLING PARTIES' JOINT MEMORANDUM RE: INCLUDING ARBITRATION CLAIMANTS IN THE SETTLEMENT CLASS** <br><br> Date: November 12, 2024 <br> Judge: Hon. Edward M. Chen |

Case No. 3:24-md-03098-EMC

**THE SETTLING PARTIES' JOINT MEMORANDUM RE: INCLUDING ARBITRATION CLAIMANTS IN THE SETTLEMENT CLASS**

## **TABLE OF CONTENTS**

I.    THE COURT CAN INCLUDE ARBITRATION CLAIMANTS IN THE CLASS. ........................ 1

II.   THE COURT SHOULD INCLUDE ARBITRATION CLAIMANTS IN THE CLASS. ................. 3

    A.    The Settling Parties Negotiated a Global Settlement. ............................................. 3

    B.    Excluding Arbitration Claimants Would Produce Uncertainty. ............................. 4

III.  CONCLUSION ................................................................................................................... 5

Pursuant to the Court's October 29, 2024 Minute Order (ECF No. 147), Plaintiffs and Defendant 23andMe, Inc. ("23andMe") (collectively, the "Settling Parties") hereby submit this joint memorandum confirming that individuals who are arbitrating or who have taken formal steps evidencing their intent to arbitrate (collectively, "arbitration claimants") can and should be included in the Settlement Class, and thus the Court should preliminarily approve the global settlement agreed to by the Settling Parties.

I.   **THE COURT CAN INCLUDE ARBITRATION CLAIMANTS IN THE CLASS.**

Federal courts commonly certify classes that include individuals who have filed or threatened to file claims in arbitration or state court, subject to the individual's right to opt out of the class after receiving notice and proceed separately in a different forum.[1]

Indeed, the four law firms that objected here all have sought preliminary approval of settlements where the class definition did not exclude individuals who sought to proceed separately in arbitration or other courts, and any such individuals instead had to opt out.[2]

---

[1]   *See, e.g.*, *Zakikhani v. Hyundai Motor Co.*, No. 8:20-CV-01584-SB-JDE, 2022 WL 17224701, at *5 (C.D. Cal. Oct. 20, 2022) (unpublished) (granting preliminary approval of class-action settlement and noting that any class member who failed to opt out would become "bound by all proceedings, orders, and judgments in the [l]itigation, even if . . . [they] ha[d] previously initiated or subsequently initiate[d] individual litigation or other proceedings encompassed by the [r]elease"); *In re Herff Jones Data Breach Litig.*, No. 1:21-CV-1329, 2022 WL 474696, at *1, *10 (S.D. Ind. Jan. 12, 2022) (unpublished) (same); *Carver v. Foresight Energy LP*, No. 3:16-CV-3013, 2016 WL 9455818, at *2 (C.D. Ill. Oct. 25, 2016) (unpublished) (same, noting that any class member who failed to opt out of settlement would become "bound by all subsequent proceedings, orders[,] and judgments in this [l]itigation, regardless of whether [they] currently [were], or subsequently bec[ame], a plaintiff or claimant in any other lawsuit, arbitration, administrative action[,] or other proceeding"); *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1092-93 (N.D. Ill. 2021) (requiring "the Arbitration Claimants [who] insist that they should be able to opt out *en masse*" to complete opt-out process individually); *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. CV 17-2832, 2020 WL 3512807, at *2 (D. Minn. June 29, 2020) (unpublished) (requiring individual opt-outs from class members, some of whom paid arbitration filing fees, filed arbitration demands with AAA, or sought to arbitrate); *cf. In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 133 (2d Cir. 2011) (concluding that class members could not pursue released claims in arbitration because they "failed to opt out of the class" and did not show excusable neglect for that failure).

[2]   *See, e.g.*, *Boling v. Tzumi Innovations LLC*, No. 22-CV-05919 (S.D.N.Y. Nov. 22, 2022), ECF No. 26-1 at 2, 4, 6–7; ECF No. 27-2 at 5–6, 16 (Milberg Coleman); *In re Facebook Biometric Info. Priv. Litig.*, No. 15-cv-03747-JD (N.D. Cal. July 22, 2020), ECF No. 468 at 6, 16-17 (Labaton Keller; and Edelson); *In re: Prothena Corp. PLC Secs. Litig.*, No. 18-cv-06425-ALC (S.D.N.Y. Aug. 26, 2019), ECF No. 41-1 at 2, 9–10 (Levi & Korsinsky). In *Boling*, moreover, Milberg asked for (and obtained) a preliminary injunction of claims in other forums pending final approval. *See* ECF No. 29 at 9–10. Milberg also approved the settlement terms *in this case* through its representation of a Settlement Class Representative.

**THE SETTLING PARTIES' JOINT MEMORANDUM RE: INCLUDING ARBITRATION CLAIMANTS IN THE SETTLEMENT CLASS**

The Settlement, which defines the class to include the arbitration claimants and state court plaintiffs, satisfies the requirements of Rule 23. Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." To do so, class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citation omitted). But that "does not mean . . . their positions have to be identical." 7A C. Wright, A. Miller, & M. Kane, *Fed. Prac. & Proc.* § 1769 (4th ed.). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023).

Here, individuals who filed or threatened to file arbitration claims assert the same claims and injuries as other Settlement Class members. The Settlement treats Class members equally (not disparately), whether or not they have filed claims in other forums. Thus, Rule 23 is satisfied by their inclusion. The Settling Parties have identified no cases stating that including in the class definition those who are pursuing or intend to pursue their own actions—whether in court or an arbitral forum—creates a conflict of interest that defeats the typicality, adequacy, predominance, or commonality requirements. For class members who elect to proceed individually, any "alleged conflict can be eliminated by an appropriate notice to the class members," who can then "opt out of the class and pursue their claims individually, should they choose to do so." *Braxton v. Farmer's Ins. Grp.*, 209 F.R.D. 654, 660 (N.D. Ala. 2002), *aff'd*, 91 F. App'x 656 (11th Cir. 2003). This "opt-out procedure preserves the right of potential class members who feel that their interests are in conflict with or antagonistic to the other class members to bring their own actions[.]" *Fed. Prac. & Proc.* § 1787. It also ensures that each class member has an opportunity to benefit from a resolution that may otherwise elude them and make an informed choice about whether to forgo that opportunity.[3]

---

[3]   *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 565 (9th Cir. 2019) (explaining individual class members "have the right to intelligently and individually choose whether to continue in a suit as class members," and nothing "allows a putative class plaintiff or counsel to exercise class rights en masse, either by making a class-wide objection or by attempting to effect a group-wide exclusion from an existing class" (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998)). *See also In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 241 (3d Cir. 2002) (rejecting "attempts by lawyers to opt out class members *en masse*"); *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 939 (E.D. La. 2012), *aff'd*, 739 F.3d 790 (5th Cir. 2014) ("mass unsigned opt outs are highly indicative of a conclusion that … counsel did not spend very much time evaluating the merits of whether or not to opt out in light of the individual

While the Settling Parties could have agreed to exclude individuals with filed arbitration or state court claims as of a date certain, that is not the Settlement Agreement before the Court. The Ninth Circuit has made clear that "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court," and "a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). This is *not* a case in which a defendant opposes class certification on the grounds that the question of whether particular customers can be compelled to arbitrate is a predominating individual issue.[4] Where, as here, a defendant agrees to proceed on a class-wide settlement, the defendant waives its right to arbitration as to those ultimately included in the Settlement Class, so there is no individual issue precluding certification, as individuals who seek to arbitrate can opt out of the Settlement. Thus, the Court can include in the class definition individuals who have filed or threatened to file arbitrations, subject to their rights to opt out after receiving notice.

## II. THE COURT SHOULD INCLUDE ARBITRATION CLAIMANTS IN THE CLASS.

### A. The Settling Parties Negotiated a Global Settlement.

The Court should include arbitration claimants in the Class because the Settling Parties negotiated a global settlement that was critical to 23andMe and remains so, given its financial condition.[5] 23andMe faces tens of thousands of filed or threatened copycat claims in arbitration and state court from firms representing people asserting the same alleged claims and injuries as other Settlement Class members, in

---

circumstances of each of their clients and in consultation with them."); *In re TikTok, Inc.*, 565 F. Supp. 3d at 1093 (overruling objections to preliminary approval, refusing to permit opt out en masse by lawyers).

[4] *See, e.g.*, *Conde v. Sensa*, 2018 WL 4297056, at *10-*11 (S.D. Cal. Sept. 10, 2018) (refusing to certify class of purchasers of defendant's weight loss products on predominance grounds where only online purchasers were subject to arbitration provision); *Lim v. Helio, LLC*, 2012 WL 12884439, at *2-*3 (C.D. Cal. Apr. 18, 2012) (refusing to certify class of wireless telephone customers where class members signed multiple versions of customer agreement with and without arbitration provision).

[5] 23andMe's new Form 10-Q filed with the SEC on November 12, 2024 discloses that "[t]here is substantial doubt about [23andMe's] ability to continue as a going concern" and that the company "will need additional liquidity to fund [its] necessary expenditures and financial commitments for 12 months...." Exhibit 1 to accompanying Decl. of Rebekah S. Guyon at pages 3, 39. On November 8, 2024, 23andMe's Board of Directors approved a reduction in force involving approximately 40% of its workforce. *Id.* at 40.

an attempt to leverage arbitration filing fees to pressure the company into separate mass settlements.[6] The Settlement includes those people in the Class, but recognizes their right to opt-out after notice.[7]

The global nature of the Settlement benefits the 6.4 million Settlement Class members. As previously shown, the Settlement is fair, reasonable and adequate—no arbitration claimant has argued otherwise. The class definition and injunctive relief as negotiated would prevent a handful of law firms and a fraction of the Class from racing ahead of the relief that 23andMe has agreed to provide to all Settlement Class members by forcing 23andMe to use its limited resources to pay millions of dollars in arbitration filing fees solely to initiate the arbitration process. *See* ECF No. 149-1, ¶ 21. The financial condition of 23andMe is well-documented. The filing fee payments will not benefit the Settlement Class or any individual affected by the Incident. Conversely, there is no prejudice to any Settlement Class Member who elects to opt-out and arbitrate. By the same reasoning, the Court should not withhold notice of the Settlement from the arbitration claimants by excluding them from the Settlement Class. Withholding notice is contrary to the Ninth Circuit rule that individual class members should "have the right to intelligently and individually choose whether to continue in a suit as class members. . . ." *In re Hyundai*, 926 F.3d at 565. Indeed, arbitration claimants have no reason to believe that—and their counsel have articulated no reason why—exclusion from the settlement *en masse* will result in a better outcome for their claims, in light of not only the hurdles they will face on the merits to any recovery, but the financial condition 23andMe may be in by the time their separate cases conclude. *See* Guyon Decl. Ex. 1 at pages 39, 3.

**B.     Excluding Arbitration Claimants Would Produce Uncertainty.**

The Court should not exclude persons "who are arbitrating or who have taken formal steps evidencing their intent to arbitrate" [ECF No. 147 at 2] for the additional reason that doing so would

---

[6]     Courts recognize the importance of minimizing the pursuit of copycat claims in preliminarily approving similar MDL class action settlements. *See, e.g.*, *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, No. 2:19-ml-02905-JAK-MRW, 2023 WL 6194109, at *26 (C.D. Cal. July 31, 2023) (entering injunctive relief preventing class members from proceeding in other forums, as "copycat lawsuits in other jurisdictions" could impose on court's jurisdiction and ability to manage settlement process). *See also* 4 Newberg on Class Actions § 13:19 (6th ed.) ("The single situation that raises the strongest argument in favor of an antisuit injunction at the preliminary approval stage concerns actions in federal court— particularly those consolidated . . . into a single MDL proceeding— that . . . aim to settle a large, complex matter without significant imposition by strategically filed parallel state cases.").

[7]     23andMe notes that it would have to agree to any change in the Settlement Class.

produce uncertainty and undermine the notice and opt-out process.[8] Numerous law firms (including the 3 objecting firms) have threatened or filed arbitration claims on behalf of tens of thousands of individuals. But only 100 individuals even have paid arbitration filing fees. None of these 100 individuals moved to intervene in this case. And even for these 100, no arbitrators have been appointed. But even if the 100 who paid filing fees are excluded from the Settlement Class, all other potential arbitration claimants should be included. Excluding others would create uncertainty with the class definition and line-drawing would create confusion. No other arbitrations have commenced. It is unclear to 23andMe which claimants intend to pay filing fees and proceed with arbitration, as opposed to aiming to pressure it into separate mass settlements preferential to the other 6.4 million Class members.[9] And the Court should not create what would amount to a special early opt-out process to exclude arbitration claimants up front.[10] The class notice process is designed to provide all class members the opportunity to review the proposed settlement and decide individually whether to opt out, and to provide certainty to all parties.

### III.  CONCLUSION

The Settling Parties respectfully request that this Court grant preliminary approval of the Settlement, including the Settlement Class defined in the Settlement Agreement, and enter the preliminary injunction set forth in the proposed Preliminary Approval Order.

---

[8]  None of the thousands of individuals who filed claims in state court have filed objections here. They are included in the Settlement Class and will have the opportunity to opt out individually after notice.

[9]  None of the claimants represented by Labaton even have pending arbitration claims on file. Levi & Korsinsky filed arbitration demands only after the Preliminary Approval motion, and JAMS has not opened its claims. Milberg filed 4,766 arbitration demands (in addition to the earlier 100), but made no effort to move those claims forward. Serving a notice of dispute or "filing an individual case prior to the opt-out period and continuing to litigate that case through the opt-out period is insufficient" even to constitute an opt-out. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 4181732, *5 (N.D. Cal. Aug. 20, 2014).

[10]  Courts do not ordinarily entertain attorney or mass opt-outs. "[T]he filing of thousands of mass opt outs by [a law firm] . . . raise substantial fairness concerns" and questions about adequate consultation. *In re CenturyLink,* 2020 WL 3512807, at *3, *7. As here, "the record indicates [the firm] gave the same blanket advice to opt out to all 22,000 of its clients" and "there exist questions regarding the informed decision of each claimant." *Id.* at *3. Here, certain individuals who filed or threatened claims already have dropped out. And in numerous instances the objecting law firms initiated duplicative arbitration demands on behalf of the same person as another firm, or filed demands for individuals they no longer represent, raising additional questions about adequate consultation. These issues are "highly indicative of a conclusion that such counsel did not spend very much time evaluating the merits of whether or not to opt-out in light of the individual circumstances of each of their clients and in consultation with them." *Id.* at *3

Dated: November 12, 2024

**GREENBERG TRAURIG LLP**

*/s/ Rebekah S. Guyon*
Rebekah S. Guyon (SBN 291037)
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700
*Rebekah.guyon@gtlaw.com*

Stephen L. Saxl (*admitted pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-8184
*saxls@gtlaw.com*

*Attorneys for Defendant 23andMe, Inc.*

*/s/ Gayle M. Blatt*
Gayle M. Blatt (SBN 122048)
CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
gmb@cglaw.com

Cari Campen Laufenberg (*pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel: (206) 623-1900
claufenberg@kellerrohrback.com

Norman E. Siegel (*pro hac vice*)
STUEVE SIEGEL HANSON LLP
460 Nichols Road
Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

*Interim Co-Lead Counsel*

**THE SETTLING PARTIES' JOINT MEMORANDUM RE: INCLUDING ARBITRATION CLAIMANTS IN THE SETTLEMENT CLASS**