Cari Campen Laufenberg (*pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel: (206) 623-1900
claufenberg@kellerrohrback.com

Gayle M. Blatt (SBN 122048)
CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD LLP
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
gmb@cglaw.com

Norman E. Siegel (*pro hac vice*)
STUEVE SIEGEL HANSON LLP
460 Nichols Road
Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

*Interim Co-Lead Counsel*

Rebekah S. Guyon (SBN 291037)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: (310) 586-7700
Rebekah.guyon@gtlaw.com

Stephen L. Saxl (*pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 801-9200
saxls@gtlaw.com

Ian Ballon (SBN 141819)
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Tel: (650) 328-8500
ballon@gtlaw.com

Kristin O'Carroll (SBN 312902)
101 Second Street, Suite 2200
San Francisco, CA 94105-3668
Tel: (415) 655-1300
ocarrollk@gtlaw.com

*Attorneys for Defendant 23andMe, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: 23ANDME, INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Related to: ALL ACTIONS | CASE NO.: 3:24-md-03098-EMC<br><br>Hon. Edward M. Chen<br><br>**THE SETTLING PARTIES' JOINT OPPOSITION TO WILKUS OBJECTORS' MOTION TO INTERVENE/OBJECTION TO FINAL APPROVAL OF SETTLEMENT AND PRELIMINARY INJUNCTION AND REQUEST FOR JUDICIAL NOTICE**<br><br>DATE: December 19, 2024<br>TIME: 1:30 p.m.<br>COURTROOM: 5, 17th Floor |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................1

II.     BACKGROUND ................................................................................................................3

III.    THE COURT SHOULD DENY THE WILKUS OBJECTORS' MOTION AND OBJECTION. ...4

        A.      The Wilkus Objectors' Motion And Objection Should Be Denied Because They Are
                Untimely And Have Been Waived. ....................................................................4

        B.      The Wilkus Objectors' Motion To Intervene Is Procedurally Unnecessary. ......................5

        C.      The Court Should Not Exclude The Wilkus Objectors From The Settlement Class
                Definition. .................................................................................................5

        D.      The Court Should Grant The Agreed-To Preliminary Injunction, Which Is Properly
                Entered Under The All Writs Act And Rule 23(d). ...........................................9

IV.     THE COURT SHOULD DENY THE WILKUS OBJECTORS' AMENDED REQUEST FOR
        JUDICIAL NOTICE, TO THE EXTENT IT GOES BEYOND THE FACT THAT THE
        COMPLAINTS WERE FILED IN STATE COURT. ..................................................................11

V.      CONCLUSION ................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bowman v. UBS Fin. Servs., Inc.*,
  No. C 04 3525 MMC, 2007 WL 1456037 (N.D. Cal. May 17, 2007)....................................7

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  07-cv-5944, 2014 WL 4181732 (N.D. Cal. Aug. 20, 2014) ..........................................7

*In re Centurylink Sales Pracs. & Sec. Litig.*,
  No. CV 17-2832, 2020 WL 3512807 (D. Minn. June 29, 2020) .......................................8

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) .....................................................................4

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................7, 10

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) .....................................................................7

*Jacobs v. CSAA Inter–Ins.*,
  No. C 07-00362 MHP, 2009 WL 1201996 (N.D. Cal. May 1, 2009) .................................11

*Jamul Action Committee v. Stevens*,
  2014 WL 3853148 (E.D. Cal. Aug. 5, 2014) ....................................................12

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ....................................................................12

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) .....................................................................6

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ....................................................................12

*Orange v. Air Cal.*,
  799 F.2d 535 (9th Cir. 1986) .....................................................................4

*Sandpiper Vill. Condo. Ass'n, Inc. v. La.-Pac. Corp.*,
  428 F.3d 831 (9th Cir. 2005) ....................................................................10

*United States v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ....................................................................12

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*,
    229 F. Supp. 3d 1052 (N.D. Cal. 2017) ...................................................................... 10

*Youth Just. Coalitions v. City of Los Angeles*,
    2020 WL 9312377 (C.D. Cal. Nov. 17, 2020) ............................................................... 7

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
    No. 2:19-ml-02905-JAK-MRW, 2023 WL 6194109 (C.D. Cal. July 31, 2023) ............... 8, 11

**Federal Statutes**

All Writs Act, 28 U.S.C.
    § 1651(a) ............................................................................................................... 2, 10

Federal Rule of Civil Procedure 23 ...................................................................... *passim*

Federal Rule of Evidence 201 ............................................................................... 12

Defendant 23andMe, Inc. ("23andMe") and Plaintiffs (collectively, the "Settling Parties") hereby submit this joint memorandum in opposition to the Motion to Intervene and Objection to Final Approval of Settlement and Preliminary Injunction filed by Potter Handy, LLP on behalf of the "Wilkus Objectors" (the "Motion") [ECF No. 152] and their Amended Request for Judicial Notice [ECF No. 153].

## I.    **INTRODUCTION**

The Wilkus Objectors are plaintiffs in seven state court actions, six of which were filed *after* the Motion for Preliminary Approval of the Class Action Settlement in this case. They do not allege any different claims or injuries from the other 6.4 million members of the Settlement Class and admit that they do not object to the terms of the Settlement but claim that they want to be excluded from it. Motion at 5.

On September 20, 2024, Interim Co-Lead Counsel remotely met with counsel for the Wilkus Objectors and informed them that Co-Lead Counsel would not agree to carve out their clients from the Settlement Class definition. The Court set an October 2, 2024 deadline for objections to preliminary approval of the Class Action Settlement. ECF No. 113. Neither the Wilkus Objectors nor any other plaintiffs in state court actions filed objections or motions to intervene prior to the deadline. After the Settling Parties replied to the objections and motions which were filed, the Court held a hearing on October 29, 2024. Counsel for the Wilkus Objectors concedes they were aware of these deadlines and attended the October 29 hearing, yet they elected to abstain from timely participation. Thus, they waived any objection to preliminary approval. They filed this Motion and objection on November 12, 2024, *seven weeks* after the Court's October 2 deadline. This alone warrants denial of their untimely Motion and objection.

To the extent the Court considers the Motion and objection on the merits, they should be denied for numerous additional reasons. This Court denied the earlier-filed motions to intervene on October 29, 2024, stating that "[f]ormal intervention is unnecessary, given that there is a less disruptive process for the proposed intervenors to make their views known." ECF No. 147 at p. 1. The same reasoning applies here. Indeed, Ninth Circuit authority and Federal Rule of Civil Procedure 23(e) confirm that the proper course to raise the Wilkus Objectors' arguments would have been an objection to preliminary approval, an objection that the Wilkus Objectors waived seven weeks prior to this Motion.

Even if the objection had been timely, the Wilkus Objectors' request for preemptive exclusion from the Settlement Class, prior to when other Class Members will be permitted to opt out, should be denied.

The Settling Parties, including class representatives represented by Court-appointed interim co-lead counsel, negotiated a global settlement for the benefit of all of the 6.4 million Settlement Class Members, 23andMe, and judicial efficiency. The Settlement provides for Notice and an opt-out process available to all Settlement Class Members. Any change in the class definition would require the agreement of the Settling Parties. Requiring individuals who seek to be excluded to do so through the standard opt-out process after reviewing the notice to the entire class is appropriate and warranted. The Wilkus Objectors filed six of their seven state court lawsuits only *after* the Motion for Preliminary Approval was filed— indeed, only 13 of the 2,968 Wilkus Objectors filed suit prior to that motion. The Wilkus Objectors are not entitled to a special early opt-out process to exclude them from the Settlement Class up front, as opposed to the other 6.4 million Class Members. Moreover, filing a lawsuit is not "opting out," and individual state court plaintiffs may well elect to participate in the Settlement, particularly given 23andMe's financial condition.

The Wilkus Objectors' objection to the proposed preliminary injunction agreed to in the Settlement Agreement and included in the proposed Preliminary Approval Order fares no better. 23andMe demonstrated in its initial Memorandum (ECF No. 105) that this is a common provision supported by ample authority, and in this case is necessary and appropriate under the All Writs Act, particularly in light of 23andMe's financial condition. The Settling Parties have provided ample additional authority and argument on the appropriateness of the preliminary injunction. *See* ECF No. 103-1, 123, 127, 128, 154. The injunctive relief would simply require putative Settlement Class Members, like the Wilkus Objectors, to await Notice before having the opportunity to opt out after considering the benefits of the proposed Settlement. Thereafter, individuals who opt out of the Settlement Class would be free to pursue their claims elsewhere. The Wilkus Objectors acknowledge that Ninth Circuit authority permits such injunctive relief and offer no reason to reject it in this case. Indeed, these newly filed state court actions are precisely the type of strategically-filed "copycat" lawsuits that warrant injunctive relief to prevent certain individuals from trying to jump ahead of the other Class Members.

The Wilkus Objectors' Motion is untimely, procedurally improper, and without merit. It should be denied.

## II.    **BACKGROUND**

As this Court is aware, this action arises from a data security incident during which certain customer profile information that users had opted into sharing through the DNA Relatives feature was accessed from individual 23andMe.com user accounts without authorization (the "Security Incident"). A total of 41 federal court cases asserting claims on behalf of putative classes arising from the Security Incident have been filed across the country, and all are assigned to this Court in the consolidated action *In Re: 23andMe, Inc. Customer Data Security Breach Litigation*, MDL 3098, Case No. 24-md-03098-EMC (the "Litigation").

In addition to this MDL, parallel litigation against 23andMe has been initiated or threatened in California state court and private arbitration forums. Prior to the Class Action Settlement Agreement currently before the Court, four state court actions were filed in two different Superior Courts in California—including one, *Wilkus v. 23andMe, Inc.,* Case. No. 24CV429673 (Super. Ct. Santa Clara Cnty.), filed by Potter Handy on behalf of 13 individual plaintiffs—all asserting the same claims arising from the Security Incident that are asserted in the Consolidated Class Action Complaint in the MDL and released in the Settlement Agreement. *See* ECF No. 149-1, ¶¶ 2-5.

After the Settling Parties here moved for Preliminary Approval of the Class Action Settlement on September 12, 2024, ECF No. 103, Potter Handy filed in the Santa Clara County Superior Court six additional "mass tort" lawsuits arising from the Security Incident, on behalf of the thousands of other Wilkus Objectors. Motion at 1 n.1.[1] Each of these copycat lawsuits against 23andMe asserts the same claims arising from the Security Incident that are asserted in the Consolidated Class Action Complaint in the MDL and released in the Settlement Agreement.

The Wilkus Objectors did not file objections to preliminary approval prior to the October 2 deadline set by this Court. On October 29, 2024, this Court held a hearing on the Motion for Preliminary Approval.

---

[1] *Diaz v. 23andMe, Inc.*, Case No. 24CV448217 (Sep. 26, 2024) (on behalf of 118 individual plaintiffs); *Cantu v. 23andMe, Inc.*, Case No. 24CV445525 (Sep. 26, 2024) (on behalf of 499 individual plaintiffs); *Powell v. 23andMe, Inc.*, Case No. 24CV448695 (Oct. 3, 2024) (on behalf of 351 individual plaintiffs); *Shaw v. 23andMe, Inc.*, Case No. 24CV449936 (Oct. 21, 2024) (on behalf of 643 individual plaintiffs); *Velarde v. 23andMe, Inc.*, Case No. 24CV451255 (Nov. 1, 2024) (on behalf of 494 individual plaintiffs); and *Capstick v. 23andMe Inc.*, Case No. 24CV451257 (Nov. 1, 2024) (on behalf of 843 individual plaintiffs).

The Court denied the motions to intervene that were filed, directed the Settling Parties to report back on specified issues, and requested supplemental briefing relating to arbitration claimants. ECF No. 147.

On October 31, 2024, the parties to the state court actions, including the Wilkus Objectors, attended the initial case management conference before Judge Adams. After hearing argument from the parties, the state court extended its existing stay until at least January 30, 2025, to avoid interference with this Court's ruling on Preliminary Approval of the Class Action Settlement, including the requested injunctive relief. Motion at 1.

### III.    THE COURT SHOULD DENY THE WILKUS OBJECTORS' MOTION AND OBJECTION.

#### A.    The Wilkus Objectors' Motion And Objection Should Be Denied Because They Are Untimely And Have Been Waived.

As a threshold matter, the Wilkus Objectors' Motion and objection should be denied in their entirety because they are untimely, filed *seven weeks* after this Court's October 2, 2024 deadline for objections and after substantial proceedings. Counsel for the Wilkus Objectors acknowledge that "[f]rom the moment Plaintiffs in these cases [i.e., the Wilkus Objectors] filed their actions, they were aware of the pending class action." Motion at 1. The Wilkus Objectors' Motion and objection to preliminary approval are untimely, which is alone grounds for denial. *See Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998); *Orange v. Air Cal*., 799 F.2d 535, 539 (9th Cir. 1986).

On September 5, 2024, 23andMe and the Settlement Class Representatives on behalf of all Settlement Class Members entered into the Settlement Agreement that is intended to "fully, finally, and forever resolve, discharge, and settle" the Litigation. ECF No. 103-2 at p. 1. On September 12, 2024, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement and 23andMe joined in support of the Motion. ECF No. 103, 105. Interim Co-Lead Counsel remotely met with counsel for the Wilkus Objectors on September 20, 2024, and informed them that Co-Lead Counsel would not agree to carve out their clients from the Settlement Class definition.

On September 25, 2024, this Court issued an Order that "Objections to preliminary approval shall be filed by 10/2/2024. Replies shall be filed by 10/9/24." ECF No. 113. Potter Handy proceeded to file six new state court actions in the weeks that followed the Court's September 25 Order setting the October 2 deadline. But they did not file any objections to preliminary approval of the Settlement in this Court.

Three motions to intervene by arbitration claimants and one additional set of objections were filed on October 1 and October 2, 2024. But no objections or motions to intervene were filed by counsel for any of the plaintiffs in the state court actions, including the Wilkus Objectors. 23andMe pointed out to this Court in its Omnibus Memorandum on October 9, 2024 that none of the state court plaintiffs had filed objections to the Settlement or proposed temporary injunction. ECF No. 128 at 3; *see also* ECF No. 154 at 5 n.7.

As they acknowledged to the state court, Potter Handy was present at this Court's October 29, 2024 hearing on the Motion for Preliminary Approval, at which all objectors and putative intervenors presented oral argument. Yet again they remained silent and did not raise any objections or seek to intervene.

It was not until November 12, 2024 that the Wilkus Objectors filed the present Motion, for the first time seeking to intervene and objecting to preliminary approval, asking the Court to revise the class definition to exclude in advance any person who has "taken formal steps demonstrating their intent to opt out of any class settlement." Motion at 3. The Motion offers no explanation for why it is seven weeks late or why the Court should excuse the Wilkus Objectors' waiver.

### B. The Wilkus Objectors' Motion To Intervene Is Procedurally Unnecessary.

The Wilkus Objectors' Motion should be denied for the additional reason that it is procedurally unnecessary. As members of the putative Settlement Class, they had a right to object to preliminary approval of the Settlement (prior to the October 2 deadline). The Wilkus Objectors ignore that on October 29, 2024, this Court denied the earlier-filed motions to intervene, stating that "[f]ormal intervention is unnecessary, given that there is a less disruptive process for the proposed intervenors to make their views known." ECF No. 147 at p. 1. The Motion offers no explanation why the Wilkus Objectors' long-belated intervention motion would be different. *See also* ECF No. 128 (23andMe's Omnibus Memorandum explaining this and additional reasons intervention should be denied).

### C. The Court Should Not Exclude The Wilkus Objectors From The Settlement Class Definition.

The Wilkus Objectors belatedly ask the Court to revise the class definition in the Settlement Agreement to preemptively exclude from the Class definition any person who has "taken formal steps demonstrating their intent to opt out of any class settlement." Motion at 3. In addition to being untimely,

the Court should overrule this objection because requiring any individuals who seek to be excluded to do so through the standard Rule 23 opt-out process after notice to the Class is appropriate and warranted. Moreover, all but 13 of the Wilkus Objectors filed their state court lawsuits only *after* execution of the Settlement Agreement and the filing of the Motion for Preliminary Approval, and they should not be permitted to jump ahead of the other 6.4 million Settlement Class Members.

The Settling Parties negotiated a global settlement, which was critical to 23andMe and remains so, particularly given the company's financial condition. 23andMe faces tens of thousands of filed or threatened copycat claims in arbitration and state court from law firms representing individuals with the same alleged claims and injuries as other Settlement Class Members, attempting to pressure the company into separate mass settlements. The Settlement to which the Settling Parties agreed includes those individuals in the Settlement Class but recognizes their right to opt-out after notice. 23andMe may not agree to the same settlement, as would be required, if thousands of individuals are excluded from the class definition.

The Ninth Circuit has made clear that "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court," and "a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

The global nature of the Settlement further benefits the 6.4 million Settlement Class Members. As previously shown, the Settlement is fair, reasonable, and adequate—even the Wilkus Objectors have not argued otherwise. The Wilkus Objectors assert that it would not "threaten the efficacy of the settlement in any way and does not prejudice the defendant or any other party" if they are allowed to exclude themselves in advance of the notice and opt-out process. Motion at 3. Not so. The class definition and injunctive relief as negotiated would prevent a handful of law firms and fraction of the Class from racing ahead of the relief that 23andMe has agreed to provide for all 6.4 million Settlement Class Members. The Settlement Class definition allows 23andMe to use its limited resources to fund a settlement that benefits the entire Settlement Class, but still preserves Class Members' rights to opt-out and proceed in their selected forum.

Moreover, the Court should not withhold notice of the Settlement from members of the putative

SETTLING PARTIES' JOINT OPPOSITION TO WILKUS OBJECTORS' MOTION TO INTERVENE/OBJECTION AND REQUEST FOR JUDICIAL NOTICE

Settlement Class, including the Wilkus Objectors. Withholding notice is contrary to the Ninth Circuit rule that individual class members should "have the right to intelligently and individually choose whether to continue in a suit as class members. . . ." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 565 (9th Cir. 2019). The Wilkus Objectors offer no reason to believe that exclusion from the settlement *en masse* will result in a better outcome for their claims, in light of not only the hurdles they will face on the merits to any recovery, but the financial condition that 23andMe may be in by the time their separate cases conclude, even if their claims are resolved in their favor.

Moreover, the Wilkus Objectors cite no cases supportive of their position. Indeed, neither of the two cases relied on by the Wilkus Objectors supports their position that state court litigants should be excluded *en masse* from a settlement in lieu of the Rule 23 notice and exclusion process.[2]

Furthermore, the Wilkus Objectors' request for advance-exclusion of anyone who has "taken formal steps demonstrating their intent to opt out of any class settlement," Motion at 3, creates great uncertainty with the class definition, as it is unclear who would be excluded from the Settlement Class and the Class might face ascertainability issues. The Wilkus Objectors alternatively suggest that any individual who has "indeed already opted out" by "filing lawsuits" should be excluded from the Settlement. Motion at 3. But simply filing a parallel lawsuit is not evidence of an intent to be excluded from a putative class action settlement. Filing and litigating a case or serving a notice of dispute is not sufficient to constitute an opt-out. *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, 07-cv-5944, 2014 WL 4181732, at *5 (N.D. Cal. Aug. 20, 2014) ("[F]iling an individual case prior to the opt-out period and continuing to litigate that case through the opt-out period is insufficient."); *Bowman v. UBS Fin. Servs., Inc.,* No. C 04 3525 MMC, 2007 WL 1456037, at *2 (N.D. Cal. May 17, 2007) ("[T]he mere pendency and continued prosecution of a separate suit, which the litigant instituted before commencement of the 'opt-out' period in

---

[2] *Youth Just. Coalitions v. City of Los Angeles*, 2020 WL 9312377, at *2 (C.D. Cal. Nov. 17, 2020), cited in the Motion at 3, involves a court granting an unopposed motion for preliminary approval where the *settling parties agreed* to slightly expand the settlement class definition from the definition set forth in the complaint though the two definitions were still "nearly identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), cited in the Motion at 5, supports the Settling Parties' adherence to Rule 23 for a notice and exclusion period. *Hanlon* explains that "[t]he right to participate, or opt-out, is an individual one" and that individual class members "have the right to *intelligently and individually* choose whether to continue in a suit as class members." *Id.* (emphasis added).

SETTLING PARTIES' JOINT OPPOSITION TO WILKUS OBJECTORS' MOTION TO INTERVENE/OBJECTION AND REQUEST FOR JUDICIAL NOTICE

1   a related class action, neither registers nor preserves a litigant's election to 'opt out' of the related class

2   action."). And with good reason. For example, the plaintiff in *Morgenstern v. 23andMe, Inc.*, Case No. 23-

3   610816, one of the pending state court cases, already has stated in an October 16, 2024, joint case

4   management conference statement that she has reviewed the Settlement Agreement and does *not* intend to

5   opt out, assuming the Settlement is approved by this Court, though her case currently remains pending in

6   state court. Prior to this belated Motion and objection, none of the thousands of individuals who have filed

7   claims in state court filed objections in this Court. All of the state court plaintiffs, including the 13 Wilkus

8   Objectors who filed suit prior to the Settlement and the thousands who filed after it, should be included in

9   the Settlement Class and have the opportunity to opt out individually after receiving notice.

10          The Wilkus Objectors' argument that the Settling Parties attempted to create "burdensome

11  additional opt-out procedures" to subvert class members' due process rights was also addressed in detail

12  in previous briefing, which is incorporated herein by reference. *See* ECF No. 127 at 11-14. Those points

13  apply equally here. The opt-out process proposed is standard and consistent with Rule 23's policy that the

14  right to opt-out must be exercised individually; indeed, the Settling Parties have proposed an even more

15  straightforward, revised opt-out form and process at the Court's request. *See* ECF No. 155 at 3, Ex. I.

16          The state court plaintiffs and arbitration claimants should be included in the Class and be permitted

17  to formally exclude themselves through the opt-out process, like other Class members. Indeed, if anything,

18  the Wilkus Objectors' counsel's suggestion that each of the 2,986 individuals they represent in the state

19  court actions desires to be excluded from the Settlement "indicates [counsel] gave the same blanket advice

20  to opt out to all [2,986] of its clients" and "there exist questions regarding the informed decision of each

21  claimant." *In re Centurylink Sales Pracs. & Sec. Litig.,* No. CV 17-2832, 2020 WL 3512807, at *3 (D.

22  Minn. June 29, 2020). These facts are "highly indicative of a conclusion that such counsel did not spend

23  very much time evaluating the merits of whether or not to opt-out in light of the individual circumstances

24  of each of their clients and in consultation with them." *Id.* at *3.

25          Moreover, courts have recognized that the need to minimize the pursuit of copycat claims in state

26  court is of paramount importance when a federal court is presented with preliminary approval of a putative

27  class action settlement and injunctive relief in a MDL, as here. *See, e.g.*, *In re ZF-TRW Airbag Control*

28  *Units Prod. Liab. Litig.*, No. 2:19-ml-02905-JAK-MRW, 2023 WL 6194109, at *26 (C.D. Cal. July 31,

2023) (entering injunctive relief preventing class members from proceeding in other forums, as "copycat lawsuits in other jurisdictions" could impose on court's jurisdiction and ability to manage settlement process); *see also* 4 Newberg on Class Actions § 13:19 (6th ed.) ("The single situation that raises the strongest argument in favor of an antisuit injunction at the preliminary approval stage concerns actions in federal court—particularly those consolidated . . . into a single MDL proceeding— that . . . aim to settle a large, complex matter without significant imposition by strategically filed parallel state cases."). The Settling Parties presented this case law to the Court well in advance of the Wilkus Objectors' Motion, yet the Wilkus Objectors fail to address the important rationale for including plaintiffs in parallel state court actions in the Settlement Class, subject to their right to opt out after Notice.

Six of the seven state court cases filed by Potter Handy, including all but 13 of the Wilkus Objectors, were filed only after the filing of the Motion for Preliminary Approval of the Class Action Settlement. They are strategically-filed "copycat" lawsuits in every sense of the word. Where, as here, the Settling Parties did not exclude state court plaintiffs or arbitration claimants from the Class, neither the record nor the case law provides support for categorically excluding such individuals from the settlement prior to receiving notice and the formal opt-out process, which is designed to provide putative class members the opportunity to review the proposed settlement and decide individually whether to opt out.

### D. The Court Should Grant The Agreed-To Preliminary Injunction, Which Is Properly Entered Under The All Writs Act And Rule 23(d).

The Wilkus Objectors also waived their belated objection to the temporary injunctive relief agreed to by the Settling Parties, and that objection should also be denied on the merits. Indeed, the state court cases already are stayed until January 30, 2025, in deference to this Court and its forthcoming decision on the Motion for Preliminary Approval, including the injunctive relief. This Court should grant the Settling Parties' request to enjoin Settlement Class Members, including the Wilkus Objectors, from prosecuting other litigation or arbitration claims pending the Court's determination of final approval, unless and until individual Settlement Class Members have received Notice and have submitted a valid request to opt out. *See* ECF No. 103-2 at ¶73(h) (Settlement Agreement); ECF No. 103-2, Ex. 1 at ¶23 (Proposed Preliminary Approval Order).

The Settling Parties agreed to this temporary injunction to ensure that the Settlement Agreement is

1  administered in accordance with the Settling Parties' intentions, including treating all 6.4 million

2  Settlement Class Members fairly, and in aid of the Court's jurisdiction. It is particularly important in light

3  of 23andMe's financial condition, as it prevents certain Settlement Class Members or their counsel from

4  racing ahead of other Class Members.

5      As previously demonstrated by the Settling Parties (ECF No. 103-1, 105, 127, 128, 154), this

6  injunctive relief is a common provision supported by ample Ninth Circuit authority. Indeed, the Wilkus

7  Objectors concede that the All Writs Act, 28 U.S.C. § 1651(a), empowers this Court to enjoin class

8  members from initiating or prosecuting parallel actions relating to the Security Incident until entry of the

9  final settlement. *See* Motion at 5 ("Moving Parties recognize that this Court has the authority to issue an

10  injunction under the All Writs Act"). This power encompasses the authority to enjoin proceedings that

11  "interfere, derogate, or conflict with federal judgments, orders, or settlements." *Hanlon v. Chrysler Corp.*,

12  150 F.3d 1011, 1025 (9th Cir. 1998) (internal quotation marks and citation omitted).

13      In *Hanlon*, 150 F.3d 1011 (9th Cir. 1998), the Ninth Circuit affirmed the district court's temporary

14  stay of other litigation pending final approval of a class action settlement, stating that "the temporary

15  approval of the nationwide settlement stayed the state class actions." *Id.* at 1025. In *Sandpiper Vill. Condo.*

16  *Ass'n, Inc. v. La.-Pac. Corp.*, 428 F.3d 831 (9th Cir. 2005), the Ninth Circuit explained that *Hanlon*

17  "recognized that a temporary stay pending settlement of the nationwide class action was appropriate under

18  the All Writs Act and the Anti-Injunction Act because concurrent state proceedings at such a sensitive stage

19  in the federal proceedings would have threatened the jurisdiction of the district court," particularly given

20  the "delicate and transitory process of approving a Settlement Agreement." *Id.* at 845. This injunction is

21  also within the Court's jurisdiction pursuant to Federal Rule of Civil Procedure 23(d), which "vests a

22  district court with the authority and discretion to protect the interests and rights of class members and to

23  ensure its control over the integrity of the settlement approval process." *Hanlon*, 150 F.3d at 102.

24      Following *Hanlon*, courts within the Ninth Circuit and elsewhere routinely enjoin parallel state

25  court litigation in granting preliminary approval of class action settlements. *See, e.g.*, *In re Volkswagen*

26  *"Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 229 F. Supp. 3d 1052, 1073

27  (N.D. Cal. 2017) (granting a stay of all state-court actions relating to released claims in a MDL putative

28  class action settlement, finding that a state court's disposition of claims similar to or overlapping the

SETTLING PARTIES' JOINT OPPOSITION TO WILKUS OBJECTORS' MOTION TO INTERVENE/OBJECTION AND
REQUEST FOR JUDICIAL NOTICE

released claims would implicate the same legal and evidentiary issues and, thus, such action would threaten the Court's jurisdiction); *Jacobs v. CSAA Inter–Ins.*, No. C 07-00362 MHP, 2009 WL 1201996, at *2-*3 (N.D. Cal. May 1, 2009) (invoking the "necessary in aid of jurisdiction" exception to enjoin named and absent members from participating in a state court action relating to claims that are similarly asserted in the federal action as necessary and appropriate to preserve this court's jurisdiction over the approval and administration of the class action settlement); *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 2023 WL 6194109, at *26 (issuing a preliminary injunction to remain in effect until final approval of the settlement agreement, finding that the potential filing of "copycat lawsuits in other jurisdictions" could impose on the court's jurisdiction and ability to manage the settlement process).

Here, the injunction temporarily preventing putative Class Members from litigating separately is proper and warranted because otherwise it would interfere with and derogate from the proposed global settlement and this Court's jurisdiction over the MDL class actions. The Wilkus Objectors cite no authority that holds or even suggests to the contrary. Moreover, given 23andMe's financial condition, the injunctive relief will help ensure that the Settlement Class Members are able to benefit from the Settlement. The Wilkus Objectors implicitly concede that their goal is to divert 23andMe's resources away from the Settlement and towards a separate settlement or litigation of the state court actions, all before any of the Wilkus Objectors have even had notice and an opportunity to consider participation in the Settlement. Motion at 5 (claiming that the injunction will allow "defendant's resources [to be] depleted to the detriment of Moving Parties"). Even though all but 13 of the Wilkus Objectors filed lawsuits only after the Settlement and Motion for Preliminary Approval, counsel for the Wilkus Objectors seeks to cut the line ahead of the other 6.4 million class members. The Court need not and should not permit them to do so, and should enter the injunctive relief agreed to by the Settling Parties.

## IV.  THE COURT SHOULD DENY THE WILKUS OBJECTORS' AMENDED REQUEST FOR JUDICIAL NOTICE, TO THE EXTENT IT GOES BEYOND THE FACT THAT THE COMPLAINTS WERE FILED IN STATE COURT.

In connection with the Motion, the Wilkus Objectors filed an Amended Request for Judicial Notice ("Request"), asking the Court take judicial notice of the state court complaints. ECF No. 153. The Request should be denied, to the extent it goes beyond the fact that the complaints were filed in state court.

SETTLING PARTIES' JOINT OPPOSITION TO WILKUS OBJECTORS' MOTION TO INTERVENE/OBJECTION AND REQUEST FOR JUDICIAL NOTICE

As the Wilkus Objectors concede, facts are only subject to judicial notice if they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). It is a proponent's burden to show facts contained in documents are proper subjects of judicial notice, *see Jamul Action Committee v. Stevens*, 2014 WL 3853148, at *6 (E.D. Cal. Aug. 5, 2014), and "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

The Settling Parties do not dispute that the Court can take judicial notice of the fact that the complaints were filed in state court. However, the purpose of the Request and the precise facts the Wilkus Objectors believe are subject to judicial notice are not made clear by the Motion or Request. To the extent these complaints are proffered to suggest that the thousands of plaintiffs listed therein do not want to participate in the Settlement, the Court should reject the Request. The Court may take judicial notice of the *existence* of the state court complaints. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (quoting Fed. R. Evid. 201 and *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). But the Court cannot take judicial notice "of facts that may be 'subject to reasonable dispute.'" *Id.* Nothing in the proffered complaints states, let alone establishes, that each of the listed plaintiffs—upon receiving notice of the Settlement—would choose to exclude themselves from the Settlement. Indeed, as explained *supra*, at least one state court plaintiff already has indicated that she intends to participate in the Settlement despite having filed a state court action. Therefore, the complaints—even if subject to judicial notice as to their existence—could not be subject to judicial notice for the purpose of establishing that any of the plaintiffs named therein have evidenced a desire to exclude themselves from the Settlement. The Request that this Court infer that conclusion and accept it as a true fact should be rejected.

//

//

//

//

//

//

SETTLING PARTIES' JOINT OPPOSITION TO WILKUS OBJECTORS' MOTION TO INTERVENE/OBJECTION AND
REQUEST FOR JUDICIAL NOTICE

V.    **CONCLUSION**

For the reasons set forth above, the Wilkus Objectors' Motion to Intervene should be denied and their objection to preliminary approval of the Class Action Settlement, including the class definition and the temporary injunctive relief, should be denied.

DATED:  November 26, 2024

GREENBERG TRAURIG, LLP

*/s/ Rebekah S. Guyon*
Rebekah S. Guyon (SBN 291037)
1840 Century Park East, Suite 1900
Los Angeles, California 90067 Telephone: 310-
Tel.: (310)-586-7700
*Rebekah.guyon@gtlaw.com*

Stephen L. Saxl (*admitted pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017
Tel.: (212) 801-9200
*saxls@gtlaw.com*

*Attorneys for Defendant 23andMe, Inc.*

*/s/ Gayle M. Blatt*
Gayle M. Blatt (SBN 122048)
CASEY GERRY SCHENK FRANCAVILLA BLATT &
PENFIELD LLP
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
gmb@cglaw.com

Cari Campen Laufenberg (*pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel: (206) 623-1900
claufenberg@kellerrohrback.com

Norman E. Siegel (*pro hac vice*)
STUEVE SIEGEL HANSON LLP
460 Nichols Road
Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

*Interim Co-Lead Counsel*